# EXHIBIT 1

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2026-Jul-08 15:39:40
60CV-26-8633
C06D03 : 22 Pages

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**

**CIVIL DIVISION**

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Case No. ____________________

JURY TRIAL DEMANDED

Plaintiff,

v.

ALIBABA GROUP HOLDING LIMITED;
ALIBABA.COM SINGAPORE E-COMMERCE PTE. LIMITED, also known as ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED;
ALIBABA.COM U.S. LLC;
ALIBABA.COM U.S. E-COMMERCE CORP., also known as ALIBABA.COM US E-COMMERCE CORP.;
ALIBABA GROUP (U.S.) INC.;
ALIEXPRESS E-COMMERCE ONE PTE. LTD.;
AUS MERCHANT SERVICES, INC., formerly known as ALIPAY U.S., INC. and ALIPAY U.S. ESCROW, INC.;
ZICHANG NEW MATERIALS (SHANDONG) CO., LTD.;
ZHISHANG NEW MATERIALS (SHANDONG) CO., LTD. (name, translation, beneficiary, affiliate, or account variation to be clarified);
SHAANXI BLOOM TECH CO., LTD.;
JOHN DOE ALIBABA PLATFORM, PAYMENT, OWNER, OPERATOR, PARENT, SUBSIDIARY, AFFILIATE, AGENT, BUSINESS-PARTNER, COMPLIANCE, PAYMENT-ROUTING, OR ALTER-EGO ENTITIES 1-10; and
JOHN DOE SELLER/MERCHANT ACCOUNT OPERATORS, SALES AGENTS, PAYMENT BENEFICIARIES, PAYMENT PROCESSORS, PAYMENT-ROUTING PARTICIPANTS, CHEMICAL-PRODUCT SOLICITORS,

IMPORT/SHIPMENT PARTICIPANTS,
AND CO-CONSPIRATORS 1-20,

Defendants.

**COMPLAINT FOR BREACH OF CONTRACT, FRAUD, ARKANSAS DECEPTIVE TRADE PRACTICES, ARKANSAS CIVIL ACTION BY CRIME VICTIM / CRIMINAL ENTERPRISE PREDICATE CONDUCT, UNJUST ENRICHMENT, MONEY HAD AND RECEIVED, ALTER-EGO / AGENCY RELIEF, ACCOUNTING, AND RELATED RELIEF**

**Plaintiff seeks monetary relief exceeding the jurisdictional limits of small claims and district civil court, in an amount to be determined by the jury and up to the highest amount proven and permitted by Arkansas law.**

Plaintiff Bradley Burchfield, appearing pro se only as to his own individual claims and not purporting to represent any separate limited liability company unless counsel appears for that entity, files this Complaint and alleges as follows based on personal knowledge as to his own actions and records and on information and belief as to Defendants' internal acts, agency relationships, account records, payment routing, communications, and platform records:

## I. NATURE OF THE ACTION

1. This is an Arkansas civil action arising from Alibaba.com Trade Assurance Order No. 91906090501027582, dated on or about June 1, 2021, involving a chemical product identified in the contract records as factory N-Isopropylbenzylamine, CAS 102-97-6, and related marketplace, seller, payment, customer-service, dispute-resolution, and post-order communications.

2. Plaintiff alleges that Defendants and related John Doe participants used Alibaba.com marketplace systems, Trade Assurance representations, seller accounts, sales-agent communications, payment channels, platform records, and customer-service/dispute-resolution systems to induce Plaintiff to pay money for goods while failing to deliver the contracted goods, failing to honor Trade Assurance remedies, concealing or denying material records, and using coercive or misleading communications to discourage complaints, reports, or refund demands.

3. Plaintiff pleads in the alternative. Plaintiff alleges first that the contracted goods were not delivered as promised. To the extent any Defendant contends that any goods were delivered, Plaintiff alternatively alleges that the goods were not as represented, were not fit for the lawful commercial, industrial, rust-inhibitor, or similar represented use, and did not satisfy the contract, advertising, seller representations, or Trade Assurance promises.

4. Plaintiff does not admit any unlawful purpose for any purchase. Plaintiff alleges that the product was represented and sold to him as a lawful commercial or industrial product and/or rust-inhibitor product. Plaintiff seeks relief for injury to his money, property, business, and related property interests arising from alleged deception, non-delivery, failed dispute resolution, wrongful retention of money, and related conduct.

5. This Complaint is intended for filing in the Circuit Court of Pulaski County, Arkansas, Civil Division. It is separate from Plaintiff's pending or filed federal civil RICO action in the United States District Court for the Eastern District of Arkansas, Case No. 4:26-cv-00611-DPM. The federal case and this state case involve overlapping facts, documents, defendants, and exhibits, but this state pleading asserts Arkansas statutory, common-law, equitable, and state racketeering-type claims.

6. To the extent this matter originated in the Small Claims Division or District Court Civil Division, Plaintiff asks that it be accepted in, transferred to, or treated as filed in Pulaski County Circuit Court because the damages sought exceed lower-court limits. This Complaint is a complete state-court pleading for Circuit Court. Plaintiff does not plead any artificial damages cap and seeks all relief allowed by Arkansas law and the evidence.

## II. PARTIES

7. Plaintiff Bradley Burchfield is an Arkansas resident. Plaintiff alleges that he paid for, controlled, or beneficially owned the claim arising from Alibaba.com Order No. 91906090501027582 and suffered direct injury to his money, property, business, use of funds, expected goods, and related property interests. To the extent the Court determines that Burchfield Sales and Consulting LLC is the real party in interest for any portion of the claim, Plaintiff requests leave for ratification, joinder, substitution, or appearance of counsel for the LLC rather than dismissal on that technical ground.

8. Defendant Alibaba Group Holding Limited is alleged to be the parent, affiliate, controlling entity, and/or alter ego of relevant Alibaba platform operations. The Alibaba Non-Prosecution Agreement identifies Alibaba Group Holding Limited as an exempted Cayman Islands company whose ADSs are listed on the New York Stock Exchange and identifies subsidiaries, officers, directors, employees, and agents acting within the scope of employment or agency relationships as included within the term "Alibaba." Plaintiff docs not sue Alibaba Group merely because it is a passive investor or parent. Plaintiff sues based on alleged operational control, participation, benefit, agency, platform control, payment infrastructure, policy control, and discovery facts to be proven.

9. Defendant Alibaba.com Singapore E-Commerce Pte. Limited, also known in Plaintiff's records as Alibaba.com Singapore E-Commerce Private Limited, is identified by Plaintiff's transaction records as the marketplace operator connected to Order No. 91906090501027582. The Alibaba Non-Prosecution Agreement also identifies Alibaba.com Singapore E-Commerce Pte. Limited as a Singapore-based subsidiary and as a

legal entity housing Alibaba's International Commerce Business Unit, which operates Alibaba.com. Plaintiff alleges this entity operated, managed, controlled, or materially participated in the Alibaba.com marketplace, Trade Assurance contracting system, seller support, order records, customer-service functions, and dispute-resolution process relevant to this case.

10. Defendant Alibaba.com U.S. LLC is identified in the Alibaba Non-Prosecution Agreement as a Delaware company and as a legal entity that housed Alibaba's International Commerce Business Unit, which operates Alibaba.com. Plaintiff alleges this entity was involved in, benefitted from, administered, monitored, or supported United States-facing Alibaba.com marketplace operations, seller support, buyer support, payment, compliance, customer-service, or records functions. Its precise role is within Defendants' control and requires discovery.

11. Defendant Alibaba.com U.S. e-Commerce Corp., also known in Plaintiff's filings as Alibaba.com US E-Commerce Corp., is identified in the Alibaba Non-Prosecution Agreement as a legal entity that housed Alibaba's International Commerce Business Unit, which operates Alibaba.com. Plaintiff's small-claims service materials also treated Alibaba.com US E-Commerce Corp. as a proper Alibaba.com United States entity. Plaintiff alleges this entity was involved in, benefitted from, or provided United States-facing marketplace, seller-support, buyer-support, payment, record, compliance, or dispute-resolution functions.

12. Defendant Alibaba Group (U.S.) Inc. is identified in the Alibaba Non-Prosecution Agreement as a Delaware company and subsidiary of Alibaba Group Holding Limited. Plaintiff alleges this entity may have participated in United States-facing Alibaba platform operations, compliance, payment, records, support, or agency functions relevant to United States buyers and requires discovery into its relationship to Alibaba.com, Trade Assurance, AUS Merchant Services, and Order No. 919060905010275 82.

13. Defendant AliExpress E-Commerce One Pte. Ltd. is identified in the Alibaba Non-Prosecution Agreement as a Singapore-based subsidiary of Alibaba Group Holding Limited and as a legal entity housing the AliExpress platform. Plaintiff's transaction was through Alibaba.com, not AliExpress.com. Plaintiff names this entity because the Non-Prosecution Agreement describes Alibaba Platforms and cross-platform compliance, subject-merchandise, payment, and policy failures involving Alibaba.com and AliExpress, and because discovery is needed to determine whether any shared policies, compliance controls, payment flows, seller records, or platform agents affected the transaction at issue. If discovery shows that this entity had no role, Plaintiff will amend or dismiss it as appropriate.

14. Defendant AUS Merchant Services, Inc., formerly known as Alipay U.S., Inc. and Alipay U.S. Escrow, Inc., is identified in the AUS Non-Prosecution Agreement as a Delaware company with its principal place of business at 525 Almanor Avenue, Sunnyvale,

California 94085. The AUS Non-Prosecution Agreement states that AUS offered payment processing and settlement services to Alibaba-owned e-commerce platforms, including Alibaba.com, and processed United States dollar payments on behalf of overseas merchants selling to United States-based buyers. Plaintiff alleges on information and belief that AUS, Alipay, or a related payment entity may have processed, screened, retained, monitored, or possessed records concerning Plaintiff's Alibaba.com payment or related seller/beneficiary payment flow. Its precise relationship to Plaintiff's payment must be determined through discovery.

15. Defendant Zichang New Materials (Shandong) Co., Ltd. is identified in the Trade Assurance Purchase Contract as the seller for Alibaba.com Order No. 919060905010275 82. Plaintiff alleges this seller or its agents represented the goods, induced the order, accepted or benefited from the transaction, communicated through Alibaba.com or related channels, and failed to deliver the contracted goods or provide a refund. Plaintiff states that each supplier, including this one, listed on the Alibaba site, advertised a supply rate of 20 metric tons per month each for CAS # 102-97-6.

16. Defendant Zhishang New Materials (Shandong) Co., Ltd. is identified in uploaded payment records as a beneficiary associated with a domestic wire transfer account or payment instructions. Plaintiff alleges that Zichang and Zhishang may be a spelling, translation, beneficiary, account, affiliate, or alter-ego variation related to the seller and seeks discovery to determine the correct legal identity and payment beneficiary. Plaintiff states that each supplier, including this one, listed on the Alibaba site, advertised a supply rate of 20 metric tons per month each for CAS # 102-97-6.

17. Defendant Shaanxi Bloom Tech Co., Ltd. is identified in uploaded payment records and in the bloomtechz.com email evidence. Plaintiff alleges that this entity, sales@bloomtechz.com, Aurora Song, and/or related agents participated in chemical-product solicitations, direct WhatsApp/WeChat communications, payment routing, buyer communications, post-order communications, concealment, or related enterprise conduct. Plaintiff states that each supplier, including this one, listed on the Alibaba site, advertised a supply rate of 20 metric tons per month each for CAS # 102-97-6.

18. The John Doe Alibaba Platform owner, operator, parent, subsidiary, affiliate, agent, payment, compliance, business-partner, payment-routing, or alter-ego entities 1-10 are presently unknown entities that owned, operated, controlled, administered, profited from, provided payment or compliance services to, or exercised authority over Alibaba.com, Trade Assurance, seller accounts, buyer communications, payment records, customer-service responses, dispute records, platform-level compliance functions, or related post-order communications relevant to Plaintiff's transaction. These Doe Defendants include, without limitation, any Alibaba-related entity, affiliate, business unit, agent, service provider, payment participant, compliance participant, or alter-ego entity that operated or controlled seller or merchant accounts; communicated with Plaintiff; issued or participated

in chemical-product solicitations; used WhatsApp, WeChat, email, Alibaba.com messaging, or other channels to solicit or discuss N-Isopropylbenzylamine or related chemicals; represented product properties or legality; routed or received funds; controlled beneficiary accounts; participated in the alleged non-delivery or misrepresentation; or assisted in concealing, discouraging, threatening, or obstructing complaints concerning Order No. 91906090501027582 and related post-order communications, including the January 9, 2022 email from sales@bloomtechz.com titled "Details N-Isopropylbenzylamine."

19. The John Doe seller account operators, sales agents, payment beneficiaries, payment processors, payment-routing participants, chemical-product solicitors, import/shipment participants, and co-conspirators 1-20 are presently unknown individuals or entities that used seller accounts, email addresses, payment channels, beneficiary accounts, direct communications, WhatsApp, WeChat, Alibaba.com messaging, or other means to solicit, process, conceal, route, retain payment, retain records, or obstruct complaints connected to Plaintiff's order and related chemical-product communications. For purposes of this Complaint, the term "related communications" includes, without limitation, Alibaba.com platform messages, Trade Assurance communications, seller or sales-agent emails, payment instructions, WhatsApp or WeChat solicitations, customer-service responses, dispute-resolution communications, and the January 9, 2022 email from sales@bloomtechz.com titled "Details N-Isopropylbenzylamine."

20. At all relevant times, each Defendant acted personally, through agents, through affiliated accounts, through apparent authority, through alter egos, through business partners, through payment-routing participants, or through a joint or association-in-fact enterprise, and each Defendant is liable for its own acts and for acts of agents, alter egos, co-conspirators, or joint enterprise participants where proven.

## III. JURISDICTION, VENUE, AND SERVICE

21. This Court has subject-matter jurisdiction because the Circuit Court of Pulaski County, Arkansas, is a court of general jurisdiction for civil actions and because Plaintiff seeks damages exceeding the jurisdictional limits of Arkansas small claims and district civil court.

22. Arkansas state district courts have civil jurisdiction only up to the monetary limits set by Arkansas law and court structure, and small-claims jurisdiction is lower. Plaintiff seeks damages exceeding those limits and therefore seeks adjudication in Pulaski County Circuit Court, Civil Division.

23. Venue is proper in Pulaski County because Plaintiff resides in Pulaski County; Plaintiff received marketplace, seller, payment, and customer-service communications in Arkansas; Plaintiff suffered injury to money, property, business, and related interests in Arkansas; and Defendants purposefully directed e-commerce, payment, customer-service, and dispute-resolution activity toward Plaintiff in Arkansas and/or the United States.

24. Personal jurisdiction exists to the fullest extent permitted by Arkansas law and due process because Defendants and their agents used an interactive marketplace to solicit or process orders from Arkansas, accepted or processed payment from an Arkansas resident, used United States payment channels and United States-facing Alibaba.com operations, sent or received electronic communications connected to Arkansas, and caused injury in Arkansas.

25. To the extent this case is transferred from District Court or Small Claims Division, Plaintiff requests that the filing date of the original state action be preserved to the fullest extent permitted by Arkansas law, and that the pleadings, exhibits, docket sheet, service papers, and related filings be transferred to the Circuit Court of Pulaski County, Arkansas, Civil Division.

26. Plaintiff will serve each Defendant according to Arkansas Rule of Civil Procedure 4, applicable statutes, treaty procedures, waiver, authorized registered agent, or court order. Plaintiff does not contend that counsel identified in any Non-Prosecution Agreement represents any Defendant in this state civil action unless counsel appears or expressly agrees in writing to accept service.

## IV. FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### A. The Trade Assurance Transaction

27. On or about June 1, 2021, Plaintiff entered into an Alibaba.com Trade Assurance Purchase Contract for Order No. 91906090501027582. The contract records identify the seller as Zichang New Materials (Shandong) Co., Ltd., and identify the buyer/contact as Burchfield Sales and Consulting LLC / Bradley Burchfield. The product was identified as factory N-Isopropylbenzylamine, CAS 102-97-6.

28. The contract identifies a 1.00 kilogram quantity, a unit price around $615.00, shipping charges around $50.00, insurance charges around $50.00, and a total contract amount around $715.00. Plaintiff alleges that he paid approximately $736.38 in connection with the order, including any platform, payment, tax, insurance, shipping, transaction, or related charges reflected in his records.

29. Plaintiff alleges that he relied on Alibaba.com marketplace structure, Trade Assurance branding, seller verification or platform presentation, order records, buyer/seller records, and dispute-resolution representations in making payment.

30. Plaintiff alleges the goods were not delivered as promised and that Defendants failed to provide a timely refund, meaningful Trade Assurance remedy, or accurate logistics/dispute records. Alternatively, if any goods are alleged to have been delivered, Plaintiff alleges they were not as represented or fit for the represented lawful commercial use.

31. Plaintiff alleges that the transaction was not presented as an offline transaction with an unrelated stranger. It was presented through the unified Alibaba.com marketplace,

Alibaba.com branding, Alibaba.com order system, Trade Assurance framework, customer-service channels, and dispute-resolution process.

**B. Marketplace, Seller, Payment, and Bank Communications**

32. Plaintiff's uploaded Alibaba message record shows a communication from a seller account identified as Sweety Yin stating that, due to Alibaba monitoring, orders over $5,000 must be delivered to Alibaba for transportation, that the seller sent a pro forma invoice for a 1,000 kg order, and that payment could be made by bank. Plaintiff alleges that this communication shows the use of Alibaba.com platform messages, seller-agent accounts, Alibaba monitoring representations, and bank-payment routing in the same general course of chemical-product sales.

33. Plaintiff's uploaded payment records identify United States domestic wire-transfer account information for Shaanxi Bloom Tech Co., Ltd. through Citibank N.A., New York Branch, with a beneficiary address in San Mateo, California. For public filing, Plaintiff identifies the account only by beneficiary name and account ending 8500 unless the Court permits or requires an unredacted filing under seal.

34. Plaintiff's uploaded payment records also identify United States domestic wire-transfer account information for Zhishang New Materials (Shandong) Co., Ltd. through Citibank N.A., New York Branch, with a beneficiary address in San Mateo, California. For public filing, Plaintiff identifies the account only by beneficiary name and account ending 3443 unless the Court permits or requires an unredacted filing under seal.

35. Plaintiff alleges that these bank records are material because they show that foreign seller or affiliate entities used United States banking channels, United States addresses, and United States wire-transfer infrastructure in connection with the same marketplace or seller network at issue.

36. Plaintiff alleges on information and belief that Defendants used multiple related names, seller accounts, sales agents, beneficiary names, and payment instructions to move money, conceal responsible parties, avoid direct refund obligations, and frustrate customer disputes.

C. Alibaba Buyer-Information Routing, Supplier Follow-Up, and Continued Seller Outreach

37. Plaintiff references Exhibit A-4, the Haihang email with attached translation. The exhibit reflects a January 4, 2016 Alibaba/AliSourcePro system email from alisourcepro@service.alibaba.com to export036@haihangchem.com concerning RFQ 102-97-6. The translated email states that the supplier's quotation for RFQ 102-97-6 was successfully sent to a United States buyer, instructs the supplier to view the quotation and contact the buyer, and states that buyer contact information could be viewed in the My Alibaba backend or Procurement Direct quotation-management system.

38. Plaintiff alleges that Exhibit A-4 is evidence that Alibaba made buyer inquiry information, buyer identity information, buyer country/region information, and buyer contact

information available to suppliers or supplier-side users through Alibaba's own platform systems, and that Alibaba encouraged supplier follow-up with buyers for RFQ 102-97-6. Plaintiff pleads this evidence as relevant to platform control, buyer-information routing, supplier solicitation, agency, selling or monetizing buyer information, enterprise methods, and discovery into how suppliers and seller agents obtained buyer information for chemical-product inquiries.

39. Plaintiff further references Exhibit A-3, the 2025 email from Decho Chemical. In that email, a Decho Chemical sales representative states that she found Plaintiff had an inquiry for N-Isopropylbenzylamine, CAS 102-97-6, asks about Plaintiff's business regarding that chemical, and offers to provide current prices and further chemical-product sales assistance. Plaintiff alleges that Exhibit A-3 shows that the same type of selling or making available of buyer-information, buyer-information routing, supplier follow-up, or seller outreach concerning CAS 102-97-6 continued in 2025, years after the 2016 Haihang/AliSourcePro email and after Plaintiff's 2021 Trade Assurance transaction. Plaintiff pleads Exhibits A-3 and A-4 as evidence of continuity, relatedness, platform-enabled solicitation, and the need for discovery concerning Alibaba's buyer-information practices, supplier access to buyer data, and seller-agent contact methods.

40. Plaintiff alleges that Exhibits A-3 and A-4 support his claims of platform control, seller outreach, buyer-information routing, continued solicitation, notice, continuity, deceptive trade practices, computer-system use, Arkansas criminal-enterprise predicate context if proven, and the need for discovery into how Alibaba.com, seller accounts, payment participants, and related agents collected, disclosed, sold, routed, monetized, or permitted use of buyer inquiry information for CAS 102-97-6 and related chemical-product solicitations.

**D. The January 9, 2022 BloomTechz Email and Alternative Analogue / Chemical-Risk Theory**

41. On or about January 9, 2022, Plaintiff received an email from sales@bloomtechz.com under the subject "Details N-Isopropylbenzylamine." The forwarded-header evidence identifies the sender as sales@bloomtechz.com, the date as January 9, 2022 at approximately 8:47 p.m., and the recipient as Plaintiff's email address.

42. Plaintiff alleges that the email promoted "Blue Pure N iso crystal" or similar chemical products, listed prices for 100g, 500g, and 1kg quantities, solicited direct WhatsApp/WeChat contact, and discussed N-Isopropylbenzylamine, 4-Isopropylbenzylamine, 2-Amino-4-phenylbutane / 2A4P, and related products.

43. Plaintiff further alleges that the email used terms such as "effect," "diluting," "Food grade," "molecule formula," "chemical structure," and "pharmaceutical properties," and stated in substance that from the sender's chemical-research opinion the product had the "Same Molecule Formula of $C_{10}H_{15}N$."

44. Plaintiff alleges that $C_{10}H_{15}N$ is a molecular formula commonly associated with methamphetamine, and that Defendants' own marketing language therefore created a

material red flag that the product was being compared to, substituted for, or promoted in relation to a controlled stimulant substance. Plaintiff does not allege that molecular formula alone conclusively proves illegality. Plaintiff pleads the statement as evidence of knowledge, scienter, deceptive marketing, concealment, materiality, and the need for discovery and expert proof concerning chemical structure, intended use, represented effects, and platform compliance.

45. The same email also used coercive language, including "Each words and pictures here is real, dont talk about any fake here!" and "It must be a legal product, otherwise you have better keep silent." Plaintiff alleges that this language was intended or reasonably calculated to discourage questions, disputes, refund demands, reports to platform compliance, reports to law enforcement or regulators, or court complaints.

46. Plaintiff pleads in the alternative, subject to discovery and expert testimony, that if the product marketed as N-Isopropylbenzylamine / N ISO is found to have a substantially similar chemical structure to methamphetamine or another controlled substance, and if the product was represented, intended, or marketed to have substantially similar stimulant effects or intended for human consumption, then the January 9, 2022 email supports an analogue-style theory or chemical-risk representation theory. Plaintiff does not admit any unlawful purchase purpose and does not seek to privately prosecute criminal drug laws. Plaintiff pleads these facts to show fraudulent inducement, scienter, concealment, intimidation, deceptive trade practices, Arkansas felony predicate context if proven, and the need for discovery.

**E. Failure of Trade Assurance and June 2026 Customer-Service Email**

47. Plaintiff repeatedly attempted to resolve the matter through Alibaba.com's internal complaint or dispute-resolution process. Plaintiff alleges that for approximately three years he received no meaningful delivery, refund, credit, disclosure of logistics records, or remedy. On or about June 1, 2026, Plaintiff sought relief by filing the small claims court complaint referenced herein.

48. On or about June 18, 2026, Alibaba Customer Service sent Plaintiff an email concerning "Solution for Trade Assurance Order 919060905010027582." The email stated that Plaintiff's complaint had been escalated to a senior team.

49. The June 18, 2026 email stated that because the order was over three years old, logistics information could no longer be verified, and that the platform had no record of Plaintiff contacting customer service regarding the order.

50. The June 18, 2026 email offered Plaintiff a $500 Alibaba credit, valid for 90 days, for use toward a future Trade Assurance order, including product and shipping costs, but excluding payment-processing fees, taxes, or other additional services. The email instructed Plaintiff to reply "AGREE" if Plaintiff accepted that option.

51. Plaintiff alleges that the June 18, 2026, email, and the June 22, 2026, email, is not a full refund, not a return of the money paid, and not a meaningful remedy for Plaintiff's alleged injury. Plaintiff further alleges that the email supports his claims that Defendants failed to preserve, disclose, or honor logistics and dispute-resolution records while attempting to convert Plaintiff's refund demand into a future platform credit that would require additional dealings with Defendants.

52. Plaintiff alleges that Alibaba did not respond by saying the matter belonged only to a foreign marketplace seller and that Alibaba had no platform role. Instead, Alibaba reviewed or claimed to review the order and platform records, discussed logistics verification and customer-service records, and offered an Alibaba credit to settle the matter. Plaintiff alleges that this response supports discovery into which Alibaba entity or entities controlled the order, platform records, seller account, Trade Assurance process, customer-service response, payment flow, and settlement-credit authority.

**F. Federal NPAs, Federal Documents, and Overlapping Federal Materials**

53. Plaintiff includes facts and allegations from the June 29, 2026, Non-Prosecution Agreements and $600 million dollar settlement with the United States Attorney's Office for the District of Rhode Island because those agreements overlap with Plaintiff's case on entity identity, Alibaba.com platform control, payment-processing functions, marketplace compliance, seller enforcement, subject merchandise, and United States-facing transaction systems. Plaintiff does not allege that the NPAs alone prove that Plaintiff's specific order was one of the NPA-covered transactions, and Plaintiff does not allege that NPA counsel represents any Defendant in this state civil action.

54. The Alibaba Non-Prosecution Agreement identifies counsel for Alibaba Group Holding Limited, Alibaba.com Singapore E-Commerce Pte. Limited, AliExpress E-Commerce One Pte. Ltd., and Alibaba.com U.S. LLC. It defines "Alibaba" to include Alibaba Group Holding Limited and subsidiaries, officers, directors, employees, and agents acting within the scope of employment or agency relationships, including Alibaba.com Singapore E-Commerce Pte. Limited, AliExpress E-Commerce One Pte. Ltd., Alibaba Group (U.S.) Inc., and Alibaba.com U.S. LLC.

55. The Alibaba Non-Prosecution Agreement defines ICBU as Alibaba's International Commerce Business Unit, the business unit that operates Alibaba.com, including the legal entities that house this unit: Alibaba.com Singapore E-Commerce Pte. Limited, Alibaba.com U.S. LLC, and Alibaba.com U.S. e-Commerce Corp. This directly overlaps with Plaintiff's transaction records and the defendants previously named in this case.

56. The Alibaba Non-Prosecution Agreement's Statement of Facts states that Alibaba.com was a global business-to-business platform that connected buyers and sellers on a single platform, and that ICBU was managed by Alibaba.com Singapore E-Commerce Pte. Limited, which managed Alibaba.com, including within the United States.

57. The Statement of Facts further states that ICBU operated the Alibaba.com marketplace, offered services to independent third-party sellers including Gold and Verified supplier membership programs, and through April 2021 offered a payment service on Alibaba.com called trade assurance through which ICBU processed payments linked to e-commerce orders. Plaintiff's records identify his June 1, 2021 transaction as a Trade Assurance Purchase Contract, which creates a factual issue for discovery concerning the Trade Assurance system, its transition, continuation, entity ownership, and payment-processing responsibility for Plaintiff's order.

58. The Alibaba Non-Prosecution Agreement defines Subject Merchandise to include drugs, devices, equipment used to manufacture counterfeit drugs, controlled substances, listed chemicals or chemical mixtures, anabolic steroids, other regulated items, and products whose importation into the United States is prohibited under federal law and where such importation would constitute a felony. Plaintiff alleges that this definition is relevant to platform notice, product-risk controls, chemical-product screening, seller enforcement, and the need for discovery, but Plaintiff does not allege that the NPA alone proves his specific product was illegal.

59. The Alibaba Statement of Facts states that during approximately January 2016 through December 2024, Alibaba employees raised concerns that ICBU was used to sell improper products into the United States and that compliance measures and filtering systems were inadequate. It further states that approximately 80,000 product sales on the Alibaba Platforms involved product sales from overseas countries to the United States that lacked required approvals under drug, device, and importation laws, with combined gross merchandise value greater than $200 million. Plaintiff states that each supplier listed on the site advertised a supply rate of 20 metric tons per month each for CAS # 102-97-6. Plaintiff submitted supplemental information to the United States Attorney's Office for the District of Rhode Island on July 2, 2026, under USPS Tracking No. 9534612845466183991255, concerning alleged continuing Alibaba.com listings for chemical precursors or restricted chemical products after the public NPA resolution. Plaintiff further alleges that at least one seller listing reflected a "verified seller" history of approximately thirteen years, which, if accurate, would predate the NPA's January 2016 Relevant Period by approximately three years. Plaintiff does not allege that this evidence alone proves Plaintiff's specific order was included in the NPA-covered transactions. Plaintiff pleads it as notice, seller-vetting, compliance, continuity, and discovery evidence concerning Alibaba's platform controls, chemical-product screening, seller-verification practices, and post-NPA compliance.

60. The AUS Non-Prosecution Agreement identifies AUS Merchant Services, Inc., formerly known as Alipay U.S., Inc. and Alipay U.S. Escrow, Inc., as a Delaware company with principal place of business at 525 Almanor Avenue, Sunnyvale, California 94085. It states that AUS offered payment processing and settlement services to Alibaba-owned e-

commerce platforms, including Alibaba.com, and commenced payment processing and settlement services for Alibaba.com transactions in 2020.

61. The AUS Statement of Facts states that AUS's business model included payment processing and settlement services enabling overseas sellers on Alibaba.com to accept payments from United States-based buyers; that AUS received transaction information including merchant identity, buyer identity, and product description; and that AUS accepted United States dollar-denominated payments, including wire transfers for Alibaba.com orders, into United States bank accounts.

62. The AUS Statement of Facts further states that AUS and affiliates would, in certain instances, report merchants who sold Subject Merchandise on Alibaba's e-commerce platforms, including Alibaba.com, to Alibaba rather than systematically restricting those merchants themselves; that overseas merchants used AUS payment services to facilitate the sale and importation of Subject Merchandise; and that AUS processed transactions for overseas Alibaba.com merchants and United States-based buyers involving Subject Merchandise imported into the United States in violation of law.

63. Other federal materials overlap with this state case as factual context and exhibits, including Plaintiff's federal amended RICO pleading, federal service and docket materials, the filed federal exhibit packets, and the prior federal pleadings and rulings. Plaintiff includes overlapping federal materials only to show notice, entity identity, platform/payment structure, preservation issues, and factual context. Plaintiff does not ask the Circuit Court to apply federal civil RICO as an Arkansas cause of action.

## V. CLAIMS FOR RELIEF

### COUNT I - BREACH OF CONTRACT / TRADE ASSURANCE / FAILURE TO DELIVER

64. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

65. Plaintiff alleges that the Trade Assurance Purchase Contract and related Alibaba.com records created enforceable obligations requiring delivery of the contracted goods, accurate order records, good-faith dispute processing, and refund or remedy if the seller failed to perform.

66. Plaintiff alleges that Defendants breached the contract, participated in the breach, benefitted from the breach, or are liable through agency, apparent authority, alter ego, third-party beneficiary, payment-processing, or platform-control principles by failing to deliver the contracted goods, failing to provide a refund, failing to provide meaningful Trade Assurance relief, and failing to maintain or produce material logistics and dispute-resolution records.

67. Plaintiff was damaged by the breach, including out-of-pocket payment, loss of use of funds, loss of expected goods, business interruption, lost opportunity, investigation costs, costs of pursuing relief, and other consequential damages to be proven.

**COUNT II - FRAUD / MISREPRESENTATION / FRAUDULENT CONCEALMENT**

68. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

69. Defendants, their agents, or enterprise participants made or caused material representations and omissions concerning seller legitimacy, product availability, product characteristics, Trade Assurance protection, delivery, refund/remedy availability, payment routing, buyer-information routing, supplier follow-up, continued seller outreach, order records, logistics verification, and customer-service dispute records.

70. The representations and omissions were false or misleading when made or became false or misleading when Defendants failed to deliver the goods, failed to refund the money, failed to provide meaningful Trade Assurance relief, failed to preserve or produce records, and attempted to resolve the matter by limited future credit rather than returning Plaintiff's money. Plaintiff further alleges that the 2016 Haihang/AliSourcePro email and the 2025 Decho Chemical email show additional misrepresentations or omissions concerning how Alibaba systems made buyer inquiry information available to suppliers and allowed continued supplier outreach concerning CAS 102-97-6.

71. Plaintiff reasonably relied on the representations and omissions in paying money, continuing to pursue internal dispute remedies, delaying or limiting other relief efforts, and seeking credit, refund, or court relief.

72. Defendants' conduct caused Plaintiff damages including money paid, loss of use, loss of benefit of the bargain, business and property losses, investigation costs, litigation costs, and other damages to be proven.

73. Plaintiff alleges that the fraud was intentional, reckless, malicious, or in conscious disregard of Plaintiff's rights, supporting punitive or exemplary damages if proven and permitted by Arkansas law.

**COUNT III - ARKANSAS DECEPTIVE TRADE PRACTICES ACT**

74. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

75. Plaintiff brings this claim under the Arkansas Deceptive Trade Practices Act, including Ark. Code Ann. Sections 4-88-107 and 4-88-113, to the extent Defendants' acts constitute deceptive, false, unconscionable, or misleading business practices under Arkansas law.

76. Defendants' alleged deceptive practices include, without limitation, representing that the seller, product, Trade Assurance order, payment process, delivery process, and dispute-resolution remedy were legitimate, protected, documented, and available while failing to deliver the goods, failing to refund Plaintiff's money, failing to provide meaningful Trade

Assurance relief, and failing to disclose material seller, payment, compliance, buyer-information routing, supplier-access, logistics, and remedy limitations.

77. The January 9, 2022 BloomTechz email, the 2016 Haihang/AliSourcePro buyer-information email and translation, the 2025 Decho Chemical email, and related communications are further alleged to be deceptive or unconscionable because they used chemical-product marketing, product-effect language, direct-contact solicitation, legality assertions, buyer-information access, supplier follow-up, and coercive language to discourage complaints or challenges and to continue chemical-product solicitation concerning CAS 102-97-6.

78. The June 18, 2026, and the June 22, 2026, Alibaba Customer Service email is further alleged to support the claim because Alibaba stated that logistics could no longer be verified and that the platform had no record of prior customer-service contact, yet offered only a limited $500 future Alibaba credit rather than a refund of Plaintiff's money.

79. Plaintiff suffered actual financial loss proximately caused by reliance on the deceptive practices, including the amount paid, loss of use of money, lost goods, costs of pursuing relief, damages to his reputation, and other damages to be proven. Plaintiff requests actual financial loss, restitution, reasonable attorney's fees if allowed, costs, and all other relief permitted under Arkansas law.

## COUNT IV - ARKANSAS CIVIL ACTION BY CRIME VICTIM / CRIMINAL ENTERPRISE PREDICATE CONDUCT

80. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

81. Plaintiff pleads this Count under Arkansas law as a state racketeering-type and criminal-enterprise claim. Plaintiff does not ask this Court to create a federal-style private civil RICO claim under Arkansas law. Plaintiff instead alleges that Defendants' conduct would constitute Arkansas felony conduct and a continuing criminal organization or enterprise under Ark. Code Ann. Sections 5-74-103 and 5-74-104, and that Plaintiff is entitled to civil remedies as a person injured or damaged by felony conduct under Ark. Code Ann. Section 16-118-107.

82. Ark. Code Ann. Section 5-74-103 defines a criminal gang, organization, or enterprise as a group of three or more individuals who commit a continuing series of two or more predicate criminal offenses undertaken in concert with each other. It defines a crime of pecuniary gain as a violation of Arkansas law that results, or was intended to result, in a defendant receiving income, benefit, property, money, or anything of value, and it defines a predicate criminal offense as any violation of Arkansas law that is a crime of violence or a crime of pecuniary gain.

83. Ark. Code Ann. Section 5-74-104 applies when a person commits, attempts to commit, or solicits a felony predicate criminal offense as part of a continuing series of two or more

predicate criminal offenses undertaken in concert with two or more other persons. Plaintiff alleges, in the alternative and subject to discovery, that the facts pleaded in this action satisfy those elements.

84. The Arkansas criminal-enterprise participants include, at minimum and subject to discovery, the Alibaba platform entities and Doe platform participants; the seller entities, seller-account operators, and sales agents; the payment processors, payment beneficiaries, and payment-routing participants; and any persons or entities that participated in the marketplace, payment, seller-account, Trade Assurance, customer-service, or post-order concealment conduct relating to Alibaba.com Trade Assurance Order No. 91906090501027582 and related post-order communications.

85. The common purpose of the Arkansas criminal enterprise was to obtain or retain Plaintiff's money and other buyer funds through electronic marketplace representations, Trade Assurance representations, seller-account representations, payment-routing practices, chemical-product solicitations, and customer-service/dispute-resolution communications while failing to deliver the contracted goods, failing to provide meaningful refund or Trade Assurance relief, concealing or denying material logistics and dispute records, and discouraging complaints or reports.

86. Plaintiff alleges that at least two predicate criminal offenses were undertaken in concert. Those predicate acts include, without limitation, the 2016 Haihang/AliSourcePro buyer-information routing email concerning RFQ 102-97-6; the June 1, 2021 electronic Trade Assurance order and payment processing; related marketplace or seller communications concerning chemical-product orders and Alibaba monitoring; payment-routing or beneficiary-account conduct involving United States payment channels; the January 9, 2022 BloomTechz email titled "Details N-Isopropylbenzylamine"; the 2025 Decho Chemical email concerning N-Isopropylbenzylamine CAS 102-97-6; and the post-order concealment and customer-service communications concerning Order No. 91906090501027582.

87. Plaintiff alleges that the principal Arkansas felony predicate is computer fraud under Ark. Code Ann. Section 5-41-103. Defendants and their agents intentionally accessed, used, or caused access to computer systems, computer networks, internet platforms, electronic marketplace systems, email systems, payment systems, and customer-service systems for the purpose of devising or executing a scheme or artifice to defraud or to obtain money, property, or services by false or fraudulent intent, representation, or promise. Computer fraud under Ark. Code Ann. Section 5-41-103 is a Class D felony.

88. Plaintiff further alleges that the same facts support theft-by-deception allegations under Ark. Code Ann. Section 5-36-103 because Defendants and their agents obtained Plaintiff's property by deception or threat with the purpose of depriving Plaintiff of that property. Plaintiff pleads theft-by-deception as a felony predicate only to the extent the amount, aggregated transactions, related conduct, threat evidence, controlled-payment conduct, or discovery facts satisfy the felony classification requirements under Arkansas law. If the

Court determines that Plaintiff's individual payment alone does not satisfy a felony-theft threshold, Plaintiff preserves computer fraud and any other felony conduct supported by discovery as the primary felony predicate for this Count.

89. Plaintiff also pleads, in the alternative and subject to discovery and expert testimony, that if the N-Isopropylbenzylamine / N ISO marketing, same-molecule-formula statement, represented effect, intended use, or chemical-product solicitation evidence establishes conduct involving a controlled substance, controlled-substance analogue, listed chemical, illegal importation, or other Arkansas felony conduct, then such conduct is an additional felony predicate and crime of pecuniary gain for purposes of Ark. Code Ann. Sections 5-74-103 and 5-74-104.

90. The continuing-series element is satisfied, or will be shown through discovery, because the conduct was not an isolated one-time failure to deliver. Plaintiff alleges multiple related acts over time, including the January 2016 Haihang/AliSourcePro email concerning RFQ 102-97-6 and buyer-information access, the June 2021 order and payment, chemical-product marketplace communications, the January 2022 BloomTechz solicitation and coercive language, the 2025 Decho Chemical seller outreach concerning N-Isopropylbenzylamine CAS 102-97-6, Plaintiff's April 2022 credit request, years of failed dispute resolution, and the June 2026 Alibaba Customer Service response offering a limited future credit rather than a full refund while stating that logistics could no longer be verified.

91. The concerted-action element is satisfied, or will be shown through discovery, because the conduct required coordinated participation among at least three participants: a marketplace or platform participant, a seller or seller-account participant, and a payment or beneficiary participant. Plaintiff further alleges that customer-service, compliance, seller-support, sales-agent, and Doe participants supplied additional roles within the enterprise.

92. The conduct was intended to result, and did result, in Defendants or enterprise participants receiving money, property, income, benefit, or something of value. The conduct therefore qualifies as crime-of-pecuniary-gain conduct within the meaning of Ark. Code Ann. Section 5-74-103.

93. Plaintiff was injured and damaged by reason of the alleged felony conduct and criminal-enterprise conduct. Plaintiff lost the money paid for the Trade Assurance order, the use of that money, the benefit of the bargain, business time, business opportunities, investigation costs, court costs, and other consequential business or property losses to be proven.

94. Under Ark. Code Ann. Section 16-118-107, any person injured or damaged by reason of another person's conduct that would constitute a felony under Arkansas law may file a civil action to recover damages based on that conduct. Plaintiff requests damages, costs, attorney's fees if allowed, equitable relief, accounting, constructive trust, disgorgement, restitution, preservation of records, leave to identify Doe participants, and all other relief the Court deems just and proper.

95. Plaintiff does not seek to privately prosecute any criminal statute. Plaintiff pleads the Arkansas felony and criminal-enterprise allegations solely as civil predicate facts supporting recovery under Arkansas law and as additional factual support for fraud, deceptive trade practices, alter-ego, agency, unjust-enrichment, money-had-and-received, and related claims.

**COUNT V - UNJUST ENRICHMENT / MONEY HAD AND RECEIVED**

96. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

97. Defendants accepted, received, controlled, routed, retained, or benefitted from Plaintiff's payment, payment records, seller account benefits, platform fees, payment-processing benefits, future credit leverage, or related value in circumstances that make it inequitable for Defendants to retain the benefit without delivering the goods, providing a full refund, or providing meaningful relief.

98. Plaintiff alleges that Defendants were unjustly enriched and that money had and received should be returned, together with consequential damages, restitution, accounting, disgorgement, interest, and equitable relief to the extent permitted by Arkansas law.

**COUNT VI - CIVIL CONSPIRACY / CONCERTED ACTION**

99. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

100. Plaintiff alleges that Defendants and Doe participants acted in concert, agreed, substantially assisted, aided, abetted, or combined to accomplish unlawful objectives or lawful objectives by unlawful means, including fraud, deceptive trade practices, computer-fraud predicate conduct, concealment, non-delivery, payment retention, and obstruction or discouragement of complaints.

101. This claim is derivative of the underlying wrongs pleaded in this Complaint and is not asserted as an independent tort disconnected from those wrongs.

102. As a direct and proximate result of the concerted conduct, Plaintiff suffered damages including out-of-pocket loss, loss of use, lost benefit of the bargain, consequential property and business damages, investigation costs, loss of reputation, and other damages to be proven.

**COUNT VII - ALTER EGO / AGENCY / APPARENT AUTHORITY / PIERCING CORPORATE VEIL / PROPER ALIBABA ENTITY**

103. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

104. Plaintiff alleges that Alibaba-related Defendants operated through unified Alibaba.com branding, marketplace systems, Trade Assurance order documents, seller verification, customer-service channels, payment channels, dispute-resolution records, compliance functions, and settlement-credit authority in a way that made the relevant Alibaba entities,

agents, affiliates, or alter egos appear to Plaintiff as one integrated platform responsible for the transaction.

105. Plaintiff alleges that the precise responsible entity or entities are within Defendants' control. Plaintiff therefore pleads alter ego, agency, apparent authority, instrumentality, successor/payment responsibility, joint venture, and proper-party theories in the alternative and requests discovery into which Alibaba.com entity controlled the order, payment, Trade Assurance system, seller account, customer-service response, dispute-resolution process, payment-processing records, compliance records, and settlement-credit authority.

106. Plaintiff does not seek to impose liability merely because one entity owns another. Plaintiff seeks to hold liable the entity or entities that actually controlled, participated in, benefitted from, held out, administered, processed, monitored, or accepted responsibility for the transaction, payment, seller account, Trade Assurance process, or post-order dispute conduct.

107. Plaintiff requests that any Alibaba-related defendant that denies responsibility be required, to the extent known, to identify the Alibaba.com entity or entities responsible for the order, payment, marketplace services, Trade Assurance services, seller account, customer-service response, dispute-resolution process, compliance review, payment processing, and records preservation at issue.

## COUNT VIII - ACCOUNTING, CONSTRUCTIVE TRUST, PRESERVATION OF RECORDS, AND EQUITABLE RELIEF

108. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

109. Plaintiff requests an accounting of all funds, fees, credits, payments, beneficiary accounts, platform charges, payment-processing records, seller records, buyer-information routing records, supplier-access records, RFQ records, Trade Assurance records, logistics records, customer-service records, dispute-resolution records, and settlement-credit records connected to Order No. 91906090501027582 and related post-order communications.

110. Plaintiff requests a constructive trust, disgorgement, restitution, preservation order, production order, or other equitable relief to prevent Defendants from retaining money, benefits, records, or payment information obtained through the alleged conduct.

111. Plaintiff requests leave to amend to identify Doe defendants, correct entity names, add or dismiss entities after discovery, and conform the pleading to the proof.

## VI. DAMAGES AND RELIEF REQUESTED

112. Plaintiff alleges that his damages exceed $75,000.00 and exceed the jurisdictional limits of Arkansas small claims and district civil court. Plaintiff does not plead a monetary cap and seeks the maximum monetary, statutory, legal, and equitable relief supported by the evidence and permitted by Arkansas law.

113. Plaintiff requests actual damages, compensatory damages, consequential damages, benefit-of-the-bargain damages, business interruption damages, loss-of-use damages, lost opportunity damages, investigation costs, court costs, costs of service, prejudgment interest, post-judgment interest, restitution, disgorgement, accounting, constructive trust, and all other legal or equitable relief supported by Arkansas law and the evidence.

114. Plaintiff requests punitive or exemplary damages to the fullest extent permitted by Arkansas law if the evidence establishes malice, reckless disregard, intentional fraud, deliberate concealment, intimidation, or other conduct supporting such relief.

115. Plaintiff requests costs and attorney's fees where allowed by statute, rule, contract, equity, or Arkansas law, including under Ark. Code Ann. Section 16-118-107 if Plaintiff prevails on proof of felony conduct by a preponderance of the evidence, and under any other applicable Arkansas statutory or equitable fee provision.

116. Plaintiff requests an order preserving and requiring production of seller-account records, payment records, beneficiary records, Trade Assurance records, dispute-resolution records, customer-service records, platform-compliance records, seller-verification records, communication logs, and records concerning Alibaba's June 2026 customer-service response and settlement-credit authority.

117. Plaintiff requests leave to file amended or supplemental pleadings to identify John Doe defendants, correct defendant names, add proper Alibaba/payment/seller entities, conform the complaint to proof, and preserve Plaintiff's filing date and claims to the fullest extent permitted by Arkansas law.

118. Plaintiff requests all other relief the Court and jury deem just, proper, equitable, and permitted by Arkansas law.

## VII. JURY DEMAND

119. Plaintiff demands a trial by jury on all issues so triable.

## VIII. EXHIBIT INDEX AND FILING NOTICE

120. Plaintiff may attach or rely on exhibits previously filed in the state or federal records, including the Trade Assurance Purchase Contract, the June 18, 2026 Alibaba Customer Service email, the January 9, 2022 BloomTechz email, redacted payment or wire records, the Alibaba Non-Prosecution Agreement, the AUS Non-Prosecution Agreement, state-court transfer materials, and related federal docket or exhibit materials. Exhibits A-1 through A-4 are specifically identified because they mirror the new exhibit references in the federal amended complaint and show notice, Trade Assurance response, buyer-information routing, supplier follow-up, and continued seller outreach.

121. For public filing, Plaintiff will redact financial account numbers and other sensitive financial identifiers unless the Court authorizes or requires unredacted filing under seal.

122. Plaintiff incorporates all previously filed exhibits in small claims court case PCSC-26-189 and federal civil case 4:26-cv-00611-DPM filed in the eastern district as evidence of notice, transaction identity, entity identity, platform/payment structure, discovery need, and factual allegations, but does not allege that any NPA alone proves Plaintiff's specific order was included in any NPA-covered transaction. Plaintiff will refile any exhibits the court instructs to file.

123. Exhibit A-1 – Email to NPA attorneys and reply to Solution for Trade Assurance Order 91906090501027582;

124. Exhibit A-2 – Homesite Financial Services LLC Arkansas Debt Collector Licence;

125. Exhibit A-3 – Email from Decho Chemical;

126. Exhibit A-4 – Haihang email with attached translation.

Respectfully submitted,

Bradley Burchfield

Bradley Burchfield

5420 Kavanaugh Blvd #7927

Little Rock, AR 72217

Phone: 479-223-0038

Email: burchfieldbradley123@gmail.com

Date: 7/8/26, 2026

VERIFICATION

I, Bradley Burchfield, being duly sworn upon oath, state that I am the person filing the foregoing document; that I have read the document; and that the facts stated in it are true and correct to the best of my knowledge, information, and belief.

I understand that this verification is made under oath and that any false statement may subject me to penalties for perjury.

Bradley Burchfield

Signature of Affiant

Bradley Burchfield

Printed Name

Date: 7/8/26

STATE OF ARKANSAS
COUNTY OF Pulaski

Subscribed and sworn to before me on this 8th day of July, 2026, by

Shyreen Hightower

Notary Public

My Commission Expires: August 14, 2035

Notary Seal: SHYREEN HIGHTOWER NOTARY PUBLIC #00008102 EXPIRES AUGUST 14, 2035 SALINE COUNTY, ARKANSAS

THIS PAGE IS LEFT INTENTIONALLY BLANK

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2026-Jul-08 15:39:40
60CV-26-8633
C06D03 : 9 Pages

# UNIFORM COVER PAGE

[To be used when required by Administrative Order No. 2 (g)*]

COURT: Circuit COURT OF Pulaski COUNTY

Docket/Case Number: ____________________

CASE NAME:
PLAINTIFF/
PETITIONER: Bradley Burchfield

DEFENDANT/
RESPONDENT: Alibaba Group Holdings Etal

TITLE OF PLEADING OR
DOCUMENT BEING FILED
(If a multi-part file,
the designation "part _ of _"
(example, part 1 of 2)): Exhibits

*Administrative Order No 2.

(g) *File Mark.* (1) There shall be a two inch (2") top margin on the first page of each document submitted for filing to accommodate the court's file mark. If the pleading or document must be filed in multi-parts because of size or for other reasons, the first page of each part must include the file name and file mark and shall clearly indicate the part number and number of parts (example, part 1 of 2).

(2) If a document is such that the first page cannot be drafted to provide sufficient space to satisfy the file-mark requirement, the document must include the uniform cover page developed by the Administrative Office of the Courts and found under Forms and Publications at www.arcourts.gov.

Exhibit A-1

Gmail

Burchfield Bradley <burchfieldbradley123@gmail.com>

## Solution for Trade Assurance Order 91906090501027582

**Burchfield Bradley** <burchfieldbradley123@gmail.com> Fri, Jul 3, 2026 at 11:04 AM
To: Alibaba Customer Service <queryreply@service.alibaba.com>, levinsc@sullcrom.com, samwilliamson@quinnemanuel.com
Bcc: [redacted]

Happy Fourth of July!

Last email.

Sweet deal ya'll made with Feds. But I think I might have ruined your black panther party. Everyone is free in China just not in the United States it seems. Ain't that something. I mean there should be a "Right to Recovery" instead of jail sentences for citizens, if a corporation can get away with this on such a large scale. You do have the highest paid attorneys there are though. I never could afford an attorney and had to do it myself.

Now I do realize that your counsel for the NPA has not appeared in these federal and state cases in Arkansas but it does say in the NPA to address them for reasons outlined in the agreement or breach thereof, as best as I can understand it. So don't consider this service of process, unless you want to, but after service in state court you did respond through this channel. That's something the court clerk was upset about as you answered me and not the court. Well here we are, and yesterday I sent off notice to the U.S. District Court of Rhode Island to show them the cases and the precursors still available on the site and that particular supplier had been registered for 13 years which is outside that agreement you made between 2016-2024. So is the Small Claims case that's now been removed to civil circuit court as of yesterday. I'll be filing this amended complaint Monday morning to align with the NPAs which have also been submitted as exhibits yesterday. Just a professional courtesy as I did send out this information to the attorneys of record on the NPAs.

No, I don't agree to a $500 payment. Please see civil relief requested in state and federal court here in Arkansas. Lots of zeroes. Will be filing amended pleadings first thing Monday morning in both courts.

I sure would like to go into the rehabilitation and recovery business with ya'll. It would be a great civil accomplishment. Makes 6 times the amount of money that regular real estate does and considering the extent of NPA disclosures tt would be great Public Relations and service to the citizens of the United States and Arkansas. I've got 4 good years of experience in the recovery field and I am looking for a job. I think insurance pays 15-30k a month per person for rehabilitation. I digress.

Per your last request below you will find the account you can deposit foreign currency to directly. All substantial offers would be considered.

Beneficiary Name: Homesite Financial Services LLC
Beneficiary Account Number: [redacted]5910
IBAN Code: N/A
Routing Number (for U.S. Banks): 026009593
Sort Code (for UK Banks): N/A
BSB Code (for Australian Banks): N/A
Beneficiary Address: 1560 E SOUTHLAKE BLVD SUITE 100-222, SOUTHLAKE, TX 76092
Beneficiary Bank: BANK OF AMERICA, N.A.
Beneficiary Bank Country: UNITED STATES
Beneficiary Bank SWIFT Code (necessary) : **BOFAUS6S** — for wires sent in **foreign currency** to Bank of America in the U.S.
Intermediary Bank SWIFT Code (if applicable):
StreetName: (necessary, Maximum 70 characters) : CALIFORNIA ST
BuildingNumber: (necessary, Maximum 16 characters) : 555
PostalCode: (necessary, Maximum 16 characters) : 94104
TownName: (necessary, Maximum 35 characters) : SAN FRANCISCO
CountrySubdivision: (necessary) : CA

For U.S. Dollar wires

Formatted bank address:

**Bank of America, N.A.**
**222 Broadway**
**New York, NY 10038**
**United States**
**SWIFT: BOFAUS3N**

I did speak with the bank so there shouldn't be a problem in foreign transfers.

Bradley Burchfield

479-223-0038
burchfieldbradley123@gmail.com
burchfieldbradley123@icloud.com
ID#2503103532

On Mon, Jun 22, 2026 at 1:18 AM Alibaba Customer Service <queryreply@service.alibaba.com> wrote:

Hi Bradley,

We have received your complaint regarding to this order 91906090501027582, please rest assured that this case been escalated to our senior team.

[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]

---

**9 attachments**

**FINAL COPY_FIRST_AMENDED_FEDERAL_CIVIL_RICO_COMPLAINT_encrypted_.pdf**
361K

**MOTION_FOR_LEAVE_TO_FILE_FIRST_AMENDED_COMPLAINT_encrypted_.pdf**
258K

**PROPOSED_FIRST_AMENDED_STATE_COMPLAINT_PULASKI_CIRCUIT_BURCHFIELD.pdf**
300K

**DOC070226-07022026122951.pdf**
2904K

**DOC070226-07022026123117.pdf**
4535K

**DOC070226-07022026122515.pdf**
3868K

**AFQ59365-1648565087708.pdf**
140K

**Alibaba NPA.pdf**
994K

**AUS Merchant Services NPA.pdf**
827K

Exhibit A-2

SARAH HUCKABEE SANDERS
Governor

DARYL E. BASSETT
Secretary of Labor and Licensing

# State of Arkansas

**Arkansas Dept of Labor and Licensing**
**Arkansas Board of Collection Agencies**
**900 West Capitol Avenue, Suite 400,**
**Little Rock, AR 72201-9709**
**PH (501) 682-4500**
**https://labor.arkansas.gov/licensing**

1560 E SOUTHLAKE BLVD STE 100-222
SOUTHLAKE, TEXAS 76092

**LICENSE #:**
AC-6846

## HOMESITE FINANCIAL SERVICES LLC

Given under our hand and seal this **1st** day of **Jul, 2026.**

This license expires: **06/30/2027.**

Daryl E. Bassett

SECRETARY OF LABOR AND LICENSING

Outlook

## N-Isopropylbenzylamine Cas 102-97-6 from Emily-Decho Chemical

From Emily <sale006@dechochem.com>
Date Wed 4/30/2025 12:36 AM
To [redacted]

Dear colleagues,

How are you?

This is Emily from Decho Chemical, which a manufacturer of chemicals.

If found that you have inquiry of N-Isopropylbenzylamine Cas 102-97-6,
how about your business with item-N-Isopropylbenzylamine Cas 102-97-6?
If still pending I would like to offer our latest prices to promote an opportunity to cooperate with each other.

And if any new inquiry of other chemicals, welcome here and I will try my best
to satisfy you well with the competitive price and best quality as per your request.

Looking forward to your response, thank you in advance!

Thanks and Best Regards,

Emily Liao| Sales representative
DECHO CHEMICAL
Mobile/Whatsapp/Skype/Wechat: +86 187 6396 9830
E-mail: sale006@dechochem.com
Off. Add: Block D, Yinhe Building, High-tech Zone, Jinan City, Shandong Province
Plant Add: No. 97 Xiqin Industrial Park, Binzhou City, Shandong Province

Exhibit A - 4

--------------Original Message-------------
From: alisourcepro@service.alibaba.com

[redacted] 11/13

[redacted]



To: export036@haihangchem.com
Subject: 您对United States买家的报价已经成功发送!
Date: 2016-01-04 17:20:12

---

www.Alibaba.com AliSourcePro My Alibaba | Trade Manager | 外贸圈

您的报价已成功发送至买家

此邮件为系统邮件，请勿直接答复

尊敬的中国供应商会员（Member ID: cn1515309815lfps）:

恭喜您！您针对 RFQ 102-97-6 的报价已成功发送至买家。立即 查看并联系买家

重要提醒:

为保障您和买家的信息安全，预计2015年4月20日起，阿里巴巴的官方邮件中不再包含买家联系信息，您可以在My Alibaba后台查看买家联系信息，谢谢您的支持和配合。

RFQ Subject: 102-97-6

Buyer Name: bull peterbilt

Company Name: No Company Name

Country/Region: United States

您也可以登录"My Alibaba" > "采购直达" > "报价管理"，查看报价详情信息及买家信息。

了解采购直达服务> 查看更多采购直达买家需求（RFQ） 立即登录采购直达频道>

86 185*****990 这是您在阿里巴巴上绑定的手机号码，如有缺失或错误，则该邮件并非发送自阿里巴巴。确保您的账户安全，请注意核对。

祝您早日与买家达成交易!

阿里巴巴采购直达团队

Mobile App | Customer Services | My Alibaba | Business Identity

This email was sent to

Click here to unsubscribe from Alibaba.com emails

點擊 此處 退訂來自阿里巴巴的郵件

**Your quotation has been successfully sent to the buyer**

This is a system-generated email. Please do not reply directly.

Dear China Supplier Member **Member ID: cn1515309815lfps,**

Congratulations! Your quotation for **RFQ 102-97-6** has been successfully sent to the buyer. View it now and contact the buyer.

**Important reminder:**

To protect the information security of both you and the buyer, starting around **April 20, 2015**, Alibaba's official emails will no longer include buyer contact information. You can view the buyer's contact information in the **My Alibaba** backend. Thank you for your support and cooperation.

**RFQ Subject:** 102-97-6
**Buyer Name:** bull peterbilt
**Company Name:** No Company Name
**Country/Region:** United States

You can also log in to **"My Alibaba" > "Procurement Direct" > "Quotation Management"** to view the quotation details and buyer information.

Learn more about Procurement Direct services > View more Procurement Direct buyer requests **RFQs** > Log in to the Procurement Direct channel now >

**86 185*990** is the mobile phone number you have linked to your Alibaba account. If it is missing or incorrect, then this email was not sent by Alibaba. To ensure your account security, please verify it carefully.

We wish you success in reaching a deal with the buyer soon!

**Alibaba Procurement Direct Team**

THIS PAGE IS LEFT INTENTIONALLY BLANK

# IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## CIVIL DIVISION

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

v.

ALIBABA GROUP HOLDING LIMITED, et al.,

Defendants.

Case No. ____________________

JURY TRIAL DEMANDED

# SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

**Shaanxi Bloom Tech Co., Ltd.**
400 S El Camino Real
San Mateo, CA 94402

*SERVICE NOTE FROM FEDERAL ADDRESS PACKET: Beneficiary address from payment records, not verified as registered agent.*

A lawsuit has been filed against you. The relief demanded is stated in the attached Complaint.

**Within 30 days after service of this summons on you** (not counting the day you received it), you must file with the Clerk of this Court a written answer to the Complaint or a motion under Arkansas Rule of Civil Procedure 12. The answer or motion must also be served on the Plaintiff whose name and address are:

Bradley Burchfield
5420 Kavanaugh Blvd #7927
Little Rock, AR 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

If you fail to respond within the time stated, judgment by default may be entered against you for the relief demanded in the Complaint.

Date: ____________________________

CLERK OF COURT

____________________________________
Signature of Clerk or Deputy Clerk
Seal

Clerk's Office: Pulaski County Circuit Clerk, 401 West Markham, Suite 100, Little Rock, AR 72201

9

# PROOF OF SERVICE / RETURN

**Defendant:** Shaanxi Bloom Tech Co., Ltd.
400 S El Camino Real
San Mateo, CA 94402

I received this summons on ______________________.

[ ] I personally served the summons and Complaint on the defendant at:

____________________________________________________________

____________________________________________________________

on ______________________.

[ ] I served the summons and Complaint on the registered agent or person authorized to accept service:

Name/title of person served: ______________________________________

Address where served: ______________________________________

Date served: ______________________

[ ] I served by certified/restricted/registered mail or other method allowed by law. Tracking/receipt number:

____________________________________________________________

[ ] I was unable to serve because: ______________________________________

____________________________________________________________

I declare under penalty of perjury that the foregoing is true and correct.

Date: ______________________

______________________________
Server's Signature

______________________________
Printed Name and Title

______________________________
Server's Address

| | |
|---|---|
| **Case Title:** | BRADLEY BURCHFIELD V ALIBABA GROUP HOLDING LIMITED |
| **Case Number:** | 60CV-26-8633 |
| **Type:** | SUMMONS - FILER PREPARED |

So Ordered

Christy R McDaniel

Christy McDaniel

THIS PAGE IS LEFT INTENTIONALLY BLANK

# IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## CIVIL DIVISION

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

v.

ALIBABA GROUP HOLDING LIMITED, et al.,

Defendants.

Case No. ____________________

JURY TRIAL DEMANDED

# SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

**Alibaba.com U.S. e-Commerce Corp.**
also known as Alibaba.com US E-Commerce Corp.
c/o Incorporating Services, Ltd.
7801 Folsom Blvd, Suite 202
Sacramento, CA 95826

*SERVICE NOTE FROM FEDERAL ADDRESS PACKET: Address from prior service materials; verify before mailing.*

A lawsuit has been filed against you. The relief demanded is stated in the attached Complaint.

**Within 30 days after service of this summons on you** (not counting the day you received it), you must file with the Clerk of this Court a written answer to the Complaint or a motion under Arkansas Rule of Civil Procedure 12. The answer or motion must also be served on the Plaintiff whose name and address are:

Bradley Burchfield
5420 Kavanaugh Blvd #7927
Little Rock, AR 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

If you fail to respond within the time stated, judgment by default may be entered against you for the relief demanded in the Complaint.

Date: ____________________________

CLERK OF COURT

________________________________
Signature of Clerk or Deputy Clerk

Seal

Clerk's Office: Pulaski County Circuit Clerk, 401 West Markham, Suite 100, Little Rock, AR 72201

# PROOF OF SERVICE / RETURN

**Defendant:** Alibaba.com U.S. e-Commerce Corp.
also known as Alibaba.com US E-Commerce Corp.
c/o Incorporating Services, Ltd.
7801 Folsom Blvd, Suite 202
Sacramento, CA 95826

I received this summons on ______________________.

[ ] I personally served the summons and Complaint on the defendant at:

______________________________________________________________

______________________________________________________________

on ______________________.

[ ] I served the summons and Complaint on the registered agent or person authorized to accept service:

Name/title of person served: ________________________________________

Address where served: ____________________________________________

Date served: ______________________

[ ] I served by certified/restricted/registered mail or other method allowed by law. Tracking/receipt number:

______________________________________________________________

[ ] I was unable to serve because: ____________________________________

______________________________________________________________

I declare under penalty of perjury that the foregoing is true and correct.

Date: ______________________

______________________________
Server's Signature

______________________________
Printed Name and Title

______________________________
Server's Address

**Case Title:** BRADLEY BURCHFIELD V ALIBABA GROUP HOLDING LIMITED

**Case Number:** 60CV-26-8633

**Type:** SUMMONS - FILER PREPARED

So Ordered

Christy McDaniel

Electronically signed by CRMCDANIEL on 2026-07-08 15:45:07 page 3 of 3

THIS PAGE IS LEFT INTENTIONALLY BLANK

# IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## CIVIL DIVISION

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

v.

Case No. ____________

JURY TRIAL DEMANDED

Plaintiff,

ALIBABA GROUP HOLDING LIMITED, et al.,

Defendants.

# SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

**John Doe Seller/Merchant Account Operators, Sales Agents, Payment Beneficiaries,**
Payment Processors, Payment-Routing Participants, Chemical-Product Solicitors,
Import/Shipment Participants, and Co-Conspirators 1-20
NO MAILING ADDRESS IDENTIFIED
DO NOT MAIL UNTIL DOE DEFENDANT IS IDENTIFIED
OR THE COURT AUTHORIZES A SERVICE METHOD

*SERVICE NOTE FROM FEDERAL ADDRESS PACKET: Doe category cannot be served until identity/service method is established.*

A lawsuit has been filed against you. The relief demanded is stated in the attached Complaint.

**Within 30 days after service of this summons on you** (not counting the day you received it), you must file with the Clerk of this Court a written answer to the Complaint or a motion under Arkansas Rule of Civil Procedure 12. The answer or motion must also be served on the Plaintiff whose name and address are:

Bradley Burchfield
5420 Kavanaugh Blvd #7927
Little Rock, AR 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

If you fail to respond within the time stated, judgment by default may be entered against you for the relief demanded in the Complaint.

Date: ____________________

CLERK OF COURT

____________________
Signature of Clerk or Deputy Clerk

Seal

Clerk's Office: Pulaski County Circuit Clerk, 401 West Markham, Suite 100, Little Rock, AR 72201

# PROOF OF SERVICE / RETURN

**Defendant:** John Doe Seller/Merchant Account Operators, Sales Agents, Payment Beneficiaries, Payment Processors, Payment-Routing Participants, Chemical-Product Solicitors, Import/Shipment Participants, and Co-Conspirators 1-20
NO MAILING ADDRESS IDENTIFIED
DO NOT MAIL UNTIL DOE DEFENDANT IS IDENTIFIED
OR THE COURT AUTHORIZES A SERVICE METHOD

I received this summons on ______________________.

[ ] I personally served the summons and Complaint on the defendant at:

______________________________________________________________________

______________________________________________________________________

on ______________________.

[ ] I served the summons and Complaint on the registered agent or person authorized to accept service:

Name/title of person served: ____________________________________________

Address where served: ______________________________________________

Date served: ______________________

[ ] I served by certified/restricted/registered mail or other method allowed by law. Tracking/receipt number:

______________________________________________________________________

[ ] I was unable to serve because: ______________________________________

______________________________________________________________________

I declare under penalty of perjury that the foregoing is true and correct.

Date: ______________________

______________________________
Server's Signature

______________________________
Printed Name and Title

______________________________
Server's Address

**Case Title:** BRADLEY BURCHFIELD V ALIBABA GROUP HOLDING LIMITED

**Case Number:** 60CV-26-8633

**Type:** SUMMONS - FILER PREPARED

So Ordered

Christy McDaniel

THIS PAGE IS LEFT INTENTIONALLY BLANK

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## CIVIL DIVISION

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

v.

ALIBABA GROUP HOLDING LIMITED, et al.,

Defendants.

Case No. ____________________

JURY TRIAL DEMANDED

# SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

**Alibaba Group Holding Limited**
c/o Corporation Service Company
19 West 44th Street, Suite 200
New York, NY 10036

*SERVICE NOTE FROM FEDERAL ADDRESS PACKET: U.S. service-agent address.*

A lawsuit has been filed against you. The relief demanded is stated in the attached Complaint.

**Within 30 days after service of this summons on you** (not counting the day you received it), you must file with the Clerk of this Court a written answer to the Complaint or a motion under Arkansas Rule of Civil Procedure 12. The answer or motion must also be served on the Plaintiff whose name and address are:

Bradley Burchfield
5420 Kavanaugh Blvd #7927
Little Rock, AR 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

If you fail to respond within the time stated, judgment by default may be entered against you for the relief demanded in the Complaint.

Date: ____________________________

CLERK OF COURT

________________________________
Signature of Clerk or Deputy Clerk

Seal

Clerk's Office: Pulaski County Circuit Clerk, 401 West Markham, Suite 100, Little Rock, AR 72201

# PROOF OF SERVICE / RETURN

**Defendant:** Alibaba Group Holding Limited
c/o Corporation Service Company
19 West 44th Street, Suite 200
New York, NY 10036

I received this summons on ________________________.

[ ] I personally served the summons and Complaint on the defendant at:

______________________________________________________________________

______________________________________________________________________

on ________________________.

[ ] I served the summons and Complaint on the registered agent or person authorized to accept service:

Name/title of person served: ____________________________________________

Address where served: ________________________________________________

Date served: ________________________

[ ] I served by certified/restricted/registered mail or other method allowed by law. Tracking/receipt number:

______________________________________________________________________

[ ] I was unable to serve because: ________________________________________

______________________________________________________________________

I declare under penalty of perjury that the foregoing is true and correct.

Date: ________________________

______________________________
Server's Signature

______________________________
Printed Name and Title

______________________________
Server's Address

| | |
|---|---|
| **Case Title:** | BRADLEY BURCHFIELD V ALIBABA GROUP HOLDING LIMITED |
| **Case Number:** | 60CV-26-8633 |
| **Type:** | SUMMONS - FILER PREPARED |

So Ordered

Christy McDaniel

THIS PAGE IS LEFT INTENTIONALLY BLANK

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## CIVIL DIVISION

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

v.

ALIBABA GROUP HOLDING LIMITED, et al.,

Defendants.

Case No. ____________________

JURY TRIAL DEMANDED

# SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

**John Doe Alibaba Platform, Payment, Owner, Operator, Parent, Subsidiary, Affiliate, Agent,** Business-Partner, Compliance, Payment-Routing, or Alter-Ego Entities 1-10
NO MAILING ADDRESS IDENTIFIED
DO NOT MAIL UNTIL DOE DEFENDANT IS IDENTIFIED
OR THE COURT AUTHORIZES A SERVICE METHOD

*SERVICE NOTE FROM FEDERAL ADDRESS PACKET: Doe category cannot be served until identity/service method is established.*

A lawsuit has been filed against you. The relief demanded is stated in the attached Complaint.

**Within 30 days after service of this summons on you** (not counting the day you received it), you must file with the Clerk of this Court a written answer to the Complaint or a motion under Arkansas Rule of Civil Procedure 12. The answer or motion must also be served on the Plaintiff whose name and address are:

Bradley Burchfield
5420 Kavanaugh Blvd #7927
Little Rock, AR 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

If you fail to respond within the time stated, judgment by default may be entered against you for the relief demanded in the Complaint.

Date: ______________________

CLERK OF COURT

______________________________
Signature of Clerk or Deputy Clerk

Seal

Clerk's Office: Pulaski County Circuit Clerk, 401 West Markham, Suite 100, Little Rock, AR 72201

# PROOF OF SERVICE / RETURN

**Defendant:** John Doe Alibaba Platform, Payment, Owner, Operator, Parent, Subsidiary, Affiliate, Agent, Business-Partner, Compliance, Payment-Routing, or Alter-Ego Entities 1-10
NO MAILING ADDRESS IDENTIFIED
DO NOT MAIL UNTIL DOE DEFENDANT IS IDENTIFIED
OR THE COURT AUTHORIZES A SERVICE METHOD

I received this summons on ________________________.

[ ] I personally served the summons and Complaint on the defendant at:

______________________________________________________________________

______________________________________________________________________

on ________________________.

[ ] I served the summons and Complaint on the registered agent or person authorized to accept service:

Name/title of person served: ______________________________________________

Address where served: ___________________________________________________

Date served: ______________________

[ ] I served by certified/restricted/registered mail or other method allowed by law. Tracking/receipt number:

______________________________________________________________________

[ ] I was unable to serve because: ________________________________________

______________________________________________________________________

I declare under penalty of perjury that the foregoing is true and correct.

Date: ________________________

______________________________
Server's Signature

______________________________
Printed Name and Title

______________________________
Server's Address

| | |
|---|---|
| **Case Title:** | BRADLEY BURCHFIELD V ALIBABA GROUP HOLDING LIMITED |
| **Case Number:** | 60CV-26-8633 |
| **Type:** | SUMMONS - FILER PREPARED |

So Ordered

Christy McDaniel

THIS PAGE IS LEFT INTENTIONALLY BLANK

# IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## CIVIL DIVISION

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim, v. Case No. ___________________

JURY TRIAL DEMANDED

Plaintiff,
ALIBABA GROUP HOLDING LIMITED, et al.,

Defendants.

# SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

**Alibaba.com Singapore E-Commerce Pte. Limited**
also known as Alibaba.com Singapore E-Commerce Private Limited
51 Bras Basah Road, #01-21
Lazada One
Singapore 189554
SINGAPORE

*SERVICE NOTE FROM FEDERAL ADDRESS PACKET: Singapore marketplace/operator address from transaction records.*

A lawsuit has been filed against you. The relief demanded is stated in the attached Complaint.

**Within 30 days after service of this summons on you** (not counting the day you received it), you must file with the Clerk of this Court a written answer to the Complaint or a motion under Arkansas Rule of Civil Procedure 12. The answer or motion must also be served on the Plaintiff whose name and address are:

Bradley Burchfield
5420 Kavanaugh Blvd #7927
Little Rock, AR 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

If you fail to respond within the time stated, judgment by default may be entered against you for the relief demanded in the Complaint.

Date: ___________________________

CLERK OF COURT

___________________________
Signature of Clerk or Deputy Clerk

Seal

Clerk's Office: Pulaski County Circuit Clerk, 401 West Markham, Suite 100, Little Rock, AR 72201

6

# PROOF OF SERVICE / RETURN

**Defendant:** Alibaba.com Singapore E-Commerce Pte. Limited
also known as Alibaba.com Singapore E-Commerce Private Limited
51 Bras Basah Road, #01-21
Lazada One
Singapore 189554
SINGAPORE

I received this summons on ________________________.

[ ] I personally served the summons and Complaint on the defendant at:

________________________________________________________________________

________________________________________________________________________

on ________________________.

[ ] I served the summons and Complaint on the registered agent or person authorized to accept service:

Name/title of person served: ____________________________________________

Address where served: __________________________________________________

Date served: ________________________

[ ] I served by certified/restricted/registered mail or other method allowed by law. Tracking/receipt number:

________________________________________________________________________

[ ] I was unable to serve because: ________________________________________

________________________________________________________________________

I declare under penalty of perjury that the foregoing is true and correct.

Date: ________________________

______________________________
Server's Signature

______________________________
Printed Name and Title

______________________________
Server's Address

| | |
|---|---|
| **Case Title:** | BRADLEY BURCHFIELD V ALIBABA GROUP HOLDING LIMITED |
| **Case Number:** | 60CV-26-8633 |
| **Type:** | SUMMONS - FILER PREPARED |

So Ordered

Christy McDaniel

THIS PAGE IS LEFT INTENTIONALLY BLANK

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**CIVIL DIVISION**

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

v.

Case No. ____________________

JURY TRIAL DEMANDED

Plaintiff,
ALIBABA GROUP HOLDING LIMITED, et al.,

Defendants.

# SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

**Alibaba.com U.S. LLC**
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

*SERVICE NOTE FROM FEDERAL ADDRESS PACKET: Verified Delaware registered-agent address.*

A lawsuit has been filed against you. The relief demanded is stated in the attached Complaint.

**Within 30 days after service of this summons on you** (not counting the day you received it), you must file with the Clerk of this Court a written answer to the Complaint or a motion under Arkansas Rule of Civil Procedure 12. The answer or motion must also be served on the Plaintiff whose name and address are:

Bradley Burchfield
5420 Kavanaugh Blvd #7927
Little Rock, AR 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

If you fail to respond within the time stated, judgment by default may be entered against you for the relief demanded in the Complaint.

Date: ____________________________

CLERK OF COURT

________________________________
Signature of Clerk or Deputy Clerk
Seal

Clerk's Office: Pulaski County Circuit Clerk, 401 West Markham, Suite 100, Little Rock, AR 72201

2

# PROOF OF SERVICE / RETURN

**Defendant:** Alibaba.com U.S. LLC
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

I received this summons on ________________________.

[ ] I personally served the summons and Complaint on the defendant at:

______________________________________________________________________

______________________________________________________________________

on ________________________.

[ ] I served the summons and Complaint on the registered agent or person authorized to accept service:

Name/title of person served: ____________________________________________

Address where served: _________________________________________________

Date served: ________________________

[ ] I served by certified/restricted/registered mail or other method allowed by law. Tracking/receipt number:

______________________________________________________________________

[ ] I was unable to serve because: ________________________________________

______________________________________________________________________

I declare under penalty of perjury that the foregoing is true and correct.

Date: ________________________

______________________________
Server's Signature

______________________________
Printed Name and Title

______________________________
Server's Address

| | |
|---|---|
| **Case Title:** | BRADLEY BURCHFIELD V ALIBABA GROUP HOLDING LIMITED |
| **Case Number:** | 60CV-26-8633 |
| **Type:** | SUMMONS - FILER PREPARED |

So Ordered

Christy R McDaniel

Christy McDaniel

THIS PAGE IS LEFT INTENTIONALLY BLANK

# IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## CIVIL DIVISION

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

v.

ALIBABA GROUP HOLDING LIMITED, et al.,

Defendants.

Case No. ____________________

JURY TRIAL DEMANDED

## SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

**Alibaba Group (U.S.) Inc.**
c/o Incorporating Services, Ltd.
3500 S Dupont Hwy
Dover, DE 19901

*SERVICE NOTE FROM FEDERAL ADDRESS PACKET: Verified Delaware registered-agent address.*

A lawsuit has been filed against you. The relief demanded is stated in the attached Complaint.

**Within 30 days after service of this summons on you** (not counting the day you received it), you must file with the Clerk of this Court a written answer to the Complaint or a motion under Arkansas Rule of Civil Procedure 12. The answer or motion must also be served on the Plaintiff whose name and address are:

Bradley Burchfield
5420 Kavanaugh Blvd #7927
Little Rock, AR 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

If you fail to respond within the time stated, judgment by default may be entered against you for the relief demanded in the Complaint.

Date: ___________________________

CLERK OF COURT

________________________________
Signature of Clerk or Deputy Clerk

Seal

Clerk's Office: Pulaski County Circuit Clerk, 401 West Markham, Suite 100, Little Rock, AR 72201

# PROOF OF SERVICE / RETURN

**Defendant:** Alibaba Group (U.S.) Inc.
c/o Incorporating Services, Ltd.
3500 S Dupont Hwy
Dover, DE 19901

I received this summons on ________________________.

[ ] I personally served the summons and Complaint on the defendant at:

______________________________________________________________________

______________________________________________________________________

on ________________________.

[ ] I served the summons and Complaint on the registered agent or person authorized to accept service:

Name/title of person served: ____________________________________________

Address where served: _________________________________________________

Date served: ________________________

[ ] I served by certified/restricted/registered mail or other method allowed by law. Tracking/receipt number:

______________________________________________________________________

[ ] I was unable to serve because: ________________________________________

______________________________________________________________________

I declare under penalty of perjury that the foregoing is true and correct.

Date: ________________________

______________________________
Server's Signature

______________________________
Printed Name and Title

______________________________
Server's Address

**Case Title:** BRADLEY BURCHFIELD V ALIBABA GROUP HOLDING LIMITED

**Case Number:** 60CV-26-8633

**Type:** SUMMONS - FILER PREPARED

So Ordered

Christy McDaniel

THIS PAGE IS LEFT INTENTIONALLY BLANK

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**

**CIVIL DIVISION**

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

v.

Case No. ________________

JURY TRIAL DEMANDED

Plaintiff,

ALIBABA GROUP HOLDING LIMITED, et al.,

Defendants.

# SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

**Zichang New Materials (Shandong) Co., Ltd.**
Room A2-907, Xinyuanxin Center
Huaxin Road
Jinan, Shandong
CHINA

*SERVICE NOTE FROM FEDERAL ADDRESS PACKET: Seller company address from Trade Assurance contract: confirm foreign service method.*

A lawsuit has been filed against you. The relief demanded is stated in the attached Complaint.

**Within 30 days after service of this summons on you** (not counting the day you received it), you must file with the Clerk of this Court a written answer to the Complaint or a motion under Arkansas Rule of Civil Procedure 12. The answer or motion must also be served on the Plaintiff whose name and address are:

Bradley Burchfield
5420 Kavanaugh Blvd #7927
Little Rock, AR 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

If you fail to respond within the time stated, judgment by default may be entered against you for the relief demanded in the Complaint.

Date: ________________________

CLERK OF COURT

______________________________
Signature of Clerk or Deputy Clerk

Seal

Clerk's Office: Pulaski County Circuit Clerk, 401 West Markham, Suite 100, Little Rock, AR 72201

# PROOF OF SERVICE / RETURN

**Defendant:** Zichang New Materials (Shandong) Co., Ltd.
Room A2-907, Xinyuanxin Center
Huaxin Road
Jinan, Shandong
CHINA

I received this summons on ________________________.

[ ] I personally served the summons and Complaint on the defendant at:

______________________________________________________________________________

______________________________________________________________________________

on ________________________.

[ ] I served the summons and Complaint on the registered agent or person authorized to accept service:

Name/title of person served: ______________________________________________

Address where served: ____________________________________________________

Date served: ________________________

[ ] I served by certified/restricted/registered mail or other method allowed by law. Tracking/receipt number:

______________________________________________________________________________

[ ] I was unable to serve because: ________________________________________

______________________________________________________________________________

I declare under penalty of perjury that the foregoing is true and correct.

Date: ________________________

______________________________
Server's Signature

______________________________
Printed Name and Title

______________________________
Server's Address

| | |
|---|---|
| **Case Title:** | BRADLEY BURCHFIELD V ALIBABA GROUP HOLDING LIMITED |
| **Case Number:** | 60CV-26-8633 |
| **Type:** | SUMMONS - FILER PREPARED |

So Ordered

Christy R McDaniel

Christy McDaniel

THIS PAGE IS LEFT INTENTIONALLY BLANK

# IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## CIVIL DIVISION

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

v.

ALIBABA GROUP HOLDING LIMITED, et al.,

Defendants.

Case No. ___________________

JURY TRIAL DEMANDED

## SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

**AUS Merchant Services, Inc.**
formerly known as Alipay U.S., Inc. and Alipay U.S. Escrow, Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange St
Wilmington, DE 19801

*SERVICE NOTE FROM FEDERAL ADDRESS PACKET: Verified Delaware registered-agent address.*

A lawsuit has been filed against you. The relief demanded is stated in the attached Complaint.

**Within 30 days after service of this summons on you** (not counting the day you received it), you must file with the Clerk of this Court a written answer to the Complaint or a motion under Arkansas Rule of Civil Procedure 12. The answer or motion must also be served on the Plaintiff whose name and address are:

Bradley Burchfield
5420 Kavanaugh Blvd #7927
Little Rock, AR 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

If you fail to respond within the time stated, judgment by default may be entered against you for the relief demanded in the Complaint.

Date: ___________________________

CLERK OF COURT

_________________________________
Signature of Clerk or Deputy Clerk

Seal

Clerk's Office: Pulaski County Circuit Clerk, 401 West Markham, Suite 100, Little Rock, AR 72201

4

# PROOF OF SERVICE / RETURN

**Defendant:** AUS Merchant Services, Inc.
formerly known as Alipay U.S., Inc. and Alipay U.S. Escrow, Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange St
Wilmington, DE 19801

I received this summons on ________________________.

[ ] I personally served the summons and Complaint on the defendant at:

________________________________________________________________________

________________________________________________________________________

on ________________________.

[ ] I served the summons and Complaint on the registered agent or person authorized to accept service:

Name/title of person served: ____________________________________________

Address where served: _________________________________________________

Date served: ________________________

[ ] I served by certified/restricted/registered mail or other method allowed by law. Tracking/receipt number:

________________________________________________________________________

[ ] I was unable to serve because: _________________________________________

________________________________________________________________________

I declare under penalty of perjury that the foregoing is true and correct.

Date: ________________________

______________________________
Server's Signature

______________________________
Printed Name and Title

______________________________
Server's Address

| | |
|---|---|
| **Case Title:** | BRADLEY BURCHFIELD V ALIBABA GROUP HOLDING LIMITED |
| **Case Number:** | 60CV-26-8633 |
| **Type:** | SUMMONS - FILER PREPARED |

So Ordered

Christy R McDaniel

Christy McDaniel

THIS PAGE IS LEFT INTENTIONALLY BLANK

THIS PAGE IS LEFT INTENTIONALLY BLANK

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## CIVIL DIVISION

BRADLEY BURCHFIELD, v. Case No. ____________________
individually and as
the direct purchaser/beneficial owner of JURY TRIAL DEMANDED
the subject claim,

Plaintiff,
ALIBABA GROUP HOLDING
LIMITED, et al.,

Defendants.

# SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

**Zhishang New Materials (Shandong) Co., Ltd.**
name, translation, beneficiary, affiliate, or account variation to be clarified
400 S El Camino Real
San Mateo, CA 94402

*SERVICE NOTE FROM FEDERAL ADDRESS PACKET: Beneficiary address from payment records; not verified as registered agent.*

A lawsuit has been filed against you. The relief demanded is stated in the attached Complaint.

**Within 30 days after service of this summons on you** (not counting the day you received it), you must file with the Clerk of this Court a written answer to the Complaint or a motion under Arkansas Rule of Civil Procedure 12. The answer or motion must also be served on the Plaintiff whose name and address are:

Bradley Burchfield
5420 Kavanaugh Blvd #7927
Little Rock, AR 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

If you fail to respond within the time stated, judgment by default may be entered against you for the relief demanded in the Complaint.

Date: ________________________ CLERK OF COURT

______________________________
Signature of Clerk or Deputy Clerk
Seal

Clerk's Office: Pulaski County Circuit Clerk, 401 West Markham, Suite 100, Little Rock, AR 72201

# PROOF OF SERVICE / RETURN

**Defendant:** Zhishang New Materials (Shandong) Co., Ltd.
name, translation, beneficiary, affiliate, or account variation to be clarified
400 S El Camino Real
San Mateo, CA 94402

I received this summons on ______________________.

[ ] I personally served the summons and Complaint on the defendant at:

______________________________________________________________

______________________________________________________________

on ______________________.

[ ] I served the summons and Complaint on the registered agent or person authorized to accept service:

Name/title of person served: ________________________________________

Address where served: ____________________________________________

Date served: ________________________

[ ] I served by certified/restricted/registered mail or other method allowed by law. Tracking/receipt number:

______________________________________________________________

[ ] I was unable to serve because: ____________________________________

______________________________________________________________

I declare under penalty of perjury that the foregoing is true and correct.

Date: ________________________

______________________________
Server's Signature

______________________________
Printed Name and Title

______________________________
Server's Address

| | |
|---|---|
| **Case Title:** | BRADLEY BURCHFIELD V ALIBABA GROUP HOLDING LIMITED |
| **Case Number:** | 60CV-26-8633 |
| **Type:** | SUMMONS - FILER PREPARED |

So Ordered

Christy R McDaniel

Christy McDaniel

THIS PAGE IS LEFT INTENTIONALLY BLANK

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2026-Jul-22 12:27:20
60CV-26-8633
C06D03 : 2 Pages

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**CIVIL DIVISION**

**BRADLEY BURCHFIELD** **PLAINTIFF**

**CASE NO.** 60CV-26-8633

v.

**ALIBABA GROUP HOLDING LIMITED, et al.** **DEFENDANTS**

# PLAINTIFF'S NOTICE OF FILING TRANSFERRED DISTRICT-COURT RECORD AND PRESERVATION OF OBJECTIONS

Plaintiff gives notice of the following procedural history and requests that the attached materials be included in the circuit-court record:

1. The proof of service reflecting service on Alibaba.com US E-Commerce Corp. in the district-court action;
2. The answer filed by Alibaba.com US E-Commerce Corp. on July 9, 2026 and its attachment denying liability, disputing personal jurisdiction, identifying Zichang as the allegedly responsible seller, disputing Plaintiff's status as proper party, and objecting to alter-ego theories;
3. The Order of Transfer entered July 16, 2026;
4. The district-court docket sheet showing the filing sequence;
5. Plaintiff's July 17, 2026 objection to the allegedly untimely and unserved answer, renewed request for default, and limited-purpose notice of refund or settlement communications; and
6. Any proposed default order or related filing pending when transfer was processed.

Plaintiff does not ask this Notice alone to decide default. He asks the Court to preserve the service date, deadline calculation, nonservice objection, answer, and related procedural positions so their effect can be decided on a complete record. Plaintiff further requests that transfer not be treated as a waiver of those objections or as an admission that the July 9 answer was timely in district court.

Plaintiff also identifies the separately filed circuit action as related. Certain defendants in that action have been served, as shown by returned certified-mail receipts, but no defendant has appeared there as of this filing. Plaintiff requests coordination or consolidation under Rule 42.

Respectfully submitted,

[signature] 7/22/26

**Bradley Burchfield, Plaintiff Pro Se**
5420 Kavanaugh Blvd #7927
Little Rock, Arkansas 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

Date: 7/22/26, 2026

**CERTIFICATE OF SERVICE**

I certify that on 7/22/26, 2026, I served a true and correct copy of the foregoing on every defendant that had been validly served in the applicable action, at the address shown on that defendant's proof of service, and on all counsel of record, if any, by a method permitted under Arkansas Rule of Civil Procedure 5. Returned certified-mail receipts establish service; they do not by themselves constitute an appearance. No representation is made that this certificate constitutes original service of process on an unserved defendant.

Bradley Burchfield

**Bradley Burchfield, Plaintiff/Pro Se**
5420 Kavanaugh Blvd #7927
Little Rock, Arkansas 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

THIS PAGE IS LEFT INTENTIONALLY BLANK

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2026-Jul-22 12:27:20
60CV-26-8633
C06D03 : 4 Pages

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**CIVIL DIVISION**

**BRADLEY BURCHFIELD** **PLAINTIFF**

v. **CASE NO. 60CV-26-8633**

**ALIBABA GROUP HOLDING LIMITED, et al.** **DEFENDANTS**

**PLAINTIFF'S MOTION FOR LIMITED CORPORATE-STRUCTURE, JURISDICTIONAL, AGENCY, ALTER-EGO, SELLER-VERIFICATION, TRADE ASSURANCE, PAYMENT, AND ACTUAL-CONTROL DISCOVERY AND TO DEFER RELATED DEFENSES**

Plaintiff moves under Arkansas Rules of Civil Procedure 26, 30(b)(6), 33, 34, 36, and 42 for a limited discovery period directed to facts uniquely within Defendants' possession and necessary to determine personal jurisdiction, the proper Alibaba entity or entities, agency, apparent authority, Trade Assurance responsibility, seller verification, payment routing, successor or related entities, actual governance and control rights, and whether any corporate form was used to evade contractual or legal obligations.

**FACTS ESTABLISHING THE NEED FOR TARGETED DISCOVERY**

1. Alibaba.com US E-Commerce Corp. answered the small-claims complaint by denying participation and attributing any non-delivery to Zichang or other entities. The answer did not identify the specific Alibaba legal entity that operated the relevant platform functions, administered Trade Assurance, controlled the seller account, possessed the order records, or had authority to offer a refund or platform credit.

2. The June 29, 2026 Alibaba Non-Prosecution Agreement identifies the International Commerce Business Unit, or ICBU, as the business unit operating Alibaba.com and identifies Alibaba.com Singapore E-Commerce Pte. Limited, Alibaba.com U.S. LLC, and Alibaba.com U.S. e-Commerce Corp. as entities housing that unit.

3. The NPA Statement of Facts describes ICBU's marketplace operation, Gold and Verified supplier programs, Trade Assurance payment service through April 2021, seller policies and enforcement, private messaging and quotation systems, and transaction-related revenue. Plaintiff's contract dated June 1, 2021 bears Trade Assurance branding. Discovery is needed to identify the responsible entity during the transition period and on the contract date.

4. Alibaba customer service later reviewed or claimed to review the same order, discussed logistics and customer-service records, escalated the matter, and offered a $500 Alibaba credit. Those acts support targeted discovery into platform control, record custody, agency, and settlement authority. Plaintiff offers the communications for notice, control, and discovery relevance, not as compromise evidence proving liability or damages.

5. The AUS Non-Prosecution Agreement states that AUS and affiliates provided payment processing and settlement services enabling overseas Alibaba.com sellers to accept U.S.-dollar payments from U.S. buyers, received merchant and buyer identities and sale-order descriptions, accepted

funds into U.S. bank accounts, and associated payments with overseas merchants through unique routable beneficiary identifiers.

6. Plaintiff has not been able to verify from public information the current legal existence, owners, officers, capitalization, successor status, or operating assets of Zichang. Those facts are central because the responding Alibaba defendant affirmatively attributes responsibility to Zichang.

7. No defendant has appeared in the separately filed circuit action as of this filing. Certain defendants have been served, as demonstrated by returned certified-mail receipts. The requested discovery may be served on a particular defendant only after valid service or voluntary appearance.

## NARROW HISTORICAL CONTEXT SUPPORTING VERIFICATION DISCOVERY

8. Public federal enforcement materials concerning Li Fangwei, also known as Karl Lee, describe the alleged use of multiple China-based companies, variants of company names and addresses, and U.S.-dollar transactions to conceal the responsible commercial actor. Project Alpha reported in 2014 that Sinotech (Dalian) Carbon & Graphite Manufacturing Corporation, identified by the United States as part of that network, continued to appear as an Alibaba-verified Gold Supplier after public designation. Plaintiff does not allege that Zichang or any present Defendant is affiliated with Li Fangwei. The historical example is offered only to explain why underlying seller-verification, beneficial-ownership, related-account, address, bank-beneficiary, and name-change records are relevant.

## PUBLIC OWNERSHIP RESEARCH NARROWS THE REQUESTED DISCOVERY

9. Alibaba Group Holding Limited's 2026 Form 20-F and Exhibit 8.1 publicly identify relevant subsidiaries and consolidated entities, including Alibaba.com Singapore E-Commerce Private Limited and Alibaba Group (U.S.) Inc. Alibaba's March 31, 2026 Form 13F reports Weibo and XPeng and does not report GEO Group or CoreCivic. BlackRock's separate reported positions in Alibaba, GEO Group, and CoreCivic reflect common outside investment management, not operational control by Alibaba or a correctional company.

10. Plaintiff therefore does not seek private-prison investment discovery and does not offer common institutional ownership as proof of alter ego, conspiracy, or crime of pecuniary gain. Ownership discovery is limited to actual beneficial ownership and actual board-designation, veto, contractual, management, data-access, compliance, payment, or operational control rights. Any pecuniary-gain issue should turn on alleged transaction-related value received in connection with unlawful conduct, not lawful securities ownership.

## REQUESTED LIMITED SUBJECTS

11. the entity or entities that operated or housed ICBU, Alibaba.com, Trade Assurance, seller verification, customer service, dispute resolution, compliance, payment, refund or credit authority, and record custody during 2020 through 2022;

12. the ownership chain, intercompany agreements, shared services, officers, employees, databases, domains, and actual control rights among the named Alibaba entities;

13. any outside investor or other person possessing actual board-appointment, veto, consent, management, compliance, payment, or operational-control rights over a named Defendant, while excluding passive investment holdings lacking such rights;

14. Zichang's formation, current status, beneficial ownership, officers, capitalization, operating address, seller account, account administrators, verification records, related accounts, name changes, successor entities, bank beneficiaries, devices, IP addresses, and compliance history;
15. Order No. 91906090501027582, including contract, payment, fees, shipment, logistics, dispute, refund, credit, customer-service, and audit-log records;
16. the entity and person that reviewed the order, communicated with Plaintiff, and authorized or funded the offered $500 credit;
17. payment processing, merchant identification, beneficiary routing, fees, settlement, refund, chargeback, and transaction records;
18. the factual basis for personal-jurisdiction, nonparticipation, corporate-separateness, proper-party, agency, apparent-authority, and alter-ego defenses;
19. the identity of persons or entities responsible for each disputed platform function and any indemnity, insurance, defense, reimbursement, or allocation agreement; and
20. preservation, retention, migration, deletion, and present custody of responsive information.

**REQUESTED PROCEDURE**

1. Enter a 120-day limited discovery period beginning on the date of the Court's order;
2. Permit interrogatories, requests for production, requests for admission, and organizational depositions limited to the subjects identified above;
3. Require reasonable preservation of relevant electronically stored information and seller-account, payment, order, customer-service, corporate, and compliance records;
4. Defer disposition of personal-jurisdiction, corporate-separateness, agency, alter-ego, and proper-party defenses until the limited period closes and the parties have an opportunity to supplement their submissions;
5. Conduct a status conference after the limited period to determine additional discovery, amendment, dismissal of unrelated entities, or dispositive-motion scheduling; and
6. Grant such other relief as is just.

Respectfully submitted,

Bradley Burchfield

**Bradley Burchfield, Plaintiff Pro Se**
5420 Kavanaugh Blvd #7927
Little Rock, Arkansas 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

Date: 7/22/26, 2026

**CERTIFICATE OF SERVICE**

I certify that on 7/22/26, 2026, I served a true and correct copy of the foregoing on every defendant that had been validly served in the applicable action, at the address shown on that

defendant's proof of service, and on all counsel of record, if any, by a method permitted under Arkansas Rule of Civil Procedure 5. Returned certified-mail receipts establish service; they do not by themselves constitute an appearance. No representation is made that this certificate constitutes original service of process on an unserved defendant.

**Bradley Burchfield, Plaintiff Pro Se**
5420 Kavanaugh Blvd #7927
Little Rock, Arkansas 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

THIS PAGE IS LEFT
INTENTIONALLY BLANK

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2026-Jul-22 12:27:20
60CV-26-8633
C06D03 : 33 Pages

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**CIVIL DIVISION**

**BRADLEY BURCHFIELD** **PLAINTIFF**

**CASE NO.** 60CV-26-8633

v.

**ALIBABA GROUP HOLDING LIMITED, et al.** **DEFENDANTS**

## PLAINTIFF'S NOTICE OF RELATED ACTIONS AND MOTION TO CONSOLIDATE, DESIGNATE LEAD CASE, PRESERVE THE TRANSFERRED RECORD, AND ESTABLISH A SINGLE OPERATIVE PLEADING

Plaintiff Bradley Burchfield respectfully gives notice that two Pulaski County Circuit Court actions now arise from the same Alibaba.com Trade Assurance transaction and moves under Arkansas Rule of Civil Procedure 42(a) to consolidate the actions for all purposes, or at minimum for case management, jurisdictional discovery, entity discovery, and pretrial proceedings.

### BACKGROUND

1. Plaintiff originally filed Pulaski County District Court, Small Claims Division Case No. PCSC-26-189 concerning Alibaba.com Trade Assurance Order No. 91906090501027582 and naming Alibaba.com Singapore E-Commerce Private Limited, Alibaba.com US E-Commerce Corp., Alibaba Group Holding Limited, and Zichang New Materials (Shandong) Co., Ltd.

2. Alibaba.com US E-Commerce Corp. was served in that action and filed an answer on July 9, 2026 denying liability, disputing personal jurisdiction, identifying Zichang as the allegedly responsible seller, disputing Plaintiff's status as the proper party, and objecting to alter-ego and veil-piercing theories.

3. The district court entered an Order of Transfer on July 16, 2026. Plaintiff filed an objection to the allegedly untimely and unserved answer and renewed request for default on July 17, 2026. Plaintiff asks that those papers and objections remain part of the transferred record without requesting that this motion itself decide default.

4. Plaintiff separately filed a broader Pulaski County Circuit Court action concerning the same order, payment, Trade Assurance representations, seller account, customer-service response, payment participants, alleged non-delivery, and related communications. The broader action names additional Alibaba, payment-processing, seller, affiliate, and Doe defendants and asserts broader Arkansas claims and equitable theories.

5. Certain defendants in the separately filed circuit action have been served, as shown by returned certified-mail receipts. As of the filing of this motion, no defendant has filed an answer, Rule 12 motion, notice of appearance, or other responsive filing in that action. The returned receipts establish service; they are not appearances.

6. The two cases share the same transaction, witnesses, documents, Trade Assurance records, customer-service records, seller-verification records, payment records, and questions concerning which Alibaba-related entity controlled or administered the order and seller relationship.

7. Plaintiff does not rely on a theory that Alibaba or its owners invested in private-prison companies. Public filings reviewed as of July 21, 2026 identify no direct Alibaba holding in GEO Group or CoreCivic; a shared outside institutional investor such as BlackRock does not establish alter ego, conspiracy, operational control, or criminal pecuniary gain. Consolidation is requested because the cases arise from the same transaction and overlapping parties and evidence.

**GROUNDS FOR CONSOLIDATION**

1. Rule 42(a) permits consolidation where actions involve common questions of law or fact and authorizes orders designed to avoid unnecessary costs or delay.
2. Consolidation will prevent inconsistent rulings concerning service, personal jurisdiction, the identity of the proper Alibaba entity, the seller's status, Trade Assurance, the effect of the July 9 answer, and the scope of permissible discovery.
3. Consolidation will not erase the transferred record, alter the parties' substantive rights, or establish liability. Plaintiff asks the Court to preserve the filing and service history of each case and determine their effect in one coordinated proceeding.
4. The separately filed circuit action contains the broader party structure and claims. It should be designated the lead case, with the transferred record incorporated and a single consolidated amended complaint established as the operative pleading after filing.
5. If complete consolidation is denied, the Court should coordinate the cases for jurisdictional, corporate-structure, seller-verification, payment, and alter-ego discovery and stay duplicative deadlines to prevent conflicting rulings.

**REQUESTED RELIEF**

1. Consolidate the two actions under Rule 42(a), with the separately filed broader circuit action designated as the lead case;
2. Direct the clerk to associate the complete PCSC-26-189 record with the lead case while preserving the original filing, service, answer, objection, and transfer dates;
3. Establish a single operative pleading after Plaintiff files a clean consolidated amended complaint under the lead case number;
4. Preserve, without presently deciding, Plaintiff's objection to the timeliness and service of Alibaba.com US E-Commerce Corp.'s district-court answer and Defendant's defenses to that objection;
5. Preserve prior valid service to the extent provided by law, while requiring proper Rule 4 service on defendants not previously served;
6. Coordinate response deadlines, discovery, motions, and trial settings in one case; and
7. Grant any other relief necessary to prevent duplication, inconsistent rulings, or prejudice.

Respectfully submitted,

Bradley Burchfield 7/22/26

**Bradley Burchfield, Plaintiff Pro Se**
5420 Kavanaugh Blvd #7927

Little Rock, Arkansas 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

Date: 7/22/26, 2026

**CERTIFICATE OF SERVICE**

I certify that on 7/22/26, 2026, I served a true and correct copy of the foregoing on every defendant that had been validly served in the applicable action, at the address shown on that defendant's proof of service, and on all counsel of record, if any, by a method permitted under Arkansas Rule of Civil Procedure 5. Returned certified-mail receipts establish service; they do not by themselves constitute an appearance. No representation is made that this certificate constitutes original service of process on an unserved defendant.

Bradley Burchfield

**Bradley Burchfield, Plaintiff Pro Se**
5420 Kavanaugh Blvd #7927
Little Rock, Arkansas 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**CIVIL DIVISION**

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

v.

ALIBABA GROUP HOLDING LIMITED;
ALIBABA.COM SINGAPORE E-COMMERCE PTE. LIMITED, also known as ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED;
ALIBABA.COM U.S. LLC;
ALIBABA.COM U.S. E-COMMERCE CORP., also known as ALIBABA.COM US E-COMMERCE CORP.;
ALIBABA GROUP (U.S.) INC.;
ALIEXPRESS E-COMMERCE ONE PTE. LTD.;
AUS MERCHANT SERVICES, INC., formerly known as ALIPAY U.S., INC. and ALIPAY U.S. ESCROW, INC.;
ZICHANG NEW MATERIALS (SHANDONG) CO., LTD.;
ZHISHANG NEW MATERIALS (SHANDONG) CO., LTD. (name, translation, beneficiary, affiliate, or account variation to be clarified);
SHAANXI BLOOM TECH CO., LTD.;
JOHN DOE ALIBABA PLATFORM, PAYMENT, OWNER, OPERATOR, PARENT, SUBSIDIARY, AFFILIATE, AGENT, BUSINESS-PARTNER, COMPLIANCE, PAYMENT-ROUTING, OR ALTER-EGO ENTITIES 1-10; and
JOHN DOE SELLER/MERCHANT ACCOUNT OPERATORS, SALES AGENTS, PAYMENT BENEFICIARIES, PAYMENT PROCESSORS, PAYMENT-ROUTING PARTICIPANTS, CHEMICAL-PRODUCT SOLICITORS, IMPORT/SHIPMENT PARTICIPANTS, AND CO-CONSPIRATORS 1-20,

**Lead Case No.** **60CV-26-8633**

**Consolidated With:**

**Case No.**

**FOR TRANSFERRED PCSC-26-189**

**(from PCSC-26-189)**

**JURY TRIAL DEMANDED**

Defendants.

**PROPOSED CONSOLIDATED FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, FRAUD, ARKANSAS DECEPTIVE TRADE PRACTICES, ARKANSAS CIVIL ACTION BY CRIME VICTIM / CRIMINAL ENTERPRISE PREDICATE CONDUCT, UNJUST ENRICHMENT, MONEY HAD AND RECEIVED, CIVIL CONSPIRACY, ALTER-EGO / AGENCY RELIEF, ACCOUNTING, AND RELATED RELIEF**

**Plaintiff seeks monetary relief exceeding the jurisdictional limits of small claims and district civil court, in an amount to be determined by the jury and up to the highest amount proven and permitted by Arkansas law.**

Plaintiff Bradley Burchfield, appearing pro se only as to his own individual claims and not purporting to represent any separate limited liability company unless counsel appears for that entity, files this Complaint and alleges as follows based on personal knowledge as to his own actions and records and on information and belief as to Defendants' internal acts, agency relationships, account records, payment routing, communications, and platform records:

## I. NATURE OF THE ACTION

1. This is an Arkansas civil action arising from Alibaba.com Trade Assurance Order No. 919060905010 27582, dated on or about June 1, 2021, involving a chemical product identified in the contract records as factory N-Isopropylbenzylamine, CAS 102-97-6, and related marketplace, seller, payment, customer-service, dispute-resolution, and post-order communications.
2. Plaintiff alleges that Defendants and related John Doe participants used Alibaba.com marketplace systems, Trade Assurance representations, seller accounts, sales-agent communications, payment channels, platform records, and customer-service/dispute-resolution systems to induce Plaintiff to pay money for goods while failing to deliver the contracted goods, failing to honor Trade Assurance remedies, concealing or denying material records, and using coercive or misleading communications to discourage complaints, reports, or refund demands.
3. Plaintiff pleads in the alternative. Plaintiff alleges first that the contracted goods were not delivered as promised. To the extent any Defendant contends that any goods were

delivered, Plaintiff alternatively alleges that the goods were not as represented, were not fit for the lawful commercial, industrial, rust-inhibitor, or similar represented use, and did not satisfy the contract, advertising, seller representations, or Trade Assurance promises.

4. Plaintiff does not admit any unlawful purpose for any purchase. Plaintiff alleges that the product was represented and sold to him as a lawful commercial or industrial product and/or rust-inhibitor product. Plaintiff seeks relief for injury to his money, property, business, and related property interests arising from alleged deception, non-delivery, failed dispute resolution, wrongful retention of money, and related conduct.

5. This Complaint is intended for filing in the Circuit Court of Pulaski County, Arkansas, Civil Division. It is separate from Plaintiff's pending or filed federal civil RICO action in the United States District Court for the Eastern District of Arkansas, Case No. 4:26-cv-00611-DPM. The federal case and this state case involve overlapping facts, documents, defendants, and exhibits, but this state pleading asserts Arkansas statutory, common-law, equitable, and state racketeering-type claims.

6. This pleading is proposed as the single operative state-court complaint after consolidation of the separately filed Pulaski County Circuit Court action and the action transferred from Pulaski County District Court Small Claims Case No. PCSC-26-189. Certain defendants in the separately filed circuit action have been served, as shown by returned certified-mail receipts, but no defendant has filed an answer, Rule 12 motion, notice of appearance, or other responsive filing in that action as of the date of this pleading. The returned receipts establish service only and are not appearances. Plaintiff requests preservation of the filing and service history of both actions and does not seek duplicative recovery.

## II. PARTIES

7. Plaintiff Bradley Burchfield is an Arkansas resident. Plaintiff alleges that he paid for, controlled, or beneficially owned the claim arising from Alibaba.com Order No. 91906090501027582 and suffered direct injury to his money, property, business, use of funds, expected goods, and related property interests. To the extent the Court determines that Burchfield Sales and Consulting LLC is the real party in interest for any portion of the claim, Plaintiff requests leave for ratification, joinder, substitution, or appearance of counsel for the LLC rather than dismissal on that technical ground.

8. Defendant Alibaba Group Holding Limited is alleged to be the parent, affiliate, controlling entity, and/or alter ego of relevant Alibaba platform operations. The Alibaba Non-

Prosecution Agreement identifies Alibaba Group Holding Limited as an exempted Cayman Islands company whose ADSs are listed on the New York Stock Exchange and identifies subsidiaries, officers, directors, employees, and agents acting within the scope of employment or agency relationships as included within the term "Alibaba." Plaintiff does not sue Alibaba Group merely because it is a parent, publicly traded issuer, or subject to passive institutional investment. Plaintiff sues based on alleged operational control, participation, benefit, agency, platform control, payment infrastructure, policy control, and discovery facts to be proven.

9. Defendant Alibaba.com Singapore E-Commerce Pte. Limited, also known in Plaintiff's records as Alibaba.com Singapore E-Commerce Private Limited, is identified by Plaintiff's transaction records as the marketplace operator connected to Order No. 91906090501027582. The Alibaba Non-Prosecution Agreement also identifies Alibaba.com Singapore E-Commerce Pte. Limited as a Singapore-based subsidiary and as a legal entity housing Alibaba's International Commerce Business Unit, which operates Alibaba.com. Plaintiff alleges this entity operated, managed, controlled, or materially participated in the Alibaba.com marketplace, Trade Assurance contracting system, seller support, order records, customer-service functions, and dispute-resolution process relevant to this case.

10. Defendant Alibaba.com U.S. LLC is identified in the Alibaba Non-Prosecution Agreement as a Delaware company and as a legal entity that housed Alibaba's International Commerce Business Unit, which operates Alibaba.com. Plaintiff alleges this entity was involved in, benefitted from, administered, monitored, or supported United States-facing Alibaba.com marketplace operations, seller support, buyer support, payment, compliance, customer-service, or records functions. Its precise role is within Defendants' control and requires discovery.

11. Defendant Alibaba.com U.S. e-Commerce Corp., also known in Plaintiff's filings as Alibaba.com US E-Commerce Corp., is identified in the Alibaba Non-Prosecution Agreement as a legal entity that housed Alibaba's International Commerce Business Unit, which operates Alibaba.com. Plaintiff's small-claims service materials also treated Alibaba.com US E-Commerce Corp. as a proper Alibaba.com United States entity. Plaintiff alleges this entity was involved in, benefitted from, or provided United States-facing marketplace, seller-support, buyer-support, payment, record, compliance, or dispute-resolution functions.

12. Defendant Alibaba Group (U.S.) Inc. is identified in the Alibaba Non-Prosecution Agreement as a Delaware company and subsidiary of Alibaba Group Holding Limited. Plaintiff alleges this entity may have participated in United States-facing Alibaba platform operations, compliance, payment, records, support, or agency functions relevant to United States buyers and requires discovery into its relationship to Alibaba.com, Trade Assurance, AUS Merchant Services, and Order No. 91906090501027582.

13. Defendant AliExpress E-Commerce One Pte. Ltd. is identified in the Alibaba Non-Prosecution Agreement as a Singapore-based subsidiary of Alibaba Group Holding Limited and as a legal entity housing the AliExpress platform. Plaintiff's transaction was through Alibaba.com, not AliExpress.com. Plaintiff names this entity because the Non-Prosecution Agreement describes Alibaba Platforms and cross-platform compliance, subject-merchandise, payment, and policy failures involving Alibaba.com and AliExpress, and because discovery is needed to determine whether any shared policies, compliance controls, payment flows, seller records, or platform agents affected the transaction at issue. If discovery shows that this entity had no role, Plaintiff will amend or dismiss it as appropriate.

14. Defendant AUS Merchant Services, Inc., formerly known as Alipay U.S., Inc. and Alipay U.S. Escrow, Inc., is identified in the AUS Non-Prosecution Agreement as a Delaware company with its principal place of business at 525 Almanor Avenue, Sunnyvale, California 94085. The AUS Non-Prosecution Agreement states that AUS offered payment processing and settlement services to Alibaba-owned e-commerce platforms, including Alibaba.com, and processed United States dollar payments on behalf of overseas merchants selling to United States-based buyers. Plaintiff alleges on information and belief that AUS, Alipay, or a related payment entity may have processed, screened, retained, monitored, or possessed records concerning Plaintiff's Alibaba.com payment or related seller/beneficiary payment flow. Its precise relationship to Plaintiff's payment must be determined through discovery.

15. Defendant Zichang New Materials (Shandong) Co., Ltd. is identified in the Trade Assurance Purchase Contract as the seller for Alibaba.com Order No. 91906090501027582. Plaintiff alleges this seller or its agents represented the goods, induced the order, accepted or benefited from the transaction, communicated through Alibaba.com or related channels, and failed to deliver the contracted goods or provide a refund. Plaintiff states that each supplier, including

this one, listed on the Alibaba site, advertised a supply rate of 20 metric tons per month each for CAS # 102-97-6.

16. Defendant Zhishang New Materials (Shandong) Co., Ltd. is identified in uploaded payment records as a beneficiary associated with a domestic wire transfer account or payment instructions. Plaintiff alleges that Zichang and Zhishang may be a spelling, translation, beneficiary, account, affiliate, or alter-ego variation related to the seller and seeks discovery to determine the correct legal identity and payment beneficiary. Plaintiff states that each supplier, including this one, listed on the Alibaba site, advertised a supply rate of 20 metric tons per month each for CAS # 102-97-6.

17. Defendant Shaanxi Bloom Tech Co., Ltd. is identified in uploaded payment records and in the bloomtechz.com email evidence. Plaintiff alleges that this entity, sales@bloomtechz.com, Aurora Song, and/or related agents participated in chemical-product solicitations, direct WhatsApp/WeChat communications, payment routing, buyer communications, post-order communications, concealment, or related enterprise conduct. Plaintiff states that each supplier, including this one, listed on the Alibaba site, advertised a supply rate of 20 metric tons per month each for CAS # 102-97-6.

18. The John Doe Alibaba Platform owner, operator, parent, subsidiary, affiliate, agent, payment, compliance, business-partner, payment-routing, or alter-ego entities 1-10 are presently unknown entities that owned, operated, controlled, administered, profited from, provided payment or compliance services to, or exercised authority over Alibaba.com, Trade Assurance, seller accounts, buyer communications, payment records, customer-service responses, dispute records, platform-level compliance functions, or related post-order communications relevant to Plaintiff's transaction. These Doe Defendants include, without limitation, any Alibaba-related entity, affiliate, business unit, agent, service provider, payment participant, compliance participant, or alter-ego entity that operated or controlled seller or merchant accounts; communicated with Plaintiff; issued or participated in chemical-product solicitations; used WhatsApp, WeChat, email, Alibaba.com messaging, or other channels to solicit or discuss N-Isopropylbenzylamine or related chemicals; represented product properties or legality; routed or received funds; controlled beneficiary accounts; participated in the alleged non-delivery or misrepresentation; or assisted in concealing, discouraging, threatening, or obstructing complaints concerning Order No. 91906090501027582 and related post-order communications, including the January 9, 2022 email from sales@bloomtechz.com titled "Details N-Isopropylbenzylamine."

19. The John Doe seller account operators, sales agents, payment beneficiaries, payment processors, payment-routing participants, chemical-product solicitors, import/shipment participants, and co-conspirators 1-20 are presently unknown individuals or entities that used seller accounts, email addresses, payment channels, beneficiary accounts, direct communications, WhatsApp, WeChat, Alibaba.com messaging, or other means to solicit, process, conceal, route, retain payment, retain records, or obstruct complaints connected to Plaintiff's order and related chemical-product communications. For purposes of this Complaint, the term "related communications" includes, without limitation, Alibaba.com platform messages, Trade Assurance communications, seller or sales-agent emails, payment instructions, WhatsApp or WeChat solicitations, customer-service responses, dispute-resolution communications, and the January 9, 2022 email from sales@bloomtechz.com titled "Details N-Isopropylbenzylamine."

20. At all relevant times, each Defendant acted personally, through agents, through affiliated accounts, through apparent authority, through alter egos, through business partners, through payment-routing participants, or through a joint or association-in-fact enterprise, and each Defendant is liable for its own acts and for acts of agents, alter egos, co-conspirators, or joint enterprise participants where proven.

## III. JURISDICTION, VENUE, AND SERVICE

21. This Court has subject-matter jurisdiction because the Circuit Court of Pulaski County, Arkansas, is a court of general jurisdiction for civil actions and because Plaintiff seeks damages exceeding the jurisdictional limits of Arkansas small claims and district civil court.

22. Arkansas state district courts have civil jurisdiction only up to the monetary limits set by Arkansas law and court structure, and small-claims jurisdiction is lower. Plaintiff seeks damages exceeding those limits and therefore seeks adjudication in Pulaski County Circuit Court, Civil Division.

23. Venue is proper in Pulaski County because Plaintiff resides in Pulaski County; Plaintiff received marketplace, seller, payment, and customer-service communications in Arkansas; Plaintiff suffered injury to money, property, business, and related interests in Arkansas; and Defendants purposefully directed e-commerce, payment, customer-service, and dispute-resolution activity toward Plaintiff in Arkansas and/or the United States.

24. Personal jurisdiction exists to the fullest extent permitted by Arkansas law and due process because Defendants and their agents used an interactive marketplace to solicit or process orders from Arkansas, accepted or processed payment from an Arkansas resident, used United States payment channels and United States-facing Alibaba.com operations, sent or received electronic communications connected to Arkansas, and caused injury in Arkansas.
25. To the extent this case is transferred from District Court or Small Claims Division, Plaintiff requests that the filing date of the original state action be preserved to the fullest extent permitted by Arkansas law, and that the pleadings, exhibits, docket sheet, service papers, and related filings be transferred to the Circuit Court of Pulaski County, Arkansas, Civil Division.
26. Plaintiff will serve each Defendant according to Arkansas Rule of Civil Procedure 4, applicable statutes, treaty procedures, waiver, authorized registered agent, or court order. Plaintiff does not contend that counsel identified in any Non-Prosecution Agreement represents any Defendant in this state civil action unless counsel appears or expressly agrees in writing to accept service.

## IV. FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### A. The Trade Assurance Transaction

27. On or about June 1, 2021, Plaintiff entered into an Alibaba.com Trade Assurance Purchase Contract for Order No. 91906090501027582. The contract records identify the seller as Zichang New Materials (Shandong) Co., Ltd., and identify the buyer/contact as Burchfield Sales and Consulting LLC / Bradley Burchfield. The product was identified as factory N-Isopropylbenzylamine, CAS 102-97-6.
28. The contract identifies a 1.00 kilogram quantity, a unit price around $615.00, shipping charges around $50.00, insurance charges around $50.00, and a total contract amount around $715.00. Plaintiff alleges that he paid approximately $736.38 in connection with the order, including any platform, payment, tax, insurance, shipping, transaction, or related charges reflected in his records.
29. Plaintiff alleges that he relied on Alibaba.com marketplace structure, Trade Assurance branding, seller verification or platform presentation, order records, buyer/seller records, and dispute-resolution representations in making payment.
30. Plaintiff alleges the goods were not delivered as promised and that Defendants failed to provide a timely refund, meaningful Trade Assurance remedy, or accurate logistics/dispute

records. Alternatively, if any goods are alleged to have been delivered, Plaintiff alleges they were not as represented or fit for the represented lawful commercial use.

31. Plaintiff alleges that the transaction was not presented as an offline transaction with an unrelated stranger. It was presented through the unified Alibaba.com marketplace, Alibaba.com branding, Alibaba.com order system, Trade Assurance framework, customer-service channels, and dispute-resolution process.

**B. Marketplace, Seller, Payment, and Bank Communications**

32. Plaintiff's uploaded Alibaba message record shows a communication from a seller account identified as Sweety Yin stating that, due to Alibaba monitoring, orders over $5,000 must be delivered to Alibaba for transportation, that the seller sent a pro forma invoice for a 1,000 kg order, and that payment could be made by bank. Plaintiff alleges that this communication shows the use of Alibaba.com platform messages, seller-agent accounts, Alibaba monitoring representations, and bank-payment routing in the same general course of chemical-product sales.

33. Plaintiff's uploaded payment records identify United States domestic wire-transfer account information for Shaanxi Bloom Tech Co., Ltd. through Citibank N.A., New York Branch, with a beneficiary address in San Mateo, California. For public filing, Plaintiff identifies the account only by beneficiary name and account ending 8500 unless the Court permits or requires an unredacted filing under seal.

34. Plaintiff's uploaded payment records also identify United States domestic wire-transfer account information for Zhishang New Materials (Shandong) Co., Ltd. through Citibank N.A., New York Branch, with a beneficiary address in San Mateo, California. For public filing, Plaintiff identifies the account only by beneficiary name and account ending 3443 unless the Court permits or requires an unredacted filing under seal.

35. Plaintiff alleges that these bank records are material because they show that foreign seller or affiliate entities used United States banking channels, United States addresses, and United States wire-transfer infrastructure in connection with the same marketplace or seller network at issue.

36. Plaintiff alleges on information and belief that Defendants used multiple related names, seller accounts, sales agents, beneficiary names, and payment instructions to move money, conceal responsible parties, avoid direct refund obligations, and frustrate customer disputes.

C. Alibaba Buyer-Information Routing, Supplier Follow-Up, and Continued Seller Outreach

37. Plaintiff references Exhibit A-4, the Haihang email with attached translation. The exhibit reflects a January 4, 2016 Alibaba/AliSourcePro system email from alisourcepro@service.alibaba.com to export036@haihangchem.com concerning RFQ 102-97-6. The translated email states that the supplier's quotation for RFQ 102-97-6 was successfully sent to a United States buyer, instructs the supplier to view the quotation and contact the buyer, and states that buyer contact information could be viewed in the My Alibaba backend or Procurement Direct quotation-management system.

38. Plaintiff alleges that Exhibit A-4 is evidence that Alibaba made buyer inquiry information, buyer identity information, buyer country/region information, and buyer contact information available to suppliers or supplier-side users through Alibaba's own platform systems, and that Alibaba encouraged supplier follow-up with buyers for RFQ 102-97-6. Plaintiff pleads this evidence as relevant to platform control, buyer-information routing, supplier solicitation, agency, selling or monetizing buyer information, enterprise methods, and discovery into how suppliers and seller agents obtained buyer information for chemical-product inquiries.

39. Plaintiff further references Exhibit A-3, the 2025 email from Decho Chemical. In that email, a Decho Chemical sales representative states that she found Plaintiff had an inquiry for N-Isopropylbenzylamine, CAS 102-97-6, asks about Plaintiff's business regarding that chemical, and offers to provide current prices and further chemical-product sales assistance. Plaintiff alleges that Exhibit A-3 shows that the same type of selling or making available of buyer-information, buyer-information routing, supplier follow-up, or seller outreach concerning CAS 102-97-6 continued in 2025, years after the 2016 Haihang/AliSourcePro email and after Plaintiff's 2021 Trade Assurance transaction. Plaintiff pleads Exhibits A-3 and A-4 as evidence of continuity, relatedness, platform-enabled solicitation, and the need for discovery concerning Alibaba's buyer-information practices, supplier access to buyer data, and seller-agent contact methods.

40. Plaintiff alleges that Exhibits A-3 and A-4 support his claims of platform control, seller outreach, buyer-information routing, continued solicitation, notice, continuity, deceptive trade practices, computer-system use, Arkansas criminal-enterprise predicate context if proven, and the need for discovery into how Alibaba.com, seller accounts, payment participants, and related agents collected, disclosed, sold, routed, monetized, or permitted use of buyer inquiry information for CAS 102-97-6 and related chemical-product solicitations.

**D. The January 9, 2022 BloomTechz Email and Alternative Analogue / Chemical-Risk Theory**

41. On or about January 9, 2022, Plaintiff received an email from sales@bloomtechz.com under the subject "Details N-Isopropylbenzylamine." The forwarded-header evidence identifies the sender as sales@bloomtechz.com, the date as January 9, 2022 at approximately 8:47 p.m., and the recipient as Plaintiff's email address.

42. Plaintiff alleges that the email promoted "Blue Pure N iso crystal" or similar chemical products, listed prices for 100g, 500g, and 1kg quantities, solicited direct WhatsApp/WeChat contact, and discussed N-Isopropylbenzylamine, 4-Isopropylbenzylamine, 2-Amino-4-phenylbutane / 2A4P, and related products.

43. Plaintiff further alleges that the email used terms such as "effect," "diluting," "Food grade," "molecule formula," "chemical structure," and "pharmaceutical properties," and stated in substance that from the sender's chemical-research opinion the product had the "Same Molecule Formula of C10H15N."

44. Plaintiff alleges that C10H15N is a molecular formula commonly associated with methamphetamine, and that Defendants' own marketing language therefore created a material red flag that the product was being compared to, substituted for, or promoted in relation to a controlled stimulant substance. Plaintiff does not allege that molecular formula alone conclusively proves illegality. Plaintiff pleads the statement as evidence of knowledge, scienter, deceptive marketing, concealment, materiality, and the need for discovery and expert proof concerning chemical structure, intended use, represented effects, and platform compliance.

45. The same email also used coercive language, including "Each words and pictures here is real, dont talk about any fake here!" and "It must be a legal product, otherwise you have better keep silent." Plaintiff alleges that this language was intended or reasonably calculated to discourage questions, disputes, refund demands, reports to platform compliance, reports to law enforcement or regulators, or court complaints.

46. Plaintiff pleads in the alternative, subject to discovery and expert testimony, that if the product marketed as N-Isopropylbenzylamine / N ISO is found to have a substantially similar chemical structure to methamphetamine or another controlled substance, and if the product was represented, intended, or marketed to have substantially similar stimulant effects or intended for human consumption, then the January 9, 2022 email supports an analogue-style theory or chemical-risk representation theory. Plaintiff does not admit any

unlawful purchase purpose and does not seek to privately prosecute criminal drug laws. Plaintiff pleads these facts to show fraudulent inducement, scienter, concealment, intimidation, deceptive trade practices, Arkansas felony predicate context if proven, and the need for discovery.

**E. Failure of Trade Assurance and June 2026 Customer-Service Email**

47. Plaintiff repeatedly attempted to resolve the matter through Alibaba.com's internal complaint or dispute-resolution process. Plaintiff alleges that for approximately three years he received no meaningful delivery, refund, credit, disclosure of logistics records, or remedy. On or about June 1, 2026, Plaintiff sought relief by filing the small claims court complaint referenced herein.

48. On or about June 18, 2026, Alibaba Customer Service sent Plaintiff an email concerning "Solution for Trade Assurance Order 919060905010275 82." The email stated that Plaintiff's complaint had been escalated to a senior team.

49. The June 18, 2026 email stated that because the order was over three years old, logistics information could no longer be verified, and that the platform had no record of Plaintiff contacting customer service regarding the order.

50. The June 18, 2026 email offered Plaintiff a $500 Alibaba credit, valid for 90 days, for use toward a future Trade Assurance order, including product and shipping costs, but excluding payment-processing fees, taxes, or other additional services. The email instructed Plaintiff to reply "AGREE" if Plaintiff accepted that option.

51. Plaintiff alleges that the June 18, 2026 and June 22, 2026 emails were not a full refund, were not a return of the money paid, and were not a meaningful remedy for Plaintiff's alleged injury. Plaintiff further alleges that the emails support his claims that Defendants failed to preserve, disclose, or honor logistics and dispute-resolution records while attempting to convert Plaintiff's refund demand into a future platform credit that would require additional dealings with Defendants.

52. Plaintiff alleges that Alibaba did not respond by saying the matter belonged only to a foreign marketplace seller and that Alibaba had no platform role. Instead, Alibaba reviewed or claimed to review the order and platform records, discussed logistics verification and customer-service records, and offered an Alibaba credit to settle the matter. Plaintiff alleges that this response supports discovery into which Alibaba entity or entities controlled the

order, platform records, seller account, Trade Assurance process, customer-service response, payment flow, and settlement-credit authority.

**F. Federal NPAs, Federal Documents, and Overlapping Federal Materials**

53. Plaintiff includes facts and allegations from the June 29, 2026, Non-Prosecution Agreements and $600 million dollar settlement with the United States Attorney's Office for the District of Rhode Island because those agreements overlap with Plaintiff's case on entity identity, Alibaba.com platform control, payment-processing functions, marketplace compliance, seller enforcement, subject merchandise, and United States-facing transaction systems. Plaintiff does not allege that the NPAs alone prove that Plaintiff's specific order was one of the NPA-covered transactions, and Plaintiff does not allege that NPA counsel represents any Defendant in this state civil action.

54. The Alibaba Non-Prosecution Agreement identifies counsel for Alibaba Group Holding Limited, Alibaba.com Singapore E-Commerce Pte. Limited, AliExpress E-Commerce One Pte. Ltd., and Alibaba.com U.S. LLC. It defines "Alibaba" to include Alibaba Group Holding Limited and subsidiaries, officers, directors, employees, and agents acting within the scope of employment or agency relationships, including Alibaba.com Singapore E-Commerce Pte. Limited, AliExpress E-Commerce One Pte. Ltd., Alibaba Group (U.S.) Inc., and Alibaba.com U.S. LLC.

55. The Alibaba Non-Prosecution Agreement defines ICBU as Alibaba's International Commerce Business Unit, the business unit that operates Alibaba.com, including the legal entities that house this unit: Alibaba.com Singapore E-Commerce Pte. Limited, Alibaba.com U.S. LLC, and Alibaba.com U.S. e-Commerce Corp. This directly overlaps with Plaintiff's transaction records and the defendants previously named in this case.

56. The Alibaba Non-Prosecution Agreement's Statement of Facts states that Alibaba.com was a global business-to-business platform that connected buyers and sellers on a single platform, and that ICBU was managed by Alibaba.com Singapore E-Commerce Pte. Limited, which managed Alibaba.com, including within the United States.

57. The Statement of Facts further states that ICBU operated the Alibaba.com marketplace, offered services to independent third-party sellers including Gold and Verified supplier membership programs, and through April 2021 offered a payment service on Alibaba.com called trade assurance through which ICBU processed payments linked to e-commerce orders. Plaintiff's records identify his June 1, 2021 transaction as a Trade Assurance

Purchase Contract, which creates a factual issue for discovery concerning the Trade Assurance system, its transition, continuation, entity ownership, and payment-processing responsibility for Plaintiff's order.

58. The Alibaba Non-Prosecution Agreement defines Subject Merchandise to include drugs, devices, equipment used to manufacture counterfeit drugs, controlled substances, listed chemicals or chemical mixtures, anabolic steroids, other regulated items, and products whose importation into the United States is prohibited under federal law and where such importation would constitute a felony. Plaintiff alleges that this definition is relevant to platform notice, product-risk controls, chemical-product screening, seller enforcement, and the need for discovery, but Plaintiff does not allege that the NPA alone proves his specific product was illegal.

59. The Alibaba Statement of Facts states that during approximately January 2016 through December 2024, Alibaba employees raised concerns that ICBU was used to sell improper products into the United States and that compliance measures and filtering systems were inadequate. It further states that approximately 80,000 product sales on the Alibaba Platforms involved product sales from overseas countries to the United States that lacked required approvals under drug, device, and importation laws, with combined gross merchandise value greater than $200 million. Plaintiff states that suppliers listed on the site advertised substantial monthly supply capacity for CAS No. 102-97-6. Plaintiff submitted supplemental information to the United States Attorney's Office for the District of Rhode Island on July 2, 2026, under USPS Tracking No. 9534612845466183991255, concerning alleged continuing Alibaba.com listings for chemical precursors or restricted chemical products after the public NPA resolution. Plaintiff further alleges that at least one seller listing reflected a lengthy verified-seller history that may predate the NPA's January 2016 Relevant Period. Plaintiff has not authenticated the exact tenure and does not plead any precise duration as established. Plaintiff pleads the material as notice, seller-vetting, compliance, continuity, and discovery evidence concerning Alibaba's platform controls, chemical-product screening, seller-verification practices, and post-NPA compliance.

60. The AUS Non-Prosecution Agreement identifies AUS Merchant Services, Inc., formerly known as Alipay U.S., Inc. and Alipay U.S. Escrow, Inc., as a Delaware company with principal place of business at 525 Almanor Avenue, Sunnyvale, California 94085. It states that AUS offered payment processing and settlement services to Alibaba-owned e-

commerce platforms, including Alibaba.com, and commenced payment processing and settlement services for Alibaba.com transactions in 2020.

61. The AUS Statement of Facts states that AUS's business model included payment processing and settlement services enabling overseas sellers on Alibaba.com to accept payments from United States-based buyers; that AUS received transaction information including merchant identity, buyer identity, and product description; and that AUS accepted United States dollar-denominated payments, including wire transfers for Alibaba.com orders, into United States bank accounts.

62. The AUS Statement of Facts further states that AUS and affiliates would, in certain instances, report merchants who sold Subject Merchandise on Alibaba's e-commerce platforms, including Alibaba.com, to Alibaba rather than systematically restricting those merchants themselves; that overseas merchants used AUS payment services to facilitate the sale and importation of Subject Merchandise; and that AUS processed transactions for overseas Alibaba.com merchants and United States-based buyers involving Subject Merchandise imported into the United States in violation of law.

63. Other federal materials overlap with this state case as factual context and exhibits, including Plaintiff's federal amended RICO pleading, federal service and docket materials, the filed federal exhibit packets, and the prior federal pleadings and rulings. Plaintiff includes overlapping federal materials only to show notice, entity identity, platform/payment structure, preservation issues, and factual context. Plaintiff does not ask the Circuit Court to apply federal civil RICO as an Arkansas cause of action.

## E. PROCEDURAL HISTORY, DEFENDANT'S ANSWER, AND ENTITY-IDENTITY DISPUTE

69A. Plaintiff filed Small Claims Case No. PCSC-26-189 concerning the same Trade Assurance order. Alibaba.com US E-Commerce Corp. was served and filed an answer on July 9, 2026. The answer denied participation, challenged personal jurisdiction, attributed any non-delivery to Zichang or other entities, disputed Plaintiff's status as the proper party, and objected to alter-ego theories.

69B. The district court entered an Order of Transfer on July 16, 2026. Plaintiff filed an objection to the allegedly untimely and unserved answer and renewed request for default on July 17, 2026. Plaintiff incorporates the transferred record while acknowledging that the circuit court will determine the effect of the service, answer, objection, and transfer.

69C. In the separately filed circuit action, certain defendants have been served through certified mail, as reflected by returned green cards. As of the date of this pleading, no defendant has filed an answer, Rule 12 motion, notice of appearance, or other responsive filing in that action. Plaintiff pleads the returned receipts as proof of service only and does not characterize them as appearances.

69D. Defendant's answer places entity identity, agency, seller independence, corporate separateness, and control directly in dispute. Defendant identifies Zichang as the allegedly responsible seller but does not identify which Alibaba entity controlled the seller account, Trade Assurance, payment, customer-service response, logistics records, refund authority, or seller verification.

69E. The June 29, 2026 Alibaba Non-Prosecution Agreement defines ICBU as the Alibaba.com operating unit and identifies Alibaba.com Singapore E-Commerce Pte. Limited, Alibaba.com U.S. LLC, and Alibaba.com U.S. e-Commerce Corp. as legal entities housing that unit. The Statement of Facts describes ICBU's operation of Alibaba.com, Gold and Verified supplier programs, seller policies and enforcement, private messaging, transaction-related services, and Trade Assurance payment service through April 2021.

69F. Plaintiff's contract is dated June 1, 2021 and bears Trade Assurance branding. Plaintiff therefore seeks discovery into which ICBU legal entity or affiliate administered, continued, funded, supported, or held responsibility for Trade Assurance and the subject order on the contract date.

69G. Alibaba customer service later reviewed or claimed to review the subject order, discussed logistics and customer-service records, escalated the matter, and offered a $500 Alibaba credit. Plaintiff pleads those communications for notice, control, agency, record custody, and discovery relevance and not as inadmissible proof of liability or amount through compromise negotiations.

69H. The AUS Non-Prosecution Agreement describes payment-processing and settlement services for overseas Alibaba.com merchants, possession of merchant and buyer identity and sale-order information, U.S.-dollar collection into U.S. bank accounts, and association of payments to overseas merchants through unique beneficiary identifiers. Plaintiff seeks discovery into whether AUS or an affiliate processed or retains records concerning the subject payment.

**F. SELLER EXISTENCE, SUCCESSOR, AND VERIFICATION FACTS REQUIRING DISCOVERY**

69I. Plaintiff has been unable through reasonable public inquiry to verify Zichang's present legal existence, active registration, beneficial owners, officers, capitalization, operating assets, successor status, or ability to satisfy the contractual obligation. Plaintiff does not plead nonexistence as an established fact; he pleads the inability to verify those matters and the need for records within Defendants' custody.

69J. Plaintiff alleges on information and belief that the seller name, seller account, payment beneficiary, sales agents, and related entities may not correspond to one independently operated and adequately capitalized company. Discovery is necessary concerning related seller accounts, common addresses, common devices or IP addresses, common personnel, bank beneficiaries, name changes, account transfers, successor entities, suspensions, closures, and seller-verification records.

69K. Public federal materials concerning Li Fangwei, also known as Karl Lee, alleged a historical pattern of using multiple China-based front companies, variants of names and addresses, and U.S.-dollar transactions to conceal the responsible commercial actor. Project Alpha reported in 2014 that Sinotech (Dalian) Carbon & Graphite Manufacturing Corporation, publicly identified as part of that network, remained listed as an Alibaba-verified Gold Supplier after public designation.

69L. Plaintiff does not allege that Zichang, any Alibaba Defendant, or any present Defendant is affiliated with Li Fangwei. Plaintiff pleads the historical example solely to demonstrate the relevance of underlying seller-verification, beneficial-ownership, related-account, address, name-change, and payment-beneficiary records and not to prove present wrongdoing by propensity or association.

69M. Plaintiff understands that an archived supplier listing may have displayed a lengthy supplier tenure, reportedly sixteen years. Because Plaintiff has not yet authenticated the original archived page and metadata, Plaintiff does not plead the sixteen-year duration as an established fact and will not rely on it as evidence unless properly authenticated.

## G. PUBLIC OWNERSHIP RESEARCH AND ACTUAL-CONTROL SCOPE LIMITATION

69N. Public SEC materials reviewed as of July 21, 2026 identify relevant Alibaba subsidiaries and consolidated entities but do not show that Alibaba Group, its disclosed Alibaba.com affiliates, its current chief executive or chairman, or its founders directly own GEO Group, CoreCivic, or a known privately held correctional operator. Alibaba Group's Form 13F

for the quarter ended March 31, 2026 reports Weibo and XPeng and does not report GEO Group or CoreCivic.

69O. BlackRock's separately reported investments in Alibaba, GEO Group, and CoreCivic reflect a common outside institutional investment manager. Plaintiff does not allege that those holdings establish that Alibaba invested in private prisons, that GEO Group or CoreCivic owns or controls Alibaba, that BlackRock controls Alibaba, that Alibaba receives correctional revenue, or that the companies acted together. Plaintiff does not rely on common institutional ownership as proof of alter ego, conspiracy, operational control, or criminal pecuniary gain and does not seek unrelated private-prison discovery absent new evidence and further court order.

69P. Plaintiff's ownership and alter-ego theories are limited to actual beneficial ownership and actual board-designation, veto, contractual, management, data-access, compliance, payment, or operational-control rights; intercompany agreements; commingling; undercapitalization; failure to observe corporate separateness; use of an entity to evade contractual or legal obligations; and transaction-related money, fees, commissions, membership revenue, payment-processing revenue, retained funds, or other value connected to the pleaded conduct.

## V. CLAIMS FOR RELIEF

### COUNT I - BREACH OF CONTRACT / TRADE ASSURANCE / FAILURE TO DELIVER

64. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.
65. Plaintiff alleges that the Trade Assurance Purchase Contract and related Alibaba.com records created enforceable obligations requiring delivery of the contracted goods, accurate order records, good-faith dispute processing, and refund or remedy if the seller failed to perform.
66. Plaintiff alleges that Defendants breached the contract, participated in the breach, benefitted from the breach, or are liable through agency, apparent authority, alter ego, third-party beneficiary, payment-processing, or platform-control principles by failing to deliver the contracted goods, failing to provide a refund, failing to provide meaningful Trade Assurance relief, and failing to maintain or produce material logistics and dispute-resolution records.

67. Plaintiff was damaged by the breach, including out-of-pocket payment, loss of use of funds, loss of expected goods, business interruption, lost opportunity, investigation costs, costs of pursuing relief, and other consequential damages to be proven.

## COUNT II - FRAUD / MISREPRESENTATION / FRAUDULENT CONCEALMENT

68. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.
69. Defendants, their agents, or enterprise participants made or caused material representations and omissions concerning seller legitimacy, product availability, product characteristics, Trade Assurance protection, delivery, refund/remedy availability, payment routing, buyer-information routing, supplier follow-up, continued seller outreach, order records, logistics verification, and customer-service dispute records.
70. The representations and omissions were false or misleading when made or became false or misleading when Defendants failed to deliver the goods, failed to refund the money, failed to provide meaningful Trade Assurance relief, failed to preserve or produce records, and attempted to resolve the matter by limited future credit rather than returning Plaintiff's money. Plaintiff further alleges that the 2016 Haihang/AliSourcePro email and the 2025 Decho Chemical email show additional misrepresentations or omissions concerning how Alibaba systems made buyer inquiry information available to suppliers and allowed continued supplier outreach concerning CAS 102-97-6.
71. Plaintiff reasonably relied on the representations and omissions in paying money, continuing to pursue internal dispute remedies, delaying or limiting other relief efforts, and seeking credit, refund, or court relief.
72. Defendants' conduct caused Plaintiff damages including money paid, loss of use, loss of benefit of the bargain, business and property losses, investigation costs, litigation costs, and other damages to be proven.
73. Plaintiff alleges that the fraud was intentional, reckless, malicious, or in conscious disregard of Plaintiff's rights, supporting punitive or exemplary damages if proven and permitted by Arkansas law.

## COUNT III - ARKANSAS DECEPTIVE TRADE PRACTICES ACT

74. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

75. Plaintiff brings this claim under the Arkansas Deceptive Trade Practices Act, including Ark. Code Ann. Sections 4-88-107 and 4-88-113, to the extent Defendants' acts constitute deceptive, false, unconscionable, or misleading business practices under Arkansas law.

76. Defendants' alleged deceptive practices include, without limitation, representing that the seller, product, Trade Assurance order, payment process, delivery process, and dispute-resolution remedy were legitimate, protected, documented, and available while failing to deliver the goods, failing to refund Plaintiff's money, failing to provide meaningful Trade Assurance relief, and failing to disclose material seller, payment, compliance, buyer-information routing, supplier-access, logistics, and remedy limitations.

77. The January 9, 2022 BloomTechz email, the 2016 Haihang/AliSourcePro buyer-information email and translation, the 2025 Decho Chemical email, and related communications are further alleged to be deceptive or unconscionable because they used chemical-product marketing, product-effect language, direct-contact solicitation, legality assertions, buyer-information access, supplier follow-up, and coercive language to discourage complaints or challenges and to continue chemical-product solicitation concerning CAS 102-97-6.

78. The June 18, 2026 and June 22, 2026 Alibaba Customer Service emails are further alleged to support the claim because Alibaba stated that logistics could no longer be verified and that the platform had no record of prior customer-service contact, yet offered only a limited $500 future Alibaba credit rather than a refund of Plaintiff's money.

79. Plaintiff suffered actual financial loss proximately caused by reliance on the deceptive practices, including the amount paid, loss of use of money, lost goods, costs of pursuing relief, damages to his reputation, and other damages to be proven. Plaintiff requests actual financial loss, restitution, reasonable attorney's fees if allowed, costs, and all other relief permitted under Arkansas law.

## COUNT IV - ARKANSAS CIVIL ACTION BY CRIME VICTIM / CRIMINAL ENTERPRISE PREDICATE CONDUCT

80. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

81. Plaintiff pleads this Count under Arkansas law as a state racketeering-type and criminal-enterprise claim. Plaintiff does not ask this Court to create a federal-style private civil RICO claim under Arkansas law. Plaintiff instead alleges that Defendants' conduct would constitute Arkansas felony conduct and a continuing criminal organization or enterprise

under Ark. Code Ann. Sections 5-74-103 and 5-74-104, and that Plaintiff is entitled to civil remedies as a person injured or damaged by felony conduct under Ark. Code Ann. Section 16-118-107.

82. Ark. Code Ann. Section 5-74-103 defines a criminal gang, organization, or enterprise as a group of three or more individuals who commit a continuing series of two or more predicate criminal offenses undertaken in concert with each other. It defines a crime of pecuniary gain as a violation of Arkansas law that results, or was intended to result, in a defendant receiving income, benefit, property, money, or anything of value, and it defines a predicate criminal offense as any violation of Arkansas law that is a crime of violence or a crime of pecuniary gain.

83. Ark. Code Ann. Section 5-74-104 applies when a person commits, attempts to commit, or solicits a felony predicate criminal offense as part of a continuing series of two or more predicate criminal offenses undertaken in concert with two or more other persons. Plaintiff alleges, in the alternative and subject to discovery, that the facts pleaded in this action satisfy those elements.

84. The Arkansas criminal-enterprise participants include, at minimum and subject to discovery, the Alibaba platform entities and Doe platform participants; the seller entities, seller-account operators, and sales agents; the payment processors, payment beneficiaries, and payment-routing participants; and any persons or entities that participated in the marketplace, payment, seller-account, Trade Assurance, customer-service, or post-order concealment conduct relating to Alibaba.com Trade Assurance Order No. 91906090501027582 and related post-order communications.

85. The common purpose of the Arkansas criminal enterprise was to obtain or retain Plaintiff's money and other buyer funds through electronic marketplace representations, Trade Assurance representations, seller-account representations, payment-routing practices, chemical-product solicitations, and customer-service/dispute-resolution communications while failing to deliver the contracted goods, failing to provide meaningful refund or Trade Assurance relief, concealing or denying material logistics and dispute records, and discouraging complaints or reports.

86. Plaintiff alleges that at least two predicate criminal offenses were undertaken in concert. Those predicate acts include, without limitation, the 2016 Haihang/AliSourcePro buyer-information routing email concerning RFQ 102-97-6; the June 1, 2021 electronic Trade Assurance order and payment processing; related marketplace or seller communications

concerning chemical-product orders and Alibaba monitoring; payment-routing or beneficiary-account conduct involving United States payment channels; the January 9, 2022 BloomTechz email titled "Details N-Isopropylbenzylamine"; the 2025 Decho Chemical email concerning N-Isopropylbenzylamine CAS 102-97-6; and the post-order concealment and customer-service communications concerning Order No. 91906090501027582.

87. Plaintiff alleges that the principal Arkansas felony predicate is computer fraud under Ark. Code Ann. Section 5-41-103. Defendants and their agents intentionally accessed, used, or caused access to computer systems, computer networks, internet platforms, electronic marketplace systems, email systems, payment systems, and customer-service systems for the purpose of devising or executing a scheme or artifice to defraud or to obtain money, property, or services by false or fraudulent intent, representation, or promise. Computer fraud under Ark. Code Ann. Section 5-41-103 is a Class D felony.

88. Plaintiff further alleges that the same facts support theft-by-deception allegations under Ark. Code Ann. Section 5-36-103 because Defendants and their agents obtained Plaintiff's property by deception or threat with the purpose of depriving Plaintiff of that property. Plaintiff pleads theft-by-deception as a felony predicate only to the extent the amount, aggregated transactions, related conduct, threat evidence, controlled-payment conduct, or discovery facts satisfy the felony classification requirements under Arkansas law. If the Court determines that Plaintiff's individual payment alone does not satisfy a felony-theft threshold, Plaintiff preserves computer fraud and any other felony conduct supported by discovery as the primary felony predicate for this Count.

89. Plaintiff also pleads, in the alternative and subject to discovery and expert testimony, that if the N-Isopropylbenzylamine / N ISO marketing, same-molecule-formula statement, represented effect, intended use, or chemical-product solicitation evidence establishes conduct involving a controlled substance, controlled-substance analogue, listed chemical, illegal importation, or other Arkansas felony conduct, then such conduct is an additional felony predicate and crime of pecuniary gain for purposes of Ark. Code Ann. Sections 5-74-103 and 5-74-104.

90. The continuing-series element is satisfied, or will be shown through discovery, because the conduct was not an isolated one-time failure to deliver. Plaintiff alleges multiple related acts over time, including the January 2016 Haihang/AliSourcePro email concerning RFQ 102-97-6 and buyer-information access, the June 2021 order and payment, chemical-product marketplace communications, the January 2022 BloomTechz solicitation and

coercive language, the 2025 Decho Chemical seller outreach concerning N-Isopropylbenzylamine CAS 102-97-6, years of failed dispute resolution, and the June 2026 Alibaba Customer Service response offering a limited future credit rather than a full refund while stating that logistics could no longer be verified.

91. The concerted-action element is satisfied, or will be shown through discovery, because the conduct required coordinated participation among at least three participants: a marketplace or platform participant, a seller or seller-account participant, and a payment or beneficiary participant. Plaintiff further alleges that customer service, compliance, seller-support, sales-agent, and Doe participants supplied additional roles within the enterprise.

92. The conduct was intended to result, and did result, in Defendants or enterprise participants receiving money, property, income, benefit, or something of value. The conduct therefore qualifies as crime-of-pecuniary-gain conduct within the meaning of Ark. Code Ann. Section 5-74-103.

92A. Plaintiff does not base the alleged crime of pecuniary gain on lawful securities ownership, passive institutional investment, a shared outside asset manager, or any private-prison investment theory. The alleged pecuniary gain is the transaction-related money, fees, commissions, seller-membership value, payment-processing revenue, retained funds, or other benefit allegedly obtained or retained through the Arkansas-law violations pleaded in this Count.

93. Plaintiff was injured and damaged because of the alleged felony conduct and criminal-enterprise conduct. Plaintiff lost the money paid for the Trade Assurance order, the use of that money, the benefit of the bargain, business time, business opportunities, investigation costs, court costs, and other consequential business or property losses to be proven.

94. Under Ark. Code Ann. Section 16-118-107, any person injured or damaged by reason of another person's conduct that would constitute a felony under Arkansas law may file a civil action to recover damages based on that conduct. Plaintiff requests damages, costs, attorney's fees if allowed, equitable relief, accounting, constructive trust, disgorgement, restitution, preservation of records, leave to identify Doe participants, and all other relief the Court deems just and proper.

95. Plaintiff does not seek to privately prosecute any criminal statute. Plaintiff pleads the Arkansas felony and criminal-enterprise allegations solely as civil predicate facts supporting recovery under Arkansas law and as additional factual support for fraud,

deceptive trade practices, alter-ego, agency, unjust-enrichment, money-had-and-received, and related claims.

## COUNT V - UNJUST ENRICHMENT / MONEY HAD AND RECEIVED

96. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.
97. Defendants accepted, received, controlled, routed, retained, or benefitted from Plaintiff's payment, payment records, seller account benefits, platform fees, payment-processing benefits, future credit leverage, or related value in circumstances that make it inequitable for Defendants to retain the benefit without delivering the goods, providing a full refund, or providing meaningful relief.
98. Plaintiff alleges that Defendants were unjustly enriched and that money had and received should be returned, together with consequential damages, restitution, accounting, disgorgement, interest, and equitable relief to the extent permitted by Arkansas law.

## COUNT VI - CIVIL CONSPIRACY / CONCERTED ACTION

99. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.
100. Plaintiff alleges that Defendants and Doe participants acted in concert, agreed, substantially assisted, aided, abetted, or combined to accomplish unlawful objectives or lawful objectives by unlawful means, including fraud, deceptive trade practices, computer-fraud predicate conduct, concealment, non-delivery, payment retention, and obstruction or discouragement of complaints.
101. This claim is derivative of the underlying wrongs pleaded in this Complaint and is not asserted as an independent tort disconnected from those wrongs.
102. As a direct and proximate result of the concerted conduct, Plaintiff suffered damages including out-of-pocket loss, loss of use, lost benefit of the bargain, consequential property and business damages, investigation costs, loss of reputation, and other damages to be proven.

## COUNT VII - ALTER EGO / AGENCY / APPARENT AUTHORITY / PIERCING CORPORATE VEIL / PROPER ALIBABA ENTITY

103. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.
104. Plaintiff alleges that Alibaba-related Defendants operated through unified Alibaba.com branding, marketplace systems, Trade Assurance order documents, seller verification,

customer-service channels, payment channels, dispute-resolution records, compliance functions, and settlement-credit authority in a way that made the relevant Alibaba entities, agents, affiliates, or alter egos appear to Plaintiff as one integrated platform responsible for the transaction.

105. Plaintiff alleges that the precise responsible entity or entities are within Defendants' control. Plaintiff therefore pleads alter ego, agency, apparent authority, instrumentality, successor/payment responsibility, joint venture, and proper-party theories in the alternative and requests discovery into which Alibaba.com entity controlled the order, payment, Trade Assurance system, seller account, customer-service response, dispute-resolution process, payment-processing records, compliance records, and settlement-credit authority.

106. Plaintiff does not seek to impose liability merely because one entity owns another, because an institutional investment manager holds securities in multiple unrelated issuers, or because entities share passive investors. Plaintiff seeks to hold liable the entity or entities that controlled, participated in, benefitted from, held out, administered, processed, monitored, or accepted responsibility for the transaction, payment, seller account, Trade Assurance process, or post-order dispute conduct.

107. Plaintiff requests that any Alibaba-related defendant that denies responsibility be required, to the extent known, to identify the Alibaba.com entity or entities responsible for the order, payment, marketplace services, Trade Assurance services, seller account, customer-service response, dispute-resolution process, compliance review, payment processing, and records preservation at issue.

107A. Defendant Alibaba.com US E-Commerce Corp. has taken the position that Zichang or other companies are responsible while denying its own participation. Plaintiff alleges that the entity with control over Trade Assurance, seller verification, platform records, customer-service authority, payment infrastructure, and the ability to identify the responsible seller cannot avoid discovery merely by pointing to a foreign nominal seller.

107B. Plaintiff alleges in the alternative that one or more Alibaba-related Defendants directly participated in the transaction or post-order conduct; acted as actual or apparent agents or principals; operated a joint enterprise; controlled an instrumentality; or used related entities and seller-account structures in a manner that would produce injustice if strict corporate separateness were applied.

107C. Plaintiff seeks veil piercing only upon proof that a corporate or entity form was illegally or fraudulently abused to his injury, including proof that an entity was used to evade a

contract obligation, hinder recovery, conceal the responsible party, shift operations or assets, or perpetrate fraud or injustice.

107D. Facts relevant to those theories include actual beneficial ownership; actual board-designation, veto, contractual, management, data-access, compliance, payment, or operational-control rights; intercompany agreements; common ownership and control; overlapping officers or personnel; common addresses, databases, domains, and systems; commingled operations or funds; inadequate capitalization; absence of independent records or assets; transfer or closure of seller accounts after liabilities arose; successor entities; shared bank beneficiaries; and control of the conduct at issue.

107E. Plaintiff requests limited discovery before adjudication of personal-jurisdiction, alter-ego, agency, improper-party, and corporate-separateness defenses because the relevant facts are uniquely within Defendants' possession, custody, or control.

107F. Plaintiff does not allege that Alibaba or its disclosed owners directly invested in GEO Group, CoreCivic, or another correctional operator and does not rely on BlackRock's separate holdings in multiple issuers as proof of control, alter ego, conspiracy, or pecuniary gain. Unrelated private-prison investment is outside the requested discovery absent new evidence and further court order.

107G. Plaintiff seeks discovery into actual control and transaction value, including who possessed authority to appoint directors, veto or approve decisions, direct marketplace or compliance operations, control seller and buyer data, administer Trade Assurance, process or route payments, allocate liability, authorize customer-service resolutions, and receive transaction-related fees or other value.

## COUNT VIII - ACCOUNTING, CONSTRUCTIVE TRUST, PRESERVATION OF RECORDS, AND EQUITABLE RELIEF

108. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.
109. Plaintiff requests an accounting of all funds, fees, credits, payments, beneficiary accounts, platform charges, payment-processing records, seller records, buyer-information routing records, supplier-access records, RFQ records, Trade Assurance records, logistics records, customer-service records, dispute-resolution records, settlement-credit records, intercompany allocations, transaction-related revenue, beneficial-ownership records, and actual board, veto, contractual, management, data-access, compliance, payment, or

operational-control rights connected to Order No. 919060905010027582 and related post-order communications.

110. Plaintiff requests constructive trust, disgorgement, restitution, preservation order, production order, or other equitable relief to prevent Defendants from retaining money, benefits, records, or payment information obtained through the alleged conduct.

111. Plaintiff requests leave to amend to identify Doe defendants, correct entity names, add or dismiss entities after discovery, and conform the pleading to the proof.

## VI. DAMAGES AND RELIEF REQUESTED

112. Plaintiff alleges that his damages exceed $75,000.00 and exceed the jurisdictional limits of Arkansas small claims and district civil court. Plaintiff does not plead a monetary cap and seeks the maximum monetary, statutory, legal, and equitable relief supported by the evidence and permitted by Arkansas law.

113. Plaintiff requests actual damages, compensatory damages, consequential damages, benefit-of-the-bargain damages, business interruption damages, loss-of-use damages, lost opportunity damages, investigation costs, court costs, costs of service, prejudgment interest, post-judgment interest, restitution, disgorgement, accounting, constructive trust, and all other legal or equitable relief supported by Arkansas law and the evidence.

114. Plaintiff requests punitive or exemplary damages to the fullest extent permitted by Arkansas law if the evidence establishes malice, reckless disregard, intentional fraud, deliberate concealment, intimidation, or other conduct supporting such relief.

115. Plaintiff requests costs and attorney's fees where allowed by statute, rule, contract, equity, or Arkansas law, including under Ark. Code Ann. Section 16-118-107 if Plaintiff prevails on proof of felony conduct by a preponderance of the evidence, and under any other applicable Arkansas statutory or equitable fee provision.

116. Plaintiff requests an order preserving and requiring production of seller-account records, payment records, beneficiary records, Trade Assurance records, dispute-resolution records, customer-service records, platform-compliance records, seller-verification records, communication logs, and records concerning Alibaba's June 2026 customer-service response and settlement-credit authority.

117. Plaintiff requests leave to file amended or supplemental pleadings to identify John Doe defendants, correct defendant names, add proper Alibaba/payment/seller entities, conform

the complaint to proof, and preserve Plaintiff's filing date and claims to the fullest extent permitted by Arkansas law.

118. Plaintiff requests all other relief the Court and jury deem just, proper, equitable, and permitted by Arkansas law.

## VII. JURY DEMAND

119. Plaintiff demands a trial by jury on all issues so triable.

## VIII. EXHIBIT INDEX AND FILING NOTICE

120. Plaintiff may attach or rely on exhibits previously filed in the state or federal records, including the Trade Assurance Purchase Contract, the June 18 and June 22, 2026 Alibaba Customer Service emails, the January 9, 2022 BloomTechz email, redacted payment or wire records, the Alibaba Non-Prosecution Agreement, the AUS Non-Prosecution Agreement, state-court transfer materials, related federal docket or exhibit materials, and public SEC subsidiary, ownership, and investment filings used solely to identify corporate relationships and narrow the actual-control theory. Exhibits A-1 through A-4 are specifically identified because they mirror the exhibit references in the federal amended complaint and show notice, Trade Assurance response, buyer-information routing, supplier follow-up, and continued seller outreach.

121. For public filing, Plaintiff will redact financial account numbers and other sensitive financial identifiers unless the Court authorizes or requires unredacted filing under seal.

122. Plaintiff incorporates all previously filed exhibits in small claims court case PCSC-26-189 and federal civil case 4:26-cv-00611-DPM filed in the eastern district as evidence of notice, transaction identity, entity identity, platform/payment structure, discovery need, and factual allegations, but does not allege that any NPA alone proves Plaintiff's specific order was included in any NPA-covered transaction. Plaintiff will refile any exhibits the court instructs to file.

123. Exhibit A-1 – Email to NPA attorneys and reply to Solution for Trade Assurance Order 919060905010275 82;

124. Exhibit A-2 – Homesite Financial Services LLC Arkansas Debt Collector Licence;

125. Exhibit A-3 – Email from Decho Chemical;

126. Exhibit A-4 – Haihang email with attached translation.

127. Exhibit A-5 - Proof of service, July 9 answer, July 16 transfer order, district-court docket, and July 17 objection from PCSC-26-189;

128. Exhibit A-6 - Relevant nonprivileged excerpts of the Alibaba and AUS Non-Prosecution Agreements identifying ICBU, Trade Assurance, seller programs, platform controls, and payment-processing systems;

129. Exhibit A-7 - Public-source materials concerning the 2014 Sinotech/Alibaba Gold Supplier history, offered solely as seller-verification discovery context and not as proof of affiliation, present wrongdoing, propensity, or liability. Any reported sixteen-year supplier tenure is not offered as established unless the original archived page and metadata are authenticated.

130. Exhibit A-8 - Relevant public SEC materials, including Alibaba Group Holding Limited's 2026 Form 20-F and subsidiary exhibit, Alibaba's March 31, 2026 Form 13F information table, and the referenced BlackRock, GEO Group, and CoreCivic ownership disclosures, offered solely to identify the publicly disclosed corporate chain and to narrow ownership discovery to actual governance and control rights. These materials are not offered to prove that Alibaba invested in private prisons or that common institutional investment establishes control, conspiracy, alter ego, or criminal pecuniary gain.

Respectfully submitted,

________________________________

Bradley Burchfield
5420 Kavanaugh Blvd #7927
Little Rock, AR 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

Date: __________________, 2026

**VERIFICATION**

I, ______________________________, being duly sworn upon oath, state that I am the person filing the foregoing document; that I have read the document; and that the facts stated in it are true and correct to the best of my knowledge, information, and belief.

I understand that this verification is made under oath and that any false statement may subject me to penalties for perjury.

______________________________________________

Signature of Affiant

______________________________________________

Printed Name

Date: ____________________________

STATE OF ARKANSAS

COUNTY OF ______________________

Subscribed and sworn to before me on this ______ day of ______________, **20**, by

______________________________.

______________________________________________

Notary Public

My Commission Expires: __________________

Notary Seal:

THIS PAGE IS LEFT INTENTIONALLY BLANK

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2026-Jul-22 12:27:20
60CV-26-8633
C06D03 : 3 Pages

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**CIVIL DIVISION**

**BRADLEY BURCHFIELD** **PLAINTIFF**

v. **CASE NO.** 60CV-26-8633

**ALIBABA GROUP HOLDING LIMITED, et al.** **DEFENDANTS**

## MEMORANDUM IN SUPPORT OF CONSOLIDATION AND LIMITED CORPORATE-STRUCTURE, JURISDICTIONAL, AGENCY, ALTER-EGO, SELLER-VERIFICATION, TRADE ASSURANCE, PAYMENT, AND ACTUAL-CONTROL DISCOVERY

### I. CONSOLIDATION IS AUTHORIZED AND WILL AVOID INCONSISTENT RULINGS

Arkansas Rule of Civil Procedure 42(a) permits consolidation of actions involving common questions of law or fact and authorizes joint proceedings designed to avoid unnecessary cost or delay. Consolidation is discretionary. Missouri Pacific Railroad Co. v. Arkansas Sheriff's Boys' Ranch, 280 Ark. 53, 655 S.W.2d 389 (1983). The two cases here concern the same order, alleged non-delivery, seller, Trade Assurance framework, customer-service response, and core records. The broader circuit complaint adds parties and theories that cannot be adjudicated efficiently in isolation from the transferred record. Returned green cards in the broader action establish service, not an appearance; no defendant has filed a responsive paper there as of this filing.

### II. ARKANSAS LAW PERMITS ALTER-EGO RELIEF WHEN THE CORPORATE FORM IS ABUSED, BUT THE ISSUE DEPENDS ON FACTS

Arkansas recognizes corporate separateness but will disregard the corporate form in special circumstances when it has been illegally or fraudulently abused to the injury of a third party. K.C. Properties of Northwest Arkansas, Inc. v. Lowell Investment Partners, LLC, 373 Ark. 14, 32-33, 280 S.W.3d 1, 15-16 (2008); Anderson v. Stewart, 366 Ark. 203, 208-14, 234 S.W.3d 295, 299-303 (2006); EnviroClean, Inc. v. Arkansas Pollution Control & Ecology Commission, 314 Ark. 98, 104, 858 S.W.2d 116, 120 (1993). The doctrine is equitable, applied cautiously, and turns on the circumstances of each case. Humphries v. Bray, 271 Ark. 962, 966, 611 S.W.2d 791, 793 (Ark. App. 1981); Banks v. Jones, 239 Ark. 396, 399, 390 S.W.2d 108, 110 (1965).

### III. THE RECURRING VEIL-PIERCING CONSIDERATIONS MAKE THE REQUESTED RECORDS MATERIAL

Arkansas decisions identify circumstances such as using an entity to hinder creditors, evade contract or statutory obligations, or perpetrate fraud or injustice. Anderson, 366 Ark. at 209-14. Anderson affirmed veil piercing where records were not properly maintained, protections and assets were withdrawn after litigation, and substantially the same operators continued the same business through another company. Winchel v. Craig involved dissolution or asset transfer after a claim arose, formation of a new company performing the same business, and failure to provide for the pending liability. 55 Ark. App. 373, 381-82, 934 S.W.2d 946, 950-51 (1996). Plaintiff does not ask the Court to declare alter ego from allegations alone; he seeks the records necessary to determine whether the nominal seller was independent, accurately identified, capable of satisfying its obligations, or connected to platform, affiliate, successor, agency, or payment entities in a legally material way.

### IV. THE DISCOVERY IS RELEVANT, PROPORTIONAL, AND LARGELY INACCESSIBLE TO PLAINTIFF

Rule 26(b)(1) permits discovery of nonprivileged matters relevant to claims or defenses and proportional to the case, considering the importance of the issues, amount in controversy, relative access to information, resources, usefulness, and burden. The relevant information is concentrated in Defendants'

corporate, seller-account, payment, compliance, and customer-service systems. Rule 33 requires a corporation to answer through an officer or agent using information available to the corporation; Rule 34 reaches documents and electronically stored information in a party's possession, custody, or control; and Rule 30(b)(6) permits an organization to designate witnesses about specified matters.

## V. THE ALIBABA AND AUS AGREEMENTS IDENTIFY CONCRETE SYSTEMS AND RECORDS

The Alibaba NPA defines ICBU as the Alibaba.com operating unit housed in Alibaba.com Singapore E-Commerce Pte. Limited, Alibaba.com U.S. LLC, and Alibaba.com U.S. e-Commerce Corp. Its Statement of Facts describes marketplace operation, Gold and Verified supplier programs, Trade Assurance, seller policies, enforcement authority, private messaging, and transaction-related fees. The AUS NPA describes payment processing for overseas Alibaba.com merchants, possession of merchant and buyer identities and sale-order descriptions, U.S.-dollar collection into U.S. bank accounts, and association of payments with merchants through unique beneficiary identifiers. Those materials do not prove liability for this order, but they identify systems and records that can answer disputed entity and jurisdiction questions.

## VI. THE LI FANGWEI/SINOTECH HISTORY IS USED ONLY TO EXPLAIN THE SELLER-VERIFICATION SUBJECTS

Federal public materials alleged that Li Fangwei used a network of China-based companies, repeated or variant addresses, new company names, and U.S.-dollar transactions to conceal the responsible actor. Project Alpha later reported that Sinotech (Dalian) Carbon & Graphite Manufacturing Corporation remained listed as an Alibaba-verified Gold Supplier after public designation. Plaintiff does not allege any connection between that network and the present Defendants. The history is used only to explain why actual seller-verification, beneficial-ownership, related-account, name-change, address, and payment-beneficiary records are material. Any later evidentiary use remains subject to the Arkansas Rules of Evidence.

## VII. PUBLIC OWNERSHIP RESEARCH DOES NOT SUPPORT A PRISON-INVESTMENT OR COMMON-INVESTOR THEORY

Alibaba Group Holding Limited's 2026 Form 20-F and Exhibit 8.1 identify relevant subsidiaries and consolidated entities, including Alibaba.com Singapore E-Commerce Private Limited and Alibaba Group (U.S.) Inc. Alibaba's Form 13F for the quarter ended March 31, 2026 lists Weibo and XPeng and does not list GEO Group or CoreCivic. BlackRock's separate Form 13F positions in Alibaba, GEO Group, and CoreCivic reflect a shared independent investment manager, not an ownership or control relationship among those issuers. Plaintiff does not rely on common institutional ownership as proof of alter ego, conspiracy, or criminal pecuniary gain and does not seek unrelated private-prison investment discovery.

## VIII. ACTUAL-CONTROL AND TRANSACTION-VALUE QUESTIONS REMAIN PROPER

The absence of a supportable prison-investment theory narrows the case; it does not eliminate discovery into actual control. The interrogatories ask whether any parent, affiliate, investor, creditor, manager, or other person possessed actual rights to appoint directors, veto decisions, direct operations, control data or compliance, administer Trade Assurance, process payments, or allocate liability. They also ask which entity received transaction-related fees, commissions, membership revenue, processing revenue, or other value. Those subjects bear directly on agency, corporate separateness, personal jurisdiction, proper-party defenses, and any properly pleaded pecuniary-gain theory tied to alleged unlawful conduct.

## IX. A LIMITED, SEQUENCED PERIOD IS THE LEAST BURDENSOME APPROACH

A 120-day targeted period followed by a status conference will permit the Court to determine the correct parties and jurisdictional facts before extensive merits discovery. It will allow Plaintiff to narrow claims or dismiss entities shown to have no role and is less burdensome than parallel cases, repeated service disputes, or piecemeal motions based on information uniquely controlled by Defendants.

**CONCLUSION**

The Court should consolidate or coordinate the actions, designate a lead case and single operative pleading, preserve the transferred record, authorize the requested limited discovery, and defer disposition of personal-jurisdiction, alter-ego, agency, and proper-party defenses until the targeted record is developed.

Respectfully submitted,

**Bradley Burchfield, Plaintiff Pro Se**
5420 Kavanaugh Blvd #7927
Little Rock, Arkansas 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

Date: 7/22/26, 2026

**CERTIFICATE OF SERVICE**

I certify that on 7/22/26, 2026, I served a true and correct copy of the foregoing on every defendant that had been validly served in the applicable action, at the address shown on that defendant's proof of service, and on all counsel of record, if any, by a method permitted under Arkansas Rule of Civil Procedure 5. Returned certified-mail receipts establish service; they do not by themselves constitute an appearance. No representation is made that this certificate constitutes original service of process on an unserved defendant.

**Bradley Burchfield, Plaintiff Pro Se**
5420 Kavanaugh Blvd #7927
Little Rock, Arkansas 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

THIS PAGE IS LEFT INTENTIONALLY BLANK

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2026-Jul-22 16:07:44
60CV-26-8633
C06D03 : 3 Pages

# UNIFORM COVER PAGE

[To be used when required by Administrative Order No. 2 (g)*]

COURT: 60 COURT OF Pulaski COUNTY

Docket/Case Number: 60CV-26-8633

CASE NAME:

PLAINTIFF/ PETITIONER: Bradley Burchfield

DEFENDANT/ RESPONDENT: Alibaba Group Holding Limited

TITLE OF PLEADING OR DOCUMENT BEING FILED (If a multi-part file, the designation "part _ of _" (example, part 1 of 2)): Certified Mail Return

*Administrative Order No 2.

(g) *File Mark.* (1) There shall be a two inch (2") top margin on the first page of each document submitted for filing to accommodate the court's file mark. If the pleading or document must be filed in multi-parts because of size or for other reasons, the first page of each part must include the file name and file mark and shall clearly indicate the part number and number of parts (example, part 1 of 2).

(2) If a document is such that the first page cannot be drafted to provide sufficient space to satisfy the file-mark requirement, the document must include the uniform cover page developed by the Administrative Office of the Courts and found under Forms and Publications at www.arcourts.gov.

STATE

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
Alibaba Group Holding Limited
c/o Corporation Service Company
19 W. 44th St. Suite 200
New York, NY 10036

9590 9402 9885 5335 7266 81

2. Article Number *(Transfer from service label)*
9589 0710 5270 2919 0404 64

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature
X Michael
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

C. Date of Delivery
1/15

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
d Mail
d Mail Restricted Delivery
500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 Domestic Return Receipt

USPS TRACKING #

9590 9402 9885 5335 7266 81

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

Bradley Burchfield
5420 Kavanaugh Blvd # 7927
Little Rock, AR 72217

-703399

THIS PAGE IS LEFT INTENTIONALLY BLANK

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2026-Jul-24 11:28:31
60CV-26-8633
C06D03 : 2 Pages

# UNIFORM COVER PAGE

[To be used when required by Administrative Order No. 2 (g)*]

COURT: Circuit COURT OF Pulaski COUNTY

Docket/Case Number: 60CV-26-8633
3rd DIV

CASE NAME:
PLAINTIFF/
PETITIONER: Bradley Burchfield

DEFENDANT/
RESPONDENT: Alibaba Group holding Limited

TITLE OF PLEADING OR
DOCUMENT BEING FILED
(If a multi-part file,
the designation "part _ of _"
(example, part 1 of 2)): ______________________

*Administrative Order No 2.

(g) *File Mark.* (1) There shall be a two inch (2") top margin on the first page of each document submitted for filing to accommodate the court's file mark. If the pleading or document must be filed in multi-parts because of size or for other reasons, the first page of each part must include the file name and file mark and shall clearly indicate the part number and number of parts (example, part 1 of 2).

(2) If a document is such that the first page cannot be drafted to provide sufficient space to satisfy the file-mark requirement, the document must include the uniform cover page developed by the Administrative Office of the Courts and found under Forms and Publications at www.arcourts.gov.

STATE

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Alibaba Group (U.S.) Inc.
c/o Incorporating Services, Ltd
3500 S. Dupont Hwy
Dover, DE 19901

9590 9402 9885 5335 7266 67

2. Article Number (Transfer from service label)

9589 0710 5270 2919 0404 95

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature] ☐ Agent ☐ Addressee

B. Received by (Printed Name)

C. Date of Delivery
7/16/26

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
(I)nsured Mail
(I)nsured Mail Restricted Delivery (o)ver $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 Domestic Return Receipt

---

7/16/26 1:55pm STATE

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Alibaba.com U.S. e-Commerce Corp
c/o Incorporating Services, Ltd.
7801 Folsom Blvd. Suite 202
Sacramento, CA 95826

9590 9402 9885 5335 7266 50

2. Article Number (Transfer from service label)

9589 0710 5270 2919 0405 18

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature] ☐ Agent ☐ Addressee

B. Received by (Printed Name)
Jennifer [illegible]

C. Date of Delivery
7/16/26

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
(In)sured Mail
(In)sured Mail Restricted Delivery (o)ver $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 Domestic Return Receipt

---

7/16/26 10:04 AM STATE

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Alibaba.com U.S. LLC
c/o Corporation Service Compa(ny)
251 Little Falls Drive
Wilmington, DE 19808

9590 9402 9885 5335 7266 74

2. Article Number (Transfer from service label)

9589 0710 5270 2919 0404 88

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (Printed Name)

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

[Postmark stamp: MARSHALLTON POST OFFICE, JUL 16 2026, WILM... 19808]

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
(In)sured Mail
(In)sured Mail Restricted Delivery (o)ver $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

THIS PAGE IS LEFT INTENTIONALLY BLANK

# IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## CIVIL DIVISION

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

v.

ALIBABA GROUP HOLDING LIMITED, et al.,

Defendants.

Case No. 60CV-26-8633

JURY TRIAL DEMANDED

## SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

**AliExpress E-Commerce One Pte. Ltd.**
**c/o Alibaba Group ~~Services~~ Holding Limited, Legal Department**
**26/F, Tower One**
**Times Square**
**1 Matheson Street**
**Causeway Bay**
**Hong Kong 999077**
**Hong Kong**

A lawsuit has been filed against you. The relief demanded is stated in the attached Complaint.

**Within 30 days after service of this summons on you** (not counting the day you received it), you must file with the Clerk of this Court a written answer to the Complaint or a motion under Arkansas Rule of Civil Procedure 12. The answer or motion must also be served on the Plaintiff whose name and address are:

Bradley Burchfield
5420 Kavanaugh Blvd #7927
Little Rock, AR 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

If you fail to respond within the time stated, judgment by default may be entered against you for the relief demanded in the Complaint.

Date: ____________________________

CLERK OF COURT

____________________________
Signature of Clerk or Deputy Clerk

Seal

Clerk's Office: Pulaski County Circuit Clerk, 401 West Markham, Suite 100, Little Rock, AR 72201

## PROOF OF SERVICE / RETURN

**AliExpress E-Commerce One Pte. Ltd.**
**c/o Alibaba Group Services Limited, Legal Department**
**26/F, Tower One**
**Times Square**
**1 Matheson Street**
**Causeway Bay**
**Hong Kong 999077**
**Hong Kong**

I received this summons on ________________________.

[ ] I personally served the summons and Complaint on the defendant at:

______________________________________________________________________

______________________________________________________________________

on ________________________.

[ ] I served the summons and Complaint on the registered agent or person authorized to accept service:

Name/title of person served: ____________________________________________

Address where served: _________________________________________________

Date served: ________________________

[ ] I served by certified/restricted/registered mail or other method allowed by law. Tracking/receipt number:

______________________________________________________________________

[ ] I was unable to serve because: ________________________________________

______________________________________________________________________

I declare under penalty of perjury that the foregoing is true and correct.

Date: ________________________

______________________________
Server's Signature

______________________________
Printed Name and Title

______________________________
Server's Address

| | |
|---|---|
| **Case Title:** | BRADLEY BURCHFIELD V ALIBABA GROUP HOLDING LIMITED |
| **Case Number:** | 60CV-26-8633 |
| **Type:** | SUMMONS - FILER PREPARED |

So Ordered

Ruth Elkins

CIRCUIT & COUNTY CLERK PULASKI COUNTY, ARKANSAS

THIS PAGE IS LEFT INTENTIONALLY BLANK

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2026-Jul-28 10:51:57
60CV-26-8633
C06D03 : 2 Pages

## UNIFORM COVER PAGE

[To be used when required by Administrative Order No. 2 (g)*]

COURT: Circuit COURT OF Pulaski COUNTY

Docket/Case Number: 60CV-26-8633

CASE NAME:

PLAINTIFF/
PETITIONER: Bradley Burchfield

DEFENDANT/
RESPONDENT: Alibaba Group Holding Limited, et al.

TITLE OF PLEADING OR
DOCUMENT BEING FILED
(If a multi-part file,
the designation "part _ of _"
(example, part 1 of 2)): Return Service

*Administrative Order No 2.

(g) *File Mark.* (1) There shall be a two inch (2") top margin on the first page of each document submitted for filing to accommodate the court's file mark. If the pleading or document must be filed in multi-parts because of size or for other reasons, the first page of each part must include the file name and file mark and shall clearly indicate the part number and number of parts (example, part 1 of 2).

(2) If a document is such that the first page cannot be drafted to provide sufficient space to satisfy the file-mark requirement, the document must include the uniform cover page developed by the Administrative Office of the Courts and found under Forms and Publications at www.arcourts.gov.

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Aus Merchant Services Inc,
f/k/a Alipay U.S., Inc + Alipay U.S. Escrow Inc
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange St.
Wilmington, DE 19801

9590 9402 9885 5335 7266 98

2. Article Number (Transfer from service label)

9589 0710 5270 2919 0404 71

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

RECEIVED JUL 17 2026

B. Received by (Printed Name)

C. Date of Delivery

CT CORPORATION

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

JUL 17 2026

CT CORPORATION

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☐ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ail
- ail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 — Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Aus Merchant Services Inc
f/k/a Alipay U.S. Inc + Alipay Escrow Inc
c/o The Corp. Trust Co
Corp Trust Center
1209 Orange St
Wilmington DE 19801

9590 9402 9767 5266 0385 72

2. Article Number (Transfer from service label)

9589 0710 5270 3840 1000 05

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X JUL 15 2026
☐ Agent
☐ Addressee

B. Received by (Printed Name) CT CORPORATION

C. Date of Delivery

D. Is delivery address different from item 1? RECEIVED ☐ Yes
If YES, enter delivery address below: ☐ No

15 2026

CT CORPORATION

3. Service Type
- Adult Signature
- Adult Signature Restricted Delivery
- Certified Mail®
- Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- Collect on Delivery Restricted Delivery
- Mail
- Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 — Domestic Return Receipt

THIS PAGE IS LEFT INTENTIONALLY BLANK

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2026-Jul-28 11:52:00
60CV-26-8633
C06D03 : 265 Pages

**UNIFORM COVER PAGE**

[To be used when required by Administrative Order No. 2 (g)*]

COURT: Circuit COURT OF Pulaski COUNTY

Docket/Case Number: 60-CV-26-8633

CASE NAME:

PLAINTIFF/ PETITIONER: Bradley Burchfield

DEFENDANT/ RESPONDENT: Alibaba Group Holding Limited

TITLE OF PLEADING OR DOCUMENT BEING FILED (If a multi-part file, the designation "part _ of _" (example, part 1 of 2)): Exhibits A-E
A - Federal/state Foreign Service Mailing
B-E - Current Partial Federal Record
4:26-CV-00611-DPM

*Administrative Order No 2.

(g) *File Mark.* (1) There shall be a two inch (2") top margin on the first page of each document submitted for filing to accommodate the court's file mark. If the pleading or document must be filed in multi-parts because of size or for other reasons, the first page of each part must include the file name and file mark and shall clearly indicate the part number and number of parts (example, part 1 of 2).

(2) If a document is such that the first page cannot be drafted to provide sufficient space to satisfy the file-mark requirement, the document must include the uniform cover page developed by the Administrative Office of the Courts and found under Forms and Publications at www.arcourts.gov.

Fed/State Foreign Service Mailing Exhibit A

Gmail

Burchfield Bradley <burchfieldbradley123@gmail.com>

## USPS - Click-N-Ship(R) Payment Confirmation

5 messages

**noreply-ecns@usps.com** <noreply-ecns@usps.com> Fri, Jul 24, 2026 at 2:16 PM
To: burchfieldbradley123@gmail.com

Order #: 019f958e-9026-7e40-903f-1ee179167e13

**Thank you for your order.**

Review details in USPS Click-N-Ship® shipping history.

View Order Details

**ORDER DETAILS**

| | |
|---|---|
| Account #: | 498400958 |
| Order #: | 019f958e-9026-7e40-903f-1ee179167e13 |
| Placed on: | Jul 24, 2026<br>19:16:16 PM UTC |
| Payment Method: | AMEX-5374 |
| Status: | PAID |
| Email: | burchfieldbradley123@gmail.com |

**ORDER SUMMARY**

**Item Total**

First-Class Package International Service $32.05

LS018355168US

Shipped To:

Legal Department

Zichang New Materials (Shandong) Co., Ltd.

Room 907, Building 2, Xinyuan Xin Center

No. 3 Huaxin Road, Licheng District
Jinan Shandong 250100 CN

Subtotal: $32.05

Shipping: $0.00

Total: $32.05

**NEED HELP?**
If you need help, please visit the Frequently Asked Questions.

Go to FAQ's

**SAVE TIME, CREATE LABELS**
Go to Click-N-Ship

Download **USPS Mobile®**

GET IT ON Google Play | Download on the App Store

USPS.com | Privacy Policy | Support | FAQs

This is an automated email; please do not reply to this message. This message is for the designated recipient only and may contain privileged, proprietary, or otherwise private information. If you have received it in error, please delete. Any other use of the email by you is prohibited.

Copyright © 2026 USPS. All Rights Reserved.

---

**noreply-ecns@usps.com** <noreply-ecns@usps.com> Fri, Jul 24, 2026 at 2:28 PM
To: burchfieldbradley123@gmail.com

Order #: 019f9599-64a7-7bfb-9f4c-a75b239ee114

**Thank you for your order.**

Review details in USPS Click-N-Ship® shipping history.

View Order Details

**ORDER DETAILS**

| | |
|---|---|
| Account #: | 498400958 |
| Order #: | 019f9599-64a7-7bfb-9f4c-a75b239ee114 |
| Placed on: | Jul 24, 2026<br>19:28:05 PM UTC |
| Payment Method: | AMEX-5374 |
| Status: | PAID |
| Email: | burchfieldbradley123@gmail.com |

**ORDER SUMMARY**

| **Item** | **Total** |
|---|---|
| First-Class Package International Service<br>LS018355256US<br>Shipped To:<br>LEGAL DEPARTMENT<br>Shaanxi Bloom Tech Co., Ltd.<br>Room 629, 6th Floor, Ruyi Building<br>No. 28 Liangjiapailou<br>Xi an Shaanxi 710002 CN | $32.05 |

[Quoted text hidden]
[Quoted text hidden]

---

**noreply-ecns@usps.com** <noreply-ecns@usps.com> Fri, Jul 24, 2026 at 2:35 PM
To: burchfieldbradley123@gmail.com

Order #: 019f959f-8515-723a-b9f5-691e7b625f83

**Thank you for your order.**

Review details in USPS Click-N-Ship® shipping history.

View Order Details

**ORDER DETAILS**

Account #: 498400958

Order #: 019f959f-8515-723a-b9f5-691e7b625f83

Placed on: Jul 24, 2026
19:34:47 PM UTC

Payment Method: AMEX-5374

Status: PAID

Email: burchfieldbradley123@gmail.com

**ORDER SUMMARY**

**Item Total**

First-Class Package International Service
LS018355327US
Shipped To:
ATTENTION LEGAL DEPARTMENT
AliExpress E-Commerce One Pte. Ltd.
c/o Alibaba Group Holding Ltd., Legal Department
26/F Tower One, Times Square
Hong Kong Hong Kong SAR 999077 CN

$32.05

[Quoted text hidden]
[Quoted text hidden]

---

**noreply-ecns@usps.com** <noreply-ecns@usps.com> Fri, Jul 24, 2026 at 2:41 PM
To: burchfieldbradley123@gmail.com

Order #: 019f95a5-cc0d-7111-81dc-2f549285ef0f

**Thank you for your order.**

Review details in USPS Click-N-Ship® shipping history.

View Order Details

**ORDER DETAILS**

| | |
|---|---|
| Account #: | 498400958 |
| Order #: | 019f95a5-cc0d-7111-81dc-2f549285ef0f |
| Placed on: | Jul 24, 2026<br>19:41:38 PM UTC |
| Payment Method: | AMEX-5374 |
| Status: | PAID |
| Email: | burchfieldbradley123@gmail.com |

**ORDER SUMMARY**

| **Item** | **Total** |
|---|---|
| First-Class Package International Service<br>LS018355389US<br>Shipped To:<br>LEGAL DEPARTMENT<br>Zhishang New Materials (Shandong) Co., Ltd.<br>Room 1001, Building 1<br>Hisense Intelligence Valley<br>Jinan Shandong 250100 CN | $32.05 |

[Quoted text hidden]
[Quoted text hidden]

---

**noreply-ecns@usps.com** <noreply-ecns@usps.com> Fri, Jul 24, 2026 at 2:52 PM
To: burchfieldbradley123@gmail.com

Order #: 019f95af-4996-72cd-8120-0c1d3013d7d6

**Thank you for your order.**

Review details in USPS Click-N-Ship® shipping history.

View Order Details

**ORDER DETAILS**

| | |
|---|---|
| Account #: | 498400958 |
| Order #: | 019f95af-4996-72cd-8120-0c1d3013d7d6 |
| Placed on: | Jul 24, 2026<br>19:52:00 PM UTC |
| Payment Method: | AMEX-5374 |
| Status: | PAID |
| Email: | burchfieldbradley123@gmail.com |

**ORDER SUMMARY**

| Item | Total |
|---|---|
| First-Class Package International Service<br>LS018355534US<br>Shipped To:<br>Alibaba.com Singapore E-Commerce Pte. Limited a/k/a Alibaba.com Singapore E-Commerce Private Limited<br>51 Bras Basah Road, #01-21<br>Lazada One<br>SINGAPORE 189554 SG | $31.15 |

Subtotal: $31.15

Shipping: $0.00

Total: $31.15

**NEED HELP?**

If you need help, please visit the Frequently Asked Questions.

Go to FAQ's

**SAVE TIME, CREATE LABELS**

Go to Click-N-Ship

FROM
BRADLEY BURCHFIELD
LITTLE ROCK AR 72201
UNITED STATES OF AMERICA

CP72-CUSTOMS DECLARATION

Page 2 - Not Valid As Proof-of-Payment for US Postage

Total Dimensions: L: 14.0 W: 10.0 H: 6.4

TO
LEGAL DEPARTMENT
ZICHANG NEW MATERIALS (SHANDON...
ROOM 907, BUILDING 2, XINYUAN X...
NO. 3 HUAXIN ROAD, LICHENG DIST...
JINAN 250100 SHANDONG
CHINA

PAGE 2 - CUSTOMS DECLARATION

LS 018 355 168 US

Zichang New Materials (Shandong) Co., Ltd.
中华人民共和国山东省济南市历城区
华信路3号鑫苑鑫中心
A2-907室
邮政编码：250100

FROM
BRADLEY BURCHFIELD
LITTLE ROCK AR 72201
UNITED STATES OF AMERICA

CP72-CUSTOMS DECLARATION

F

U.S. POSTAGE PAID
Click-N-Ship
USPS Ship

TO
LEGAL DEPARTMENT
ZICHANG NEW MATERIALS (SHANDON...
ROOM 907, BUILDING 2, XINYUAN X...
NO. 3 HUAXIN ROAD, LICHENG DIST...
JINAN 250100 SHANDONG
CHINA

LS 018 355 168 US

FROM
BRADLEY BURCHFIELD
LITTLE ROCK AR 72201
UNITED STATES OF AMERICA

CP72-CUSTOMS DECLARATION

Page 3 - Not Valid As Proof-of-Payment for US Postage

Total Dimensions: L: 14.0 W: 10.0 H: 6.0

TO
LEGAL DEPARTMENT
ZICHANG NEW MATERIALS (SHANDON...
ROOM 907, BUILDING 2, XINYUAN X...
NO. 3 HUAXIN ROAD, LICHENG DIST...
JINAN 250100 SHANDONG
CHINA

PAGE 3 - DISPATCH NOTE

LS 018 355 168 US

FROM
BRADLEY BURCHFIELD
5420 KAVANAUGH BLVD #7927
LITTLE ROCK AR 72207
UNITED STATES OF AMERICA

CP72-CUSTOMS DECLARATION

Page 2 - Not Valid As Proof-of-Payment for US Postage

LEGAL DOCUMENTS

TO
LEGAL DEPARTMENT
SHAANXI BLOOM TECH CO., LTD.
ROOM 629, 6TH FLOOR, RUYI BUILD...
NO. 28 LIANGJIAPAILOU LIANHU DIS...
XI AN 710002 SHAANXI
CHINA

PAGE 2 - CUSTOMS DECLARATION

LS 018 355 256 US

Shaanxi Bloom Tech Co., Ltd.
中华人民共和国陕西省西安市莲湖区
梁家牌楼28号
如意大厦6层629室
邮政编码：710002

FROM
BRADLEY BURCHFIELD
5420 KAVANAUGH BLVD #7927
LITTLE ROCK AR 72207
UNITED STATES OF AMERICA

CP72-CUSTOMS DECLARATION

F

U.S. POSTAGE PAID
Click-N-Ship
USPS Ship

LEGAL DOCUMENTS

TO
LEGAL DEPARTMENT
SHAANXI BLOOM TECH CO., LTD.
ROOM 629, 6TH FLOOR, RUYI BUILD...
NO. 28 LIANGJIAPAILOU LIANHU DIS...
XI AN 710002 SHAANXI
CHINA

LS 018 355 256 US

FROM
BRADLEY BURCHFIELD
5420 KAVANAUGH BLVD #7927
LITTLE ROCK AR 72201
UNITED STATES OF AMERICA

CP72-CUSTOMS DECLARATION

Page 3 - Not Valid As Proof-of-Payment for US Postage

TO
LEGAL DEPARTMENT
SHAANXI BLOOM TECH CO., LTD.
ROOM 629, 6TH FLOOR, RUYI BUILD...
NO. 28 LIANGJIAPAILOU LIANHU DIS...
XI AN 710002 SHAANXI
CHINA

PAGE 3 - DISPATCH NOTE

LS 018 355 256 US

FROM
BRADLEY BURCHFIELD
5420 KAVANAUGH BLVD #7927
LITTLE ROCK AR 72201
UNITED STATES OF AMERICA

CP72-CUSTOMS DECLARATION

Origin Post: US POSTAL SERVICE

Page 2 - Not Valid As Proof-of-Payment for US Postage

Detailed description of contents: LEGAL DOCUMENTS

Category of Items: Document

Total Dimensions: L: 14.0 W: 10.0 H: 0.2

Sender's Signature and Date: Bradley Burchfield

Return to Sender Instructions in case of nondelivery: Return to Sender

TO
ATTENTION LEGAL DEPARTMENT
ALIEXPRESS E-COMMERCE ONE PTE...
C/O ALIBABA GROUP HOLDING LTD...
26/F TOWER ONE, TIMES SQUAR...
HONG KONG 999077 HONG KONG S...
CHINA

PAGE 2 - CUSTOMS DECLARATION

LS 018 355 327 US

AliExpress E-Commerce One Pte. Ltd.
转交：Alibaba Group Holding Limited 法务部
中国香港特别行政区铜锣湾
勿地臣街1号
时代广场一座26楼
邮政编码：999077

FROM
BRADLEY BURCHFIELD
5420 KAVANAUGH BLVD #7927
LITTLE ROCK AR 72201
UNITED STATES OF AMERICA

CP72-CUSTOMS DECLARATION

Origin Post: US POSTAL SERVICE

F

U.S. POSTAGE PAID
Click-N-Ship
USPS Ship

Detailed description of contents: LEGAL DOCUMENTS

Category of Items: Document

Return to Sender Instructions in case of nondelivery: Return to Sender

TO
ATTENTION LEGAL DEPARTMENT
ALIEXPRESS E-COMMERCE ONE PTE...
C/O ALIBABA GROUP HOLDING LTD...
26/F TOWER ONE, TIMES SQUAR...
HONG KONG 999077 HONG KONG S...
CHINA

LS 018 355 327 US

FROM
BRADLEY BURCHFIELD
5420 KAVANAUGH BLVD #7927
LITTLE ROCK AR 72201
UNITED STATES OF AMERICA

CP72-CUSTOMS DECLARATION

Origin Post: US POSTAL SERVICE

Page 3 - Not Valid As Proof-of-Payment for US Postage

Office Of Exchange

Customs Stamp

Please affix labels here when required

Category of Items: Document

Customs Duty

Total Dimensions: L: 14.0 W: 10.0 H: 0.0

Declaration by ADDRESSEE: I have received the parcel described on this note.
ADDRESSEE'S Signature and Date

Sender's Signature and Date: Bradley Burchfield

Return to Sender Instructions in case of nondelivery: Return to Sender

TO
ATTENTION LEGAL DEPARTMENT
ALIEXPRESS E-COMMERCE ONE PTE...
C/O ALIBABA GROUP HOLDING LTD...
26/F TOWER ONE, TIMES SQUAR...
HONG KONG 999077 HONG KONG S...
CHINA

PAGE 3 - DISPATCH NOTE

LS 018 355 327 US

FROM
BRADLEY BURCHFIELD
LITTLE ROCK AR 72201
UNITED STATES OF AMERICA

CP72-CUSTOMS DECLARATION

Origin Post: US POSTAL SERVICE

Page 2 - Not Valid As Proof-of-Payment for US Postage

Detailed description of contents: LEGAL DOCUMENTS

Qty: 1

Origin Country: US

Category of Items: Merchandise

Total Dimensions: L: 14.0 W: 10.0 H: 0.5

Sender's Signature and Date: Bradley Burchfield

Return to Sender Instructions in case of nondelivery: Return to Sender

TO
LEGAL DEPARTMENT
ZHISHANG NEW MATERIALS (SHANDO...
ROOM 1001, BUILDING 1
HISENSE INTELLIGENCE VALLEY NO...
JINAN 250100 SHANDONG
CHINA

**PAGE 2 - CUSTOMS DECLARATION**

**LS 018 355 389 US**

Zhishang New Materials (Shandong) Co., Ltd.
中华人民共和国山东省济南市高新技术产业开发区
Phoeix路2116号
海信智慧谷1号楼1001室
邮政编码：250100

FROM
BRADLEY BURCHFIELD
LITTLE ROCK AR 72201
UNITED STATES OF AMERICA

CP72-CUSTOMS DECLARATION

Origin Post: US POSTAL SERVICE

F

U.S. POSTAGE PAID
Click-N-Ship
USPS Ship

Detailed description of contents: LEGAL DOCUMENTS

Qty: 1

Origin Country: US

Category of Items: Merchandise

Total Dimensions: L: 14.0 W: 10.0 H: 0.5

Sender's Signature and Date: Bradley Burchfield

Return to Sender Instructions in case of nondelivery: Return to Sender

TO
LEGAL DEPARTMENT
ZHISHANG NEW MATERIALS (SHANDO...
ROOM 1001, BUILDING 1
HISENSE INTELLIGENCE VALLEY NO...
JINAN 250100 SHANDONG
CHINA

**LS 018 355 389 US**

FROM
BRADLEY BURCHFIELD
LITTLE ROCK AR 72201
UNITED STATES OF AMERICA

CP72-CUSTOMS DECLARATION

Origin Post: US POSTAL SERVICE

Page 3 - Not Valid As Proof-of-Payment for US Postage

Office Of Exchange

Customs Stamp

Category of Items: Merchandise

Customs Duty

Total Dimensions: L: 14.0 W: 10.0 H: 0.5

Sender's Signature and Date: Bradley Burchfield

Declaration by ADDRESSEE: I have received the parcel described on this note

ADDRESSEE'S Signature and Date

Return to Sender Instructions in case of nondelivery: Return to Sender

TO
LEGAL DEPARTMENT
ZHISHANG NEW MATERIALS (SHANDO...
ROOM 1001, BUILDING 1
HISENSE INTELLIGENCE VALLEY NO...
JINAN 250100 SHANDONG
CHINA

**PAGE 3 - DISPATCH NOTE**

**LS 018 355 389 US**

FROM
BRADLEY BURCHFIELD
LITTLE ROCK AR 72201
UNITED STATES OF AMERICA

CP72-CUSTOMS DECLARATION

Page 2 - Not Valid As Proof-of-Payment for US Postage

LEGAL DOCUMENTS

Total Dimensions: L: 14.0 W: 12.0 H: 0.0

TO
ALIBABA.COM SINGAPORE E-COM...
PRIVATE LIMITED
51 BRAS BASAH ROAD, #01-21
LAZADA ONE
SINGAPORE 189554
SINGAPORE

PAGE 2 - CUSTOMS DECLARATION

LS 018 355 534 US

Alibaba.com Singapore E-Commerce Pte. Limited
又名：Alibaba.com Singapore E-Commerce Private Limited
新加坡勿拉士峇沙路51号
Lazada One, #01-21
新加坡 189554

FROM
BRADLEY BURCHFIELD
LITTLE ROCK AR 72201
UNITED STATES OF AMERICA

CP72-CUSTOMS DECLARATION

F

U.S. POSTAGE PAID
Click-N-Ship
USPS Ship

LEGAL DOCUMENTS

TO
ALIBABA.COM SINGAPORE E-COM...
PRIVATE LIMITED
51 BRAS BASAH ROAD, #01-21
LAZADA ONE
SINGAPORE 189554
SINGAPORE

LS 018 355 534 US

FROM
BRADLEY BURCHFIELD
LITTLE ROCK AR 72201
UNITED STATES OF AMERICA

CP72-CUSTOMS DECLARATION

Page 3 - Not Valid As Proof-of-Payment for US Postage

Office Of Exchange

Customs Stamp

Total Dimensions: L: 14.0 W: 12.0 H: 0.0

Return to Sender

TO
ALIBABA.COM SINGAPORE E-COM...
PRIVATE LIMITED
51 BRAS BASAH ROAD, #01-21
LAZADA ONE
SINGAPORE 189554
SINGAPORE

PAGE 3 - DISPATCH NOTE

LS 018 355 534 US

Exhib.t B

**IN THE UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF ARKANSAS**

**CENTRAL DIVISION**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
JUL 06 2026
TAMMY H. DOWNS, CLERK
By: DEP CLERK

| | |
|---|---|
| BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim, | Case No. 4:26-cv-00611-DPM |
| | JURY TRIAL DEMANDED |

Plaintiff,

v.

ALIBABA GROUP HOLDING LIMITED;
ALIBABA.COM SINGAPORE E-COMMERCE PTE. LIMITED, also known as ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED;
ALIBABA.COM U.S. LLC;
ALIBABA.COM U.S. E-COMMERCE CORP., also known as ALIBABA.COM US E-COMMERCE CORP.;
ALIBABA GROUP (U.S.) INC.;
ALIEXPRESS E-COMMERCE ONE PTE. LTD.;
AUS MERCHANT SERVICES, INC., formerly known as ALIPAY U.S., INC. and ALIPAY U.S. ESCROW, INC.;
ZICHANG NEW MATERIALS (SHANDONG) CO., LTD.;
ZHISHANG NEW MATERIALS (SHANDONG) CO., LTD. (name, translation, beneficiary, affiliate, or account variation to be clarified);
SHAANXI BLOOM TECH CO., LTD.;
JOHN DOE ALIBABA PLATFORM, PAYMENT, OWNER, OPERATOR, PARENT, SUBSIDIARY, AFFILIATE, AGENT, BUSINESS-PARTNER,

COMPLIANCE, PAYMENT-ROUTING, OR
ALTER-EGO ENTITIES 1–10, and
JOHN DOE SELLER/MERCHANT
ACCOUNT OPERATORS, SALES
AGENTS, PAYMENT BENEFICIARIES,
PAYMENT PROCESSORS, PAYMENT-
ROUTING PARTICIPANTS, CHEMICAL-
PRODUCT SOLICITORS,
IMPORT/SHIPMENT PARTICIPANTS,
AND CO-CONSPIRATORS 1–20

Defendants.

**FIRST AMENDED COMPLAINT FOR CIVIL RICO, RICO CONSPIRACY, FRAUD, BREACH OF CONTRACT, DECEPTIVE TRADE PRACTICES, UNJUST ENRICHMENT, ALTER-EGO/AGENCY RELIEF, AND RELATED RELIEF**

---

**Civil RICO Case Statement Included**

Plaintiff Bradley Burchfield, appearing pro se only as to his own individual claims and not purporting to represent any separate limited liability company unless counsel appears for that entity, files this First Amended Complaint under Federal Rules of Civil Procedure 8, 9(b), 15(a)(2), and 15(d), and alleges as follows based on personal knowledge as to his own actions and records and on information and belief as to Defendants' internal acts, agency relationships, account records, payment routing, and communications:

## I. NATURE OF THE ACTION

1. This is a civil action arising from an Alibaba.com Trade Assurance transaction, Order No. 91906090501027582, dated on or about June 1, 2021, involving a chemical product identified in the contract records as factory N-Isopropylbenzylamine, CAS 102-97-6, and related marketplace, seller, payment, customer-service, and post-order communications.

2. Plaintiff alleges that Defendants and related John Doe participants used the Alibaba.com marketplace, Trade Assurance representations, seller accounts, sales-agent communications, payment channels, platform records, and customer-service/dispute-resolution systems to induce Plaintiff to pay money for goods while failing to deliver the contracted goods, failing to honor Trade Assurance remedies, concealing or denying material records, and using coercive or misleading communications to discourage complaints, reports, or refund demands.

3. Plaintiff pleads in the alternative under Rule 8(d). Plaintiff alleges first that the contracted goods were not delivered as promised. To the extent any Defendant contends that any goods were delivered, Plaintiff alternatively alleges that the goods were not as represented, were not fit for the lawful commercial, industrial, rust-inhibitor, or similar represented use, and did not satisfy the contract, advertising, seller representations, or Trade Assurance promises.

4. Plaintiff does not admit any unlawful purpose for any purchase. Plaintiff alleges that the product was represented and sold to him as a lawful commercial or industrial product and/or rust-inhibitor product, calcium acetate, and/or acrylic nail resin. Plaintiff seeks relief for injury to his business or property arising from alleged deception, non-delivery, failed dispute resolution, wrongful retention of money, and related conduct.

5. This federal action is separate from Plaintiff's Arkansas state small-claims or district-court matter. Plaintiff has sought, or is seeking, to transfer that separate state matter from the small-claims/district-court division to the appropriate Arkansas circuit court because the amended state-court damages exceed the monetary limits of small claims or district civil court. This federal action is not a plaintiff's notice of removal under 28 U.S.C. Section 1441. The state matter is referenced only to explain related facts, including Alibaba's June 2026

Customer Service response to Plaintiff's complaint concerning the same Trade Assurance order and marketplace seller.

6. This First Amended Complaint adds and clarifies the Alibaba and payment-processing defendants identified in Plaintiff's case materials and in the June 29, 2026 Non-Prosecution Agreements with the United States Attorney's Office for the District of Rhode Island concerning Alibaba and AUS Merchant Services. Those public agreements are pleaded as supplemental facts under Rule 15(d) because they became available after the original federal complaint and bear directly on Alibaba.com platform control, the identity of relevant Alibaba.com entities, payment-processing functions, marketplace compliance failures, subject merchandise, and the reason targeted discovery is necessary.

## II. PARTIES

7. Plaintiff Bradley Burchfield is an Arkansas resident. Plaintiff alleges that he paid for, controlled, or beneficially owned the claim arising from Alibaba.com Order No. 91906090501027582 and suffered direct injury to his business or property. To the extent the Court determines that Burchfield Sales and Consulting LLC is the real party in interest, Plaintiff requests leave under Rule 17(a)(3) for ratification, joinder, substitution, or appearance of counsel for the LLC, rather than dismissal on that technical ground.

8. Defendant Alibaba Group Holding Limited is alleged to be the parent, affiliate, controlling entity, and/or alter-ego of relevant Alibaba platform operations. The Alibaba Non-Prosecution Agreement identifies Alibaba Group Holding Limited as an exempted Cayman Islands company whose ADSs are listed on the New York Stock Exchange and identifies subsidiaries, officers, directors, employees, and agents acting within the scope of employment or agency relationships as included within the term "Alibaba." Plaintiff does not

sue Alibaba Group merely because it is a passive investor or parent. Plaintiff sues based on alleged operational control, participation, benefit, agency, platform control, payment infrastructure, policy control, and discovery facts to be proven.

9. Defendant Alibaba.com Singapore E-Commerce Pte. Limited, also known in Plaintiff's records as Alibaba.com Singapore E-Commerce Private Limited, is identified by Plaintiff's transaction records as the marketplace operator connected to Order No. 919060905010275 82. The Alibaba Non-Prosecution Agreement also identifies Alibaba.com Singapore E-Commerce Pte. Limited as a Singapore-based subsidiary and as a legal entity housing Alibaba's International Commerce Business Unit, which operates Alibaba.com. Plaintiff alleges this entity operated, managed, controlled, or materially participated in the Alibaba.com marketplace, Trade Assurance contracting system, seller support, order records, customer-service functions, and dispute-resolution process relevant to this case.

10. Defendant Alibaba.com U.S. LLC is identified in the Alibaba Non-Prosecution Agreement as a Delaware company and as a legal entity that housed Alibaba's International Commerce Business Unit, which operates Alibaba.com. Plaintiff alleges this entity was involved in, benefitted from, administered, monitored, or supported United States-facing Alibaba.com marketplace operations, seller support, buyer support, payment, compliance, customer-service, or records functions. Its precise role is within Defendants' control and requires discovery.

11. Defendant Alibaba.com U.S. e-Commerce Corp., also known in Plaintiff's filings as Alibaba.com US E-Commerce Corp., is identified in the Alibaba Non-Prosecution Agreement as a legal entity that housed Alibaba's International Commerce Business Unit, which operates Alibaba.com. Plaintiff's small-claims service materials also treated

Alibaba.com US E-Commerce Corp. as a proper Alibaba.com United States entity. Plaintiff alleges this entity was involved in, benefitted from, or provided United States-facing marketplace, seller-support, buyer-support, payment, records, compliance, or dispute-resolution functions.

12. Defendant Alibaba Group (U.S.) Inc. is identified in the Alibaba Non-Prosecution Agreement as a Delaware company and subsidiary of Alibaba Group Holding Limited. Plaintiff alleges this entity may have participated in United States-facing Alibaba platform operations, compliance, payment, records, support, or agency functions relevant to United States buyers and requires discovery into its relationship to Alibaba.com, Trade Assurance, AUS Merchant Services, and Order No. 91906090501027582.

13. Defendant AliExpress E-Commerce One Pte. Ltd. is identified in the Alibaba Non-Prosecution Agreement as a Singapore-based subsidiary of Alibaba Group Holding Limited and as a legal entity housing the AliExpress platform. Plaintiff's transaction was through Alibaba.com, not AliExpress.com. Plaintiff names this entity only because the Non-Prosecution Agreement describes Alibaba Platforms and cross-platform compliance, subject-merchandise, payment, and policy failures involving Alibaba.com and AliExpress, and because discovery is needed to determine whether any shared policies, compliance controls, payment flows, seller records, or platform agents affected the transaction at issue. If discovery shows that this entity had no role, Plaintiff will amend or dismiss it as appropriate.

14. Defendant AUS Merchant Services, Inc., formerly known as Alipay U.S., Inc. and Alipay U.S. Escrow, Inc., is identified in the AUS Non-Prosecution Agreement as a Delaware company with its principal place of business at 525 Almanor Avenue, Sunnyvale, California 94085. The AUS Non-Prosecution Agreement states that AUS offered payment processing

and settlement services to Alibaba-owned e-commerce platforms, including Alibaba.com, and processed United States dollar payments on behalf of overseas merchants selling to United States-based buyers. Plaintiff alleges on information and belief that AUS, Alipay, or a related payment entity may have processed, screened, retained, monitored, or possessed records concerning Plaintiff's Alibaba.com payment or related seller/beneficiary payment flow. Its precise relationship to Plaintiff's payment must be determined through discovery.

15. Defendant Zichang New Materials (Shandong) Co., Ltd. is identified in the Trade Assurance Purchase Contract as the seller for Alibaba.com Order No. 919060905010275 82. Plaintiff alleges this seller or its agents represented the goods, induced the order, accepted or benefited from the transaction, communicated through Alibaba.com or related channels, and failed to deliver the contracted goods or provide a refund. Plaintiff states that each supplier, including this one, listed on the Alibaba site, advertised a supply rate of 20 metric tons per month each for CAS # 102-97-6.

16. Defendant Zhishang New Materials (Shandong) Co., Ltd. is identified in uploaded payment records as a beneficiary associated with a domestic wire transfer account or payment instructions. Plaintiff alleges that Zichang and Zhishang may be a spelling, translation, beneficiary, account, affiliate, or alter-ego variation related to the seller and seeks discovery to determine the correct legal identity and payment beneficiary. Plaintiff states that each supplier, including this one, listed on the Alibaba site, advertised a supply rate of 20 metric tons per month each for CAS # 102-97-6.

17. Defendant Shaanxi Bloom Tech Co., Ltd. is identified in uploaded payment records and in the bloomtechz.com email evidence. Plaintiff alleges that this entity, sales@bloomtechz.com,

Aurora Song, and/or related agents participated in chemical-product solicitations, direct WhatsApp/WeChat communications, payment routing, buyer communications, post-order communications, concealment, or related enterprise conduct. Plaintiff states that each supplier, including this one, listed on the Alibaba site, advertised a supply rate of 20 metric tons per month each for CAS # 102-97-6.

18. The John Doe Alibaba Platform owner, operator, parent, subsidiary, affiliate, agent, payment, compliance, business-partner, payment-routing, or alter-ego entities 1-10 are presently unknown entities that owned, operated, controlled, administered, profited from, provided payment or compliance services to, or exercised authority over Alibaba.com, Trade Assurance, seller accounts, buyer communications, payment records, customer-service responses, dispute records, platform-level compliance functions, or related post-order communications relevant to Plaintiff's transaction. These Doe Defendants include, without limitation, any Alibaba-related entity, affiliate, business unit, agent, service provider, payment participant, compliance participant, or alter-ego entity that operated or controlled seller or merchant accounts; communicated with Plaintiff; issued or participated in chemical-product solicitations; used WhatsApp, WeChat, email, Alibaba.com messaging, or other channels to solicit or discuss N-Isopropylbenzylamine or related chemicals; represented product properties or legality; routed or received funds; controlled beneficiary accounts; participated in the alleged non-delivery or misrepresentation; or assisted in concealing, discouraging, threatening, or obstructing complaints concerning Order No. 91906090501027582 and related post-order communications, including the January 9, 2022 email from sales@bloomtechz.com titled "Details N-Isopropylbenzylamine." For purposes of this Complaint, the term "related communications" includes, without limitation, Alibaba.com

platform messages, Trade Assurance communications, seller or sales-agent emails, payment instructions, WhatsApp or WeChat solicitations, customer-service responses, dispute-resolution communications, and the January 9, 2022 email from sales@bloomtechz.com titled "Details N-Isopropylbenzylamine."

19. The John Doe seller/merchant account operators, sales agents, payment beneficiaries, payment processors, payment-routing participants, chemical-product solicitors, import/shipment participants, and co-conspirators 1-20 are presently unknown individuals or entities that operated or controlled seller or merchant accounts; communicated with Plaintiff; issued or participated in chemical-product solicitations; used WhatsApp, WeChat, email, Alibaba.com messaging, or other channels to solicit or discuss N-Isopropylbenzylamine or related chemicals; represented product properties or legality; routed, processed, or received funds; controlled beneficiary accounts; participated in the alleged non-delivery or misrepresentation; or assisted in concealing, discouraging, threatening, or obstructing complaints concerning Order No. 91906090501027582 and related post-order communications, including the January 9, 2022 email from sales@bloomtechz.com titled "Details N-Isopropylbenzylamine." These Doe Defendants include persons or entities using or associated with names, accounts, and communications such as Sweety Yin, Aurora Song, Erica Wang, sales@bloomtechz.com, BloomTechz, and other marketplace, sales-agent, seller, payment-account, or beneficiary actors whose full legal identities, employers, agency relationships, and service addresses are presently unknown.

## III. JURISDICTION, VENUE, AND SERVICE

20. This Court has federal-question jurisdiction under 28 U.S.C. Section 1331 because Plaintiff asserts claims under the federal civil RICO statute, 18 U.S.C. Sections 1961-1968, including

Sections 1962(c) and 1962(d). This Court has civil RICO jurisdiction and remedial authority under 18 U.S.C. Section 1964(c), which authorizes a person injured in business or property by reason of a violation of 18 U.S.C. Section 1962 to sue in an appropriate United States district court for treble damages, costs, and attorneys' fees.

21. This Court has supplemental jurisdiction under 28 U.S.C. Section 1367 over related state-law claims and common-law claims because those claims arise from the same transaction, communications, payment flow, injury, and alleged enterprise conduct as the federal RICO claims.

22. This Court has personal jurisdiction over Defendants to the extent permitted by due process, Arkansas law, Federal Rule of Civil Procedure 4(k), and RICO's nationwide service provisions. Defendants and their agents allegedly directed electronic marketplace, payment, and customer-service communications into Arkansas; accepted or processed payment from an Arkansas resident; used United States payment systems and United States-facing Alibaba.com operations; and caused injury to Plaintiff's business or property in Arkansas.

23. Venue is proper in this District under 28 U.S.C. Section 1391 because a substantial part of the events, communications, payments, reliance, injury, and records occurred in Arkansas, were directed to Arkansas, or caused injury in Arkansas. Venue is also proper under RICO venue principles because the alleged enterprise conducted or affected interstate and foreign commerce through an international e-commerce marketplace, electronic mail, internet platform transmissions, United States bank accounts and/or United States payment channels, and communications between Arkansas, China, Singapore, California, New York, and other locations. One or more foreign Defendants may also be sued in any judicial district where personal jurisdiction exists.

24. Plaintiff will prepare summonses for each Defendant on the Clerk's form and file proof of service in compliance with Federal Rule of Civil Procedure 4 and Local Rule 4.1. Because this First Amended Complaint names domestic and foreign corporate defendants, including entities located in the United States, Singapore, China, Hong Kong, and other jurisdictions, Plaintiff requests leave, to the extent required, to serve each Defendant by any method authorized by Federal Rule of Civil Procedure 4(d), 4(f), 4(h), applicable treaty including the Hague Service Convention, waiver, authorized registered agent, or further order of the Court. Plaintiff does not contend that NPA counsel represents any Defendant in this civil action unless counsel enters an appearance or expressly agrees in writing to accept service.

## IV. FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### A. The Trade Assurance Transaction

25. On or about June 1, 2021, Plaintiff entered into an Alibaba.com Trade Assurance Purchase Contract for Order No. 91906090501027582. The contract records identify the seller as Zichang New Materials (Shandong) Co., Ltd., and identify the buyer/contact as Burchfield Sales and Consulting LLC / Bradley Burchfield. The product was identified as factory N-Isopropylbenzylamine, CAS 102-97-6.

26. Plaintiff alleges that he paid approximately $736.38 in connection with the order, including a contract amount reflected around $715.00 and related payment, fee, or transaction amounts reflected in his records.

27. Plaintiff alleges that he relied on Alibaba.com marketplace structure, Trade Assurance branding, seller verification or platform presentation, order records, buyer/seller records, and dispute-resolution representations in making payment.

28. Plaintiff alleges the goods were not delivered as promised and that Defendants failed to provide a timely refund, meaningful Trade Assurance remedy, or accurate logistics/dispute records. Alternatively, if any goods are alleged to have been delivered, Plaintiff alleges they were not as represented or fit for the represented lawful commercial use.

29. Plaintiff alleges that the transaction was not presented as an offline transaction with an unrelated stranger. It was presented through the unified Alibaba.com marketplace, Alibaba.com branding, Alibaba.com order system, Trade Assurance framework, customer-service channels, and dispute-resolution process.

**B. Marketplace Control and the June 2026 Alibaba Customer-Service Response**

30. Plaintiff pursued a separate Arkansas small-claims or district-court matter involving the same Alibaba.com Trade Assurance order and marketplace seller. Plaintiff is seeking to move that state matter out of the small-claims/district-court track and into the appropriate Arkansas circuit court because the state-court damages sought exceed the lower court monetary limits. That state case and this federal case are separate matters.

31. After Plaintiff pursued the state dispute or after Alibaba received notice of Plaintiff's complaint concerning the dispute, Alibaba Customer Service responded in writing from queryreply@service.alibaba.com under the subject line "Solution for Trade Assurance Order 91906090501027582."

32. In that response, Alibaba stated that it had received Plaintiff's complaint regarding the order, that the case had been escalated to Alibaba's senior team, that the order was over three years old, that logistics information could no longer be verified, and that the platform had no record of Plaintiff contacting customer service regarding the order.

33. Alibaba did not respond by saying the matter belonged only to a foreign marketplace seller and that Alibaba had no platform role. Instead, Alibaba reviewed or claimed to review the order and platform records, discussed logistics verification and customer-service records, and offered to help Plaintiff apply a $500 Alibaba credit to settle the matter.

34. Plaintiff alleges that this response is evidence supporting discovery into which Alibaba entity or entities controlled the order, platform records, seller account, Trade Assurance process, customer-service response, payment flow, and settlement-credit authority.

**C. Alibaba Buyer-Information Routing, Supplier Follow-Up, and Continued Seller Outreach**

35. Plaintiff references Exhibit A-4, the Haihang email with attached translation. The exhibit reflects a January 4, 2016 Alibaba/AliSourcePro system email from alisourcepro@service.alibaba.com to export036@haihangchem.com concerning RFQ 102-97-6. The translated email states that the supplier's quotation for RFQ 102-97-6 was successfully sent to a United States buyer, instructs the supplier to view the quotation and contact the buyer, and states that buyer contact information could be viewed in the My Alibaba backend or Procurement Direct quotation-management system.

36. Plaintiff alleges that Exhibit A-4 is evidence that Alibaba made buyer inquiry information, buyer identity information, buyer country/region information, and buyer contact information available to suppliers or supplier-side users through Alibaba's own platform systems, and that Alibaba encouraged supplier follow-up with buyers for RFQ 102-97-6. Plaintiff pleads this evidence as relevant to platform control, buyer-information routing, supplier solicitation, agency, selling or monetizing buyer information, RICO enterprise methods, and discovery into how suppliers and seller agents obtained buyer information for chemical-product inquiries.

37. Plaintiff further references Exhibit A-3, the 2025 email from Decho Chemical. In that email, a Decho Chemical sales representative states that she found Plaintiff had an inquiry for N-Isopropylbenzylamine, CAS 102-97-6, asks about Plaintiff's business regarding that chemical, and offers to provide current prices and further chemical-product sales assistance. Plaintiff alleges that Exhibit A-3 shows that the same type of selling or making available of buyer-information, buyer-information routing, supplier follow-up, or seller outreach concerning CAS 102-97-6 continued in 2025, years after the 2016 Haihang/AliSourcePro email and after Plaintiff's 2021 Trade Assurance transaction. Plaintiff pleads Exhibits A-3 and A-4 as evidence of continuity, relatedness, platform-enabled solicitation, and the need for discovery concerning Alibaba's buyer-information practices, supplier access to buyer data, and seller-agent contact methods.

**D. The January 9, 2022 BloomTechz Email and Alternative Analogue Theory**

38. On or about January 9, 2022, Plaintiff received an email from sales@bloomtechz.com under the subject "Details N-Isopropylbenzylamine." The forwarded-header evidence identifies the sender as sales@bloomtechz.com, the date as January 9, 2022 at approximately 8:47 p.m., and the recipient as Plaintiff's email address.

39. Plaintiff alleges that the email promoted "Blue Pure N iso crystal" or similar chemical products, listed prices for 100g, 500g, and 1kg quantities, solicited direct WhatsApp/WeChat contact, and discussed N-Isopropylbenzylamine, 4-Isopropylbenzylamine, 2-Amino-4-phenylbutane / 2A4P, and related products.

40. Plaintiff further alleges that the email used terms such as "effect," "diluting," "Food grade," "molecule formula," "chemical structure," and "pharmaceutical properties," and stated in

substance that from the sender's chemical-research opinion the product had the "Same Molecule Formula of C10H15N."

41. Plaintiff alleges that C10H15N is a molecular formula commonly associated with methamphetamine, and that Defendants' own marketing language therefore created a material red flag that the product was being compared to, substituted for, or promoted in relation to a controlled stimulant substance. Plaintiff does not allege that molecular formula alone conclusively proves illegality. Plaintiff pleads the statement as evidence of scienter, deceptive marketing, concealment, materiality, and the need for discovery and expert proof concerning chemical structure, intended use, represented effects, and platform compliance.

42. The same email also used coercive language, including "Each words and pictures here is real, dont talk about any fake here!" and "It must be a legal product, otherwise you have better keep silent." Plaintiff alleges that this language was intended or reasonably calculated to discourage questions, disputes, refund demands, reports to platform compliance, reports to law enforcement or regulators, or court complaints.

43. Plaintiff pleads in the alternative, subject to discovery and expert testimony, that if the product marketed as N-Isopropylbenzylamine / N ISO is found to have a substantially similar chemical structure to methamphetamine or another Schedule I or II controlled substance, and if the product was represented, intended, or marketed to have substantially similar stimulant effects or intended for human consumption, then the January 9, 2022 email supports a controlled-substance-analogue theory under 21 U.S.C. Sections 802(32)(A) and 813. Plaintiff does not admit any unlawful purchase purpose and does not seek to privately prosecute the Controlled Substances Act. Plaintiff pleads these facts to show fraudulent inducement,

scienter, concealment, intimidation, deceptive trade practices, RICO predicate context, and the need for discovery.

**E. The DOJ Non-Prosecution Agreements and Correct Alibaba/Payment Entities**

44. On June 29, 2026, the United States Attorney's Office for the District of Rhode Island entered into public Non-Prosecution Agreements with Alibaba.com U.S. LLC et al. and AUS Merchant Services, Inc. et al. The agreements became publicly available after Plaintiff's original pleading and are supplemental facts under Rule 15(d).

45. The Alibaba Non-Prosecution Agreement identifies counsel for Alibaba Group Holding Limited, Alibaba.com Singapore E-Commerce Pte. Limited, AliExpress E-Commerce One Pte. Ltd., and Alibaba.com U.S. LLC. It defines "Alibaba" to include Alibaba Group Holding Limited and subsidiaries, officers, directors, employees, and agents acting within the scope of their employment or agency relationships, including Alibaba.com Singapore E-Commerce Pte. Limited, AliExpress E-Commerce One Pte. Ltd., Alibaba Group (U.S.) Inc., and Alibaba.com U.S. LLC.

46. The Alibaba Non-Prosecution Agreement defines "ICBU" as Alibaba's International Commerce Business Unit, the business unit that operates Alibaba.com, including the legal entities that house this unit: Alibaba.com Singapore E-Commerce Pte. Limited, Alibaba.com U.S. LLC, and Alibaba.com U.S. e-Commerce Corp. This directly overlaps with Plaintiff's transaction records and the defendants previously named in this case.

47. The Alibaba Non-Prosecution Agreement's Statement of Facts states that Alibaba.com was a global business-to-business platform that connected buyers and sellers on a single platform, and that ICBU was managed by Alibaba.com Singapore E-Commerce Pte. Limited, which managed Alibaba.com, including within the United States.

48. The Statement of Facts further states that ICBU operated the Alibaba.com marketplace, offered services to independent third-party sellers including Gold and Verified supplier membership programs, and through April 2021 offered a payment service on Alibaba.com called "trade assurance" through which ICBU processed payments linked to e-commerce orders. Plaintiff's records identify his June 1, 2021 transaction as a Trade Assurance Purchase Contract, which creates a factual issue for discovery concerning the Trade Assurance system, its transition, continuation, entity ownership, and payment-processing responsibility for Plaintiff's order.

49. The Alibaba Non-Prosecution Agreement defines "Subject Merchandise" to include drugs, devices, equipment used to manufacture counterfeit drugs, controlled substances, listed chemicals or chemical mixtures, anabolic steroids, other CSA- or FDCA-regulated items, and any product whose importation into the United States is prohibited under federal law and where such importation would constitute a felony. Plaintiff alleges that this definition is relevant to platform notice, product-risk controls, chemical-product screening, seller enforcement, and the need for discovery, but Plaintiff does not allege that the NPA alone proves his specific product was illegal.

50. The Alibaba Statement of Facts states that during approximately January 2016 through December 2024, Alibaba employees raised concerns that ICBU was used to sell improper products into the United States and that compliance measures and filtering systems were inadequate. It further states that approximately 80,000 product sales on the Alibaba.Platforms involved product sales from overseas countries to the United States that lacked required approvals under FDCA and other Drug, Device, and Importation Laws, with combined gross merchandise value greater than $200 million. Plaintiff states that each supplier, including this

one, listed on the Alibaba site, advertised a supply rate of 20 metric tons per month each for CAS # 102-97-6.

51. The AUS Non-Prosecution Agreement identifies AUS Merchant Services, Inc., formerly known as Alipay U.S., Inc. and Alipay U.S. Escrow, Inc., as a Delaware company with principal place of business at 525 Almanor Avenue, Sunnyvale, California 94085. It states that AUS offered payment processing and settlement services to Alibaba-owned e-commerce platforms, including Alibaba.com, and commenced payment processing and settlement services for Alibaba.com transactions in 2020.

52. The AUS Statement of Facts states that AUS's business model included payment processing and settlement services enabling overseas sellers on Alibaba.com to accept payments from United States-based buyers; that AUS received transaction information including merchant identity, buyer identity, and product description; and that AUS accepted United States dollar-denominated payments, including wire transfers for Alibaba.com orders, into United States bank accounts.

53. The AUS Statement of Facts further states that AUS and affiliates would, in certain instances, report merchants who sold Subject Merchandise on Alibaba's e-commerce platforms, including Alibaba.com, to Alibaba rather than systematically restricting those merchants themselves; that overseas merchants used AUS payment services to facilitate the sale and importation of Subject Merchandise; and that AUS processed transactions for overseas Alibaba.com merchants and United States-based buyers involving Subject Merchandise imported into the United States in violation of law. The Alibaba NPA states that ICBU offered the Alibaba.com Trade Assurance payment service through April 2021. Plaintiff's June 1, 2021, contract, however, is titled "Trade Assurance Purchase Contract"

and contains Trade Assurance obligations. Plaintiff therefore requests discovery into whether Trade Assurance continued after April 2021 under another Alibaba entity, seller-contract structure, AUS/Alipay payment structure, successor payment process, or other Alibaba-controlled platform framework.

54. Plaintiff alleges that these public NPA facts support, at minimum, discovery and plausible pleading on the identity of proper Alibaba and payment-processing defendants, platform-level control, United States payment channels, seller monitoring, compliance failures, notice, agency, and enterprise structure. Plaintiff does not rely on the NPA as a substitute for pleading his own injury; Plaintiff alleges his injury was caused by the June 2021 Trade Assurance order, payment, and related misrepresentations and omissions. Plaintiff submitted supplemental information to the United States Attorney's Office for the District of Rhode Island on July 2, 2026, under USPS Tracking No. 9534612845466183991255, concerning alleged continuing Alibaba.com listings for chemical precursors or restricted chemical products after the public NPA resolution. Plaintiff further alleges that at least one seller listing reflected a "verified seller" history of approximately thirteen years, which, if accurate, would predate the NPA's January 2016 Relevant Period by approximately three years. Plaintiff does not allege that this evidence alone proves Plaintiff's specific order was included in the NPA-covered transactions. Plaintiff pleads it as notice, seller-vetting, compliance, continuity, and discovery evidence concerning Alibaba's platform controls, chemical-product screening, seller-verification practices, and post-NPA compliance.

## V. CIVIL RICO CASE STATEMENT

**A. RICO Persons**

55. The RICO persons include Alibaba Group Holding Limited, Alibaba.com Singapore E-Commerce Pte. Limited / Private Limited, Alibaba.com U.S. LLC, Alibaba.com U.S. e-Commerce Corp. / Alibaba.com US E-Commerce Corp., Alibaba Group (U.S.) Inc., AUS Merchant Services, Inc., Zichang New Materials (Shandong) Co., Ltd., Zhishang New Materials (Shandong) Co., Ltd., Shaanxi Bloom Tech Co., Ltd., and John Doe seller, payment, and platform participants, to the extent each conducted or participated in the conduct of the enterprise's affairs through a pattern of racketeering activity.

**B. Enterprise**

56. The enterprise is an association-in-fact enterprise consisting of Alibaba platform entities, seller entities, seller-account operators, sales agents, payment processors, payment beneficiaries, customer-service/dispute personnel, and Doe participants who functioned together through Alibaba.com marketplace systems, Trade Assurance records, payment infrastructure, seller accounts, email/direct messaging, and customer-service/dispute-resolution channels. The enterprise had a common purpose: to solicit, process, and retain payments for chemical-product transactions through a trusted marketplace and related payment systems while concealing non-delivery, nonconforming goods, improper product-risk representations, and/or unavailable remedies.

57. The enterprise is distinct from any single defendant because it is pleaded as an association-in-fact among multiple legal entities, seller accounts, sales agents, payment processors, and Doe participants. Plaintiff does not allege that a corporation is both the sole RICO person and the sole enterprise. The structure, roles, rules, seller accounts, payment channels, and customer-

service systems show relationships among participants and continuity long enough to pursue the enterprise's purposes.

**C. Conduct of the Enterprise**

58. Defendants conducted or participated in the enterprise's affairs by operating or controlling the marketplace, presenting the seller/order/Trade Assurance system, processing or facilitating payment, maintaining seller or buyer records, monitoring or failing to monitor high-risk chemical-product transactions, routing communications, responding to disputes, offering limited future credits rather than refunds, and concealing or denying material logistics or customer-service records.

**D. Predicate Acts Pleaded With Particularity**

59. Predicate Act 1 - June 1, 2021 Trade Assurance order/wire communication. Actors: Alibaba.com marketplace entities, ICBU-related entities, Zichang New Materials, seller-account operators, and Doe platform participants. Conduct: electronic Trade Assurance Purchase Contract and order record for Order No. 91906090501027582 transmitted through Alibaba.com to Plaintiff in Arkansas. Misrepresentation/Omission: represented or implied that the seller and order were legitimate, Trade Assurance-backed, deliverable, documented, and subject to meaningful refund/remedy protections. Predicate: wire fraud, 18 U.S.C. Section 1343.

60. Predicate Act 2 - June 1, 2021 payment/order processing. Actors: marketplace/payment participants, seller/beneficiary entities, AUS/Alipay or other Alibaba payment participants to be confirmed through discovery, and Doe payment processors. Conduct: electronic payment/order processing for the contract amount and alleged total paid of approximately $736.38. Misrepresentation/Omission: caused Plaintiff to part with money by representing

that payment would secure conforming goods and Trade Assurance protection while omitting material facts about delivery risk, payment routing, seller verification, product-risk controls, and the actual availability of meaningful refund remedies. Predicate: wire fraud, 18 U.S.C. Section 1343.

61. Predicate Act 3 - June 2021 and related period Alibaba monitoring / 1,000 kg order communication. Actors: seller agent/account identified as Sweety Yin and related seller, platform, or payment participants. Conduct: Alibaba.com or related message stating that Alibaba monitoring required certain high-value orders to be delivered to Alibaba for transportation and soliciting payment by bank for a 1,000 kg pro forma invoice. Misrepresentation/Omission: represented Alibaba monitoring/logistics and bank-payment procedures in a manner Plaintiff alleges was used to legitimize seller conduct, direct payment routing, and support an appearance of Alibaba platform oversight. Predicate: wire fraud, 18 U.S.C. Section 1343; evidence of enterprise structure and agency.

62. Predicate Act 4 - January 9, 2022 BloomTechz email. Actors: sales@bloomtechz.com, Aurora Song or related sales agents, Shaanxi Bloom Tech or related entities, and Doe participants. Conduct: email titled "Details N-Isopropylbenzylamine" soliciting chemical purchases, direct WhatsApp/WeChat contact, price lists, and statements regarding "effect," "diluting," "Food grade," molecule formula, chemical structure, pharmaceutical properties, and "Same Molecule Formula of C10H15N." Misrepresentation/Omission: represented legitimacy, availability, product characteristics, possible effects, formula, and legality while warning buyers not to talk about fake products and to keep silent if legality was questioned. Predicate: wire fraud, 18 U.S.C. Section 1343; alternative intimidation or witness-tampering predicate under 18 U.S.C. Section 1512 if intent, agency, and proceeding/reporting nexus are

proven; alternative controlled-substance or analogue racketeering context if expert proof and discovery establish all statutory elements.

63. Predicate Act 5 - post-order concealment and dispute communications. Actors: seller entities, Alibaba customer-service/dispute personnel, platform entities, and Doe participants. Conduct: failure to provide reliable logistics/dispute records, failure to provide refund or meaningful remedy, and June 2026 response stating logistics could no longer be verified and no customer-service contact record existed while offering a limited $500 future Alibaba credit. Misrepresentation/Omission: concealed, denied, or failed to preserve material records and offered a limited future credit rather than refunding Plaintiff's money. Predicate: scheme continuation and concealment; wire fraud context; agency and alter-ego evidence. Plaintiff does not rely on this post-payment communication alone to establish proximate cause of the initial payment injury, but it is relevant to concealment, control, and limitations/tolling issues.

64. Predicate Act 6 - 2016 Haihang/AliSourcePro buyer-information email and 2025 Decho Chemical seller outreach. Actors: Alibaba/AliSourcePro/Alibaba Procurement Direct, suppliers including Haihang and Decho Chemical, and Doe platform, supplier, seller-agent, or payment participants to be identified through discovery. Conduct: Exhibit A-4 shows a 2016 Alibaba system email stating that a supplier's quotation for RFQ 102-97-6 had been successfully sent to a United States buyer and instructing the supplier to view quotation details and buyer information through My Alibaba or Procurement Direct; Exhibit A-3 shows a 2025 seller email stating that the sender found Plaintiff had an inquiry for N-Isopropylbenzylamine, CAS 102-97-6, and soliciting business and prices for that chemical. Misrepresentation/Omission: Plaintiff alleges that Alibaba or related participants distributed, sold, transferred, monetized, or made available

buyer inquiry/contact information concerning CAS 102-97-6 to suppliers or seller agents while failing to disclose or control later chemical-product solicitation and data use. Predicate use: wire-fraud context, enterprise-method evidence, buyer-information-routing evidence, relatedness, continuity, platform control, and the need for discovery. Plaintiff does not plead these emails as stand-alone direct-payment predicates unless discovery connects them to Plaintiff's payment, injury, or the same enterprise conduct.

65. Predicate Act 7 - NPA-related similar conduct. Actors: Alibaba Platforms, ICBU, AUS, third-party sellers, and payment participants described in the public Non-Prosecution Agreements. Conduct: admitted platform and payment-processing failures involving Subject Merchandise and United States buyers during overlapping periods. Misrepresentation/Omission: platform policies, filtering, monitoring, seller enforcement, and payment monitoring were allegedly inadequate while the platforms and payment systems continued to facilitate transactions. Predicate use: the NPA facts are pleaded as supplemental evidence of enterprise structure, notice, pattern, continuity, control, and the need for discovery. Plaintiff does not plead the NPA alone as a direct predicate causing his individual payment injury unless discovery shows Plaintiff's order is within the covered or related conduct.

**E. Pattern, Continuity, and Relatedness**

66. The predicate acts were related because they involved the same or similar purposes, participants, victims, methods, and results: Alibaba.com marketplace chemical-product transactions, RFQ and buyer-information routing, supplier follow-up, seller/payment channels, buyer reliance, Trade Assurance or platform representations, direct chemical-

product solicitation, failed delivery/refund remedies, and concealment or discouragement of complaints.

67. Closed-ended and open-ended continuity are plausibly pleaded by the January 2016 Haihang/AliSourcePro email concerning RFQ 102-97-6 and buyer-information access, the June 2021 order/payment, the June 2021 1,000 kg communication, the January 2022 BloomTechz email, the April 2025 Decho Chemical email concerning Plaintiff's inquiry for N-Isopropylbenzylamine, CAS 102-97-6, post-order dispute and credit communications, and the NPA-described platform/payment conduct spanning approximately January 2016 through December 2024 for Alibaba and approximately January 2020 through December 2023 for AUS. Discovery is needed to determine the precise relationship between Plaintiff's transaction, RFQ/buyer-information routing, seller accounts, payment entities, and the NPA-described platform conduct.

**F. Injury and Proximate Cause**

68. Plaintiff suffered injury to business or property by paying money, losing the use of money, losing the benefit of the bargain, losing time and business opportunities pursuing refund/dispute relief, and incurring costs connected to the non-delivery or nonconforming transaction. Plaintiff's injury was directly caused by the alleged predicate acts because the electronic order, Trade Assurance representations, seller representations, and payment processing induced Plaintiff to part with money.

69. Plaintiff's alleged injuries are not personal-injury damages. They are business/property injuries involving payment, contract value, lost goods, business time, consequential business loss, and unjust retention of funds. Plaintiff reserves the right to prove all damages through records, testimony, discovery, expert proof, and accounting.

## VI. CLAIMS FOR RELIEF

**COUNT I - Civil RICO, 18 U.S.C. Section 1962(c)**

70. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

71. Each RICO person that conducted or participated in the enterprise's affairs through the pattern of racketeering activity described above violated 18 U.S.C. Section 1962(c).

72. The enterprise affected interstate and foreign commerce because it involved electronic communications, an international marketplace, foreign and United States entities, foreign sellers, United States buyers, United States payment channels, and international product-sale and importation representations.

73. The predicate acts include wire fraud and, in the alternative and subject to proof, intimidation/witness-tampering or controlled-substance/analogue-related racketeering context where all elements are established. The NPA facts and Exhibits A-3 and A-4 are pleaded to show platform control, notice, buyer-information routing, supplier follow-up, relationship, continuity, payment-processing structure, and the need for discovery.

74. Plaintiff was injured in his business or property by reason of the RICO violations and seeks treble damages under 18 U.S.C. Section 1964(c), costs, attorneys' fees if counsel appears or as otherwise allowed, interest, and all appropriate relief.

**COUNT II - RICO Conspiracy, 18 U.S.C. Section 1962(d)**

75. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

76. Defendants and Doe participants knowingly agreed, expressly or tacitly, that one or more enterprise participants would conduct or participate in the enterprise's affairs through the pattern of racketeering activity alleged above, including electronic marketplace

representations, seller/order/payment communications, direct chemical-product solicitations, concealment, and failure to provide promised remedies.

77. Plaintiff pleads conspiracy based on circumstantial evidence including shared marketplace systems, seller accounts, payment channels, communications, customer-service/dispute responses, NPA-described platform/payment functions, and the common objective of obtaining and retaining money from buyers through the alleged scheme.

**COUNT III - Fraud, Fraudulent Inducement, and Misrepresentation**

78. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

79. Defendants and Doe participants made or caused material misrepresentations and omissions concerning the seller, product, delivery, Trade Assurance protection, refund/dispute remedy, product legality/characteristics, payment routing, and customer-service records. Plaintiff has pleaded the who, what, when, where, and how in the RICO predicate section and incorporates those particulars here.

80. Plaintiff reasonably relied on the marketplace, Trade Assurance, seller, order, and payment representations when paying for the order. Plaintiff was damaged by non-delivery, nonconformity, loss of payment, loss of use of funds, and related business/property injury.

**COUNT IV - Breach of Contract / Trade Assurance Contract**

81. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

82. The Trade Assurance Purchase Contract and related order records created contractual duties concerning the sale, delivery, documentation, payment, and remedy of the goods. Zichang and/or the proper seller/beneficiary entity breached those duties by failing to deliver the goods or, alternatively, by providing goods not conforming to the contract and represented lawful commercial use.

83. The Alibaba platform defendants are liable to the extent they were parties to, administrators of, beneficiaries of, agents for, apparent principals of, or alter egos responsible for the Trade Assurance system, payment system, dispute process, seller-account enforcement, or contract representations at issue.

**COUNT V - Arkansas Deceptive Trade Practices / Unfair or Deceptive Practices**

84. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

85. Defendants' alleged conduct constitutes deceptive, unconscionable, false, or misleading business practices, including misrepresentations or omissions concerning product characteristics, seller legitimacy, platform backing, Trade Assurance remedies, refund availability, product-risk representations, and the actual handling of Plaintiff's dispute.

86. Plaintiff suffered actual financial loss and business/property injury proximately caused by reliance on Defendants' deceptive or unconscionable practices.

**COUNT VI - Unjust Enrichment / Money Had and Received**

87. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

88. Defendants received or benefitted from Plaintiff's payment, platform fees, seller benefits, payment-processing benefits, retained money, or unjust commercial benefit under circumstances that make it inequitable to retain those benefits without providing the goods, refund, or remedy promised.

89. Plaintiff seeks restitution, disgorgement, accounting, constructive trust, and all other equitable relief necessary to return money or benefits wrongfully retained.

**COUNT VII - Alter Ego, Agency, Apparent Authority, Instrumentality, and Equitable Proper-Party Relief**

90. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

91. Plaintiff alleges that the Alibaba-related defendants operated through overlapping platform names, entities, business units, policies, payment flows, customer-service systems, and seller-account controls. Plaintiff cannot determine the exact internal division of responsibility without discovery because Defendants control the corporate records, seller-account records, payment-processing records, Trade Assurance records, and customer-service records.

92. Plaintiff seeks leave to proceed under alter-ego, agency, apparent-authority, instrumentality, and proper-party theories and requests discovery into which Alibaba.com entity or payment entity owned, operated, controlled, participated in, or benefitted from the order, seller account, payment flow, Trade Assurance framework, customer-service response, and dispute-resolution process.

## VII. REQUEST FOR DISCOVERY AND CORPORATE DISCLOSURE

93. Plaintiff requests that each appearing nongovernmental corporate defendant file a complete Federal Rule of Civil Procedure 7.1 disclosure statement and any necessary supplemental disclosure identifying parent corporations, publicly held owners of ten percent or more, and relevant corporate relationships concerning Alibaba.com, ICBU, Trade Assurance, AUS/Alipay payment services, seller support, buyer support, customer service, and dispute resolution.

94. Plaintiff requests targeted jurisdictional, RICO-enterprise, payment, and veil-piercing discovery into: the identity and role of each Alibaba platform entity; the entity that controlled Order No. 919060905010275852; the seller-account owner/operator; payment processor and beneficiary; Trade Assurance terms and transition; communications with Zichang, Zhishang, Shaanxi Bloom Tech, and BloomTechz; records concerning Plaintiff's dispute; and whether

Plaintiff's transaction, seller, product, or payment records are within or related to any NPA-described subject-merchandise or compliance records.

## VIII. DAMAGES

95. Plaintiff seeks actual damages including at least the amounts paid for the transaction, loss of use of funds, benefit-of-the-bargain damages, consequential business/property damages, business interruption, time and expense incurred pursuing remedies, and all other recoverable damages proved at trial. Plaintiff pleads actual damages as the predicate for RICO trebling and for non-RICO relief, subject to proof and non-duplicative recovery.

96. For the federal civil RICO claims, Plaintiff seeks treble damages under 18 U.S.C. Section 1964(c). For state-law claims, Plaintiff seeks actual damages, restitution, disgorgement, statutory remedies, punitive damages where permitted, costs, attorneys' fees where permitted, prejudgment interest, post-judgment interest, and equitable relief. Plaintiff requests total monetary relief in the Prayer for Relief equal to $1,000,000,000,000.00, exclusive of costs, attorneys' fees, interest, and non-monetary equitable or declaratory relief.

## IX. NOTICE REGARDING PRIOR FEDERAL ACTION

97. Plaintiff previously filed Burchfield v. Alibaba Group et al., Civil No. 1:22-cv-01023, in the United States District Court for the Western District of Arkansas. That action was dismissed at preservice screening after the magistrate judge concluded that the earlier pleading did not adequately plead, among other things, a RICO enterprise distinct from the alleged racketeering activity, the particularized who/what/when/where/how of fraud as to most defendants, interstate wire communications, a plausible witness-tampering or retaliation predicate, and a controlled-substance predicate.

98. This Complaint is drafted to address those identified pleading defects by: (a) pleading a narrower operational association-in-fact enterprise; (b) identifying concrete marketplace, seller, sales-agent, payment, and customer-service roles; (c) pleading specific electronic communications, order records, payment records, email solicitations, and dates; (d) focusing the RICO predicates on wire fraud and only pleading witness-intimidation as an alternative predicate if discovery links the communications to Defendants; and (e) seeking damages for business or property injury, not personal injury or generalized grievances.

99. Plaintiff does not intend to relitigate claims that a court determines were finally adjudicated in the prior case. Plaintiff alleges separate, additional, and continuing facts, including the specific Trade Assurance Order No. 91906090501027582, bank/payment records, post-transaction email solicitations, post-dismissal customer-service communications, and continued refusal to provide meaningful relief. Plaintiff pleads these facts to the fullest extent not barred by claim preclusion, issue preclusion, statutes of limitation, or other defenses.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and grant the following relief:

A. Actual damages in an amount to be proven at trial, presently pleaded as the predicate actual-damages component of $200,000,000,000.00;

B. Civil RICO treble-damages recovery under 18 U.S.C. Section 1964(c), calculated from the actual-damages component in subparagraph A, in the amount of $600,000,000,000.00, inclusive of subparagraph A and not in addition to it;

C. Restitution, disgorgement, accounting, constructive trust, or money-had-and-received relief as appropriate, pleaded as alternative or non-duplicative relief and not in addition to the total monetary relief unless the law permits separate recovery;

D. Prejudgment and post-judgment interest;

E. Punitive damages only for non-RICO claims and only to the extent permitted by applicable law and proven by the evidence, in the amount of $400,000,000,000.00;

F. Costs and attorneys' fees to the extent allowed by law or if counsel appears;

G. Declaratory and equitable relief concerning alter ego, agency, apparent authority, proper-party status, and responsibility for the Alibaba.com order, payment, Trade Assurance process, seller account, customer-service response, and dispute-resolution process;

H. Leave to conduct targeted discovery concerning RICO enterprise, jurisdiction, payment, seller-account, and corporate-control issues;

I. A jury trial on all issues so triable;

J. All other relief the Court deems just and proper; and

K. For avoidance of doubt, Plaintiff requests total monetary relief equal to $1,000,000,000,000.00, exclusive of costs, attorneys' fees, prejudgment interest, post-judgment interest, and non-monetary equitable or declaratory relief, and Plaintiff does not seek duplicative recovery beyond what the law permits.

## XI. JURY DEMAND

100. Plaintiff demands a trial by jury on all issues so triable.

## XII. EXHIBIT LIST / DOCUMENTS PLAINTIFF EXPECTS TO USE

1. Exhibit A-1 - Email to NPA attorneys and reply to Solution for Trade Assurance Order 919060905010275582;

2. Exhibit A-2 - Homesite Financial Services LLC Arkansas Debt Collector License;

3. Exhibit A-3 - Email from Decho Chemical;

4. Exhibit A-4 - Haihang email with attached translation;

5. Trade Assurance Purchase Contract for Order No. 91906090501027582 (Original Exhibit A, original complaint filing);

6. Payment records, bank/account information, and beneficiary/account screenshots (Original Exhibits D and E, original complaint filing);

7. Alibaba monitoring / 1,000 kg order communications (Original Exhibit C, previous complaint filing);

8. January 9, 2022 email from sales@bloomtechz.com titled "Details N-Isopropylbenzylamine" (Original Exhibit F, original complaint filing);

9. June 18, 2026 and June 22, 2026 Alibaba Customer Service email titled "Solution for Trade Assurance Order 91906090501027582" (Original Exhibit I, original complaint filing);

10. Alibaba.com U.S. LLC et al. Non-Prosecution Agreement dated June 29, 2026 (Original Exhibit S, original complaint filing);

11. AUS Merchant Services, Inc. et al. Non-Prosecution Agreement dated June 29, 2026 (Original Exhibit R, original complaint filing);

12. Small-claims/state-court service materials and transfer/amendment filings, only for limited context concerning Alibaba's response and separate state proceedings (Original Exhibits K and L, original complaint filing);

13. USPS/service records and proof-of-service documents filed in this federal case (filed in this Court on or about June 30, 2026);

14. Any discovery produced by Defendants concerning corporate structure, payment processing, Trade Assurance, seller accounts, customer service, buyer-information routing, supplier access to buyer data, and compliance records; and

15. Plaintiff references the preceding exhibit filings for identification purposes and will refile or attach any exhibit the Court requires.

Respectfully submitted,

7/6/26

Bradley Burchfield

5420 Kavanaugh Blvd #7927

Little Rock, AR 72217

Phone: 479-223-0038

Email: burchfieldbradley123@gmail.com

## CERTIFICATE OF SERVICE

I certify that on 7/4/26, 2026, I served a true and correct copy of this First Amended Complaint and related filing papers on all parties or counsel of record by the method allowed by the Federal Rules of Civil Procedure and the Local Rules, or I will serve newly added defendants with summons and the operative pleading as required by Rule 4.

Bradley Burchfield 7/6/26

Bradley Burchfield

Exhibit A-1

Gmail

Burchfield Bradley <burchfieldbradley123@gmail.com>

## Solution for Trade Assurance Order 91906090501027582

**Burchfield Bradley** <burchfieldbradley123@gmail.com> Fri, Jul 3, 2026 at 11:04 AM
To: Alibaba Customer Service <queryreply@service.alibaba.com>, levinsc@sullcrom.com, samwilliamson@quinnemanuel.com
Bcc: [redacted]

Happy Fourth of July!

Last email.

Sweet deal ya'll made with Feds. But I think I might have ruined your black panther party. Everyone is free in China just not in the United States it seems. Ain't that something. I mean there should be a "Right to Recovery" instead of jail sentences for citizens, if a corporation can get away with this on such a large scale. You do have the highest paid attorneys there are though. I never could afford an attorney and had to do it myself.

Now I do realize that your counsel for the NPA has not appeared in these federal and state cases in Arkansas but it does say in the NPA to address them for reasons outlined in the agreement or breach thereof, as best as I can understand it. So don't consider this service of process, unless you want to, but after service in state court you did respond through this channel. That's something the court clerk was upset about as you answered me and not the court. Well here we are, and yesterday I sent off notice to the U.S. District Court of Rhode Island to show them the cases and the precursors still available on the site and that particular supplier had been registered for 13 years which is outside that agreement you made between 2016-2024. So is the Small Claims case that's now been removed to civil circuit court as of yesterday. I'll be filing this amended complaint Monday morning to align with the NPAs which have also been submitted as exhibits yesterday. Just a professional courtesy as I did send out this information to the attorneys of record on the NPAs.

No, I don't agree to a $500 payment. Please see civil relief requested in state and federal court here in Arkansas. Lots of zeroes. Will be filing amended pleadings first thing Monday morning in both courts.

I sure would like to go into the rehabilitation and recovery business with ya'll. It would be a great civil accomplishment. Makes 6 times the amount of money that regular real estate does and considering the extent of NPA disclosures it would be great Public Relations and service to the citizens of the United States and Arkansas. I've got 4 good years of experience in the recovery field and I am looking for a job. I think insurance pays 15-30k a month per person for rehabilitation. I digress.

Per your last request below you will find the account you can deposit foreign currency to directly. All substantial offers would be considered.

Beneficiary Name: Homesite Financial Services LLC
Beneficiary Account Number: [redacted]5910
IBAN Code: N/A
Routing Number (for U.S. Banks): 026009593
Sort Code (for UK Banks): N/A
BSB Code (for Australian Banks): N/A
Beneficiary Address: 1560 E SOUTHLAKE BLVD SUITE 100-222, SOUTHLAKE, TX 76092
Beneficiary Bank: BANK OF AMERICA, N.A.
Beneficiary Bank Country: UNITED STATES
Beneficiary Bank SWIFT Code (necessary) : **BOFAUS6S** — for wires sent in **foreign currency** to Bank of America in the U.S.
Intermediary Bank SWIFT Code (if applicable):
StreetName: (necessary, Maximum 70 characters) : CALIFORNIA ST
BuildingNumber: (necessary, Maximum 16 characters) : 555
PostalCode: (necessary, Maximum 16 characters) : 94104
TownName: (necessary, Maximum 35 characters) : SAN FRANCISCO
CountrySubdivision: (necessary) : CA

For U.S. Dollar wires

Formatted bank address:

**Bank of America, N.A.**
**222 Broadway**
**New York, NY 10038**
**United States**
**SWIFT: BOFAUS3N**

I did speak with the bank so there shouldn't be a problem in foreign transfers.

Bradley Burchfield

479-223-0038
burchfieldbradley123@gmail.com
burchfieldbradley123@icloud.com
ID#2503103532

On Mon, Jun 22, 2026 at 1:18 AM Alibaba Customer Service <queryreply@service.alibaba.com> wrote:

Hi Bradley,

We have received your complaint regarding to this order 91906090501027582, please rest assured that this case been escalated to our senior team.

[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]

---

**9 attachments**

**FINAL COPY_FIRST_AMENDED_FEDERAL_CIVIL_RICO_COMPLAINT_encrypted_.pdf**
361K

**MOTION_FOR_LEAVE_TO_FILE_FIRST_AMENDED_COMPLAINT_encrypted_.pdf**
258K

**PROPOSED_FIRST_AMENDED_STATE_COMPLAINT_PULASKI_CIRCUIT_BURCHFIELD.pdf**
300K

**DOC070226-07022026122951.pdf**
2904K

**DOC070226-07022026123117.pdf**
4535K

**DOC070226-07022026122515.pdf**
3868K

**AFQ59365-1648565087708.pdf**
140K

**Alibaba NPA.pdf**
994K

**AUS Merchant Services NPA.pdf**
827K

Exhibit A-2

SARAH [seal: Arkansas Department of Labor and Licensing, Governor AR] NDERS

# State of Arkansas

**Arkansas Dept of Labor and Licensing**
**Arkansas Board of Collection Agencies**
**900 West Capitol Avenue, Suite 400,**
**Little Rock, AR 72201-9709**
**PH (501) 682-4500**
**https://labor.arkansas.gov/licensing**

1560 E SOUTHLAKE BLVD STE 100-222
SOUTHLAKE, TEXAS 76092

**LICENSE #:**
AC-6846

## HOMESITE FINANCIAL SERVICES LLC

Given under our hand and seal this **1st** day of **Jul, 2026.**

This license expires: **06/30/2027.**

[signature]

SECRETARY OF LABOR AND LICENSING

Exhibit A-3



Outlook

**N-Isopropylbenzylamine Cas 102-97-6 from Emily-Decho Chemical**

From Emily <sale006@dechochem.com>
Date Wed 4/30/2025 12:36 AM
To [redacted]

Dear colleagues,

How are you?

This is Emily from Decho Chemical, which a manufacturer of chemicals.

If found that you have inquiry of N-Isopropylbenzylamine Cas 102-97-6,
how about your business with item-N-Isopropylbenzylamine Cas 102-97-6?
If still pending I would like to offer our latest prices to promote an opportunity to cooperate with each other.

And if any new inquiry of other chemicals, welcome here and I will try my best to satisfy you well with the competitive price and best quality as per your request.

Looking forward to your response, thank you in advance!

Thanks and Best Regards,
Emily Liao| Sales representative
**DECHO CHEMICAL**
Mobile/Whatsapp/Skype/Wechat: +86 187 6396 9830
E-mail: sale006@dechochem.com
Off. Add: Block D, Yinhe Building, High-tech Zone, Jinan City, Shandong Province
Plant Add: No. 97 Xiqin Industrial Park, Binzhou City, Shandong Province

Exhibit A-4

------------Original Message------------
From: alisourcepro@service.alibaba.com





To: export036@haihangchem.com
Subject: 您对United States买家的报价已经成功发送！
Date: 2016-01-04 17:20:12

---

www.Alibaba.com AliSourcePro My Alibaba | Trade Manager | 外贸圈

您的报价已成功发送至买家

此邮件为系统邮件，请勿直接答复

尊敬的中国供应商会员（Member ID: cn1515309815lfps）：

恭喜您！您针对 RFQ 102-97-6 的报价已成功发送至买家。立即 查看并联系买家

重要提醒：

为保障您和买家的信息安全，预计2015年4月20日起，阿里巴巴的官方邮件中不再包含买家联系信息，您可以在My Alibaba后台查看买家联系信息，谢谢您的支持和配合。

RFQ Subject: 102-97-6

Buyer Name: bull peterbilt

Company Name: No Company Name

Country/Region: United States

您也可以登录"My Alibaba" > "采购直达" > "报价管理"，查看报价详情信息及买家信息。

了解采购直达服务> 查看更多采购直达买家需求（RFQ） 立即登录采购直达频道>

86 185*****990 这是您在阿里巴巴上绑定的手机号码，如有缺失或错误，则该邮件并非发送自阿里巴巴。确保您的账户安全，请注意核对。

祝您早日与买家达成交易！

阿里巴巴采购直达团队

Mobile App | Customer Services | My Alibaba | Business Identity

This email was sent to

Click here to unsubscribe from Alibaba.com emails

點擊 此處 退訂來自阿里巴巴的郵件

**Your quotation has been successfully sent to the buyer**

This is a system-generated email. Please do not reply directly.

Dear China Supplier Member **Member ID: cn1515309815lfps,**

Congratulations! Your quotation for **RFQ 102-97-6** has been successfully sent to the buyer. View it now and contact the buyer.

**Important reminder:**

To protect the information security of both you and the buyer, starting around **April 20, 2015,** Alibaba's official emails will no longer include buyer contact information. You can view the buyer's contact information in the **My Alibaba** backend. Thank you for your support and cooperation.

**RFQ Subject:** 102-97-6
**Buyer Name:** bull peterbilt
**Company Name:** No Company Name
**Country/Region:** United States

You can also log in to **"My Alibaba" > "Procurement Direct" > "Quotation Management"** to view the quotation details and buyer information.

Learn more about Procurement Direct services > View more Procurement Direct buyer requests **RFQs >**
Log in to the Procurement Direct channel now >

**86 185*990** is the mobile phone number you have linked to your Alibaba account. If it is missing or incorrect, then this email was not sent by Alibaba. To ensure your account security, please verify it carefully.

We wish you success in reaching a deal with the buyer soon!

**Alibaba Procurement Direct Team**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| BRADLEY BURCHFIELD, *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>ALIBABA.COM SINGAPORE E-COMMERCE PRIVATED LIMITED, *et al.*,<br><br>Defendants. | No. 4:26-cv-00611-DPM |

**BRIEF IN SUPPORT OF DEFENDANT ALIBABA GROUP HOLDING LIMITED'S AND DEFENDANT ALIBABA.COM US E-COMMERCE CORP.'S MOTION TO DISMISS**

Pursuant to Rule 12(b)(1), Rule 12(b)(2), Rule 12(b)(5), and Rule 12(b)(6) of the Federal Rules of Civil Procedure, Alibaba Group Holding Limited ("AGHL") and Alibaba.com US E-Commerce Corp. (collectively, the "Moving Defendants") respond to Plaintiff's Complaint (ECF No. 1) by seeking dismissal of this lawsuit or, in the alternative, dismissal of all claims asserted against the Moving Defendants.[1]

**PRELIMARY STATEMENT**

This is a frivolous lawsuit by a *pro se* plaintiff—Bradley Burchfield—who is an ex-convict and frequent filer of lawsuits against various Alibaba defendants that repeatedly have been dismissed. Although Plaintiff has a pending small claims court lawsuit (seeking $5,000 in damages) involving the same 2021 transaction at issue in this case against some of the same defendants that have been sued in this case (including the Moving Defendants), he is not willing to litigate only that case. Never content with filing just one lawsuit, Plaintiff has piled on by filing

[1] That Complaint was served, or purportedly served, on the Moving Defendants. Although the docket shows that Plaintiff filed an Amended Complaint, that pleading has not been served on the Moving Defendants.

this lawsuit, which arises out of an alleged purchase or attempted purchase of a chemical product via Alibaba.com ("thc Alibaba.com Platform") from a third-party seller located in China—Zichang New Materials (shandong) Co. Ltd. ("Zichang")—that is a named defendant in this lawsuit and Plaintiff's pending small claims lawsuit.[2] Although this purchase transaction involves a contract (between Burchfield Sales and Consulting LLC ("BSAC LLC") and Zichang) and payments totaling approximately $736, this lawsuit seeks treble damages for the RICO claims "in the amount of $200,000,000,000.00." Complaint at page 15. That is not a typographical error. Plaintiff's greed knows no bounds; he seeks two hundred billion—billion, with a "B"—dollars in damages for a transaction that involved a payment by BSAC LLC of less than $750.

This lawsuit (and the small claims court case discussed above) are the latest chapters in a years-long vendetta that Plaintiff has pursued against various companies (and individuals) allegedly associated with the Alibaba.com Platform by filing frivolous *pro se* RICO lawsuits in this Court, the Western District of Arkansas, and the Northern District of California. As discussed below, Plaintiff voluntarily dismissed one of those RICO lawsuits ***with prejudice*** and acknowledged, in a filed stipulation signed by him, that dismissal is appropriate because no viable claim exists and that no compensation had been paid or promised to him.

Enough is enough; the Court should end Plaintiff's harassment campaign by granting this motion for the reasons discussed in more detail below. This lawsuit should be dismissed for lack of subject-matter jurisdiction because Plaintiff's RICO claims are wholly insubstantial and frivolous—and therefore are not "colorable" federal claims sufficient to confer subject-matter

---

[2] This brief refers to that alleged transaction as a purchase or attempted purchase because Plaintiff makes inherently contradictory, implausible allegations about a factual issue that should be squarely within his own knowledge. He alleges that the purchased product was "not delivered as promised," but he also alleges that, if the purchased product was delivered, it: (a) was "not as represented"; (b) was "not fit for the lawful commercial/rust-inhibitor use represented to Plaintiff"; and (c) "did not satisfy the contract, advertising, or Trade Assurance promises." Complaint ¶ 4.

jurisdiction on this Court (Section I below). In the alternative, this lawsuit should be dismissed for lack of subject-matter jurisdiction because Plaintiff cannot satisfy his burden of establishing that he has Article III standing to prosecute the RICO claims (Section II below). If this lawsuit is not dismissed for lack of subject-matter jurisdiction, the claims asserted against the Moving Defendants should be dismissed because Plaintiff cannot satisfy his burden of establishing that this Court has personal jurisdiction (Section III below). In addition, the claims against AGHL—a holding company that is incorporated under Cayman Islands law and has its principal place of business in the People's Republic of China—should be dismissed for insufficient service of process (Section IV below). Finally, in the alternative, the RICO claims should be dismissed for failure to state a claim upon which relief can be granted (Section V below).

## ALLEGATIONS AND PROCEDURAL HISTORY

In this lawsuit, Plaintiff sues the Moving Defendants, Zichang (the Chinese third-party seller that allegedly sold him the chemical product at issue here) and other defendants. None of the defendants are located in Arkansas. Alleging RICO claims (based on 28 U.S.C. §§ 1962(c), 1962(d)) and various state law claims, Complaint ¶¶ 67-98, Plaintiff seeks $200 billion in damages, *id.* at page 15. The Complaint specifically refers to the contract that was associated with that alleged purchase—the "Trade Assurance Purchase Contract"—and identifies Zichang as the alleged seller. *Id.* ¶ 10. The Complaint lists that Trade Assurance Purchase Contract as Exhibit A, *id.* at page 16, and Plaintiff filed that contract as an exhibit, *see* Plaintiff's Exhibit A (ECF No. 2, at pages 9-16). The Complaint also lists the receipt for that transaction as Exhibit B, Complaint at page 16, and Plaintiff filed that receipt—which shows BSAC LLC as the buyer and a payment of approximately $736—as an exhibit, *see* Plaintiff's Exhibit B (ECF No. 2, at page 17).

This is not the first or second or even third time that Plaintiff has sued AGHL and other defendants allegedly associated with the Alibaba.com Platform in a federal court. As discussed below, three RICO lawsuits that he filed to seek damages for the same purchase (or attempted purchase) at issue here were dismissed by this Court, the Western District of Arkansas, and the Northern District of California. *See infra* pages 6-8. Moreover, Plaintiff filed other federal court lawsuits that named as defendants various companies and/or individuals allegedly associated with the Alibaba.com Platform.[3]

More recently, Plaintiff filed a small claims lawsuit in the District Court of Pulaski County, Arkansas against, *inter alia*, the Moving Defendants and Zichang that seeks $5,000 in damages for the same purchase (or attempted purchase) that is at issue in this lawsuit. The Complaint in this lawsuit lists that small claims complaint as Exhibit K, Complaint at page 16, and Plaintiff filed that small claims complaint as an exhibit in this lawsuit, *see* Plaintiff's Exhibit K (ECF No. 2, at pages 56-58).

**<u>LEGAL STANDARDS GOVERNING *PRO SE* LAWSUITS</u>**

Although a *pro se* complaint should be construed liberally, it "still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). A court presiding over a *pro se* lawsuit cannot "supply additional facts" or "construct a legal theory that

---

[3] In 2020, Plaintiff filed a lawsuit in the Western District of Arkansas (*Burchfield v. Jones, et al.*, No. 6:20-cv-06121) against numerous defendants, including President Donald Trump; Jeff Bezos; and Jack Ma, who was identified in the caption of that lawsuit as "owner Alibab.com [*sic*] and alibaba express." In 2020, Plaintiff filed a lawsuit in the Western District of Arkansas (*Burchfield v. McCormick, et al.*, No. 6:20-cv-06121) against numerous defendants, including President Donald Trump; "Members of the United States Congress"; and "Jak [*sic*] Ma," who was identified in the caption of that lawsuit as "Owner of Alibaba.com and Alibabaexpress.com." In 2021, Plaintiff filed a lawsuit in this Court (*Burchfield v. Clark, et al.*, No. 4:21-cv-339-DPM) against numerous defendants, including "General Assembly of Arkansas Members"; Jeff Bezos; Jack Ma, who was identified in the caption of that lawsuit as "Owner, Alibaba.com"; and David Zhang, who was identified in that caption as "CEO, Alibaba.com." All of those cases were dismissed.

assumes facts that have not been pleaded." *Id.* (quotation marks omitted); *see Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting Stone, 364 F.3d at 914).

## ARGUMENT

### I. The Court Should Dismiss This Lawsuit For Lack Of Subject-Matter Jurisdiction Because Plaintiff's RICO Claims Are Wholly Insubstantial And Frivolous—And Therefore Are Not "Colorable" Federal Claims Sufficient To Confer Subject-Matter Jurisdiction On This Court.

As a court of limited jurisdiction, this Court is required to evaluate whether it has subject-matter jurisdiction over this lawsuit. "The requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998) (quotation marks omitted; alteration in original). As the party invoking federal subject-matter jurisdiction, Plaintiff has the burden of establishing that this Court has such jurisdiction. *See Magee v. United States*, 9 F.4th 675, 680 (8th Cir. 2021).

When a claim invokes federal question jurisdiction under 28 U.S.C. § 1331, the claim is subject to dismissal for lack of subject-matter jurisdiction if the claim "is not colorable, *i.e.*, if it is … wholly insubstantial and frivolous." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 n.10 (2006) (quotation marks omitted); *see Garcia-Aguillon v. Mukasey*, 524 F.3d 848, 850 (8th Cir. 2008) (quoting with approval *Arbaugh*, 546 U.S. at 513 n.10). As the Eighth Circuit has stated, "[t]o be colorable, a claim must have some possible validity." *Garcia-Aguillon*, 524 F.3d at 850 (quotation marks omitted).

Here, the Complaint invokes federal question jurisdiction, 28 U.S.C. § 1331, based on civil RICO claims as the sole basis for subject-matter jurisdiction, but those claims are not colorable because they do not have any possible validity, as discussed below.

**A. Res Judicata Principles Establish that Plaintiff's RICO Claims do not have Any Possible Validity and Therefore are not Colorable.**

In federal question cases, federal common law governs the issue of res judicata. *See In re Finstad*, 4 F.4th 693, 696 (8th Cir. 2021). The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as "res judicata." *See New Hampshire v. Maine*, 532 U.S. 742, 748 (2001). Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. *See id.* Issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim. *Id.* at 748-49. By precluding parties from contesting matters that parties have had a full and fair opportunity to litigate, claim preclusion and issue preclusion "protect[] their adversaries from the expense and vexation attending multiple lawsuits, conserve[] judicial resources, and foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979).

In light of Plaintiffs' prior lawsuits in three different federal courts, res judicata principles bar the RICO claims alleged in this case and lead to the conclusion that those claims are not colorable because they do not have any possible validity.

Plaintiff previously asserted civil RICO claims, which arose out of the same Alibaba.com transaction at issue in this lawsuit, in this Court in a lawsuit captioned *Burchfield v. Alibaba.com LLC, et al.*, No. 4:22-cv-00861-LPR (E.D. Ark.). The Complaint filed by Plaintiff in that case is attached as **Exhibit 1.**[4] Plaintiff voluntarily dismissed that lawsuit ***with prejudice***, in a stipulation

[4] That pleading and most of the other exhibits attached hereto are publicly available court records that the Court is permitted to consider when deciding the Rule 12(b)(1) subject-matter jurisdiction argument presented here. Moreover, when deciding the Rule 12(b)(6) argument presented below, the Court is

signed by him acknowledging that "dismissal is appropriate because no viable claim exists." February 2023 Stipulation of Dismissal (attached as **Exhibit 2**). That stipulation also stated that "no compensation in any form has passed directly or indirectly to Plaintiff and no promise, understanding, or agreement to give any such compensation has been made." *Id.*

Plaintiff also asserted civil RICO claims, which arose out of the same Alibaba.com transaction at issue in this lawsuit, in a California federal court in a lawsuit captioned *Burchfield v. Alibaba Group Holding Ltd., et al.*, No. 4:22-cv-02925-HSG (N.D. Cal.). Plaintiff filed an Amended Complaint in that case (attached as **Exhibit 3**), after 28 U.S.C. § 1915 screening of his initial complaint led the court to: (a) hold that it failed to state a RICO claim; and (b) dismiss that pleading with leave to amend. After Plaintiff filed the Amended Complaint, the court dismissed it without leave to amend, stating that the court was "convinced that [Plaintiff] cannot allege facts to cure the defects" identified by the court's order and that "granting Plaintiff further leave to amend would be futile." Order Dismissing Case (attached as **Exhibit 4**).

Plaintiff also asserted civil RICO claims, which arose out of the same Alibaba.com transaction at issue in this lawsuit, in a lawsuit that was initially filed in this Court and then transferred to the Western District of Arkansas, captioned *Burchfield v. Alibaba Group Holding Ltd., et al.*, No. 1:22-cv-01023-SOH (W.D. Ark.). The Complaint and Amended Complaint filed in that lawsuit are attached respectively as **Exhibit 5** and **Exhibit 6**. After engaging in 28 U.S.C. § 1915 screening of those pleadings, Magistrate Judge Bryant issued a report and recommendation in May 2022: (a) stating that Plaintiff was then "an inmate of the Randall L. Williams Correctional Facility of the Arkansas Division of Correction"; (b) recommending that all of his "federal claims

permitted to take judicial notice of those public court records without converting this motion into a motion for summary judgment. *See, e.g.*, *Stahl v. U.S. Dep't of Agriculture*, 327 F.3d 697, 700 (8th Cir. 2003); *State of Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F. 3d 1102, 1107 (8th Cir. 1999).

be dismissed for failure to state a claim;"; and (c) recommending that "the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith." *Burchfield v. Alibaba Group Holding Ltd.*, No. 1:22-cv-01023-SOH, 2022 WL 2082306, at *1, 10 (W.D. Ark. May 17, 2022). Judge Hickey adopted that report and recommendation in its entirety, dismissing Plaintiff's federal claims "for failure to state a claim upon which relief may be granted" and certifying "that an in forma pauperis appeal of this Order would not be taken in good faith." *Burchfield v. Alibaba Group Holding Ltd.*, No. 1:22-cv-01023-SOH, 2022 WL 2079880 (W.D. Ark. June 9, 2022).[5]

This lawsuit is a perfect example of why courts use res judicata principles to prevent the kind of duplicative, vexatious litigation abuse perpetrated by Plaintiff. After unsuccessfully pursuing these RICO claims in three prior federal lawsuits against various defendants that Plaintiffs believes are associated with the Alibaba.com Platform, he is not allowed to continue his harassment campaign by trying to take a fourth bite of the apple. Plaintiff's RICO claims are not colorable—and do not confer subject-matter jurisdiction on this Court—because res judicata principles establish that those claims do not have any possible validity.

**B. Plaintiff's RICO Claims Clearly are Barred by the Statute of Limitations, so Those Claims do not Have any Possible Validity and Therefore are not Colorable.**

Civil RICO claims are governed by a four-year statute of limitations. *See Agency Holding Corp. v. Malley-Duff & Assocs, Inc.*, 483 U.S. 143, 156 (1987). The four-year limitations period "begins when the plaintiff discovers or should have discovered the injury." *Schreier v. Drealan Kvilhaug Hoefker & Co., P.A.*, 992 F .3d 674, 681 (8th Cir. 2021).

[5] Although Plaintiff discussed that Western District of Arkansas RICO lawsuit in his Complaint, *see* Complaint ¶ 22, he failed to disclose his Northern District of California RICO lawsuit (which was dismissed by that court, as discussed above) or his Eastern District of Arkansas RICO lawsuit (which Plaintiff dismissed with prejudice, as discussed above).

Here, this Court need not speculate about when Plaintiff should have discovered the alleged injury because his prior litigation conduct reveals that he actually discovered the alleged injury more than four years before he filed this lawsuit on June 22, 2026. The Complaint (Exhibit 5) and Amended Complaint (Exhibit 6) in one of Plaintiff's prior RICO lawsuits against AGHL (discussed above) were filed respectively in February and March 2022. Thus, even giving Plaintiff every benefit of the doubt, he clearly was aware of the alleged injury by no later than February or March 2022—more than four years before he filed this lawsuit. Thus, Plaintiff's RICO claims are time-barred, which is an additional reason to conclude that they do not have any possible validity and therefore are not colorable.

* * * *

In sum, the Court should dismiss Plaintiffs' RICO claims as not colorable and therefore not sufficient to confer subject-matter jurisdiction on this Court. Moreover, without the RICO claims as a jurisdictional anchor, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims, as contemplated by 28 U.S.C. § 1367(c)(3). *See McManemy v. Tierney*, 970 F.3d 1034, 1041 (8th Cir. 2020) ("[W]hen a district court has dismissed every federal claim … judicial economy, convenience, fairness, and comity will usually point toward declining to exercise jurisdiction over the remaining state-law claims." (quotation marks omitted)).

## II. In The Alternative, The Court Should Dismiss This Lawsuit For Lack Of Subject-Matter Jurisdiction Because Plaintiff Cannot Satisfy His Burden Of Establishing That He Has Article III Standing To Prosecute The RICO Claims.

Whether a plaintiff has standing to sue for claims asserted in a federal lawsuit, as required by Article III of the Constitution, "is always an antecedent question" that affects whether the court has subject-matter jurisdiction over the lawsuit. *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 933 (8th Cir. 2012). This standing doctrine ensures "that federal courts do not exceed their

authority" and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2015). "When a plaintiff alleges injury to rights conferred by statute, two separate standing-related inquiries are implicated: whether the plaintiff has Article III standing (constitutional standing) and whether the statute gives that plaintiff authority to sue (statutory standing)." *Miller*, 688 F.3d at 934.[6] Article III standing "presents a question of justiciability; if it is lacking, a federal court has no subject-matter jurisdiction over the claim." *Miller*, 688 F.3d at 934. As the party invoking federal jurisdiction, Plaintiff has the burden of establishing Article III standing. *Id.*

Article III standing consists of three elements; "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. Plaintiff cannot satisfy those elements because the Complaint (and documents incorporated by reference therein as exhibits filed by him) establish that BSAC LLC—not Plaintiff—purchased (or attempted to purchase) the chemical product in the transaction that is at issue here. Assuming for the sake of argument that any injuries were caused that can fairly be traced to the Moving Defendants' alleged conduct challenged in the Complaint (which the Moving Defendants deny), such injuries were felt by BSAC LLC, not Plaintiff. Moreover, any such injuries would not be redressed by a favorable decision in this lawsuit because, if Plaintiff were to recover damages here, nothing would preclude BSAC LLC from subsequently seeking damages in a separate lawsuit for the same alleged conduct by the Moving Defendants at issue in the Complaint. To state the obvious, Plaintiff and BSAC

[6] The Eighth Circuit is "careful not to conflate" Article III standing and statutory standing. *Miller*, 688 F.3d at 934. Statutory standing is discussed below in Section V.A.

LLC are legally separate and distinct.[7] For example, if Plaintiff had been sued in a breach-of-contract lawsuit for failing to pay for the chemical product at issue in this lawsuit, he could have defended against that lawsuit by arguing that he is not the proper defendant—and pointing out: (a) that the "Trade Assurance Purchase Contract" shows BSAC LLC (not Plaintiff) as the buyer; and (b) that BSAC LLC (not Plaintiff) is a party to that contract. Plaintiff is not entitled to reap the benefits of doing business through a limited liability company (BSAC LLC) and then disregard the corporate form, when it suits his litigation strategy, by suing in his own individual capacity to seek damages for injuries allegedly felt by BSAC LLC, not by him.

In sum, Plaintiff's RICO claims must be dismissed for lack of Article III standing. If the Court dismisses those claims, it should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3); *McManemy*, 970 F.3d at 1041.

## III. In The Alternative, The Court Should Dismiss The Claims Asserted Against The Moving Defendants Because Plaintiff Cannot Satisfy His Burden Of Establishing That This Court Has Personal Jurisdiction.

Personal jurisdiction is "an essential element" of a court's jurisdiction, "without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quotation marks omitted). When personal jurisdiction has been controverted or denied by a defendant, the plaintiff has the burden of proving facts sufficient to establish that the court has personal jurisdiction over the defendant. *See Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004). The plaintiff's personal jurisdiction showing "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Id.* (quotation marks omitted). Personal jurisdiction must be established as to each

[7] "[A] corporation and its stockholders are separate and distinct, even though a stockholder may own the majority or all of the stock," and that rule applies "to limited liability companies and their members." *Thomason v. Randall*, No. 4:12-CV-4155, 2015 WL 247707, at *3 & n.1 (W.D. Ark. Jan. 20, 2015).

defendant, *see Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 268 (2017) (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (emphasis added)), so it is "plainly unconstitutional" for a court to "consider[] the 'defending parties' together and aggregat[e] their forum contacts in determining whether it ha[s] [personal] jurisdiction," *Rush*, 444 U.S. at 331-32.

**A. Based on Fifth Amendment Due Process Principles, this Court does not Have Personal Jurisdiction over the Moving Defendants as to Plaintiff's RICO Claims.**

A RICO lawsuit "can only be brought in a district court where personal jurisdiction is established as to at least one defendant." *Wilkins v. Trial Lawyers, Inc.*, No. Civ. 05-5118, 2006 WL 375618, at *2 (W.D. Ark. Jan. 25, 2006) (citing *PT United Can Co., Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998)). In other words, 18 U.S.C. § 1965 in its entirety "'does not provide for nationwide personal jurisdiction over every defendant in every civil RICO case, no matter where the defendant is found.'" *Peters Broadcast Engineering, Inc. v. 24 Capital, LLC*, 40 F. 4th 432, 439 (6th Cir. 2022) (quoting *PT United Can*, 138 F.3d at 71). Rather, "nationwide [personal] jurisdiction hinges on whether at least one defendant has minimum contacts with the forum state." *Id.*

There are two kinds of personal jurisdiction: "general jurisdiction" (also known as "all-purpose jurisdiction") and "specific jurisdiction" (also known as "case-linked jurisdiction"). *See Bristol-Myers Squibb*, 582 U.S. at 262; *Daimler AG v. Bauman*, 571 U.S. 117, 126-27 (2017). *Daimler* "considerably altered the analytic landscape" regarding due process limitations on a court's ability to assert general personal jurisdiction over a corporate defendant. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016) (rejecting plaintiff's reliance on pre-*Daimler* cases). After *Daimler*, due process principles preclude a court from exercising general personal jurisdiction over a corporate defendant unless it has been sued in a forum "in which the corporation is fairly regarded as at home." *Daimler*, 571 U.S. at 137. Thus, there are now two

bases for asserting general personal jurisdiction—the defendant's place of incorporation and principal place of business. *See id.*

Here, Plaintiff cannot establish that at least one defendant has minimum contacts with the forum state (Arkansas), so this Court should apply a forum-specific personal jurisdiction analysis, rather than a nationwide analysis, to the RICO claims asserted against the Moving Defendants. None of the other defendants are "at home" in Arkansas (place of incorporation or principal place of business) and, as discussed below, the Moving Defendants also are not "at home" in Arkansas, which means that this Court does not have general personal jurisdiction over at least one defendant.

The minimum contacts analysis required for specific personal jurisdiction leads to the conclusion that this Court also does not have specific personal jurisdiction over at least one defendant because Plaintiff cannot establish that any of the defendants have the requisite minimum contacts with Arkansas. The due process inquiry to determine whether a court can assert specific personal jurisdiction over a nonresident defendant "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (quotation marks omitted). Thus, for a court to assert specific personal jurisdiction consistent with due process principles, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 284. Moreover, due process limits "principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties[,]" so the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* This means that the relationship among the defendant, the forum, and the litigation "must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* (emphasis in original; quotation marks omitted). In other words, "however significant the plaintiff's contacts with the

forum may be, those contacts cannot be decisive." *Id.* at 285 (quotation marks omitted).[8] None of the other defendants themselves engaged in "suit-related conduct" that created a substantial connection with Arkansas, and, as discussed below, the same conclusion applies to the Moving Defendants, so this Court should apply a forum-specific personal jurisdiction analysis to the RICO claims asserted against the Moving Defendants.

***First***, Plaintiff cannot satisfy his burden of establishing that this Court has general personal jurisdiction over AGHL as to his RICO claims because AGHL is not "at home" in Arkansas within the meaning of the Supreme Court's *Daimler* ruling discussed above. AGHL (a non-operating holding company with numerous subsidiaries) is incorporated under the laws of the Cayman Islands and has its principal place of business in the People's Republic of China. Declaration of Jieyun Li ¶¶ 4-5 ("Li Declaration") (attached as **Exhibit 7**). AGHL is not registered to do business in Arkansas or in any other state in the United States of America. *Id.* ¶ 10. AGHL does not have any offices in Arkansas or elsewhere in the United States of America. *Id.* ¶ 11. AGHL does not have any employees in Arkansas, in the United States of America, or anywhere else in the world. *Id.* ¶ 12. Thus, Plaintiff cannot satisfy his burden of establishing that AGHL is "at home" in Arkansas, so the Court does not have general personal jurisdiction over AGHL.[9]

Plaintiff also cannot satisfy his burden of establishing that this Court has specific personal jurisdiction over AGHL as to his RICO claims because AGHL did engage in "suit-related conduct" that created a substantial connection with Arkansas within the meaning of the Supreme Court's

---

[8] The Arkansas long-arm statute extends personal jurisdiction to the maximum limits permissible by the United States Constitution, so this Court should focus on due process principles without separately analyzing whether that statute authorizes the Court to exercise personal jurisdiction. *See, e.g., Wilkins*, 2006 WL 375618, at *3 (citing *Davis v. St. Johns Health Sys., Inc.*, 71 S.W.3d 55, 58 (Ark. 2002)).

[9] The result (lack of general personal jurisdiction over AGHL) would be the same even if the Court were to apply a nationwide, rather than a forum-specific, personal jurisdiction analysis to the RICO claims asserted against AGHL. As shown above and in the Li Declaration, Plaintiff cannot satisfy his burden of establishing that AGHL is "at home" in the United States of America.

*Walden* ruling discussed above. This lawsuit involves an alleged purchase (or attempted purchase) of a product from a third-party seller via the Alibaba.com Platform. The Alibaba.com Platform is an electronic web-based platform for exchanging information and offering services online between buyers and sellers all over the world. Li Declaration ¶ 7. It is a "business-to-business" platform, which means that the platform connects potential buyers that are businesses and potential sellers that are businesses. *Id.* AGHL does not own, operate, or control the Alibaba.com Platform and does not exercise day-to-day control over the indirect subsidiary that owns and operates that platform. *Id.* ¶¶ 8-9. AGHL does not direct, target, or specifically tailor any of its business activities to or at Arkansas or the United States of America. *Id.* ¶ 10.

Moreover, AGHL did not have any communications with Plaintiff and did not have any connection to the product that he or his company (BSAC LLC) allegedly bought or tried to buy from a third-party seller.[10] AGHL does not exercise any control over any products listed for sale, or actually sold, by third-party sellers on the Alibaba.com Platform. Li Declaration ¶ 9. AGHL did not participate in or supervise any transaction where Plaintiff (or his company) allegedly bought or tried to buy a product on the Alibaba.com Platform from the third-party seller Zichang. *Id.* ¶ 13. AGHL does not represent—and is not an agent for—any buyers or any sellers in any transactions where a buyer and a seller have made contact via the Alibaba.com Platform, so AGHL was not an agent for Zichang when Plaintiff (or his company) allegedly bought or tried to buy a product from Zichang. *Id.* ¶ 14. AGHL does not have any communications with users or members of the Alibaba.com Platform, so Plaintiff could not have communicated with AGHL about any product that he (or his company) allegedly bought or tried to buy from Zichang. *Id.* ¶ 15. AGHL does not

[10] As discussed above (pages 3-4), documents filed by Plaintiff in this lawsuit show that the transaction at issue here actually was an alleged purchase (or attempted purchase) by BSAC LLC, not by Plaintiff himself. If the Court reaches the personal jurisdiction arguments, it can rule on them without focusing on that distinction.

send advertisements, marketing e-mails, or other messages—or control or have any input into the content of advertisements, marketing e-mails, or other messages—that may be sent or otherwise transmitted to potential buyers of products that sellers make available for purchase on the Alibaba.com Platform. *Id.* ¶ 16. Therefore, neither Plaintiff nor his company could have received: (a) any advertisements, marketing e-mails, or other messages from AGHL; or (b) any advertisements, marketing e-mails, or messages where AGHL had any control over their content. *Id.* AGHL does not introduce potential buyers to sellers or otherwise play any role in creating any contacts between sellers and potential buyers, so AGHL could not have introduced Plaintiff (or his company) to Zichang or played any role in creating any contacts between him (or his company) and Zichang. *Id.* ¶ 17. AGHL plays no role in the sale process involving a product offered for sale by a seller to a buyer via the Alibaba.com Platform, so AGHL could not have played any role in the sale process involving any purchase (or attempted purchase) by Plaintiff (or his company) of a product offered for sale by Zichang. *Id.* ¶ 18. AGHL plays no role in manufacturing any product offered for sale by a seller to a buyer via the Alibaba.com Platform, so AGHL could not have played any role in manufacturing the product that Plaintiff (or his company) allegedly bought or tried to buy from Zichang. *Id.* ¶ 19. AGHL plays no role in the shipping and distribution process for any product offered for sale by a seller to a buyer via the Alibaba.com Platform, so AGHL could not have played any role in the shipping or distribution process for the product that Mr. Burchfield (or his company) allegedly bought or tried to buy from Zichang. *Id.* ¶ 20. AGHL does not take possession or control of, and does not take title to, products offered for sale on the Alibaba.com Platform, so AGHL could not have taken possession or control of, and could not have taken title to, the product that Plaintiff (or his company) allegedly bought or tried to buy from

Zichang. *Id.* ¶ 21. Zichang has never been an agent for AGHL, and AGHL has never stated or done anything to suggest, or create the appearance, that Zichang is AGHL's agent. *Id.* ¶ 22.

In sum, Plaintiff cannot satisfy his burden of establishing that AGHL engaged in any suit-related conduct that created a substantial connection with Arkansas, so this Court does not have specific personal jurisdiction over AGHL.[11]

***Second***, Plaintiff cannot satisfy his burden of establishing that this Court has general personal jurisdiction over Alibaba.com US E-Commerce Corp. as to his RICO claims because AGHL is not "at home" in Arkansas within the meaning of Supreme Court's *Daimler* ruling. Alibaba US E-Commerce Corp. is incorporated under the laws of the State of Delaware and has its principal place of business in the State of New York. Declaration of Xingjian Zhao ¶ 4 ("Zhao Declaration") (attached as **Exhibit 8**). Alibaba US E-Commerce Corp. is not registered to do business in Arkansas. *Id.* ¶ 7. Alibaba US E-Commerce Corp. has no office in Arkansas and has no employee in Arkansas. *Id.* ¶¶ 8-9. Therefore, Plaintiff cannot satisfy his burden of establishing that Alibaba US E-Commerce Corp. is "at home" in Arkansas, which means that the Court does not have general personal jurisdiction over Alibaba US E-Commerce Corp.

Plaintiff also cannot satisfy his burden of establishing that this Court has specific personal jurisdiction over Alibaba US E-Commerce Corp. as to his RICO claims because Alibaba US E-Commerce Corp. did engage in "suit-related conduct" that created a substantial connection with Arkansas within the meaning of the Supreme Court's ***Walden*** ruling. Alibaba US E-Commerce Corp. does not own, operate, or control the Alibaba.com Platform and does not exercise any control

---

[11] That result (lack of specific personal jurisdiction over AGHL) would be the same even if the Court were to apply a nationwide, rather than a forum-specific, personal jurisdiction analysis to the RICO claims asserted against AGHL. As shown above and in the Li Declaration, Plaintiff cannot satisfy his burden of establishing that AGHL engaged in suit-related conduct that created a substantial connection with the United States of America.

over any products listed for sale, or actually sold, by third-party sellers on that platform. Zhao Declaration ¶ 6. Alibaba US E-Commerce Corp. does not direct, target, or specifically tailor any of its business activities to or at Arkansas. *Id.* ¶ 7.

Furthermore, as shown below, Alibaba US E-Commerce Corp. did not have any communications with Plaintiff and did not have any connection to the product that he (or his company) allegedly bought or tried to buy from the third-party seller Zichang. Alibaba US E-Commerce Corp. did not participate in or supervise any transaction where Plaintiff (or his company) allegedly bought or tried to buy a product on the Alibaba.com Platform from Zichang. Zhao Declaration ¶ 10. Alibaba US E-Commerce Corp. does not represent—and is not an agent for—any buyers or any sellers in any transactions where a buyer and a seller have made contact via the Alibaba.com Platform, so Alibaba US E-Commerce Corp. was not an agent for Zichang when Plaintiff (or his company) allegedly bought or tried to buy a product from Zichang. *Id.* ¶ 11. Alibaba US E-Commerce Corp. does not have any communications with users or members of the Alibaba.com Platform, so Plaintiff could not have communicated with Alibaba US E-Commerce Corp. about any product that he (or his company) allegedly bought or tried to buy from Zichang. *Id.* ¶ 12. Alibaba US E-Commerce Corp. does not send advertisements, marketing e-mails, or other messages—or control or have any input into the content of advertisements, marketing e-mails, or other messages—that may be sent or otherwise transmitted to potential buyers of products that sellers make available for purchase on the Alibaba.com Platform. *Id.* ¶ 13. Therefore, neither Plaintiff nor his company could have received: (a) any advertisements, marketing e-mails, or other messages from Alibaba US E-Commerce Corp.; or (b) any advertisements, marketing e-mails, or messages where Alibaba US E-Commerce Corp. had any control over their content. *Id.* Alibaba US E-Commerce Corp. does not introduce potential buyers to sellers or otherwise play any role in

creating any contacts between sellers and potential buyers, so Alibaba US E-Commerce Corp. could not have introduced Plaintiff (or his company) to Zichang or played any role in creating any contacts between him (or his company) and Zichang. *Id.* ¶ 14. Alibaba US E-Commerce Corp. plays no role in the sale process involving a product offered for sale by a seller to a buyer via the Alibaba.com Platform, so Alibaba US E-Commerce Corp. could not have played any role in the sale process involving any purchase (or attempted purchase) by Plaintiff (or his company) of a product offered for sale by Zichang. *Id.* ¶ 15. Alibaba US E-Commerce Corp. plays no role in manufacturing any product offered for sale by a seller to a buyer via the Alibaba.com Platform, so Alibaba US E-Commerce Corp. could not have played any role in manufacturing the product that Plaintiff (or his company) allegedly bought or tried to buy from Zichang. *Id.* ¶ 16. Alibaba US E-Commerce Corp. plays no role in the shipping and distribution process for any product offered for sale by a seller to a buyer via the Alibaba.com Platform, so Alibaba US E-Commerce Corp. could not have played any role in the shipping or distribution process for the product that Plaintiff (or his company) allegedly bought or tried to buy from Zichang. *Id.* ¶ 17. Alibaba US E-Commerce Corp. does not take possession or control of, and does not take title to, products offered for sale on the Alibaba.com Platform, so Alibaba US E-Commerce Corp. could not have taken possession or control of, and could not have taken title to, the product that Plaintiff (or his company) allegedly bought or tried to buy from Zichang. *Id.* ¶ 18. Zichang has never been an agent for Alibaba US E-Commerce Corp., and Alibaba US E-Commerce Corp. has never stated or done anything to suggest, or create the appearance, that Zichang is Alibaba US E-Commerce Corp.'s agent. *Id.* ¶ 19.

In sum, Plaintiff cannot satisfy his burden of establishing that Alibaba US E-Commerce Corp. engaged in any suit-related conduct that created a substantial connection with Arkansas, so this Court does not have specific personal jurisdiction over Alibaba US E-Commerce Corp.

**B. Based on Fourteenth Amendment Due Process Principles, this Court does not Have Personal Jurisdiction over the Moving Defendants as to Plaintiff's State Law Claims.**

A Fourteenth Amendment due process analysis leads to the conclusion that Plaintiff cannot satisfy his burden of establishing that this Court has personal jurisdiction over the state law claims asserted against the Moving Defendants.

For the reasons set forth above and in the Li Declaration and the Zhao Declaration, AGHL and Alibaba US E-Commerce Corp. are not at home in Arkansas within the meaning of the Supreme Court's *Daimler* ruling. Therefore, this Court does not have general personal jurisdiction over the Moving Defendants.

Likewise, for the reasons set forth above and in the Li Declaration and the Zhao Declaration, AGHL and Alibaba US E-Commerce Corp. did not engage in any suit-related conduct that created a substantial connection with Arkansas. Thus, this Court does not have specific personal jurisdiction over the Moving Defendants.

**IV. In the Alternative, The Court Should Dismiss The Claims Asserted Against AGHL For Insufficient Service Of Process.**

Before a federal court is allowed to exercise personal jurisdiction over a defendant, the requirement of service of summons must be satisfied. *Omni Capital Int'l, Ltd. v Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987), *superseded in part by statute on other grounds as stated in Cox v. CoinMarketCap OPCO, LLC*, 112 F.4th 822, 832 (9th Cir. 2024). In other words, "[i]f a defendant is improperly served, a federal court lacks jurisdiction over the defendant." *Printed Media Servs. Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993). As the Supreme Court

explained: "[T]here must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant." *Omni Capital Int'l*, 484 U.S. at 104. A plaintiff has the burden of proving proper service once it is contested. *See, e.g.*, *Brinkley v. City of Helena–West Helena, Arkansas*, No. 2:11-cv-00207-SWW, 2012 WL 5207595, at *3 (E.D. Ark. Oct. 22, 2012) (citing cases).

Here, Plaintiff attempted to serve AGHL by sending the Complaint and Summons to Corporation Service Company ("CSC") in New York, New York, but that is not proper service of process on AGHL for this lawsuit. Although CSC serves as AGHL's registered agent for service of process in the United States of America, CSC's authorization is strictly limited. Li Declaration ¶ 23. CSC does not have the legal authority accept service of general civil lawsuits against AGHL. *Id.* Therefore, Plaintiff is not allowed to effect service of process on AGHL by sending service-of-process papers to CSC.

When ruling on similar service-of-process issues, federal courts repeatedly have acknowledged and applied limitations that restricted the scope of a registered agent's authority to accept service of process. *See, e.g.*, *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 514-15 (D.C. Cir. 2002), *overruled on other grounds by Erwin-Simpson v. AirAsia Berhad*, 985 F. 3d 883 (D.C. Cir. 2021); *King v. CAE Inc.*, No. CV 12-00441-PHX-FJM, 2012 WL 3127437 (D. Ariz. July 16, 2012); *Stormhale, Inc. v. Baidu.com, Inc.*, 675 F. Supp. 2d 373, 375 (S.D.N.Y. 2009). This Court should do so as well by holding that Plaintiff's purported service of process on CSC was not within the scope of CSC's limited authority and dismissing all claims asserted against AGHL because Plaintiff failed to effect service of process on AGHL.

## V. In The Alternative, The Court Should Dismiss The RICO Claims Asserted Against The Moving Defendants For Failure To State A Claim Upon Which Relief Can Be Granted.

"The major purpose behind RICO is to curb the infiltration of legitimate business organizations by racketeers," *Sinclair v. Hawke*, 314 F.3d 934, 943 (8th Cir. 2002) (quotation marks omitted)), and "the Eighth Circuit has rejected attempts to convert ordinary civil disputes into RICO cases," *Rolfes v. MBNA America Bank N.A.*, 416 F. Supp. 2d 745 (D.S.D. 2005) (citing cases) (dismissing RICO claims and stating that they are "[n]o more than garden variety fraud claims"). Here, Plaintiff is trying to use the RICO sledgehammer to seek $200 billion in damages for what is merely an ordinary civil dispute over an alleged purchase of a chemical product by a buyer (BSAC LLC), which paid approximately $738, *see* Plaintiff's Exhibit A (ECF No. 2, at pages 9-16); Plaintiff's Exhibit B (ECF No. 2, at page 17), from a third-party seller in a transaction that allegedly resulted in the product not being delivered to the buyer—or allegedly being delivered but not working as expected.

"[P]laintiffs wielding RICO almost always miss the mark," so "courts have expressed skepticism toward civil RICO claims." *Sky Med. Supply, Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 220-21 (E.D.N.Y. 2014) (citation omitted). For several reasons, this Court should not only be skeptical of Plaintiff's RICO claims but should dismiss them as fundamentally flawed.

### A. The RICO Claims Fail Because Plaintiff does not have Statutory Standing to Pursue them.

As discussed above (Section II), Article III standing and statutory standing are different concepts that should not be conflated. According to the Eighth Circuit, the issue of statutory standing "has nothing to do with whether there is a case or controversy under Article III." *Miller*, 688 F.3d at 934 (quotation marks omitted). "Statutory standing is simply statutory interpretation:

the question it asks is whether Congress … has accorded *this* injured plaintiff the right to sue the defendant to redress his injury." *Id.* (emphasis in original).

Thus, even if the Court declines to accept the Article III standing argument asserted above in Section II, the Court can, and should, rule for the Moving Defendants on the separate issue of whether Plaintiff has statutory standing to assert the RICO claims at issue here. Federal courts deciding similar standing issues in civil RICO lawsuits repeatedly have held that, when a company has been injured by conduct that is prohibited by the RICO statute, an owner of that company—even if he is a sole shareholder or has a large ownership interest in the company—does not have statutory standing to assert a RICO claim because the company was directly injured, so it has standing to file a RICO lawsuit, but the owner does not because his injury was derivative and/or indirect. *See, e.g.*, *Warren v. Manufacturers Nat'l Bank of Detroit*, 759 F.2d 542 (6th Cir. 1985) (holding that sole shareholder of corporation lacked standing to assert RICO lawsuit); *Barry v. Curtin*, 993 F. Supp. 2d 347 (E.D.N.Y. 2014) (holding that member of limited liability company lacked standing to assert RICO lawsuit); *Irish v. Ferguson*, 970 F. Supp. 2d 317, 348-51 (M.D. Pa. 2013) (same). In other words, "[i]t is well-settled that shareholders, officers, and employees lack standing to bring a civil RICO claim, in their individual capacities, for injuries to the corporation," *Barry*, 993 F. Supp. 2d at 352 (quotation marks omitted; citing cases), and that rule applies not only to large, publicly traded corporations but also "to closely held corporations," *id.*

Those legal principles lead inexorably to the conclusion that Plaintiff does not have statutory standing to assert the RICO claims alleged in this lawsuit because the direct injury—if any—was felt by BSAC LLC, not by Plaintiff. Therefore, the Court should dismiss the RICO claims for lack of statutory standing.

**B. The RICO Claims are Barred by Res Judicata Principles.**

As discussed above (Section I.A.), Plaintiff's prior RICO lawsuits involving the same allegations asserted here and res judicata principles lead to the conclusion that the RICO claims alleged in this lawsuit do not have any possible validity and therefore are not colorable. However, even if the Court declines to accept that argument, such a ruling does not preclude the Court from accepting the Rule 12(b)(6) argument asserted in the alternative here because this argument involves a more lenient standard than establishing that a federal claim does not have any possible validity and is not colorable, for purposes of determining whether it confers subject-matter jurisdiction on a federal court.

Plaintiff's prior RICO lawsuits against various Alibaba defendants—including the federal case that was dismissed with prejudice after Plaintiff stipulated that "dismissal is appropriate because no viable claim exists" and that no compensation was paid or promised to him (Exhibit 2)—preclude this lawsuit based on res judicata principles. Plaintiff apparently thinks that he is allowed to clog up court dockets by vexatiously relitigating claims *ad nauseam* in multiple, duplicative lawsuits against various defendants that he believes are associated with the Alibaba.com Platform, but that is not correct. Res judicata principles give courts tools to protect defendants from "the expense and vexation attending multiple lawsuits, conserve[] judicial resources, and foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana*, 440 U.S. at 153-54. Plaintiff had full and fair opportunities to litigate his RICO claims against various Alibaba defendants in his prior lawsuits. If he believed that those RICO claims had merit, he could have forged ahead with them, instead of dismissing them with prejudice (in one case), and he could have sought appellate review (in the cases where federal district courts dismissed those claims). However, Plaintiff is not allowed to do what he is trying to

do here—namely, evade the results of those prior RICO lawsuits by filing a "new" duplicative lawsuit that seeks to relitigate the previously dismissed RICO claims. The Court should dismiss his RICO claims based on res judicata principles.

**C. The RICO Claims are Barred by the Applicable Statute of Limitations.**

As discussed above (Section I.B.), Plaintiff's RICO claims do not have any possible validity and are not colorable because they clearly are barred by the four-year statute of limitations. But if the Court were to reject that argument, that ruling would not preclude the Court from accepting the Rule 12(b)(6) argument, asserted in the alternative here, because this argument involves a more lenient standard than establishing that a claim does not have any possible validity and is not colorable, for purposes of determining whether it confers subject-matter jurisdiction on a federal court.

On this record, undisputed documents—Plaintiff's own pleadings filed in a prior RICO lawsuit against AGHL in February and March 2022 (Exhibit 5 and Exhibit 6, respectively)—establish that he was aware of the injury alleged in this lawsuit by no later than February or March 2022. Therefore, even if the Court gives Plaintiff the benefit of the doubt required by Rule 12(b)(6), the only reasonable, appropriate conclusion is that the RICO claims alleged here are untimely because he filed them in June 2026—well more than four years after he was aware of the alleged injury. For this reason as well, the Court should dismiss Plaintiff's RICO claims.

Finally, if the Court dismisses the RICO claims based on one or more of the Rule 12(b)(6) arguments set forth above, it should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3); *McManemy*, 970 F.3d at 1041.[12]

[12] Plaintiff's RICO claims are flawed for various other reasons—including but not limited to the flaws that led to the dismissal of Plaintiff's Western District of Arkansas RICO lawsuit against AGHL and other defendants, *see Burchfield*, 2022 WL 2082306—but there is no need to belabor the point here by making

## CONCLUSION

For the foregoing reasons, the Court should grant this motion and: (a) dismiss this lawsuit for lack of subject-matter jurisdiction; (b) dismiss all claims asserted against the Moving Defendants for lack of personal jurisdiction; or (c) dismiss the claims asserted against AGHL for insufficient service of process. In the alternative, if the Court declines to issue those dismissal rulings based on lack of subject-matter jurisdiction or lack of personal jurisdiction, the Court should dismiss the Moving Defendants from this lawsuit by dismissing the RICO claims asserted against them for failure to state a claim upon which relief can be granted and declining to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to Section 1367(c)(3).

Dated: July 20, 2026

Respectfully submitted,

BALANCE LAW FIRM

By: B. Robert Liu

B. Robert Liu, Esq. (NY Bar: 5697552)
1 World Trade Center, Suite 8500
New York, NY 10007
(212) 741-8080
robert.liu@balancelawfirm.com

*Attorneys for Defendants Alibaba Group Holding Limited and Alibaba.com US E-Commerce Corp.*

---

this brief longer than necessary. The Moving Defendants reserve the right to assert other arguments later (if the Court does not grant this motion) to challenge Plaintiff's RICO claims and/or his state law claims.

Exhibit D

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

Case No. 4:26-cv-00611-DPM

v.

JURY TRIAL DEMANDED

ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, et al.,

Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOVING DEFENDANTS' MOTION TO DISMISS**
**ECF NO. 16**

Plaintiff Bradley Burchfield responds to the Motion to Dismiss filed by Alibaba Group Holding Limited ("AGHL") and Alibaba.com US E-Commerce Corp. (collectively, the "Moving Defendants"). The motion should be denied without prejudice as moot because it expressly responds to the original Complaint, ECF No. 1, after the First Amended Complaint, ECF No. 11, became the operative pleading. Plaintiff alternatively requests denial, limited jurisdictional and alter-ego discovery, and leave to cure any real-party-in-interest or pleading defect rather than dismissal with prejudice.

**1. Superseded pleading.** The supporting brief says the Moving Defendants "respond to Plaintiff's Complaint (ECF No. 1)" and acknowledges that an amended complaint had been filed. ECF No. 17 at 1 & n.1. This Court already ruled that Plaintiff amended as a matter of course. ECF No. 14 at 1. The amended complaint therefore superseded ECF No. 1. Pure Country, Inc. v. Sigma Chi Fraternity, 312 F.3d 952, 956 (8th Cir. 2002).

**2. Federal-question jurisdiction.** The pleaded civil-RICO counts arise under federal law. Claim preclusion, limitations, and statutory standing are ordinarily merits questions. Whatever their ultimate merit, the detailed allegations are not so devoid of possible validity that the Court lacks power under 28 U.S.C. § 1331.

**3. Standing and proper party.** ECF No. 1 alleges that Plaintiff acted individually and as direct purchaser/beneficial owner and suffered direct business-or-property loss. Plaintiff's accompanying declaration states that he personally provided the entire $736.38 payment, the LLC had no bank account, and he was its sole member/owner and only employee. Burchfield Decl. ¶¶ 3–7 (Ex. S). Those facts support a direct personal economic injury. The contract's reference to Burchfield Sales and Consulting LLC may still present a real-party-in-interest issue. If the Court finds that the LLC owns any portion of a claim, Rule 17(a)(3) requires a reasonable opportunity for ratification, joinder, or substitution before dismissal. Plaintiff does not purport to represent the LLC pro se or ask the Court to ignore its separate existence.

**4. Personal jurisdiction requires a developed record.** The Moving Defendants submitted declarations denying platform, communication, payment, and operational roles. The June 29, 2026 DOJ agreements and statements of facts identify ICBU as the business unit operating Alibaba.com, identify both moving defendants in the relevant corporate structure, and describe platform, seller-control, messaging, and payment functions. Those official records do not decide liability or jurisdiction, but they create a concrete factual dispute warranting targeted discovery before dismissal.

**5. Service.** Only AGHL raises Rule 12(b)(5). Plaintiff requests a court-ordered method under Rules 4(h)(2) and 4(f)(3), including service of the summons and operative First Amended Complaint on AGHL through the counsel who appeared for AGHL. Plaintiff has filed a separate motion for that relief. Rule 4(m)'s 90-day limit does not apply to service in a foreign country.

**6. The motion does not present claim-specific Rule 12(b)(6) grounds against Counts III–VII.** It challenges personal jurisdiction as to all claims and asks the Court to decline supplemental jurisdiction if both RICO counts are dismissed. But its claim-specific Rule 12(b)(6) analysis addresses only RICO standing, claim preclusion, and limitations. It does not separately test the pleaded elements of fraud, contract/Trade Assurance, deceptive practices, unjust enrichment, or declaratory/injunctive relief. ECF No. 17 at 22–25 & n.12.

**7. Background labels do not decide a Rule 12 motion.** The defense brief's description of Plaintiff as an "ex-convict" is not an element of any claim or defense. Axis's November 21, 2025 signed notice states that Axis would take Plaintiff's oral and videotaped deposition in CHS Properties, LLC v. Axis Surplus Insurance Company, No. 6:25-cv-06020 (W.D. Ark.), on December 15, 2025. Ex. R. A docket screenshot shows Axis's notice as entry 39. Ex. G. A same-day invoice from Burchfield Sales & Consulting LLC to National Insurance Advocates identifies 4.5 hours of "expert witness testimony" concerning CHS Properties LLC. Ex. H (payment information redacted). Plaintiff therefore states that he served and was deposed as an expert witness in that matter. The notice proves the deposition was formally noticed; it does not itself describe Plaintiff as an expert or show a judicial qualification ruling. This background is offered only to correct the one-sided characterization; it does not resolve standing, jurisdiction, preclusion, limitations, or pleading sufficiency.

For these reasons and those in Plaintiff's accompanying brief, Plaintiff asks the Court to deny ECF No. 16 without prejudice as moot; alternatively deny it on the present record; defer the Rule 12(b)(2) and alter-ego issues for limited discovery; permit court-ordered service on AGHL; and allow a reasonable opportunity to amend or cure before any dismissal with prejudice.

Respectfully submitted,

**/s/ Bradley Burchfield**
Bradley Burchfield, Plaintiff Pro Se
5420 Kavanaugh Blvd #7927
Little Rock, Arkansas 72217
Telephone: 479-223-0038
Email: burchfieldbradley123@gmail.com
Dated: ____________________, 2026

**CERTIFICATE OF SERVICE**

I certify that on the date written below I served a true and correct copy of the foregoing by depositing it in the United States mail, first-class postage prepaid, addressed to counsel of record as follows, and by courtesy email to the address shown:

B. Robert Liu, Esq.
Balance Law Firm
1 World Trade Center, Suite 8500
New York, New York 10007
robert.liu@balancelawfirm.com

Date of service: ____________________, 2026

**/s/ Bradley Burchfield**
Bradley Burchfield, Plaintiff Pro Se

Fancy Don't Let Me Down

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

v.

ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, et al.,

Defendants.

Case No. 4:26-cv-00611-DPM

JURY TRIAL DEMANDED

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS**
**ECF NO. 16**

## INTRODUCTION

The threshold issue is procedural. The Moving Defendants filed a motion that expressly attacks the original Complaint, ECF No. 1. But Plaintiff had already filed the First Amended Complaint, ECF No. 11, as a matter of course, and the Court recognized that amendment in ECF No. 14. Eighth Circuit law treats a motion aimed at the superseded pleading as moot. The Court should deny the motion without prejudice and require any renewed motion to address the operative pleading.

If the Court reaches the alternative arguments, dismissal still should not occur on this record. The brief turns affirmative defenses and statutory-merits questions into jurisdictional attacks; does not trace the exact order number in this case to the multiple transactions described in the older pleadings; and relies on declarations concerning corporate and platform facts that are uniquely within Defendants' control and materially intersect with Alibaba's June 2026 admissions to the Department of Justice. Limited written discovery is the proportionate next step.

The brief's reference to Plaintiff as an "ex-convict" is a pejorative background label, not a Rule 12 ground. Axis's November 21, 2025 signed notice states that Axis would take Plaintiff's

oral and videotaped deposition in CHS Properties, LLC v. Axis Surplus Insurance Company, No. 6:25-cv-06020 (W.D. Ark.), on December 15, 2025. Ex. R. A docket screenshot shows Axis's notice as entry 39. Ex. G. A same-day invoice to National Insurance Advocates identifies 4.5 hours of "expert witness testimony" concerning CHS Properties LLC. Ex. H (payment information redacted). Plaintiff states that he served and was deposed as an expert witness in that matter. The notice proves the deposition was formally noticed but does not itself label him an expert or show a judicial qualification ruling. The background is offered only to correct the one-sided characterization; neither it nor the conviction decides the legal issues presented here.

## RELEVANT RECORD

**1.** Plaintiff filed the original Complaint on June 22, 2026. ECF No. 1. It pleads civil RICO and RICO conspiracy, fraud, breach of contract/Trade Assurance obligations, deceptive practices, unjust enrichment, and declaratory/injunctive relief. Id. ¶¶ 66–102.

**2.** Plaintiff filed the First Amended Complaint on July 6, 2026. ECF No. 11. On July 14, the Court held that Plaintiff had amended as a matter of course and denied the earlier discovery motion without prejudice because the case was just beginning. ECF No. 14.

**3.** On July 20, Moving Defendants appeared and filed ECF Nos. 16 and 17. Their brief expressly says they "respond to Plaintiff's Complaint (ECF No. 1)" and notes that the amended pleading had not been served on them. ECF No. 17 at 1 & n.1.

**4.** The contract and receipt identify Trade Assurance Order No. 91906090501027582, dated June 1, 2021; identify Zichang as seller; and identify Burchfield Sales and Consulting LLC / Bradley Burchfield as buyer or contact. ECF No. 2 at 9–17; ECF No. 1 ¶¶ 25–31.

5. The original Complaint also alleges the January 2022 "keep silent" seller email and a June 18, 2026 Alibaba customer-service email concerning the exact order number and offering a $500 future platform credit. ECF No. 1 ¶¶ 37–54. The motion does not separately analyze whether those allegations satisfy the elements of Counts III–VII.

## ARGUMENT

### I. THE MOTION IS MOOT BECAUSE IT ATTACKS A SUPERSEDED COMPLAINT.

An amended complaint ordinarily supersedes the original and becomes the operative pleading. In Pure Country, the Eighth Circuit held that addressing a motion to dismiss an original complaint while an amended pleading was before the court was procedurally erroneous: "If anything, Pure Country's motion to amend the complaint rendered moot Sigma Chi's motion to dismiss the original complaint." 312 F.3d 952, 956 (8th Cir. 2002). Here the point is stronger. Plaintiff did not merely propose an amendment; ECF No. 11 was filed, and this Court held that it was an amendment as a matter of course. ECF No. 14 at 1. ECF No. 17 nevertheless identifies ECF No. 1 as the pleading to which it responds. The motion should be denied without prejudice as moot. Any renewed motion can address the operative allegations and service record.

### II. THE PLEADED FEDERAL CLAIMS SUPPLY SUBJECT-MATTER JURISDICTION.

#### A. The jurisdictional exception for wholly insubstantial claims is narrow.

Federal district courts have jurisdiction over civil actions arising under federal law. 28 U.S.C. § 1331. Civil RICO expressly creates a private federal cause of action for a person injured in business or property. 18 U.S.C. § 1964(c). A federal claim fails to invoke § 1331 only when it is immaterial and asserted solely to obtain jurisdiction or is wholly insubstantial and frivolous. Arbaugh v. Y & H Corp., 546 U.S. 500, 513 & n.10 (2006). The exception is not a substitute for ordinary merits analysis.

The Complaint identifies an alleged association-in-fact enterprise, its participants and roles, specific electronic communications, an order number and payment, a time span, alleged wire-fraud acts, and claimed business-or-property loss. ECF No. 1 ¶¶ 55–79 and Civil RICO Case Statement. The Court may ultimately reject some allegations, predicates, or damage theories. That is a merits determination, not proof that the Court lacks adjudicatory power. Claim preclusion and limitations are affirmative defenses; statutory standing addresses whether the statute affords relief, not Article III jurisdiction. See Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 n.4 (2014).

**B. The pleaded injury is not jurisdictionally nonexistent.**

The original Complaint alleges that Burchfield acted individually and as direct purchaser or beneficial owner and that he paid money and lost money, goods, use of funds, and business opportunities. ECF No. 1 ¶¶ 3, 19, 30, 65, 73. The receipt and contract also name Burchfield Sales and Consulting LLC. Plaintiff's accompanying declaration states that he personally provided the entire $736.38 payment associated with the Order, the LLC had no bank account at the time, and he was its sole member/owner and only employee. Burchfield Decl. ¶¶ 3–7 (Ex. S). He states that he personally bore the transaction loss. These facts support direct Article III economic injury. The LLC's appearance in the contract may create a real-party-in-interest and proof issue, but it does not establish that no concrete personal injury exists.

Rule 17(a)(3) provides that a court may not dismiss for failure to prosecute in the name of the real party in interest until a reasonable time has been allowed for ratification, joinder, or substitution. Personal funding does not automatically decide ownership of every contractual right, and Plaintiff does not claim a right to represent an LLC pro se or ask the Court to disregard the LLC's separate existence. If the Court determines that the LLC owns all or part of a claim, Plaintiff asks for a reasonable cure period and for dismissal without prejudice of any claim that

cannot lawfully proceed in his individual name—not a jurisdictional dismissal of the entire case at this early stage.

The Supreme Court has also clarified that § 1964(c) excludes recovery for personal-injury harms as such but does not categorically bar recovery for business-or-property loss that results from a personal injury. Medical Marijuana, Inc. v. Horn, 604 U.S. 593, 601–08 (2025). The Complaint seeks business/property losses, not damages for bodily injury. ECF No. 1 ¶¶ 19, 73. Whether each category is provable is a damages issue.

## III. TARGETED DISCOVERY SHOULD PRECEDE A PERSONAL-JURISDICTION RULING.

A plaintiff opposing a Rule 12(b)(2) motion need make only a prima facie showing, with factual conflicts viewed in the plaintiff's favor. Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., 646 F.3d 589, 592 (8th Cir. 2011). Jurisdictional discovery is warranted when the requested facts are controverted, material, and principally in the defendant's possession rather than speculative. Id. at 598.

The declarations deny that AGHL or Alibaba.com US E-Commerce Corp. operated or controlled the Alibaba.com platform, communicated with users, participated in the subject sale, controlled marketing, or played any role in payment, shipment, or seller relationships. ECF Nos. 17-7 and 17-8. Yet the June 29, 2026 Alibaba NPA defines ICBU as the business unit operating Alibaba.com and identifies Alibaba.com Singapore E-Commerce Pte. Limited, Alibaba.com U.S. LLC, and Alibaba.com U.S. e-Commerce Corp. as legal entities housing that unit. Alibaba NPA, Definitions ¶ 1(g). Its Statement of Facts describes ICBU's marketplace operation, seller rules and enforcement, proprietary messaging, monitoring capability, fees, and—in an earlier period—Trade Assurance payment processing. Alibaba NPA, Statement of Facts ¶¶ 2–7. AGHL's board approved the agreement. The separate AUS NPA states that AUS began payment-processing and settlement services for Alibaba.com transactions in 2020, including credit-card payments from

U.S. buyers. AUS NPA, Statement of Facts ¶¶ 2–7. AUS's statement is not treated as an AGHL admission, and neither NPA proves that the subject June 1, 2021 order was covered. They do, however, make the requested entity, control, payment, Arkansas-contact, and record-custody discovery concrete rather than speculative.

The June 18, 2026 email concerning the exact order number adds a transaction-specific basis. It states that an Alibaba senior team reviewed the complaint and platform records and offered an Alibaba credit. ECF No. 1 ¶¶ 50–53; ECF No. 2 at 33. Discovery can identify the legal entity that employed or authorized that team, held the order and logistics records, and could issue the credit. The Court should therefore defer the Rule 12(b)(2) issue and allow the limited interrogatories and document requests submitted with Plaintiff's separate Rule 26(d)(1) motion.

## IV. AGHL SHOULD NOT BE DISMISSED FOR SERVICE WHILE A COURT-ORDERED METHOD IS AVAILABLE.

AGHL alone invokes Rule 12(b)(5). Counsel has appeared for AGHL, filed a detailed merits and jurisdictional motion, and plainly has an established communication channel with the client. Plaintiff's prior delivery to CSC is disputed, and a clerk-issued Rule 45 subpoena seeks documents concerning CSC's authority and rejection. Notice to counsel of that subpoena is not itself proof that the subpoena was served on CSC, and Plaintiff does not represent otherwise.

Rules 4(h)(2) and 4(f)(3) permit a court to direct a method not prohibited by international agreement and reasonably calculated to give notice. Courts have approved service of foreign business entities through U.S. counsel in appropriate circumstances. See Rio Properties, Inc. v. Rio International Interlink, 284 F.3d 1007, 1014–17 (9th Cir. 2002); Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V., 970 F.3d 1269, 1275–76 (10th Cir. 2020). Plaintiff has filed a focused motion asking the Court to authorize email and mail service of the summons and ECF No. 11 on AGHL through its appearing counsel.

Dismissal should not precede resolution of that request. Rule 4(m), moreover, excludes service in a foreign country from its 90-day deadline.

## V. THE PRESENT EXHIBITS DO NOT ESTABLISH CLAIM PRECLUSION AS TO THIS EXACT ORDER.

Claim preclusion requires a final judgment on the merits, proper jurisdiction, the same cause of action, and the same parties or privies. The same-cause inquiry generally asks whether the suits arise from the same nucleus of operative facts. The Moving Defendants bear the burden of proving the affirmative defense.

The prior pleadings attached to ECF No. 17 describe several transactions: a 2020 Shandong Look purchase, a separate Bloom Tech non-delivery and wire payment, and a Zichang product described as arriving in June 2021. They do not identify Trade Assurance Order No. 91906090501027582 or the $715/$736.38 payment by that number. That omission does not prove the present transaction is different; the prior reference to a Zichang shipment in June 2021 creates an ambiguity Plaintiff must resolve with order, payment, and tracking records. But at the pleading stage, the exhibits do not conclusively trace the exact order now sued upon to the transaction adjudicated or dismissed in each earlier case, nor do they establish privity for every current defendant.

Preclusion also does not extinguish claims based on conduct that occurred after the earlier judgment and could not then have been sued upon. Lawlor v. National Screen Service Corp., 349 U.S. 322, 327–28 (1955). The June 18, 2026 customer-service response is later conduct. Plaintiff recognizes that later evidence about earlier conduct, standing alone, does not revive a precluded claim and that the 2026 response does not automatically create a new RICO injury. The Court should require a transaction-specific record rather than infer identity across multiple chemical orders.

**VI. THE CIVIL-RICO LIMITATIONS ISSUE SHOULD BE ADDRESSED ACCURATELY AND ON THE OPERATIVE PLEADING.**

Private civil-RICO claims ordinarily carry a four-year limitations period that begins when the plaintiff discovered or should have discovered the injury. Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143, 156 (1987); Schreier v. Drealan Kvilhaug Hoefker & Co., P.A., 992 F.3d 674, 681 (8th Cir. 2021). Discovery of the injury—not later discovery of a pattern or additional evidence—starts the clock. Rotella v. Wood, 528 U.S. 549, 555–56 (2000). Plaintiff's 2022 pleadings are substantial evidence that he knew of at least some alleged injury more than four years before June 22, 2026. Plaintiff does not ask the Court to disregard that rule.

The present motion nevertheless addresses a superseded complaint and treats every later allegation as part of one already-accrued injury without developing whether any post-judgment act caused a new and independent business-or-property injury. A new act does not restart the period for old injuries; at most a genuinely new and independent injury has its own accrual analysis. See Klehr v. A.O. Smith Corp., 521 U.S. 179, 189–90 (1997). If the Court concludes that the pleaded RICO injuries are all untimely, Plaintiff requests leave to amend any curable allegations and a ruling limited to the RICO counts rather than dismissal of unbriefed state-law claims on their merits.

For context only, Plaintiff does not ask this Court to initiate, prosecute, or enforce any criminal charge. Congress generally prescribes five years for noncapital federal offenses. 18 U.S.C. § 3282(a). For a continuing criminal conspiracy, including a properly charged RICO conspiracy, the offense may continue until the conspiracy's purposes are accomplished or abandoned, and withdrawal may start the period as to a particular member. Smith v. United States, 568 U.S. 106, 111–14 (2013); see Salinas v. United States, 522 U.S. 52, 63 (1997) (RICO conspiracy does not require an overt act). Thus, depending on the charge and proof, a criminal

RICO-conspiracy charge may be timely if instituted within five years after the continuing conspiracy—not merely an associated enterprise—ended. That criminal rule does not govern this private civil-RICO action and does not extend the four-year civil period. Plaintiff states it only to avoid conflating distinct criminal and civil limitations rules.

**VII. COUNTS III–VII WERE NOT TESTED UNDER RULE 12(b)(6).**

The motion seeks dismissal of all claims through its personal-jurisdiction argument and asks the Court to decline supplemental jurisdiction if both federal counts are dismissed. ECF No. 17 at 20, 25–26. It does not, however, present a claim-specific Rule 12(b)(6) analysis of fraud, breach of contract/Trade Assurance, deceptive trade practices, unjust enrichment, or declaratory/injunctive relief. Indeed, it reserves other arguments for later. Id. at 25 n.12. Section 1367(c)(3) is discretionary and applies only if all claims within the Court's original jurisdiction have been dismissed. Because the RICO counts should not be dismissed on this motion, the predicate for that request is absent. In any event, no merits dismissal of Counts III–VII is supported by the present brief.

**CONCLUSION**

The Court should deny ECF No. 16 without prejudice as moot. Alternatively, it should deny or defer the motion, permit the requested limited discovery and court-ordered service, and allow a reasonable opportunity to cure any real-party-in-interest or pleading defect before dismissing any claim with prejudice.

Respectfully submitted,

***/s/ Bradley Burchfield***
Bradley Burchfield, Plaintiff Pro Se
5420 Kavanaugh Blvd #7927
Little Rock, Arkansas 72217
Telephone: 479-223-0038
Email: burchfieldbradley123@gmail.com
Dated: ____________________, 2026

**CERTIFICATE OF SERVICE**

I certify that on the date written below I served a true and correct copy of the foregoing by depositing it in the United States mail, first-class postage prepaid, addressed to counsel of record as follows, and by courtesy email to the address shown:

B. Robert Liu, Esq.
Balance Law Firm
1 World Trade Center, Suite 8500
New York, New York 10007
robert.liu@balancelawfirm.com

Date of service: ____________________, 2026

***/s/ Bradley Burchfield***
Bradley Burchfield, Plaintiff Pro Se

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

Case No. 4:26-cv-00611-DPM

v.

JURY TRIAL DEMANDED

ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, et al.,

Defendants.

**PLAINTIFF'S RENEWED MOTION FOR LEAVE TO TAKE LIMITED EARLY JURISDICTIONAL AND ALTER-EGO DISCOVERY**
**FED. R. CIV. P. 26(D)(1)**

Plaintiff moves under Federal Rule of Civil Procedure 26(d)(1) for leave to serve the attached limited interrogatories and requests for production on Alibaba Group Holding Limited and Alibaba.com US E-Commerce Corp., and asks the Court to defer determination of their Rule 12(b)(2) and alter-ego arguments until that discovery is complete.

**1.** The Court denied Plaintiff's earlier discovery request without prejudice because the case was just beginning and no defendant had yet put jurisdictional facts in issue. ECF No. 14 at 1.

**2.** The circumstances have changed. The Moving Defendants appeared, filed a Rule 12(b)(2) motion, and submitted declarations denying platform ownership or control, communications, transaction participation, marketing, payment, shipping, and seller-agency facts. ECF Nos. 16, 17-7, and 17-8.

**3.** Official June 29, 2026 DOJ agreements identify ICBU as the business unit operating Alibaba.com, list Alibaba.com US E-Commerce Corp. among the legal entities housing ICBU, describe marketplace, seller-control, messaging, and payment functions, and reflect AGHL board approval. Those materials do not decide jurisdiction, but they create concrete factual issues that cannot be resolved from Plaintiff's records alone.

**4.** The proposed discovery is limited to corporate relationships, operation and control of ICBU and Alibaba.com, Arkansas-directed contacts, the exact Trade Assurance order, the seller account, payment routing, the June 2026 customer-service response and credit offer, the factual bases for the declarations, and mapping the exact order against transactions in the older lawsuits.

**5.** Each proposed set contains twenty interrogatories and twelve requests for production. The discovery is directed only to the two defendants who appeared and challenged jurisdiction. It is not authorization to serve Rule 33 discovery on an unserved foreign defendant.

Plaintiff requests an order: (a) authorizing service of the attached discovery immediately; (b) requiring responses within thirty days after service; (c) deferring Rule 12(b)(2) and final alter-ego/veil-piercing determinations until thirty days after complete responses; (d) allowing the parties to request a focused Rule 30(b)(6) deposition only after meeting and conferring about the written responses; and (e) granting any other just relief.

Respectfully submitted,

**/s/ Bradley Burchfield**
Bradley Burchfield, Plaintiff Pro Se
5420 Kavanaugh Blvd #7927
Little Rock, Arkansas 72217
Telephone: 479-223-0038
Email: burchfieldbradley123@gmail.com
Dated: ____________________, 2026

**CERTIFICATE OF SERVICE**

I certify that on the date written below I served a true and correct copy of the foregoing by depositing it in the United States mail, first-class postage prepaid, addressed to counsel of record as follows, and by courtesy email to the address shown:

B. Robert Liu, Esq.
Balance Law Firm
1 World Trade Center, Suite 8500
New York, New York 10007
robert.liu@balancelawfirm.com

Date of service: ____________________, 2026

**/s/ Bradley Burchfield**
Bradley Burchfield, Plaintiff Pro Se

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

Case No. 4:26-cv-00611-DPM

v.

JURY TRIAL DEMANDED

ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, et al.,

Defendants.

**BRIEF IN SUPPORT OF RENEWED MOTION FOR LIMITED EARLY JURISDICTIONAL AND ALTER-EGO DISCOVERY**
**FED. R. CIV. P. 26(D)(1)**

## ARGUMENT

### I. GOOD CAUSE EXISTS FOR LIMITED EARLY DISCOVERY.

Rule 26(d)(1) permits discovery before the Rule 26(f) conference when authorized by court order. The requested discovery must remain relevant and proportional under Rule 26(b)(1). When personal jurisdiction is contested, the Eighth Circuit requires only a prima facie showing and views factual conflicts in the plaintiff's favor. Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., 646 F.3d 589, 592 (8th Cir. 2011). Jurisdictional discovery is particularly appropriate when material facts are disputed and controlled by the defendant. Id. at 598.

The Moving Defendants' declarations make detailed, categorical assertions about who did not own, operate, control, communicate, market, process, ship, or contract. ECF Nos. 17-7 and 17-8. Plaintiff cannot test those assertions with public records. The June 2026 Alibaba NPA, however, identifies the legal entities housing ICBU and describes ICBU's operational functions. Its AGHL board resolution and the separate AUS payment admissions provide a non-speculative reason to ask which entity performed each function for the exact June 1, 2021 order. The June

18, 2026 order-specific customer-service email likewise requires identification of the legal entity that accessed records and authorized a $500 Alibaba credit.

**II. THE REQUESTS ARE TIED TO THE ISSUES RAISED BY THE MOTION.**

The proposed discovery has five bounded subjects: (1) corporate identity and control of ICBU in 2020–2022; (2) Arkansas contacts and the subject order's Arkansas-directed acts; (3) ownership, custody, and operation of the order, seller, Trade Assurance, message, payment, logistics, and customer-service systems; (4) the evidentiary bases for the Li and Zhao declarations; and (5) a transaction-by-transaction identification of whether the exact current order appeared in the prior actions. Those subjects directly address personal jurisdiction, alter ego/agency, standing, claim preclusion, and the identity of the proper party.

The requests do not assume that the NPAs prove Plaintiff's transaction involved unlawful subject merchandise, do not seek every worldwide Alibaba transaction, and do not seek privileged legal advice. They seek the single order and seller account, aggregate Arkansas contact data, selected organizational and intercompany records, and documents supporting the sworn declarations. Twenty interrogatories per responding party remain below Rule 33(a)(1)'s presumptive limit of twenty-five, including discrete subparts.

**III. DEFERRAL AVOIDS PREMATURE MERITS FINDINGS.**

Arkansas respects corporate separateness and requires clear proof before disregarding the corporate form. Epps v. Stewart Information Services Corp., 327 F.3d 642, 649–50 (8th Cir. 2003). That standard counsels against deciding alter ego from labels or group branding alone—but also against deciding it solely from untested declarations when operational and intercompany records remain exclusively with Defendants. A short written-discovery period is less burdensome than premature dismissal followed by amendment or appeal.

**CONCLUSION**

The Court should grant the renewed Rule 26(d)(1) motion and enter the proposed order.

Respectfully submitted,

**/s/ Bradley Burchfield**
Bradley Burchfield, Plaintiff Pro Se
5420 Kavanaugh Blvd #7927
Little Rock, Arkansas 72217
Telephone: 479-223-0038
Email: burchfieldbradley123@gmail.com
Dated: ____________________, 2026

**CERTIFICATE OF SERVICE**

I certify that on the date written below I served a true and correct copy of the foregoing by depositing it in the United States mail, first-class postage prepaid, addressed to counsel of record as follows, and by courtesy email to the address shown:

B. Robert Liu, Esq.
Balance Law Firm
1 World Trade Center, Suite 8500
New York, New York 10007
robert.liu@balancelawfirm.com

Date of service: ____________________, 2026

**/s/ Bradley Burchfield**
Bradley Burchfield, Plaintiff Pro Se

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

v.

ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, et al.,

Defendants.

Case No. 4:26-cv-00611-DPM

JURY TRIAL DEMANDED

**PROPOSED ORDER ON PLAINTIFF'S RENEWED MOTION FOR LIMITED EARLY DISCOVERY**

The Court has considered Plaintiff's Renewed Motion for Leave to Take Limited Early Jurisdictional and Alter-Ego Discovery. The Motion is GRANTED IN PART as follows:

1. Plaintiff may serve the proposed interrogatories and requests for production attached to the motion on Alibaba Group Holding Limited and Alibaba.com US E-Commerce Corp. through counsel of record.

2. Each responding defendant must serve written responses and produce responsive, nonprivileged documents within thirty days after service, subject to the Federal Rules of Civil Procedure and any agreed or ordered protective measures.

3. The discovery is limited to personal jurisdiction, corporate identity and control, alter ego/agency, the exact Trade Assurance order and seller account, payment and customer-service functions, Arkansas-directed contacts, the factual bases for the submitted declarations, and transaction identification relevant to claim preclusion.

4. Determination of the Rule 12(b)(2) issues and any final alter-ego or veil-piercing issue is deferred until thirty days after substantially complete responses. The parties may then request a schedule for supplemental briefs.

**5.** No Rule 30(b)(6) deposition may occur under this Order unless the parties first meet and confer after written responses and either stipulate to a focused deposition or obtain further leave.

**6.** This Order does not authorize Rule 33 or Rule 34 discovery against a defendant that has not been served or appeared.

IT IS SO ORDERED.

Dated: ____________________, 2026

________________________________________

D. P. Marshall Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

v.

ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, et al.,

Defendants.

Case No. 4:26-cv-00611-DPM

JURY TRIAL DEMANDED

**PLAINTIFF'S PROPOSED FIRST LIMITED INTERROGATORIES AND REQUESTS FOR PRODUCTION TO ALIBABA GROUP HOLDING LIMITED**
**SERVE ONLY IF THE COURT GRANTS LEAVE UNDER RULE 26(D)(1)**

**INSTRUCTIONS**

**1.** Answer each interrogatory separately and fully in writing under oath under Rule 33. Produce responsive, nonprivileged documents under Rule 34 in a reasonably usable form and identify the request to which each production responds.

**2.** If an objection applies only in part, answer or produce the unobjectionable portion. State the specific ground for each objection.

**3.** Use information reasonably available to the responding party. This instruction does not expand possession, custody, or control beyond the Federal Rules and does not require disclosure of privileged material.

**4.** If information once existed but is unavailable, identify its former custodian, the system or record, when it became unavailable, and the reason.

**5.** Supplement or correct responses as Rule 26(e) requires. Preserve responsive electronically stored information pending final disposition of this action.

## DEFINITIONS

**Order:** Alibaba.com Trade Assurance Order No. 91906090501027582 and its contract, payment, messages, shipment, logistics, dispute, refund, credit, customer-service, seller-account, and audit records.

**Zichang:** Zichang New Materials (Shandong) Co., Ltd., including spelling variants, its seller account, administrators, beneficial owners, agents, and related accounts.

**Alibaba.com Systems:** the Alibaba.com platform, ICBU, Trade Assurance, seller onboarding and verification, messaging, RFQ, payment, logistics, compliance, customer-service, dispute, and related databases or services.

**Identify:** for a person, give name, title, employer, and business contact information; for an entity, give its legal name, formation jurisdiction, principal place of business, parent, and role; for a document or system, give title or description, date, custodian, and present location.

**Relevant Period:** January 1, 2020 through the present, except that a request expressly limited to the Order concerns the full life of that record.

**Arkansas Contact:** a sale, solicitation, advertisement, order, payment, shipment, message, customer-service interaction, dispute, refund, credit, contract, employee, agent, office, registration, or other contact directed to or occurring in Arkansas.

## INTERROGATORIES

**1.** Identify each person who prepared, supplied information for, reviewed, or verified these responses and the subjects on which each person supplied information.

**2.** Identify AGHL's place of incorporation, principal place of business, United States offices or agents, and each Arkansas registration, office, employee, agent, or other Arkansas Contact during the Relevant Period.

**3.** Identify the complete direct and indirect ownership chain from AGHL to each legal entity that housed, managed, supported, or operated ICBU during 2020 through 2022.

**4.** Identify the legal entity or business unit responsible on June 1, 2021 for each of these functions: operating Alibaba.com, administering Trade Assurance, maintaining seller accounts, handling buyer messages, processing or settling payments, keeping logistics records, and resolving disputes.

**5.** State the complete factual basis for each statement in the Declaration of Jieyun Li filed as ECF No. 17-7 that AGHL did not own, operate, control, participate in, supervise, communicate about, market, ship, or otherwise connect to the Order, and identify the supporting witnesses and nonprivileged records.

**6.** Identify the AGHL directors, officers, employees, or committees that reviewed, authorized, approved, or received reports concerning the June 29, 2026 Alibaba Non-Prosecution Agreement and its Statement of Facts.

**7.** State whether AGHL contends that the NPA definition of "Alibaba" or the AGHL board resolution is inaccurate as to AGHL's relationship with ICBU or the listed Alibaba entities; if so, identify the precise statement disputed and the factual basis.

**8.** Identify every entity that owned, controlled, or had custody of the Order record at any time from June 1, 2021 to the present.

**9.** Identify Zichang's Alibaba seller-account number, onboarding date, verification level, verification provider, account administrators, beneficial owners, and any entity with authority to suspend or terminate the account.

**10.** Identify each entity that accepted, acquired, processed, settled, routed, received, or retained any portion of the $736.38 payment associated with the Order.

**11.** Identify each person or legal entity that received, reviewed, escalated, drafted, authorized, or sent the June 18, 2026 customer-service email concerning the Order.

**12.** Identify the legal entity that funded, would account for, or had authority to issue the $500 Alibaba credit offered in the June 18, 2026 email.

**13.** State the number and aggregate dollar value of Alibaba.com transactions involving an Arkansas billing or shipping address during 2020, 2021, and 2022 that are reflected in records within AGHL's possession, custody, or control, and identify the system and custodian from which the figures can be derived.

**14.** Identify every Arkansas Contact attributable to AGHL that relates to the Order, Zichang, Trade Assurance, or the June 18, 2026 customer-service response.

**15.** Identify each intercompany, shared-services, management, data-access, compliance, indemnity, or cost-allocation agreement that governed AGHL's relationship with ICBU or the entities housing ICBU during 2020 through 2022.

**16.** Identify shared directors, officers, employees, offices, domains, databases, customer-service teams, compliance systems, or payment infrastructure used by AGHL and an ICBU legal entity in 2020 through 2022.

**17.** State each fee, allocation, dividend, reimbursement, or other item of value AGHL directly received from the Order, Zichang's seller relationship, or ICBU's Alibaba.com operations, if any.

**18.** Identify any compliance flag, complaint, product review, suspension, or enforcement action concerning Zichang, the Order, or CAS 102-97-6 that was reported to or available to AGHL.

**19.** State whether the Order is the same transaction alleged in each prior action identified in ECF No. 17 at pages 6–8; for each answer, identify the compared order number, seller, date, amount, payment method, shipment or tracking record, and document supporting the conclusion.

**20.** Identify each present custodian and information system containing responsive information and describe any known deletion, loss, migration, retention expiration, or inability to retrieve records concerning the Order.

## REQUESTS FOR PRODUCTION

**1.** Documents sufficient to show the ownership and control chain between AGHL and each entity housing or operating ICBU in 2020 through 2022.

**2.** Nonprivileged documents supporting the material factual assertions in the Jieyun Li Declaration, ECF No. 17-7.

**3.** The complete Order file, including contract, payment, seller, message, logistics, dispute, customer-service, credit, and audit records within AGHL's possession, custody, or control.

**4.** Documents sufficient to identify Zichang's seller account, verification, administrators, beneficial owners, status, and related accounts.

**5.** Documents sufficient to show each entity involved in accepting, processing, settling, routing, receiving, or retaining the Order payment.

**6.** The complete record of the June 18, 2026 customer-service response and proposed $500 Alibaba credit, including routing, escalation, authorization, and accounting records.

**7.** Documents sufficient to show aggregate number and value of Alibaba.com transactions with Arkansas billing or shipping addresses in 2020, 2021, and 2022.

**8.** Intercompany or shared-services agreements governing ICBU management, data, customer service, compliance, Trade Assurance, payment, indemnity, or record custody in 2020 through 2022.

**9.** Trade Assurance rules, refund policies, record-retention schedules, and claim-window terms in effect for the Order on June 1, 2021.

**10.** Nonprivileged board minutes, resolutions, and organizational records sufficient to show AGHL's approval of the June 29, 2026 NPA and oversight of the remedial obligations described there.

**11.** Documents sufficient to identify whether the Order is the same as or different from each transaction alleged in the prior cases cited at ECF No. 17 at pages 6–8.

**12.** Preservation notices, retention instructions, or deletion-hold records concerning the Order, Zichang, Plaintiff, or this litigation, excluding privileged legal advice.

Respectfully submitted,

**/s/ Bradley Burchfield**
Bradley Burchfield, Plaintiff Pro Se
5420 Kavanaugh Blvd #7927
Little Rock, Arkansas 72217
Telephone: 479-223-0038
Email: burchfieldbradley123@gmail.com
Dated: ____________________, 2026

**CERTIFICATE OF SERVICE**

I certify that on the date written below I served a true and correct copy of the foregoing by depositing it in the United States mail, first-class postage prepaid, addressed to counsel of record as follows, and by courtesy email to the address shown:

B. Robert Liu, Esq.
Balance Law Firm
1 World Trade Center, Suite 8500
New York, New York 10007
robert.liu@balancelawfirm.com

Date of service: ____________________, 2026

**/s/ Bradley Burchfield**
Bradley Burchfield, Plaintiff Pro Se

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

v.

ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, et al.,

Defendants.

Case No. 4:26-cv-00611-DPM

JURY TRIAL DEMANDED

**PLAINTIFF'S PROPOSED FIRST LIMITED INTERROGATORIES AND REQUESTS FOR PRODUCTION TO ALIBABA.COM US E-COMMERCE CORP.**
**SERVE ONLY IF THE COURT GRANTS LEAVE UNDER RULE 26(D)(1)**

**INSTRUCTIONS**

**1.** Answer each interrogatory separately and fully in writing under oath under Rule 33. Produce responsive, nonprivileged documents under Rule 34 in a reasonably usable form and identify the request to which each production responds.

**2.** If an objection applies only in part, answer or produce the unobjectionable portion. State the specific ground for each objection.

**3.** Use information reasonably available to the responding party. This instruction does not expand possession, custody, or control beyond the Federal Rules and does not require disclosure of privileged material.

**4.** If information once existed but is unavailable, identify its former custodian, the system or record, when it became unavailable, and the reason.

**5.** Supplement or correct responses as Rule 26(e) requires. Preserve responsive electronically stored information pending final disposition of this action.

## DEFINITIONS

**Order:** Alibaba.com Trade Assurance Order No. 91906090501027582 and its contract, payment, messages, shipment, logistics, dispute, refund, credit, customer-service, seller-account, and audit records.

**Zichang:** Zichang New Materials (Shandong) Co., Ltd., including spelling variants, its seller account, administrators, beneficial owners, agents, and related accounts.

**Alibaba.com Systems:** the Alibaba.com platform, ICBU, Trade Assurance, seller onboarding and verification, messaging, RFQ, payment, logistics, compliance, customer-service, dispute, and related databases or services.

**Identify:** for a person, give name, title, employer, and business contact information; for an entity, give its legal name, formation jurisdiction, principal place of business, parent, and role; for a document or system, give title or description, date, custodian, and present location.

**Relevant Period:** January 1, 2020 through the present, except that a request expressly limited to the Order concerns the full life of that record.

**Arkansas Contact:** a sale, solicitation, advertisement, order, payment, shipment, message, customer-service interaction, dispute, refund, credit, contract, employee, agent, office, registration, or other contact directed to or occurring in Arkansas.

## INTERROGATORIES

**1.** Identify each person who prepared, supplied information for, reviewed, or verified these responses and the subjects on which each person supplied information.

**2.** Identify Alibaba.com US E-Commerce Corp.'s formation jurisdiction, principal place of business, offices, employees, agents, registrations, and each Arkansas Contact during the Relevant Period.

**3.** Describe Alibaba.com US E-Commerce Corp.'s role within ICBU during 2020 through 2022, including the functions, personnel, budgets, systems, and reporting lines it housed or supported.

**4.** State the complete factual basis for each statement in the Declaration of Xingjian Zhao filed as ECF No. 17-8 that the company did not own, operate, control, participate in, supervise, communicate about, market, ship, or otherwise connect to the Order, and identify supporting witnesses and nonprivileged records.

**5.** State whether the company disputes the June 29, 2026 Alibaba NPA's definition identifying it as one of the legal entities housing ICBU; if so, identify the precise disputed statement and factual basis.

**6.** Identify the legal entity or business unit responsible on June 1, 2021 for operating Alibaba.com, administering Trade Assurance, maintaining seller accounts, processing or settling payments, keeping logistics records, and resolving disputes.

**7.** Identify every system in which the company could access, retrieve, review, or request the Order or Zichang seller-account record at any time from June 1, 2021 to present.

**8.** Identify Zichang's seller-account number, onboarding date, verification level, verification provider, administrators, beneficial owners, and the entity with suspension or termination authority.

**9.** Identify each entity that accepted, acquired, processed, settled, routed, received, or retained any portion of the Order payment.

**10.** Identify every company employee, contractor, or shared-services worker who communicated with Plaintiff or reviewed the Order, Zichang, a dispute, a refund request, or a credit request.

**11.** Identify each person or legal entity that received, reviewed, escalated, drafted, authorized, or sent the June 18, 2026 customer-service email concerning the Order.

**12.** Identify the legal entity that funded, would account for, or had authority to issue the $500 Alibaba credit offered in the June 18, 2026 email.

**13.** State the number and aggregate dollar value of Alibaba.com transactions involving an Arkansas billing or shipping address in 2020, 2021, and 2022 that are reflected in systems the company operated, housed, supported, administered, or could access, and identify the system and custodian.

**14.** Identify every Arkansas Contact by the company that relates to the Order, Zichang, Trade Assurance, ICBU, or the June 18, 2026 response.

**15.** Identify contracts and shared-services arrangements connecting the company to AGHL, Alibaba.com Singapore E-Commerce Pte. Limited, Alibaba.com U.S. LLC, ICBU, or AUS Merchant Services during 2020 through 2022.

**16.** Identify shared officers, employees, offices, domains, databases, customer-service teams, compliance systems, payment infrastructure, or records services used by the company and another Alibaba entity in 2020 through 2022.

**17.** State each fee, commission, allocation, reimbursement, or item of value the company received from the Order, Zichang, or relevant Alibaba.com activity, if any.

**18.** Identify any compliance flag, complaint, product review, suspension, or enforcement action concerning Zichang, the Order, or CAS 102-97-6 available to the company.

**19.** State whether the Order is the same transaction alleged in each prior action identified in ECF No. 17 at pages 6–8; for each answer, identify the compared order number, seller, date, amount, payment method, shipment or tracking record, and supporting document.

**20.** Identify each present custodian and information system containing responsive information and describe any known deletion, loss, migration, retention expiration, or inability to retrieve records concerning the Order.

## REQUESTS FOR PRODUCTION

**1.** Documents sufficient to show the company's ICBU role, reporting lines, personnel, and functions during 2020 through 2022.

**2.** Nonprivileged documents supporting the material factual assertions in the Xingjian Zhao Declaration, ECF No. 17-8.

**3.** The complete Order file accessible to the company, including contract, payment, seller, message, logistics, dispute, customer-service, credit, and audit records.

**4.** Documents sufficient to identify Zichang's seller account, verification, administrators, beneficial owners, status, and related accounts.

**5.** Documents sufficient to show each entity involved in accepting, processing, settling, routing, receiving, or retaining the Order payment.

**6.** The complete record accessible to the company concerning the June 18, 2026 customer-service response and proposed $500 Alibaba credit.

**7.** Documents sufficient to show aggregate number and value of Alibaba.com transactions with Arkansas billing or shipping addresses in 2020, 2021, and 2022.

**8.** Contracts or shared-services agreements governing ICBU operations, data, customer service, compliance, Trade Assurance, payment, indemnity, or record custody during 2020 through 2022.

**9.** Trade Assurance rules, refund policies, record-retention schedules, and claim-window terms in effect for the Order on June 1, 2021.

**10.** Documents sufficient to identify communications between the company and Plaintiff concerning Alibaba.com, Zichang, the Order, or a dispute or credit request.

**11.** Documents sufficient to identify whether the Order is the same as or different from each transaction alleged in the prior cases cited at ECF No. 17 at pages 6–8.

**12.** Preservation notices, retention instructions, or deletion-hold records concerning the Order, Zichang, Plaintiff, or this litigation, excluding privileged legal advice.

Respectfully submitted,

**/s/ Bradley Burchfield**
Bradley Burchfield, Plaintiff Pro Se
5420 Kavanaugh Blvd #7927
Little Rock, Arkansas 72217
Telephone: 479-223-0038
Email: burchfieldbradley123@gmail.com
Dated: ____________________, 2026

**CERTIFICATE OF SERVICE**

I certify that on the date written below I served a true and correct copy of the foregoing by depositing it in the United States mail, first-class postage prepaid, addressed to counsel of record as follows, and by courtesy email to the address shown:

B. Robert Liu, Esq.
Balance Law Firm
1 World Trade Center, Suite 8500
New York, New York 10007
robert.liu@balancelawfirm.com

Date of service: ____________________, 2026

**/s/ Bradley Burchfield**
Bradley Burchfield, Plaintiff Pro Se

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

v.

ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, et al.,

Defendants.

Case No. 4:26-cv-00611-DPM

JURY TRIAL DEMANDED

**PLAINTIFF'S MOTION FOR LEAVE TO SERVE ALIBABA GROUP HOLDING LIMITED BY COURT-ORDERED ALTERNATIVE SERVICE THROUGH APPEARING COUNSEL**
**FED. R. CIV. P. 4(H)(2) AND 4(F)(3)**

Plaintiff moves for an order authorizing service of the summons, operative First Amended Complaint (ECF No. 11), its exhibits, and the Court's orders on foreign defendant Alibaba Group Holding Limited ("AGHL") through AGHL's appearing U.S. counsel, B. Robert Liu of Balance Law Firm, by email and first-class mail. Counsel's appearance alone is not treated as consent to accept service; this motion requests an express court order.

**1.** AGHL is alleged and declared to be a Cayman Islands company with its principal place of business in China. ECF No. 17-7 ¶¶ 4–5.

**2.** Plaintiff attempted service through CSC. AGHL disputes CSC's authority to accept this action and has moved under Rule 12(b)(5). ECF No. 17 at 20–21.

**3.** On July 20, 2026, B. Robert Liu entered an appearance specifically for AGHL and Alibaba.com US E-Commerce Corp. ECF No. 15. The same day, counsel filed AGHL's motion, detailed brief, and declaration, demonstrating actual notice and an active communication channel with AGHL. ECF Nos. 16, 17, and 17-7.

**4.** The motion acknowledges the First Amended Complaint but says it had not been served on Moving Defendants. ECF No. 17 at 1 n.1. Plaintiff seeks an efficient, indisputable method to transmit that operative pleading.

**5.** Service through counsel in New York by email and mail is reasonably calculated to give AGHL notice and avoids any assertion that counsel's voluntary appearance by itself waived service.

Plaintiff asks the Court to authorize service on AGHL by sending the summons and ECF No. 11 with exhibits and relevant orders to robert.liu@balancelawfirm.com and by first-class mail to B. Robert Liu, Balance Law Firm, 1 World Trade Center, Suite 8500, New York, NY 10007; deem service complete upon confirmed email transmission and mailing; permit Plaintiff to file a declaration and mailing proof; and grant any further just relief. The requested order is limited to AGHL. It does not authorize service through Mr. Liu on any foreign defendant for whom he has not appeared or expressly agreed to accept service.

Respectfully submitted,

**/s/ Bradley Burchfield**
Bradley Burchfield, Plaintiff Pro Se
5420 Kavanaugh Blvd #7927
Little Rock, Arkansas 72217
Telephone: 479-223-0038
Email: burchfieldbradley123@gmail.com
Dated: ____________________, 2026

**CERTIFICATE OF SERVICE**

I certify that on the date written below I served a true and correct copy of the foregoing by depositing it in the United States mail, first-class postage prepaid, addressed to counsel of record as follows, and by courtesy email to the address shown:

B. Robert Liu, Esq.
Balance Law Firm
1 World Trade Center, Suite 8500
New York, New York 10007
robert.liu@balancelawfirm.com

Date of service: ____________________, 2026

**/s/ Bradley Burchfield**
Bradley Burchfield, Plaintiff Pro Se

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

Case No. 4:26-cv-00611-DPM

v.

JURY TRIAL DEMANDED

ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, et al.,

Defendants.

**BRIEF IN SUPPORT OF MOTION FOR ALTERNATIVE SERVICE ON ALIBABA GROUP HOLDING LIMITED**
**FED. R. CIV. P. 4(H)(2) AND 4(F)(3)**

## ARGUMENT

### I. RULE 4 AUTHORIZES A COURT-DIRECTED METHOD.

Rule 4(h)(2) permits service on a foreign corporation outside any judicial district of the United States in the manner prescribed by Rule 4(f), except personal delivery under Rule 4(f)(2)(C)(i). Rule 4(f)(3) permits service "by other means not prohibited by international agreement, as the court orders." It is an independent basis for service and does not textually require exhaustion of every other method. Rio Properties, Inc. v. Rio International Interlink, 284 F.3d 1007, 1014–16 (9th Cir. 2002). The Federal Judicial Center notes that substituted service within the United States, including service on counsel, is common under Rule 4(f)(3). Sarah E. Kramer, International Service of Process: A Guide for Judges 3 (Fed. Jud. Ctr. 2021).

### II. SERVICE THROUGH APPEARING COUNSEL IS APPROPRIATE HERE.

The constitutional requirement is notice reasonably calculated, under the circumstances, to apprise the defendant of the action and permit an opportunity to respond. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Mr. Liu has entered an appearance specifically for AGHL and filed AGHL's declaration and a twenty-six-page brief. ECF Nos. 15–

17. Email and mail to that counsel will reach a demonstrated communication channel with AGHL. Courts have approved comparable service. Rio Properties, 284 F.3d at 1017; Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V., 970 F.3d 1269, 1275–76 (10th Cir. 2020).

The Hague Service Convention applies when judicial documents must be transmitted abroad. Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 699–707 (1988). The requested order directs domestic transmission to U.S. counsel and does not require Plaintiff to mail judicial papers into China. It is therefore designed to avoid—not contravene—an international transmission method. If the Court concludes the Convention nevertheless applies, Plaintiff asks the Court to specify the required method rather than dismiss AGHL.

**III. THE ORDER SHOULD COVER THE OPERATIVE PLEADING.**

ECF No. 11 superseded ECF No. 1. The Moving Defendants' brief says ECF No. 11 had not been served. ECF No. 17 at 1 n.1. An order covering the summons and ECF No. 11 will eliminate the service dispute while giving AGHL exactly the pleading it must answer or otherwise address. Rule 4(m)'s ninety-day time limit does not apply to service in a foreign country, although Plaintiff seeks prompt service now.

**CONCLUSION**

The Court should authorize the requested email-and-mail service on AGHL through its appearing counsel.

Respectfully submitted,

**/s/ Bradley Burchfield**
Bradley Burchfield, Plaintiff Pro Se
5420 Kavanaugh Blvd #7927
Little Rock, Arkansas 72217
Telephone: 479-223-0038
Email: burchfieldbradley123@gmail.com
Dated: ____________________, 2026

**CERTIFICATE OF SERVICE**

I certify that on the date written below I served a true and correct copy of the foregoing by depositing it in the United States mail, first-class postage prepaid, addressed to counsel of record as follows, and by courtesy email to the address shown:

B. Robert Liu, Esq.
Balance Law Firm
1 World Trade Center, Suite 8500
New York, New York 10007
robert.liu@balancelawfirm.com

Date of service: ____________________, 2026

**/s/ Bradley Burchfield**
Bradley Burchfield, Plaintiff Pro Se

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

Case No. 4:26-cv-00611-DPM

v.

JURY TRIAL DEMANDED

ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, et al.,

Defendants.

**PROPOSED ORDER AUTHORIZING ALTERNATIVE SERVICE ON ALIBABA GROUP HOLDING LIMITED**

Plaintiff's Motion for Leave to Serve Alibaba Group Holding Limited ("AGHL") by Court-Ordered Alternative Service is GRANTED under Federal Rules of Civil Procedure 4(h)(2) and 4(f)(3).

**1.** Plaintiff must transmit a copy of the summons, First Amended Complaint (ECF No. 11) and its exhibits, this Order, and any order identified by the Clerk as necessary for service to AGHL's counsel of record, B. Robert Liu, at robert.liu@balancelawfirm.com.

**2.** Plaintiff must also mail the same materials by United States first-class mail, postage prepaid, to B. Robert Liu, Balance Law Firm, 1 World Trade Center, Suite 8500, New York, New York 10007.

**3.** Service on AGHL is complete when Plaintiff has completed both transmission methods. Plaintiff must promptly file a declaration identifying the transmitted materials, date and time of email, email-delivery confirmation or absence of a bounce notice, date of mailing, and available mailing proof.

**4.** This Order authorizes service only on AGHL. It does not authorize service through Mr. Liu on any defendant for whom he has not appeared or expressly accepted service.

IT IS SO ORDERED.

Dated: ______________________, 2026

______________________________________
D. P. Marshall Jr.
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

v.

ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, et al.,

Defendants.

Case No. 4:26-cv-00611-DPM

JURY TRIAL DEMANDED

**PLAINTIFF'S MOTION REGARDING ALTER EGO AND PIERCING THE CORPORATE VEIL, TO DEFER FINAL DETERMINATION, AND FOR LIMITED DISCOVERY**

Plaintiff asks the Court to preserve the alter-ego, agency, instrumentality, and veil-piercing theories pleaded in the First Amended Complaint; defer any final determination until a factual record exists; and permit the limited corporate and jurisdictional discovery submitted with Plaintiff's Rule 26(d)(1) motion. Plaintiff does not ask the Court to pierce the corporate veil merely because related companies use the Alibaba name.

**1.** The First Amended Complaint pleads an alter-ego/agency count and identifies unresolved questions about which entity operated Alibaba.com, administered Trade Assurance, controlled seller accounts and records, processed payments, handled the June 2026 response, and could issue the offered credit. ECF No. 11 ¶¶ 88–94.

**2.** The Moving Defendants submitted categorical declarations denying platform, transaction, communication, and control roles. ECF Nos. 17-7 and 17-8.

**3.** The June 29, 2026 Alibaba NPA defines the covered Alibaba group, identifies the legal entities housing ICBU, describes ICBU's Alibaba.com operational functions, and includes an AGHL board resolution. The separate AUS NPA describes U.S. payment processing for Alibaba.com beginning in 2020. These materials do not establish alter ego by themselves, but they support focused discovery into operational control and corporate separateness.

**4.** The June 18, 2026 customer-service email concerning the exact Order states that Alibaba's senior team reviewed the complaint and offered a platform credit. The responsible legal entity and intercompany authority are not apparent from the customer-facing brand.

**5.** Final veil piercing is a fact-intensive equitable determination. A ruling now would be premature in either direction.

Plaintiff asks the Court to: (a) deny any request to foreclose alter-ego, agency, or veil-piercing theories before discovery; (b) permit the limited discovery in Plaintiff's proposed interrogatories and document requests; (c) require complete Rule 7.1 disclosures from appearing corporate parties; (d) allow supplemental briefing after discovery; and (e) grant any further just relief. If the Court concludes a separate motion to pierce is procedurally premature, Plaintiff asks that this filing be treated only as a motion to defer the issue and permit discovery—not as a request for immediate final liability.

Respectfully submitted,

**/s/ Bradley Burchfield**
Bradley Burchfield, Plaintiff Pro Se
5420 Kavanaugh Blvd #7927
Little Rock, Arkansas 72217
Telephone: 479-223-0038
Email: burchfieldbradley123@gmail.com
Dated: ____________________, 2026

**CERTIFICATE OF SERVICE**

I certify that on the date written below I served a true and correct copy of the foregoing by depositing it in the United States mail, first-class postage prepaid, addressed to counsel of record as follows, and by courtesy email to the address shown:

B. Robert Liu, Esq.
Balance Law Firm
1 World Trade Center, Suite 8500
New York, New York 10007
robert.liu@balancelawfirm.com

Date of service: ____________________, 2026

**/s/ Bradley Burchfield**
Bradley Burchfield, Plaintiff Pro Se

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

Case No. 4:26-cv-00611-DPM

v.

JURY TRIAL DEMANDED

ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, et al.,

Defendants.

**BRIEF IN SUPPORT OF MOTION REGARDING ALTER EGO AND PIERCING THE CORPORATE VEIL**

**ARGUMENT**

**I. ARKANSAS LAW REQUIRES A FACT-SPECIFIC RECORD.**

Corporate entities are ordinarily separate. Under Arkansas law, disregard of the corporate form is an equitable remedy applied cautiously when the form has been illegally abused to the injury of a third person. Epps v. Stewart Information Services Corp., 327 F.3d 642, 649–50 (8th Cir. 2003); Anderson v. Stewart, 366 Ark. 203, 209–10, 234 S.W.3d 295, 300 (2006). Ownership, common branding, or affiliation alone is insufficient. The relevant inquiry may include domination, operational control, observance of formalities, commingling, undercapitalization, shared functions, agency, and use of the form to perpetrate fraud or injustice.

That demanding standard is why Plaintiff does not request final veil piercing on the current paper record. The same standard makes a premature defense ruling inappropriate when the operational facts and intercompany records are controlled by Defendants.

**II. THE RECORD CREATES SPECIFIC QUESTIONS SUITABLE FOR DISCOVERY.**

The Li and Zhao declarations deny that the Moving Defendants operated Alibaba.com, controlled the subject seller or transaction, communicated with users, marketed, processed, or shipped. ECF Nos. 17-7 and 17-8. The official Alibaba NPA, signed through a group-wide

definition and approved by an AGHL board resolution, identifies ICBU and the entities housing it and describes centralized seller rules, enforcement, messaging, monitoring, and revenue functions. The AUS NPA separately describes payment and settlement services for Alibaba.com and U.S. buyers beginning in 2020. These records do not prove abuse of the corporate form or that the Order involved NPA subject merchandise. They do identify the precise organizational, control, data, payment, and allocation questions that discovery can answer.

The order-specific 2026 email presents an additional agency and authority question: which legal entity employed the senior team, accessed logistics and complaint data, and could commit a $500 Alibaba credit? The answer is not on the customer-facing email. The proposed written discovery asks for the responsible entity, supporting agreements, reporting lines, shared systems, and records. It also asks for the factual bases of the declarations, reducing rather than expanding the dispute.

## III. DEFERRAL IS THE PROPER PROCEDURAL RELIEF.

Veil piercing generally operates as a theory of derivative liability, not a free-standing source of damages. The Court can preserve the theory, allow proportionate discovery, and decide it later on a developed summary-judgment or trial record. If discovery shows ordinary corporate separateness and no abuse, the theory can be resolved then. If it shows domination, agency, or abuse tied to Plaintiff's injury, Plaintiff can seek leave to conform the pleadings and proof. This approach protects both sides.

## CONCLUSION

The Court should defer final alter-ego and veil-piercing determinations and permit the limited discovery requested.

Respectfully submitted,

**/s/ Bradley Burchfield**
Bradley Burchfield, Plaintiff Pro Se
5420 Kavanaugh Blvd #7927
Little Rock, Arkansas 72217
Telephone: 479-223-0038
Email: burchfieldbradley123@gmail.com
Dated: ____________________, 2026

**CERTIFICATE OF SERVICE**

I certify that on the date written below I served a true and correct copy of the foregoing by depositing it in the United States mail, first-class postage prepaid, addressed to counsel of record as follows, and by courtesy email to the address shown:

B. Robert Liu, Esq.
Balance Law Firm
1 World Trade Center, Suite 8500
New York, New York 10007
robert.liu@balancelawfirm.com

Date of service: ____________________, 2026

**/s/ Bradley Burchfield**
Bradley Burchfield, Plaintiff Pro Se

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

v.

ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, et al.,

Defendants.

Case No. 4:26-cv-00611-DPM

JURY TRIAL DEMANDED

**PROPOSED ORDER ON ALTER-EGO AND VEIL-PIERCING ISSUES**

Plaintiff's Motion Regarding Alter Ego and Piercing the Corporate Veil is GRANTED IN PART. The Court makes no final finding that any corporate veil should be pierced. Instead:

**1.** Final determination of alter ego, agency, instrumentality, and veil piercing is deferred pending the limited jurisdictional and corporate discovery authorized by separate order.

**2.** The parties may address those theories in supplemental briefing after completion of the authorized discovery on a schedule set by the Court.

**3.** Nothing in this Order shifts Plaintiff's burden to prove any applicable alter-ego or veil-piercing standard, and nothing treats common ownership, affiliation, or branding alone as sufficient.

**4.** Each appearing nongovernmental corporate party must comply with Federal Rule of Civil Procedure 7.1 and timely supplement its disclosure if required by that Rule.

IT IS SO ORDERED.

Dated: ____________________, 2026

______________________________________

D. P. Marshall Jr.
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

Case No. 4:26-cv-00611-DPM

v.

JURY TRIAL DEMANDED

ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, et al.,

Defendants.

**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE OF OFFICIAL DEPARTMENT OF JUSTICE RECORDS**

Plaintiff requests judicial notice under Federal Rule of Evidence 201 of the existence, publication, date, signatories, and contents of the following official United States Department of Justice records. Plaintiff does not ask the Court to use judicial notice to resolve reasonably disputed ultimate facts about the subject Order.

**1.** Alibaba.com U.S. LLC et al. Non-Prosecution Agreement dated June 29, 2026, including its Statement of Facts and AGHL board resolution, published at https://www.justice.gov/usao-ri/media/1450606/dl.

**2.** AUS Merchant Services, Inc. Non-Prosecution Agreement dated June 29, 2026, including its Statement of Facts, published at https://www.justice.gov/usao-ri/media/1450611/dl.

**3.** Department of Justice press release, "Alibaba Group and AUS Merchant Services Agree to Pay $600 Million to Resolve Allegations that they Failed to Prevent Illegal Sales of Pharmaceuticals, Pharmaceutical Equipment, and Other Illegal Products," published July 1, 2026, at https://www.justice.gov/opa/pr/alibaba-group-and-aus-merchant-services-agree-pay-600-million-resolve-allegations-they.

These are records hosted on an official government website whose existence and text can be accurately and readily determined from a source whose accuracy cannot reasonably be questioned. To the extent AGHL made statements in its executed agreement, Plaintiff also preserves any non-hearsay party-opponent argument under Rule 801(d)(2). The AUS agreement is offered at this stage to show the existence and content of AUS's official admissions and a concrete basis for payment discovery, not automatically as an AGHL admission.

Respectfully submitted,

**/s/ Bradley Burchfield**
Bradley Burchfield, Plaintiff Pro Se
5420 Kavanaugh Blvd #7927
Little Rock, Arkansas 72217
Telephone: 479-223-0038
Email: burchfieldbradley123@gmail.com
Dated: ____________________, 2026

**CERTIFICATE OF SERVICE**

I certify that on the date written below I served a true and correct copy of the foregoing by depositing it in the United States mail, first-class postage prepaid, addressed to counsel of record as follows, and by courtesy email to the address shown:

B. Robert Liu, Esq.
Balance Law Firm
1 World Trade Center, Suite 8500
New York, New York 10007
robert.liu@balancelawfirm.com

Date of service: ____________________, 2026

**/s/ Bradley Burchfield**
Bradley Burchfield, Plaintiff Pro Se

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

---

Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.

**No. 4:26-cv-00611-DPM**

# EXHIBIT A

## Alibaba.com U.S. LLC et al. Non-Prosecution Agreement (Alibaba Agreement)

The reproduced source document follows this cover page.

U.S. Department of
JUSTICE

The Department of Justice is posting this court document as a courtesy to the public. An official copy of this court document can be obtained (irrespective of any markings that may indicate that the document was filed under seal or otherwise marked as not available for public dissemination) on the Public Access to Court Electronic Records website at https://pacer.uscourts.gov. In some cases, the Department may have edited the document to redact personally identifiable information (PII) such as addresses, phone numbers, bank account numbers, or similar information, and to make the document accessible under Section 508 of the Rehabilitation Act of 1973, which requires federal agencies to make electronic information accessible to people with disabilities.

**United States Department of Justice**
*United States Attorney's Office*
*District of Rhode Island*

One Financial Plaza, 17th Floor
Providence, Rhode Island 02903

June 29, 2026

Samuel G. Williamson, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
2601 South Bayshore Dr, Ste 1550
Miami, FL 33133
***Counsel for Alibaba Group Holding Limited, Alibaba.com Singapore E-Commerce Pte. Limited, AliExpress E-Commerce One Pte. Ltd., and Alibaba.com U.S. LLC***

**Re: Alibaba.com U.S. LLC et al. Non-Prosecution Agreement**

Dear Counsel:

The Government and Alibaba enter into this Non-Prosecution Agreement ("Agreement") for misdemeanor violations of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq*. The Government agrees not to prosecute Alibaba during the term of this Agreement or thereafter for any violation related to the conduct described in the Statement of Facts, attached hereto as **Attachment A**. The Parties agree to certain terms and obligations as set forth below.

**A. Definitions**

1. In this Agreement, the following terms shall have the meanings provided below. Capitalized terms used but not defined in this Section have the meanings given elsewhere in this Agreement.

a. **"Alibaba"** means Alibaba Group Holding Limited (an exempted company incorporated in the Cayman Islands with limited liability on June 28, 1999, the ADSs of which are listed on the New York Stock Exchange) and all of its subsidiaries and their officers, directors, employees, and agents acting within the scope of their employment and agency relationships with Alibaba Group Holding Limited, including Alibaba.com Singapore E-Commerce Pte. Limited, AliExpress E-Commerce One Pte. Ltd., Alibaba Group (U.S.) Inc., and Alibaba.com U.S. LLC, and includes the Alibaba Platforms, as defined in this Section.

b. **"Alibaba Platforms"** mean ICBU and AliExpress, i.e., the business units that operate Alibaba's cross border international business-to-business (ICBU) which operates Alibaba.com and business-to-consumer (AliExpress) e-commerce platforms, respectively.

c. **"AliExpress"** means the business unit within Alibaba that operates the AliExpress cross-border international business-to-consumer e-commerce platform, including the legal entities that house this unit Alibaba.com Singapore E-Commerce Pte. Ltd. and AliExpress E-Commerce One Pte. Ltd.

d. **"Business Day"** means any day other than a Saturday, Sunday, or legal public holiday in the United States (as defined by 5 U.S.C. § 6103(a)).

e. **"Drug, Device, and Importation Laws"** mean the following statutes: (a) the FDCA (21 U.S.C. § 301 *et seq.*); (b) the Controlled Substances Act ("CSA") (21 U.S.C. § 801 *et seq.*); and (c) Smuggling (18 U.S.C. § 545).

f. **"Government"** means the United States Department of Justice, including the United States Attorney's Office for the District of Rhode Island, the United States Department of Justice's Enforcement & Affirmative Litigation Branch, and the United States Department of Justice's Money Laundering, Narcotics and Forfeiture Section.

g. **"ICBU"** means Alibaba's International Commerce Business Unit, which is the business unit within Alibaba that operates Alibaba.com, the international business-to-business platform, including the legal entities that house this unit, Alibaba.com Singapore E-Commerce Pte. Limited, Alibaba.com U.S. LLC, and Alibaba.com U.S. e-Commerce Corp.

h. **"Parties"** means the Government and Alibaba.

i. **"Subject Merchandise"** means drugs (as defined in 21 U.S.C. § 321(g)), devices (as defined in 21 U.S.C. § 321(h)), equipment used to manufacture counterfeit drugs (including tableting and encapsulating machines, punches, dies, plates, stones, and other things referenced in 21 U.S.C. §§ 331(i)(2) and 843(a)(5)-(7)), controlled substances (as defined in 21 U.S.C. § 802(6)), listed chemicals or chemical mixtures (as defined in 21 U.S.C. §§ 802(33) and (40)), anabolic steroids (as defined in 21 U.S.C. § 802(41)(A) and (C)), and other items regulated by the CSA (21 U.S.C. § 801 *et seq.*), the FDCA (21 U.S.C. § 301 *et seq.*), and any other product whose importation into the United States is prohibited under federal law and where such importation would constitute a felony.

**B. <u>Acceptance of Responsibility</u>**

2. The Alibaba Platforms admit, accept, and acknowledge that they are responsible under United States law for the acts of their officers, directors, employees, and agents as set forth in the Statement of Facts provided in **Attachment A** and incorporated by reference into this Agreement. Alibaba admits the facts described in **Attachment A** are true and accurate.

3. In any prosecution or proceeding against Alibaba, the Statement of Facts shall be admissible as: (a) substantive evidence offered by the Government in its case-in-chief and rebuttal

case; (b) impeachment evidence offered by the Government on cross-examination; and (c) evidence at any sentencing hearing or other hearing. Additionally, Alibaba shall not assert any claim that the Statement of Facts should be suppressed or is otherwise inadmissible as evidence in any form under the United States Constitution, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, Section 1B1.1(a) of the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines"), or any other federal rule.

### C. Term of the Agreement

4. Alibaba's obligations under this Agreement shall have a term of three years from the date on which the Agreement is executed (the "Term"). Alibaba agrees, however, that in the event the Government determines, in its sole discretion, acting reasonably, that Alibaba has knowingly and materially violated any provision of this Agreement, or has failed to completely perform or fulfill its material obligations under this Agreement, an extension or extensions of the Term may be imposed by the Government, in its sole discretion, for up to a total aggregate additional time period of one year, without prejudice to the Government's rights to proceed as provided in the below breach provisions of this Agreement. Any extension of the Agreement extends all terms of this Agreement, including the terms of the reporting requirement for the Alibaba Platforms in **Attachment D** and any tolling periods for any applicable statutes of limitation, for an equivalent period. The Government will provide Alibaba with written notice specifying the alleged violation in reasonable detail no fewer than thirty (30) calendar days before any extension is imposed, and Alibaba will have thirty (30) calendar days following receipt of such written notice (the "**Extension Cure Period**") to respond to the Government in writing to explain the nature and circumstances of such breach, as well as the actions the Alibaba Platforms have taken to address and remediate the situation, which explanation the Government shall consider in determining whether to extend the Term. The Government shall provide Alibaba with a written determination specifying the violation upon which the extension is based and the duration of the extension to be imposed.

### D. Relevant Considerations

5. The Government enters into this Agreement based on the individual facts and circumstances of this case, including those presented by Alibaba. These facts and circumstances include, but are not limited to, the following:

a. The seriousness of the conduct described in the Statement of Facts, which involved advertisements and sales related to Subject Merchandise;

b. Alibaba's lack of voluntary disclosure credit based on their failure to timely and voluntarily disclose to the Government the conduct described in the Statement of Facts; The Alibaba Platforms' compliance failures that contributed to the offense conduct, including material compliance failures that occurred after the Alibaba Platforms implemented remedial measures;

c. Credit for the Alibaba's cooperation with the Government's investigation, which included:

i. investigating facts and obtaining information as requested by the Government, which allowed the Government to preserve and obtain evidence as part of their own independent investigation;

ii. at the Government's request, collecting, organizing, and producing voluminous documents in ways that did not implicate foreign data privacy laws;

iii. assisting in making employees available to be interviewed;

iv. creating and producing to the Government certain information from the databases of the Alibaba Platforms regarding relevant e-commerce sales of Subject Merchandise to U.S. customers in ways that did not implicate foreign data privacy laws;

v. making factual presentations to the Government on a wide variety of topics; and

vi. providing separate counsel to witnesses to facilitate the Government's investigation, where appropriate.

d. The Alibaba Platforms' good-faith efforts to implement and refine compliance measures designed to detect and prevent violations of the statutes, terminating business relationships with companies and persons known to have been involved in the conduct described in the Statement of Facts; terminating third-party sellers' abilities to use the Alibaba Platforms services to unlawfully advertise, sell, import or export, distribute, or smuggle Subject Merchandise; closing categories associated with high risk transactions; making investments in staffing and resources for its legal and compliance teams, including engaging third-party vendors to assist with daily monitoring; updating policies, procedures, and supervisory structures with an emphasis on preventing and detecting the unlawful advertisement, sale, import or export, distribution, and smuggling of Subject Merchandise; and expanding employee training;

e. The Alibaba Platforms' agreements to enhance their corporate compliance programs and internal controls by adopting the minimum elements of a corporate compliance program provided in **Attachment C**;

f. The Alibaba Platforms' agreement to continue to cooperate with the Government as described in Section E;

g. Alibaba's lack of prior criminal history;

h. Accordingly, after considering (a) through (g) above, the Government has determined that the appropriate resolution in this case is this Agreement with Alibaba, with a monetary penalty of $125,000,000 (**"Monetary Penalty"**) for a

misdemeanor violation of the Food, Drugs, and Cosmetics Act and a civil forfeiture of $200,000,000 ("**Forfeiture Amount**") assessed against Alibaba.

**E. <u>Cooperation Requirements</u>**

6. The Alibaba Platforms shall fully cooperate with the Government on any matter that relates to: (1) the conduct described in this Agreement and the Statement of Facts and any individual or entity referred to therein, as well as any other related conduct under investigation by the Government in connection with Subject Merchandise at any time during the Term, until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the Term; (2) the advertisement, sale, import, export, distribution, or smuggling of Subject Merchandise into the United States transacted through the Alibaba Platforms that facilitate the advertisement, sale, import, export, distribution, or smuggling of Subject Merchandise into the United States; and (3) possible violations of Drug, Device, and Importation Laws by third-party sellers and U.S.-based buyers who use the Alibaba Platforms or any other e-commerce platforms owned or controlled by Alibaba. The Alibaba Platforms' obligation to cooperate with the Government under this Section shall end on the date that the investigations and prosecutions of all such matters conclude or the date that the Term ends, whichever date is later.

7. The Alibaba Platforms' cooperation pursuant to this Section is subject to applicable law and regulations, including valid claims of federal attorney-client privilege and attorney work-product doctrine. If the Alibaba Platforms withhold information based on the assertion of any such law, regulation, or privilege, the entity shall provide the Government with a log that describes the withheld information and the foundation of the law, regulation or privilege within thirty (30) Business Days of making their determination to withhold the information; cooperation and disclosure obligations under this Section include, but are not limited to, the following:

a. Each Alibaba Platform shall designate one or more agents to accept and process the Government's requests for cooperation within fifteen (15) Business Days of signing this Agreement. Each Alibaba Platform shall accept the Government's requests for cooperation via email through one or more dedicated email addresses.

b. Within fifteen (15) Business Days of receiving a request for cooperation, the requested Alibaba Platform shall conduct a diligent search for, and inform the Government whether it has identified, responsive information. If the entity identifies responsive information, the entity shall provide the Government with an estimated timeframe within which it expects to produce the information. Unless otherwise agreed to by the Government, this timeframe shall not exceed sixty (60) calendar days from the date that the entity receives the Government's request.

c. The Alibaba Platforms shall report within thirty (30) calendar days to the Government any evidence or allegation of a violation of federal law in connection with Subject Merchandise that the Alibaba Platforms learns was committed by the Alibaba Platforms' users of their e-commerce services in the United States, including buyers and sellers.

d. The Alibaba Platforms shall provide complete, truthful, and accurate information to the Government.

e. In its sole discretion, the Government may share any information, testimony, documents, records, or other tangible evidence that the Alibaba Platforms provide to the Government with any federal, state, or foreign government authority.

**F. Monetary Penalty**

8. Alibaba agrees that the Monetary Penalty in the amount of one hundred and twenty-five million dollars ("$125,000,000" or "$125 million") is appropriate given the facts and circumstances of this case, including the Relevant Considerations described in Section D. Alibaba agrees to pay the Monetary Penalty of $125 million to the U.S. Treasury no later than thirty (30) Business Days after the Effective Date of this Agreement in accordance with payment instructions provided by the Government in its sole discretion.

9. Alibaba's payment of the Monetary Penalty is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the Government that the Monetary Penalty is the maximum penalty that may be imposed in any future prosecution, and the Government is not precluded from arguing in any future prosecution that a court should impose a higher fine, although the Government agrees that under those circumstances, the Government will recommend to a court that the Monetary Penalty paid by Alibaba pursuant to this Agreement be applied toward any fine that a court might impose as part of its judgment against Alibaba. Alibaba acknowledges that such a recommendation will not be binding in any court.

10. Alibaba acknowledges that no U.S. tax deduction may be sought in connection with the payment of any part of the Monetary Penalty. Alibaba shall not seek or accept directly or indirectly reimbursement or indemnification from any source with regard to the Monetary Penalty amount that Alibaba pays pursuant to this Agreement.

**G. Civil Forfeiture**

11. Alibaba admits that money and/or property is subject to civil forfeiture because of third-party transactions on Alibaba Platforms that violated Drug, Device, and Importation Laws. Pursuant to Title 18, U.S. Code, Section 981(a)(1)(C), Alibaba consents to civil forfeiture in the Forfeiture Amount of two hundred million dollars ($200,000,000 or "$200 million"). Alibaba agrees that this Forfeiture Amount constitutes gross merchandise value of certain transactions conducted by third-party sellers on Alibaba Platforms in violation of Title 18, United States Code, Section 545.

12. Alibaba shall pay the Forfeiture Amount, plus any associated transfer fees, no later than thirty (30) Business Days after the Effective Date of this Agreement in accordance with payment instructions provided by the Government in its sole discretion. Alibaba hereby releases any and all claims that it may have to the Forfeiture Amount and agree that the forfeiture of such funds may be accomplished either administratively or judicially at the Government's election, and waive the requirements of any applicable laws, rules, or regulations governing the forfeiture of

assets, including those requiring notice of forfeiture. If the Government seeks to forfeit the Forfeiture Amount judicially, Alibaba waives all requirements pertaining to forfeiture set forth in Title 18, U.S. Code, Section 983, including the filing of a civil forfeiture complaint as to its Forfeiture Amount and notice of the same, and consents to entry of an order of forfeiture directed to such funds. If the Government seeks to forfeit the Forfeiture Amount administratively, Alibaba consents to the entry of a declaration of forfeiture and waive the requirements of Title 18, U.S. Code, Section 983 regarding notice of seizure in non-judicial forfeiture matters.

13. Alibaba agrees to sign any additional documents necessary to complete forfeiture of the Forfeiture Amount. Alibaba also agrees that they shall not file any petitions for remission, restoration, or any other assertion of ownership or request for return relating to the Forfeiture Amount, or any other action or motion seeking to collaterally attack the seizure, restraint, forfeiture, or conveyance of the Forfeiture Amount, nor shall it assist any others in filing any such claims, petitions, actions, or motions.

14. Alibaba's payment of the Forfeiture Amount is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the Government that the Forfeiture Amount surrendered by Alibaba is the maximum forfeiture that may be imposed in any future prosecution, and the Government is not precluded from arguing in any future prosecution that a court should impose a higher criminal forfeiture amount or substitute money judgment in a criminal proceeding, although the Government agrees that under those circumstances, the Government will recommend to a court that the Forfeiture Amount paid by Alibaba pursuant to this Agreement be applied toward any criminal forfeiture or substitute money judgment that a court might impose as part of its judgment. Alibaba acknowledges that such a recommendation will not be binding on any court.

15. Alibaba agrees that they shall not claim, assert, or apply for, either directly or indirectly, any tax deduction, tax credit, or any other offset with regard to any U.S. federal, state, or local tax or taxable income in connection with the payment of any part of the Forfeiture Amount. Alibaba shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source with regard to the Forfeiture Amount that Alibaba pays pursuant to the Agreement.

**H. <u>Conditional Release from Liability</u>**

16. Except as otherwise provided in this Agreement, the Government agrees that it will not bring any criminal or civil case against Alibaba relating to (i) any of the conduct described in the Statement of Facts of this Agreement, (ii) any of the information disclosed by Alibaba to the Government as part of this investigation prior to executing this Agreement, or (iii) any information known by the Government prior to the execution of this Agreement that relates to the conduct described in the Statement of Facts to this Agreement. However, the Government may use any information related to the conduct described in the Statement of Facts against Alibaba: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; or (c) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code. Nothing herein shall preclude Alibaba from presenting this Agreement, and the Government's agreement herein, to any other law enforcement, regulatory, or government authority as evidence of cooperation with, and resolution of claims by, the Government with

respect to the conduct described herein.

17. This Agreement does not provide any protection against prosecution for any future conduct by Alibaba. In addition, this Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with Alibaba.

**I. Corporate Compliance Program**

18. The Alibaba Platforms shall implement (or continue to the extent already implemented) a corporate compliance program that meets the minimum elements and standards provided in **Attachment C**. The Alibaba Platforms' corporate compliance program shall be designed to prevent and detect violations of Drug, Device, and Importation Laws involving Subject Merchandise. The Compliance Program shall cover the operations of the Alibaba Platforms' employees, contractors, and subcontractors whose responsibilities relate to the (a) advertisement, sale, import, export or distribution of Subject Merchandise; (b) review and moderation of product listings related to Subject Merchandise; and (c) review and moderation of licenses of buyers and sellers of Subject Merchandise who use the Alibaba Platforms' online services. No later than thirty (30) calendar days after the Term expires, each of the Alibaba Platforms, by their respective Chief Executive Officers and Chief Compliance Officers, will certify to the Government, in the form of executing the document attached as Attachment E to this Agreement, that each Alibaba Platform has met its compliance obligations pursuant to this Agreement. Such certification will be deemed a material statement and representation by the Alibaba Platform to the executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and 1519.

19. The Alibaba Platforms will periodically review their corporate compliance programs and correct any deficiencies in the programs' internal controls, policies, and procedures that prevent the programs from effectively detecting and deterring violations of Drug, Device, and Importation Laws through the purchase or sale of Subject Merchandise through their online platforms.

**J. Compliance Monitoring**

20. For the purpose of assessing or determining compliance with this Agreement, the Government may, upon written notice to the Alibaba Platforms:

a. require the Alibaba Platforms to submit written reports, certifications, or other information relating to compliance with any provision of this Agreement;

b. interview, under oath or otherwise, officers, employees, or agents of the Alibaba Platforms who may have relevant knowledge; and

c. require the Alibaba Platforms to produce documents, communications, data, and other information in their possession, custody, or control relating to compliance with any provision of this Agreement, subject to applicable laws and regulations, as well as valid claims of federal attorney-client privilege and attorney work-product doctrine.

21. The Alibaba Platforms shall designate one or more agents of the Alibaba Platforms to accept and process the Government's requests related to compliance monitoring within seven (7) Business Days of signing this Agreement. The Alibaba Platforms shall accept the Government's requests for compliance monitoring information via email through one or more dedicated email addresses maintained by each company. The Alibaba Platforms shall comply with the Government's compliance monitoring requests within thirty (30) calendar days of receiving the Government's written notice. In its sole discretion, the Government may grant extensions of time for the Alibaba Platforms to comply with the Government's requests for compliance monitoring information.

## K. Non-Prosecution

22. The Government agrees that if Alibaba complies with its obligations under this Agreement, (a) the Government will not bring any criminal case or other enforcement action against Alibaba, or any of its present or former subsidiaries or affiliates relating to any of the conduct described in the Statement of Facts, and (b) at the conclusion of the Term, this Agreement shall expire. In assessing Alibaba's compliance, the Government shall consider the totality of Alibaba's conduct under this Agreement and shall not declare a failure to comply based solely on minor or promptly cured technical violations, which shall be determined at the Government's discretion, acting reasonably. To the extent there is conduct disclosed by Alibaba that is not set forth in this Agreement, such conduct shall not be exempt from further prosecution and is outside the scope of this Agreement. Alibaba expressly acknowledges and agrees that this Agreement does not preclude the filing of a case arising from conduct that is not described in this Agreement and the Statement of Facts.

## L. Breach of the Agreement

23. If, during the Term, either of the Alibaba Platforms (a) commits a felony under United States law; (b) knowingly provides in connection with this Agreement materially false, incomplete, or misleading information, including in connection with the disclosure of information about individual culpability; (c) knowingly and materially fails to cooperate as provided in Section E of this Agreement; (d) knowingly fails to implement compliance programs in all material respects as provided in Section I of this Agreement and **Attachment C**; or (e) otherwise knowingly and materially fails to perform or fulfill any term or condition of this Agreement, the relevant Alibaba Platform shall be in breach, and thereafter be subject to prosecution for violations of applicable federal law, including, but not limited to, for conduct described in the Attached Statement of Facts, regardless of whether the Government obtains knowledge of the breach after the Term expires if the breach occurred during the Term of the Agreement. The notice-of-breach and cure provisions set forth in Paragraphs 26 through 28 shall apply to any such post-Term breach determination.

24. Any prosecution resulting from a knowing and material breach of this Agreement, as defined in Section L, Paragraph 23, may be pursued by the Government in the United States District Court for the District of Rhode Island or any other appropriate venue. As to the conduct described in the Statement of Facts. Alibaba knowingly waives any constitutional or statutory right

to venue and to presentment to or indictment by a grand jury for felony crimes, and consents to the filing of an information or complaint for said crimes. Determination of whether Alibaba has breached this Agreement and whether to pursue prosecution shall be in the Government's sole discretion, acting reasonably, after good-faith consideration of any written response submitted by Alibaba pursuant to Paragraph 26. Any such prosecution may be premised on information provided by Alibaba.

25. Any prosecution relating to the conduct described in this Agreement or relating to conduct of the Alibaba Platforms in connection with a violation of the Drug, Device, and Importation Laws known to the Government prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against Alibaba notwithstanding the expiration of the statute of limitations, for the period between the signing of this Agreement and the expiration of the Term plus six months. Thus, by signing this Agreement, Alibaba agrees that the statute of limitations with respect to any such prosecution against Alibaba that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus six months. In addition, Alibaba agrees to toll the running of the statute of limitations as to any violation of Drug, Device, and Importation Laws that occurs during the Term for one year from the date upon which the violation occurs, and that this period shall be excluded from any calculation of time for purposes of the application of any applicable statute of limitations.

26. In the event the Government determines that Alibaba has breached this Agreement, as defined in this Section L, the Government agrees to provide the entity with written notice of such breach prior to instituting any prosecution resulting from such breach. Written notice of breach shall include: (a) the provision breached; (b) the approximate date of the breach; and (c) a description of the breach sufficient to permit the respective company to cure. Within thirty (30) calendar days of receipt of such notice, the entity shall have the opportunity to respond to the Government in writing to explain the nature and circumstances of such breach, as well as the actions the entity has taken to address and remediate the breach, which explanation the Government shall consider in determining whether to pursue prosecution of Alibaba.

27. In the event that the Government determines that Alibaba has knowingly and materially breached this Agreement, as defined in Section L, Paragraph 23: (a) all statements made by or on behalf of Alibaba to the Government, including the Statement of Facts, and any testimony given by Alibaba before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Government against Alibaba; and (b) Alibaba shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, Section 1B1.1(a) of the USSG, or any other federal rule that any such statements or testimony made by or on behalf of Alibaba prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current officer, director, or employee, or any person acting on behalf of, or at the direction of, the relevant Alibaba Platform, will be imputed to the relevant Alibaba Platform for the purpose of determining whether that entity has deliberately violated any provision

of this Agreement as defined in Section L, Paragraph 23, and shall be in the sole discretion of the Government, acting reasonably.

28. It is further understood that within thirty (30) calendar days after receiving a notice of breach, or to such longer period as the Government may agree in writing, Alibaba may cure the breach to the Government's reasonable satisfaction ("**Cure Period**").

29. Alibaba acknowledges that the Government has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if any entity breaches this Agreement and this matter proceeds to judgment. Alibaba further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

30. On the date that the period of non-prosecution specified in this Agreement expires, each of the Alibaba Platforms, by their respective Chief Executive Officers and the Chief Financial Officers, shall submit their respective certifications set forth in **Attachment D** and certify to the Government that they have met their obligations pursuant to this Agreement. Each certification will be deemed a material statement and representation by the Alibaba Platforms in a matter within the jurisdiction of the executive branch of the United States for purposes of Title 18, United States Code, Sections 1001 and 1519, and it will be deemed to have been made in the District of Rhode Island.

**M. Applicability**

31. Except as may otherwise be agreed by the Government and Alibaba, in connection with a particular transaction, Alibaba agrees that in the event that, during the Term, they undertake any change in corporate form that directly involves Alibaba Platforms, including if Alibaba sells, merges, or transfers business operations that are material to Alibaba Platforms' operations, or to the operations of any of Alibaba's subsidiaries or affiliates involved in the conduct described in the Statement of Facts, as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form, Alibaba shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement.

32. The purchaser or successor in interest must also agree in writing that the Government's ability to declare breach under this Agreement is applicable in full force as to that entity. Alibaba agrees that the failure to include these provisions in their transactions will make any such transactions null and void. Alibaba shall provide notice to the Government at least thirty (30) calendar days prior to undertaking any such sale, merger, transfer, or other change in corporate form. The Government shall notify Alibaba within fifteen (15) calendar days if it determines that the transaction(s) will have the effect of circumventing or frustrating the enforcement purposes of this Agreement. If, at any time during the Term, Alibaba engages in a transaction that has the effect of circumventing or frustrating the enforcement purposes of this Agreement, the Government may deem it a breach of this Agreement pursuant to Section K of this Agreement. Nothing in this Agreement shall restrict Alibaba from indemnifying (or otherwise holding harmless) the purchaser

or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction, so long as such indemnification does not have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the Government, acting reasonably.

N. **Public Statements by Alibaba**

33. Alibaba shall not, through present or future attorneys, officers, directors, employees, agents, or any other person authorized to speak for Alibaba, make any public statement, contradicting in whole or in part the acceptance of responsibility by the Alibaba Platforms as set forth in this Agreement. Any such contradictory statement shall, subject to the cure rights of the Alibaba Platforms described in this paragraph, constitute a breach of this Agreement, and the relevant Alibaba Platform thereafter shall be subject to prosecution as set forth in this Agreement. The decision whether any public statement by any such person contradicting a fact contained in this Agreement will be imputed to the respective Alibaba Platform for the purpose of determining whether it has breached this Agreement shall be in the sole discretion of the Government, acting reasonably.

34. If the Government determines that a public statement by any such person contradicts in whole or in part a statement contained in the Statement of Facts, the Government shall notify Alibaba, and Alibaba may avoid a breach of this Agreement by publicly repudiating such statement(s) within ten (10) Business Days after notification. Alibaba shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in this Agreement provided that such defenses and claims do not contradict, in whole or in part, a statement contained in this Agreement. This paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of Alibaba in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of Alibaba. Any determination by the Government, acting reasonably, that a public statement constitutes a breach of this Agreement shall be subject to the 30-day written notice and opportunity to respond procedure set forth in Paragraph 26 before any prosecution may be initiated.

35. If Alibaba issues a press release or holds any press conference in connection with this Agreement, Alibaba shall first consult with the Government to determine: (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Government and Alibaba; and (b) whether the Government has any objection to the release.

36. The Government agrees, if requested to do so, to bring to the attention of law enforcement and regulatory authorities the facts and circumstances relating to the nature of the conduct underlying this Agreement, including the nature and quality of the Alibaba Platforms' cooperation and remediation. By agreeing to provide this information to such authorities, the Government does not agree to advocate on behalf of Alibaba. Instead, the Government only agrees to provide facts to be evaluated independently by such authorities.

**O. Limitations on Binding Effect of Agreement**

37. This Agreement is binding on Alibaba, the United States Department of Justice, including the United States Attorney's Office for the District of Rhode Island, the United States Department of Justice's Enforcement & Affirmative Litigation Branch, and the United States Department of Justice's Money Laundering, Narcotics and Forfeiture Section. It does not bind any other federal agencies, or any state, local, or foreign law enforcement or regulatory agencies. The Government shall bring the cooperation of Alibaba and its compliance with its obligations under this Agreement to the attention of such agencies and authorities if requested to do so by Alibaba.

**P. Notice**

38. Any notice to the Government under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to:

Chief, Criminal Division
U.S. Attorney's Office, District of Rhode Island
One Financial Plaza, 17th Floor
Providence, RI 02903

Director, Enforcement & Affirmative Litigation Branch, Civil Division
U.S. Department of Justice
450 5th Street NW, Room 6400 South
Washington, DC 20530

Chief, Bank Integrity Unit
Money Laundering, Narcotics and Forfeiture Section, Criminal Division
U.S. Department of Justice
1400 New York Avenue NW
Washington DC 20005

39. Any notice to Alibaba under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to:

Alibaba Group Holding Ltd.
26/F Tower One, Times Square
1 Matheson Street
Causeway Bay, Hong Kong
Attention: Legal Department

Alibaba.com U.S. LLC
525 Alamnor Ave, Suite 400
Sunnyvale, CA 94085
Attention: Chief Compliance Officer

With a copy to:

Quinn Emanuel Urquhart & Sullivan LLP
2601 South Bayshore Dr, Ste 1550
Miami, FL 33133
Attention: Samuel G. Williamson

40. Notice shall be effective upon actual receipt by the Government or Alibaba. Notice shall also be given by email to any email addresses designated by the Government or Alibaba.

**Q. <u>Complete Agreement</u>**

**41.** The Government and Alibaba acknowledge that each party has had a full opportunity to negotiate the terms of this Agreement. The rule of construction that interprets contracts against the drafter, therefore, shall not apply to this Agreement. This Agreement, including its attachments, sets forth all the terms of the Agreement between Alibaba and the Government. No amendments, modifications, or additions to this Agreement shall be valid unless they are in writing and signed by the Government, the attorneys for Alibaba, and a duly authorized representative of Alibaba. The following documents are attached to and incorporated into this Agreement:

**Attachment A**: The Alibaba Statement of Facts

**Attachment B**: The Alibaba Certificate of Corporate Resolutions

**Attachment C**: The Alibaba Corporate Compliance Program

**Attachment D**: The Alibaba Disclosure Certification

**Attachment E**: The Alibaba Compliance Certification

**AGREED AND CONSENTED TO:**

***The United States of America***

CHARLES C. CALENDA
First Assistant United States Attorney

Date: 6/29/2026 By: [signature]
Dulce Donovan
Executive Assistant U.S. Attorney

Date: 6/29/2026 By: Julianne Klein
Julianne Klein
Assistant U.S. Attorney

LISA K. HSIAO
Director
Enforcement and Affirmative Litigation Branch,
Civil Division

Date: 6/29/2026 By: [signature]
Patrick R. Runkle
Assistant Director

Date: 6/29/2026 By: [signature]
Colin W. Trundle
Trial Attorney

Date: 6/29/2026 By: [signature]
Cadesby B. Cooper
Trial Attorney

MARGARET A. MOESER
Chief
Money Laundering, Narcotics and Forfeiture
Section, Criminal Division

Date: 6/29/2026 By: [signature]
Rachel N. Agress
Trial Attorney

Date: 6/29/2026 By: [signature]
Elysa Wan
Trial Attorney

**AGREED AND CONSENTED TO:**

***Alibaba Group Holding Limited and Alibaba.com Singapore E-Commerce Pte. Ltd.***

Date: June 29, 2026 By: ______________________

Siying Yu
Authorized Officer and General Counsel
Alibaba Group Holding Limited

Date: June 29, 2026 By: ______________________

Albert Liu
General Counsel
Alibaba.com Singapore E-Commerce Pte. Ltd.

Date: June 29, 2026 By: ______________________

Samuel G. Williamson
Quinn Emanuel Urquhart & Sullivan, LLP
Counsel for Alibaba Group Holding Limited and
Alibaba.com Singapore E-Commerce Pte. Ltd.

**ATTACHMENT A**
**STATEMENT OF FACTS**

The following Statement of Facts is incorporated by reference as part of the Non-Prosecution Agreement (the "Agreement") between the Government and Alibaba (as defined in the Agreement). Alibaba agrees and stipulates that the following information is true and accurate. The Alibaba Platforms admit, accept, and acknowledge that they are responsible for the acts of their officers, directors, employees, and agents as set forth below. Should the Government later pursue the prosecution that is covered by this Agreement, Alibaba agrees that it will neither contest the admissibility of, nor contradict, this Statement of Facts in any such proceeding. The following facts describe events that occurred between approximately January 2016 and December 2024 (the "Relevant Period").

1. During the Relevant Period, Alibaba Group (U.S.) Inc., and Alibaba.com US LLC were Delaware companies with a principal place of business at 400 South El Camino Real, Suite 400, San Mateo, California 94402. Alibaba Group (U.S.) Inc. and Alibaba.com US LLC were subsidiaries of Alibaba Group Holding Limited. Alibaba.com Singapore E-Commerce Pte. Limited and AliExpress E-Commerce One Pte. Limited were Singapore based subsidiaries of Alibaba Group Holding Limited. Alibaba Group Holding Limited was founded in 1999 in China and was listed on the New York Stock Exchange in 2014. Alibaba Group Holding Limited was organized and existed under the laws of the Cayman Islands, with its principal executive offices at 969 West Wen Yi Road, Yu Hang District, Hangzhou 31 1121, China.

2. Alibaba.com was a global business-to-business ("B2B") e-commerce platform that connected buyers and sellers from around the world on a single platform, which facilitated wholesale distribution of a wide range of goods. The International Commerce Business Unit ("ICBU") was the business arm managed by Alibaba.com Singapore E-Commerce Pte. Limited, which managed Alibaba.com, including within the United States. A separate business unit within Alibaba Group Holding Limited, AliExpress, was a global business-to-customer ("B2C") e-commerce platform, which facilitated sales of a wide range of goods from sellers to individual customers. AliExpress was operated by Alibaba.com Singapore E-Commerce Pte. Limited and AliExpress E-Commerce One Pte. Limited. The B2B and B2C services were offered through the web domains Alibaba.com and AliExpress.com, respectively. During the Relevant Period, there were at any given time more than 200 million product listings available on Alibaba.com and over 50 billion product sales occurred on a yearly basis.

3. ICBU was not an importer of record in connection with the transactions that are the subject of this resolution, nor did it take physical possession of goods. Instead, ICBU operated the Alibaba.com marketplace which linked third-party buyers and sellers to transact the sale of goods. During the Relevant Period, ICBU offered services to independent third-party sellers that were intended to enhance sales and facilitate transactions with buyers on Alibaba.com. These services included "Gold" and "Verified" supplier membership programs that promoted independent third-party sellers' products. Through April 2021, ICBU also offered a payment service on Alibaba.com called "trade assurance." Through this payment service, ICBU processed payments linked to e-commerce orders.

4. During the relevant period, ICBU had policies which governed what products could be sold on Alibaba.com. Sellers agreed to abide by those policies to access the platform. ICBU held the right to take enforcement actions against non-compliant sellers, including barring sellers from selling goods on Alibaba.com. ICBU maintained and periodically improved those policies throughout the Relevant Period.

5. During the Relevant Period, ICBU maintained a Rules Center, a centralized hub on which it published the various policies and penalty procedures which governed sellers and buyers using Alibaba.com. ICBU's rules expressly prohibited the use of Alibaba.com to sell and import pharmaceuticals that were non-compliant with U.S. Food and Drug Administration ("FDA") regulations. ICBU's listing policies also expressly prohibited the sale of pill presses and other illegal products. In addition, ICBU's policies and terms of use required all users to comply with the laws of the jurisdictions within which the users operated. Despite its policies to the contrary, ICBU failed to prevent some third-party sellers from circumventing controls and measures implemented by Alibaba.com and using Alibaba.com to sell and import goods into the United States that violated the Federal Food, Drug, and Cosmetic Act ("FDCA"), as well as other Drug, Device, and Importation Laws through Alibaba.com.

6. ICBU further offered proprietary, built-in messenger platforms that allowed real-time, private chat interactions, requests for price quotes, and management of orders by buyers and merchants. Some third-party merchants at times used ICBU's private messaging platform to discuss, among other things, the arrangement of shipments with U.S. buyers in a manner that would evade US customs laws or to provide buyers with contact information for encrypted messaging platforms unaffiliated with ICBU to evade restrictions imposed by the FDCA, as well as other Drug, Device, and Importation Laws. ICBU had the capability to monitor and moderate seller and buyer use of its own messaging platforms and implemented monitoring measures at some points during the Relevant Period, but those measures were not sufficient to prevent the product sales that gave rise to this Agreement. For example, the Alibaba Platforms generally did not penalize merchants unless they publicly posted prohibited goods on the platform.

7. During the Relevant Period, ICBU's systems, policies, and procedures failed to prevent the sale and importation of certain controlled substances, List I chemicals, List II chemicals, prescription drugs, active pharmaceutical ingredients, and pharmaceutical equipment by independent third-party sellers who were not qualified to distribute such products into the United States. Because of this, some third-party sellers used Alibaba.com to sell and import these products into the United States in violation of the FDCA, FDA regulations, and other Drug, Device, and Importation Laws and in violation of ICBU policies. However, since ICBU charged membership, marketing, advertising, shipping, and transaction processing fees to users of the Alibaba.com marketplace, ICBU derived some profit related to those sellers' illegal activities.

8. During the Relevant Period, similar sales also occurred on AliExpress' B2C platform. The transaction value of these sales tended to be lower, as AliExpress is a B2C platform (in contrast to Alibaba.com's B2B platform).

9. Through the Alibaba Platforms, the Government conducted over 40 undercover purchases of drugs and equipment that were illegal to be imported into the United States under the

FDCA as well as other Drug, Device, and Importation Laws. These products were ultimately shipped to the District of Rhode Island by third-party sellers.

10. At times, Alibaba employees raised concerns that the ICBU platform was used to sell improper products into the United States. The Alibaba employees also raised concerns that ICBU's compliance measures and filtering systems were inadequate to prevent the sale of the products that are the subject of this resolution to buyers in the United States. ICBU was not sufficiently reactive or proactive in following up on these concerns.

11. Approximately 80,000 product sales on the Alibaba Platforms took place during the Relevant Period and involved product sales from overseas countries to the United States that lacked the requisite approvals under the FDCA as well as other Drug, Device, and Importation Laws. The combined gross merchandise value of these transactions was greater than $200 million. The value of these transactions represents the prices charged by third-party merchants, and not revenues or profits received by the Alibaba Platforms. These funds are subject to civil forfeiture pursuant to Title 18, U.S. Code, Section 981(a)(1)(C) as property which constitutes or is derived from proceeds traceable to smuggling goods by independent third-party sellers in violation of Title 18, U.S. Code, Section 545.

**ALIBABA GROUP HOLDING LIMITED**
(Incorporated in the Cayman Islands)
(the "Company")

Certified Extract of Minutes of a Meeting of the Board of Directors (the "Board") of the Company held at Times Square, Hong Kong and via Video Conference on March 18, 2026, Beginning at 9:35 a.m., Hong Kong Time
(the "Board Minutes")

---

A. Extract of the relevant definition in the Board Minutes:

"Authorized Officers": "the officers named in Schedule A hereto."

"Company Secretary": "the Company Secretary of the Company."

"Proposed Settlement": "a settlement proposal offered by the DOJ including (1) a non-prosecution agreement (the "Agreement"), (2) a characterization of certain conduct as misdemeanor and (3) a penalty of US$325 million."

B. Extract of the relevant Board Minutes:

**After due and careful consideration, IT WAS UNANIMOUSLY RESOLVED BY THE INDEPENDENT DIRECTORS PRESENT,**

**THAT the Proposed Settlement, on terms substantively as described herein be and hereby is approved;**

**THAT the Company agrees to pay a monetary penalty amount of $125,000,000 and a civil forfeiture of $200,000,000 pursuant to the Agreement;**

**The Company accepts the terms and conditions of the Agreement, including, but not limited to: (a) a knowing waiver of its rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); and (b) a knowing waiver for purposes of the Agreement and any charges by the United States arising out of the conduct described in the Statement of Facts attached to the Agreement of any objection with respect to indictment and venue and consents to the filing of an information, as provided under the terms of the Agreement, in the United States District Court for the District of Rhode Island, or any other appropriate venue; and (c) a knowing waiver of any defenses based on the statute of limitations for any prosecution relating to the conduct described in the Statement of Facts or relating to conduct known to the DOJ prior to the date on which the Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of the Agreement;**

**THAT the Authorized Officers, acting together or singly, be and hereby are authorized, approved and directed, on behalf of the Company, to further negotiate with the DOJ to finalize the terms of the Proposed Settlement and the Agreement, and to approve, execute and deliver the Agreement, in such form and with such terms and conditions as any such Authorized Officer shall approve, such Authorized Officer's execution thereof**

**to be conclusive evidence of such Authorized Officer's approval of the terms of the Agreement;**

**THAT the Authorized Officers, acting together or singly, be and hereby are authorized, approved and directed, on behalf of the Company, to take such further actions and to approve, execute and deliver such further agreements or documents as such Authorized Officer shall in his or her reasonable discretion deem necessary, appropriate or advisable in order to carry out the intent and purposes of the foregoing resolutions (including without limitation making any public announcements and/or filings);** ***provided*****, in each case, that such documents, actions, announcements and filings are consistent with and within the scope of the foregoing resolutions; and**

**THAT any and all actions previously taken by any Authorized Officer or designee thereof relating to and within the scope of these resolutions be and hereby are adopted, approved and ratified and confirmed as valid acts and deeds taken on behalf of the Company.**

**Schedule A**

**Authorized Officers**

Joseph C. TSAI, Chairman, or his successor

Eddie Yongming WU, Chief Executive Officer, or his successor

Toby Hong XU, Chief Financial Officer, or his successor

Sara Siying YU, General Counsel, or her successor

Certified as a true extract of the Board Minutes:

ZHANG Jinwei
Company Secretary
Date: June 25, 2026

## ATTACHMENT C

## THE ALIBABA CORPORATE COMPLIANCE PROGRAM

In order to address any deficiencies in internal controls and compliance policies and procedures as they relate to prevention, detection and deterrence of violations of the Drug, Device and Importation Laws in connection with the Subject Merchandise (collectively, the "Compliance Program"), each of the Alibaba Platforms agree to continue to conduct, in a manner consistent with all of its obligations under this Agreement, appropriate reviews of its Compliance Program and to implement enhancements as warranted. At a minimum, the Compliance Programs should include the following elements, to the extent they are not already present:

*Commitment to Compliance*

1. Each of the Alibaba Platforms will ensure that its directors and senior management provide strong, explicit, and visible support and commitment to compliance with its Compliance Program and demonstrate rigorous support for compliance principles via their actions and words.

2. Each of the Alibaba Platforms will ensure that mid-level management throughout its organization reinforces leadership's commitment to compliance policies and principles and encourages employees to abide by them. Each of the Alibaba Platforms will create and foster a culture of ethics and compliance with the laws of the United States in its day-to-day operations at all levels of the company.

*Periodic Risk Assessment and Review*

3. Each of the Alibaba Platforms will independently implement a risk management process to identify, analyze, and address the individual circumstances of its e-commerce platform, and in particular the compliance risks it faces relating to the potential advertisement, sale, importation, and distribution of Subject Merchandise in the United States through its e-commerce services and potential violations of Drug, Device, and Importation Laws.

4. On the basis of its periodic risk assessment, each of the Alibaba Platforms shall take appropriate steps to design, implement, or modify each element of its Compliance Program to reduce the risk of violations of Drug, Device, and Importation Laws and associated compliance policies.

*Policies and Procedures*

5. Each of the Alibaba Platforms will independently develop and promulgate a clearly articulated and visible corporate policy against violations of Drug, Device, and Importation Laws, which shall be memorialized in a written compliance policy or policies, such as the Platform's existing Prohibited and Restricted Items Policy.

6. Each of the Alibaba Platforms will enhance its respective Prohibited and Restricted Items Policy and other applicable elements of its Compliance Program to reduce the risk of violations of Drug, Device, and Importation Laws. Each of the Alibaba Platforms will take

appropriate measures to encourage and support the observance of ethics and compliance policies and procedures against violations of Drug, Device, and Importation Laws under the Compliance Program by personnel at all levels of the company. These policies and procedures shall apply to all directors, officers, and employees and, where necessary and appropriate, outside parties acting on behalf of the applicable Alibaba Platform, including, but not limited to, agents, consultants, and joint venture partners (collectively, "agents and business partners"). Each of the Alibaba Platforms shall notify all employees that compliance with the Compliance Program is the duty of individuals at all levels of the company. Such enhancements to the Compliance Program shall include continued prohibition of the use of any e-commerce Internet services on the applicable Alibaba Platform to list, advertise the sale of, or otherwise facilitate offers to sell, distribute, or dispense to customers in the U.S. any of the following products to the extent that the sale of such products would violate the Controlled Substances Act ("CSA") and the Federal Food, Drug, and Cosmetic Act ("FDCA"), including as part of a new Controlled Substance, Drug and Pill Press Policy:

a. drugs (as defined in 21 U.S.C. § 321(g)(1));

b. any Class III medical "device" (as defined in 21 U.S.C. § 321(h) and 21 U.S.C. § 360c(a)(1)(C));

c. equipment used to manufacture counterfeit drugs (including tableting and encapsulating machines, punches, dies, plates, stones, and other things referenced in 21 U.S.C. §§ 331(i)(2) and 843(a)(5)-(7));

d. any "controlled substance" (as defined in 21 U.S.C. § 802(6) and included on Schedules I through V, 21 C.F.R. § 1308.11 through .15, subject to the exclusions and exceptions in 21 C.F.R. § 1308.21 through .35);

e. listed chemicals or chemical mixtures (as defined in 21 U.S.C. §§ 802(33) and (40)); and

f. anabolic steroids (as defined in 21 U.S.C. § 802(41)(A) and (C));

7. Each of the Alibaba Platforms will maintain, or where necessary establish, effective, risk-based transaction monitoring systems capable of detecting conduct that violates the CSA and the FDCA. The adequacy of the systems shall be evaluated in light of the state of available commercial technology and existing industry practices and standards at the time of assessment.

8. If, through its Compliance Program, an Alibaba Platform determines that there are reasonable grounds to believe that a user of its e-commerce services is knowingly engaged in the unlawful solicitation, advertisement, sale, importation or exportation, distribution, or smuggling of counterfeit prescription die molds, Schedule I-V controlled substances, or List I and II chemicals into or within the United States, the relevant Alibaba Platform shall suspend the user and initiate an internal investigation. Upon completion of the investigation, if the Alibaba Platform concludes that the grounds for initiating the investigation are substantiated by the information reviewed, the relevant Alibaba Platform will permanently ban that user from using its e-commerce services. Each of the Alibaba Platforms shall take reasonable steps to ensure the permanent ban cannot be readily

circumvented, and such steps shall include, but shall not be limited to, measures to prevent banned parties from re-utilizing the Alibaba Platforms in different forms.

9. Each of the Alibaba Platforms shall evaluate, periodically reassess, and, where appropriate, apply and expand its respective artificial intelligence-based technologies to prevent the sale and advertisement of products on the Alibaba Platforms whose sale or importation into the United States would violate that the CSA and the FDCA.

10. Each of the Alibaba Platforms shall ensure that its Compliance Program includes risk-based measures designed to prevent the advertisement, sale, import or export, distribution, and smuggling of counterfeit die molds, Schedule I-V controlled substances, or List I and II chemicals to Mexico and Canada, where such materials are commonly used by drug traffickers to manufacture controlled substances which are then smuggled into the United States.

11. Within ninety (90) calendar days of the execution of the Agreement, each of the Alibaba Platforms shall implement an online, fast-track law enforcement request intake and processing system ("Law Enforcement Green Channel" or "Green Channel") designed to facilitate timely receipt and processing of valid U.S. subpoenas, court orders, and /or search warrants seeking information related to United States-based users of the Alibaba Platforms as well as information regarding purchases and sales to/from the United States. The Law Enforcement Green Channel shall be available to federal, state, and local law enforcement agencies in the United States. Each of the Alibaba Platforms agrees to waive any federal or state statutory right to personal service of United States-based legal process that is related to a United States-based criminal investigation relating to alleged use of the Alibaba Platforms to violate the Drug, Device and Importation Laws. Each of the Alibaba Platforms will comply with such legal process unless it receives relief from doing so by a court of competent jurisdiction in the United States.

12. Within the same period, each of the Alibaba Platforms shall develop and publish a guidebook that provides notice to United States-based law enforcement of what information is readily available and for how long it is stored by the company. The guidebook shall also provide notice to United-States based law enforcement of how to operate the Law Enforcement Green Channel, including how to create an account, if applicable, and how to serve United States-based legal process on the Alibaba Platforms through the Green Channel. Each of the Alibaba Platforms shall periodically update the guidebook to reflect updates to the Law Enforcement Green Channel when appropriate.

13. Each of the Alibaba Platforms will ensure that it has a system of internal controls, reasonably designed to ensure the completeness and accuracy of records pertaining to the advertisement, sale, importation, and distribution of Subject Merchandise to customers in the United States.

14. The Alibaba Platforms will ensure that it has a system of financial and accounting procedures, including a system of internal controls, reasonably designed to ensure (i) the accuracy of records pertaining to the advertisement, sale, importation, or distribution of Subject Merchandise into the U.S. through that Alibaba Platform's e-commerce services; and (ii) the prevention and detection of violations of the CSA and FDCA on that Alibaba Platform.

15. Each of the Alibaba Platforms shall review its Compliance Program as necessary to address changing and emerging risks and update the Compliance Program as appropriate to ensure its continued effectiveness, taking into account relevant developments in the field and evolving international and industry standards.

*Independent, Autonomous, and Empowered Oversight*

16. Each of the Alibaba Platforms will assign responsibility to one or more senior corporate executives of the company for the implementation and oversight of the Compliance Program. Such corporate official(s) shall have the authority to report directly to independent monitoring bodies, including the applicable Alibaba Platform's internal audit function, or the applicable Alibaba Platform's Board of Directors and any appropriate committee thereof, and shall have an adequate level of stature and autonomy from management as well as sufficient resources and authority to maintain such autonomy.

*Training and Guidance*

17. Each of the Alibaba Platforms will implement mechanisms designed to ensure that the Compliance Program is effectively communicated to all directors, officers, employees, and, where necessary and appropriate, agents and business partners. These mechanisms shall include: (a) periodic training for all directors and officers, all employees in positions of leadership or trust, any positions that require such training (e.g., internal audit, sales, legal, compliance, finance), and, where necessary and appropriate, agents and business partners; (b) metrics for measuring knowledge retention and effectiveness of the training; and (c) corresponding certifications by all such directors, officers, employees, agents and business partners, certifying compliance with the training requirements. Each of the Alibaba Platforms will conduct training in a manner tailored to the audience's size, sophistication, and subject-matter expertise and, where appropriate, will discuss prior compliance incidents.

18. Each of the Alibaba Platforms will maintain, or, where necessary, establish, an effective system for providing guidance and advice to directors, officers, employees, and, where necessary and appropriate, agents and business partners, on complying with the Controlled Substance and Pill Press Policy and other compliance policies and procedures regarding Subject Merchandise under the Compliance Program, including when such individuals need advice on an urgent basis, or need advice in any foreign jurisdiction in which that Alibaba Platform operates.

*Confidential Reporting Structure and Investigation of Misconduct*

19. Each of the Alibaba Platforms will maintain, or where necessary establish, an effective system for internal and, where possible, confidential reporting by, and protection of, directors, officers, employees, and, where appropriate, agents and business partners concerning violations of that Alibaba Platform's Compliance Program. This system will provide protection for directors, officers, employees, and, where appropriate, agents and business partners who make such reports.

20. Each of the Alibaba Platforms will maintain, or where necessary establish, an effective and reliable process with sufficient resources for responding to, investigating, and documenting allegations of violations of the CSA and the FDCA. Each of the Alibaba Platforms will handle the investigations into such complaints in an effective manner, including routing the complaints to proper personnel, conducting timely and thorough investigations, and following up with appropriate discipline where necessary.

*Compensation and Consequence Management*

21. Each of the Alibaba Platforms will implement clear mechanisms amongst all directors, officers, employees, and, where necessary and appropriate, parties acting on behalf of that Alibaba Platform, to incentivize behavior that complies with that Alibaba Platform's Compliance Program. These incentives shall include, but shall not be limited to, the implementation of criteria related to compliance in that Alibaba Platform's compensation and bonus system.

22. Each of the Alibaba Platforms will institute appropriate disciplinary procedures to address, among other things, violations of its Compliance Program, the CSA, or the FDCA by that Alibaba Platform's directors, officers, and employees. Such procedures will be applied consistently and fairly, and in a manner consistent with the violation, regardless of the position held by, or perceived importance of, the director, officer, or employee. Each of the Alibaba Platforms shall implement procedures to ensure that where misconduct is discovered, reasonable steps are taken to remedy the harm resulting from such misconduct, and to ensure that appropriate steps are taken to prevent similar misconduct in the future, including assessing its internal controls and compliance policies and procedures, and making modifications necessary to ensure that Alibaba Platform's overall Compliance Program is effective.

*Third-Party Management*

23. Each of the Alibaba Platforms will institute appropriate risk-based due diligence and compliance requirements pertaining to the retention and oversight of all agents, business partners, and sellers who use that Alibaba Platform's ecommerce services in connection with Subject Merchandise, including:

a. properly documented due diligence pertaining to the hiring and appropriate and regular oversight of agents and business partners;

b. informing agents and business partners of that Alibaba Platform's commitment to abiding by the Drug, Device, and Importation Laws, and of the company's Compliance Program; and

c. seeking a reciprocal commitment from agents and business partners.

24. Where necessary and appropriate, each of the Alibaba Platforms will include standard provisions in agreements, contracts, and renewals thereof with all agents, business partners, and e-commerce sellers that are reasonably calculated to prevent violations of the CSA (21 U.S.C. § 801 et seq.) and the FDCA (21 U.S.C. § 301 et seq.), which may, depending on the

circumstances, include: (a) representations and undertakings relating to compliance with such laws; (b) rights to conduct audits of the books and records of the agent, business partner, or e-commerce seller in support of efforts to ensure compliance with such laws; and (c) rights to suspend or terminate an agent, business partner, or e-commerce seller as a result of any violation of such laws, Alibaba Platform's Compliance Policy, or relevant representations and undertakings related to such matters.

*Mergers and Acquisitions*

25. Each of the Alibaba Platforms will develop and implement policies and procedures for mergers and acquisitions requiring that the applicable Alibaba Platform conduct appropriate risk-based due diligence on potential new business entities, including appropriate due diligence regarding compliance with the CSA and the FDCA by legal, accounting, and compliance personnel associated with those new business entities.

26. Each of the Alibaba Platforms will ensure that its Compliance Program, including procedures regarding compliance with the CSA and the FDCA, applies as quickly as is practicable to newly-acquired businesses or entities that are merged with that Alibaba Platform, and will promptly (a) train the directors, officers, employees, agents, and business partners consistent with Paragraph 17; (b) where warranted, conduct an audit of all newly acquired or merged businesses as quickly as is practicable concerning compliance with the CSA and the FDCA; and (c) where warranted, based on the nature and scale of the acquired business, each Alibaba Platform will ensure that it establishes a plan to implement the compliance program systems and controls described in this Attachment C into its newly-acquired businesses or entities as quickly as practicable, with priority given to implementing the transaction monitoring system, Law Enforcement Green Channel access, and seller due diligence procedures described herein.

*Monitoring and Testing*

27. Each of the Alibaba Platforms will conduct periodic reviews and testing of all elements of its Compliance Program to evaluate and improve their effectiveness in preventing and detecting violations of the CSA and the FDCA; and related policies and procedures, taking into account relevant developments in the field and evolving international and industry standards.

28. Each of the Alibaba Platforms will ensure that compliance and control personnel have sufficient direct or indirect access to relevant sources of data to allow for timely and effective monitoring and testing of platform transactions.

*Analysis and Remediation of Misconduct*

29. In the event an Alibaba Platform identifies material misconduct related to violations of the CSA and the FDCA, it will conduct a root cause analysis of that misconduct, including any prior misconduct such as any prior misconduct relating to this investigation, to identify any systemic issues and any control failures. That Alibaba Platform will timely and appropriately remediate the root causes of the identified misconduct. That Alibaba Platform will ensure that root causes, including systemic issues and controls failures, and relevant remediation are shared with management as appropriate.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

---

Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.

**No. 4:26-cv-00611-DPM**

# EXHIBIT B

## AUS Merchant Services, Inc. et al. Non-Prosecution Agreement (AUS Agreement)

The reproduced source document follows this cover page.

U.S. Department of
# JUSTICE

The Department of Justice is posting this court document as a courtesy to the public. An official copy of this court document can be obtained (irrespective of any markings that may indicate that the document was filed under seal or otherwise marked as not available for public dissemination) on the Public Access to Court Electronic Records website at https://pacer.uscourts.gov. In some cases, the Department may have edited the document to redact personally identifiable information (PII) such as addresses, phone numbers, bank account numbers, or similar information, and to make the document accessible under Section 508 of the Rehabilitation Act of 1973, which requires federal agencies to make electronic information accessible to people with disabilities.

**United States Department of Justice**
*United States Attorney's Office*
*District of Rhode Island*

One Financial Plaza, 17th Floor
Providence, Rhode Island 02903

June 29, 2026

Sharon Cohen Levin, Esq.
Sullivan & Cromwell LLP
125 Broad St
New York, NY 10004
***Counsel for AUS Merchant Services, Inc.***

**Re: AUS Merchant Services, Inc. et al. Non-Prosecution Agreement**

Dear Counsel:

The Government and AUS Merchant Services, Inc. ("AUS" or the "Company") enter into this Non-Prosecution Agreement ("Agreement") for misdemeanor violations of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.* The Government agrees not to prosecute AUS during the term of this Agreement or thereafter for any violation related to the conduct described in the Statement of Facts, attached hereto as **Attachment A**. The Parties agree to certain terms and obligations as set forth below.

**A. Definitions**

1. In this Agreement, the following terms shall have the meanings provided below. Capitalized terms used but not defined in this Section have the meanings given elsewhere in this Agreement.

a **"AUS"** means AUS Merchant Services, Inc. (formerly known as Alipay U.S., Inc. and Alipay U.S. Escrow, Inc.), a Delaware company with its principal place of business at 525 Almanor Avenue, Sunnyvale, California 94085.

b. **"Business Day"** means any day other than a Saturday, Sunday, or legal public holiday in the United States (as defined by 5 U.S.C. § 6103(a)).

c **"Government"** means the United States Department of Justice, including the United States Attorney's Office for the District of Rhode Island, the United States Department of Justice's Enforcement & Affirmative Litigation Branch, and the United States Department of Justice's Money Laundering, Narcotics and Forfeiture Section.

d. **"Parties"** means the Government and AUS.

e. **"Subject Merchandise"** means drugs (as defined in 21 U.S.C. § 321(g)), devices (as defined in 21 U.S.C. § 321(h)), equipment used to manufacture counterfeit drugs (including tableting and encapsulating machines, punches, dies, plates, stones, and other things referenced in 21 U.S.C. §§ 331(i)(2) and 843(a)(5)-(7)), controlled substances (as defined in 21 U.S.C. § 802(6)), listed chemicals or chemical mixtures (as defined in 21 U.S.C. §§ 802(33) and (40)), anabolic steroids (as defined in 21 U.S.C. § 802(41)(A) and (C)), and other items regulated by the FDCA.

**B. <u>Acceptance of Responsibility</u>**

2. AUS admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees, and agents as set forth in the Statement of Facts provided in **Attachment A** and incorporated by reference into this Agreement, and that the facts described in **Attachment A** are true and accurate.

3. In any prosecution or proceeding against AUS, the Statement of Facts shall be admissible as: (a) substantive evidence offered by the Government in its case-in-chief and rebuttal case; (b) impeachment evidence offered by the Government on cross-examination; and (c) evidence at any sentencing hearing or other hearing. Additionally, AUS shall not assert any claim that the Statement of Facts should be suppressed or is otherwise inadmissible as evidence in any form under the United States Constitution, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, Section 1B1.1(a) of the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines"), or any other federal rule.

**C. <u>Term of the Agreement</u>**

4. AUS's obligations under this Agreement shall have a term of three years from the date on which the Agreement is executed (the "Term"). AUS agrees, however, that in the event the Government determines, in its sole discretion, acting reasonably, that AUS has knowingly and materially violated any provision of this Agreement as defined in Section L, Paragraph 23, or has failed to completely perform or fulfill its material obligations under this Agreement, an extension or extensions of the Term may be imposed by the Government, in its sole discretion, for up to a total aggregate additional time period of one year, without prejudice to the Government's rights to proceed as provided in the below breach provisions of this Agreement. Any extension of the Agreement extends all terms of this Agreement, including the terms of the reporting requirement in **Attachment D** and any tolling periods for any applicable statutes of limitation, for an equivalent period. The Government will provide AUS with written notice specifying the alleged violation in reasonable detail no fewer than thirty (30) calendar days before any extension is imposed, and AUS will have thirty (30) calendar days following receipt of such written notice (the "Extension Cure Period") to respond to the Government in writing to explain the nature and circumstances of such breach, as well as the actions AUS has taken to address and remediate the situation, which explanation the Government shall consider in determining whether to extend the Term. The Government shall provide AUS with a written determination specifying the violation upon which the extension is based and the duration of the extension to be imposed.

D. **Relevant Considerations**

5. The Government enters into this Agreement based on the individual facts and circumstances of this case, including those presented by AUS. These facts and circumstances include, but are not limited to, the following:

a. The nature of the conduct described in the Statement of Facts, which involved payment processing related to Subject Merchandise;

b. AUS's acknowledgement that unlawful activities related to Subject Merchandise were committed by third-party actors on the e-commerce platforms that were owned and operated by Alibaba Group Holding Limited and its relevant subsidiaries ("Alibaba"), including Alibaba.com, and whose payments were processed through AUS;

c. AUS's lack of voluntary disclosure credit based on its failure to timely and voluntarily disclose to the Government the conduct described in the Statement of Facts;

d. Gaps in AUS's compliance program that contributed to the offense conduct, including gaps that occurred before the Company finished implementing remedial measures;

e. AUS's credit for its cooperation with the Government's investigation, which included:

i. investigating facts and obtaining information as requested by the Government, which allowed the Government to preserve and obtain evidence as part of their own independent investigation;

ii. at the Government's request, collecting, organizing, and producing voluminous documents in ways that did not implicate foreign data privacy laws;

iii. assisting in making employees available to be interviewed;

iv. creating and producing to the Government certain information from its databases of AUS's payment processing related to Subject Merchandise in ways that did not implicate foreign data privacy laws;

v. making factual presentations to the Government on a wide variety of topics; and

vi. providing separate counsel to witnesses to facilitate the Government's investigation, where appropriate.

f. AUS's engagement in remedial measures, including terminating business relationships with companies and persons known to have been involved in the conduct described in the Statement of Facts; terminating AUS's customers' and users' abilities to use AUS's services to unlawfully advertise, sell, import or export, distribute, or smuggle Subject Merchandise; making investments in staffing and resources for AUS's legal and compliance teams; updating policies, procedures, and supervisory structures with an emphasis on preventing and detecting the unlawful advertisement, sale, import or export, distribution, and smuggling of Subject Merchandise; strengthening controls and enhancing compliance-related documentation; and expanding employee training;

g. AUS's recognition that ongoing commitments to its compliance program protects U.S.-based consumers and merchants as well as the integrity of the financial system;

h. AUS's agreement to further enhance its corporate compliance programs and internal controls with respect to BSA/AML and FDCA compliance —including risk assessment and review, customer and third-party relationships, transaction monitoring, and suspicious activity reporting—as set forth in **Attachment C**;

i. AUS's agreements to continue to cooperate with the Government as described in Section E; and

j. AUS's lack of prior criminal history.

Accordingly, after considering (a) through (j) above, the Government has determined that the appropriate resolution in this case is this Agreement with AUS with a monetary penalty of $85,000,000 ("Monetary Penalty") assessed against AUS for a misdemeanor violation of the FDCA and a civil forfeiture of $190,000,000 ("Forfeiture Amount").

**E. <u>Cooperation Requirements</u>**

6. AUS shall fully cooperate with the Government on any matter that relates to the: (1) conduct described in this Agreement and the Statement of Facts and any individual or entity referred to therein, as well as any other related conduct under investigation by the Government in connection with Subject Merchandise at any time during the Term, until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the Term; (2) advertisement, sale, import, export, distribution, or smuggling of Subject Merchandise through AUS's payment-processing services; (3) possible violations of the FDCA by buyers and sellers who use AUS's payment-processing services; and (4) compliance with the Bank Secrecy Act ("BSA"), 31 U.S.C. §§ 5311 *et seq.*, and AML laws and regulations. AUS's obligations to cooperate with the Government under this Section shall end on the date that the investigations and prosecutions of all such matters conclude or the date that the Term ends, whichever date is later.

7. AUS's cooperation pursuant to this Section is subject to applicable laws and regulations, including valid claims of federal attorney-client privilege and attorney work-product doctrine. If AUS withholds information based on the assertion of any such law, regulation, or privilege, AUS shall provide the Government with a log that describes the withheld information and the foundation of the law, regulation, or privilege within thirty (30) Business Days of making their determination to withhold the information; AUS's cooperation and disclosure obligations under this Section include, but are not limited to, the following:

a. AUS shall designate one or more agents to accept and process the Government's requests for cooperation within fifteen (15) Business Days of signing this Agreement. AUS shall accept the Government's requests for cooperation via email through one or more dedicated email addresses.

b. Within fifteen (15) Business Days of receiving a request for cooperation, AUS shall conduct a diligent search for, and inform the Government whether it has identified, responsive information. If AUS identifies responsive information, AUS shall provide the Government with an estimated timeframe within which it expects to produce the information. Unless otherwise agreed to by the Government, this timeframe shall not exceed sixty (60) calendar days from the date that AUS receives the Government's request.

c. AUS shall provide quarterly reports listing: (1) all Suspicious Activity Reports filed; and (2) any credible allegations of FDCA or Controlled Substances Act violations that AUS learns was committed by users of AUS's payment-processing services in the United States.

d. AUS shall provide complete, truthful, and accurate information to the Government.

e. In its sole discretion, the Government may share any information, testimony, documents, records, or other tangible evidence that AUS provides to the Government with any federal, state, or foreign government authority.

**F. <u>Monetary Penalty</u>**

8. AUS agrees that the Monetary Penalty in the amount of eighty-five million dollars ("$85,000,000" or "$85 million") is appropriate given the facts and circumstances of this case, including the Relevant Considerations described in Section D. AUS agrees to pay the Monetary Penalty of $85 million to the U.S. Treasury no later than thirty (30) Business Days after the Effective Date of this Agreement in accordance with payment instructions provided by the Government in its sole discretion.

9. AUS's payment of the Monetary Penalty is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the Government that the Monetary Penalty is the maximum penalty that may be imposed in any future prosecution, and the Government is not precluded from arguing in any future prosecution that a court should impose a higher fine, although the Government agrees that under those circumstances, the Government will

recommend to a court that the Monetary Penalty paid by AUS pursuant to this Agreement be applied toward any fine that a court might impose as part of its judgment against AUS. AUS acknowledges that such a recommendation will not be binding in any court.

10. AUS acknowledges that no U.S. tax deduction may be sought in connection with the payment of any part of the Monetary Penalty. AUS shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source with regard to the penalty amount that AUS pays pursuant to this Agreement.

G. **Civil Forfeiture**

11. AUS acknowledges that money and/or property is subject to civil forfeiture because of overseas merchants' and their United States-based buyers' violations of the FDCA transacted through Alibaba's online platforms, including Alibaba.com. Pursuant to Title 18, United States Code, Section 981(a)(1)(C), AUS consents to civil forfeiture of one hundred ninety million dollars ("$190,000,000 or "$190 million") ("Forfeiture Amount").

12. AUS shall pay the Forfeiture Amount, plus any associated transfer fees, no later than thirty (30) Business Days after the Effective Date of this Agreement in accordance with payment instructions provided by the Government in its sole discretion. AUS hereby releases any and all claims that it may have to the Forfeiture Amount and agrees that the forfeiture of such funds may be accomplished either administratively or judicially at the Government's election, and waives the requirements of any applicable laws, rules, or regulations governing the forfeiture of assets, including those requiring notice of forfeiture. If the Government seeks to forfeit the Forfeiture Amount judicially, AUS waives all requirements pertaining to forfeiture set forth in Title 18, United States Code, Section 983, including the filing of a civil forfeiture complaint as to the Forfeiture Amount and notice of the same, and consent to entry of an order of forfeiture directed to such funds. If the Government seeks to forfeit AUS's Forfeiture Amount administratively, AUS consents to the entry of a declaration of forfeiture and waives the requirements of Title 18, United States Code, Section 983 regarding notice of seizure in non-judicial forfeiture matters.

13. AUS agrees to sign any additional documents necessary to complete forfeiture of the Forfeiture Amount. AUS also agrees that it shall not file any petitions for remission, restoration, or any other assertion of ownership or request for return relating to the Forfeiture Amount, or any other action or motion seeking to collaterally attack the seizure, restraint, forfeiture, or conveyance of the Forfeiture Amount, nor shall AUS assist any others in filing any such claims, petitions, actions, or motions.

14. AUS's payment of the Forfeiture Amount is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the Government that the Forfeiture Amount surrendered by AUS is the maximum forfeiture that may be imposed in any future prosecution, and the Government is not precluded from arguing in any future prosecution that a court should impose a higher criminal forfeiture amount or substitute money judgment in a criminal proceeding, although the Government agrees that under those circumstances, the Government will recommend to a court that the Forfeiture Amount paid by AUS pursuant to this Agreement be applied toward any criminal forfeiture or substitute money judgment that a court

might impose as part of its judgment. AUS acknowledges that such a recommendation will not be binding on any court.

15. AUS acknowledges that it shall not claim, assert, or apply for, either directly or indirectly, any tax deduction, tax credit, or any other offset with regard to any U.S. federal, state, or local tax or taxable income in connection with the payment of any part of the Forfeiture Amount. AUS shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source with regard to the Forfeiture Amount that AUS pays pursuant to the Agreement.

### H. <u>Conditional Release from Liability</u>

16. Except as otherwise provided in this Agreement, the Government agrees that it will not bring any criminal or civil case against AUS relating to (i) any of the conduct described in the Statement of Facts of this Agreement; (ii) any of the information disclosed by AUS to the Government as part of this investigation prior to executing this Agreement; or (iii) any information known by the Government prior to the execution of this Agreement that relates to the conduct described in the Statement of Facts to this Agreement. However, the Government may use any information related to the conduct described in the Statement of Facts against AUS: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; or (c) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code. Nothing herein shall preclude AUS from presenting this Agreement, and the Government's agreement herein, to any other law enforcement, regulatory, or government authority as evidence of cooperation with, and resolution of claims by, the Government with respect to the conduct described herein.

17. This Agreement does not provide any protection against prosecution for any future conduct by AUS. In addition, this Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with AUS.

### I. <u>Corporate Compliance Program</u>

18. AUS shall implement (or continue to the extent already implemented) a corporate compliance program that meets the minimum elements and standards provided in **Attachment C**. AUS's corporate compliance program shall be designed (or continue to the extent already implemented) to detect and prevent violations of the BSA, laws prohibiting money laundering and unlicensed money transmission, other laws prohibiting illicit finance, and violations of the FDCA through AUS's payment processing services. No later than thirty (30) calendar days after the Term expires, AUS, through its Chief Executive Officer and Chief Compliance Officer, will certify to the Government, in the form of executing the document attached as **Attachment E** to this Agreement, that AUS has met its compliance obligations pursuant to this Agreement. Such certification will be deemed a material statement and representation by AUS to the executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and 1519.

19. AUS will periodically review its corporate compliance program and correct any deficiencies within AUS's ethics programs, policies, procedures, systems, and internal controls

regarding compliance with the BSA, laws prohibiting money laundering, and other laws prohibiting illicit finance.

**J. Compliance Monitoring**

20. For the purpose of assessing or determining compliance with this Agreement, the Government may, upon written notice to AUS:

a. require AUS to submit written reports, certifications, or other information relating to compliance with any provision of this Agreement;

b. interview, under oath or otherwise, any of AUS's officers, employees, or agents who may have relevant knowledge; and

c. require AUS to produce documents, communications, data, and other information in its possession, custody, or control relating to compliance with any provision of this Agreement, subject to applicable laws and regulations.

21. AUS shall designate one or more agents of AUS to accept and process the Government's requests related to compliance monitoring within seven (7) Business Days of signing this Agreement. AUS shall accept the Government's requests for compliance monitoring information via email through one or more dedicated email addresses maintained by each company. AUS shall comply with the Government's compliance monitoring requests within thirty (30) calendar days of receiving the Government's written notice. In its sole discretion, the Government may grant extensions of time for AUS to comply with the Government's requests for compliance monitoring information.

**K. Non-Prosecution**

22. The Government agrees that if AUS complies with its obligations under this Agreement, (a) the Government will not bring any criminal case or other enforcement action against AUS or any of its present or former subsidiaries or affiliates relating to any of the conduct described in the Statement of Facts; and (b) at the conclusion of the Term, this Agreement shall expire. In assessing AUS's compliance, the Government shall consider the totality of AUS's conduct under this Agreement and shall not declare a failure to comply based solely on minor, or promptly cured technical violations, which shall be determined at the Government's discretion, acting reasonably. To the extent there is conduct disclosed by AUS that is not set forth in this Agreement, such conduct shall not be exempt from further prosecution and is outside the scope of this Agreement. AUS expressly acknowledges and agrees that this Agreement does not preclude the filing of a case arising from conduct that is not described in this Agreement and the Statement of Facts.

**L. Breach of the Agreement**

23. If, during the Term, AUS (a) commits any felony under United States law; (b) knowingly and willfully provides in connection with this Agreement materially false, incomplete, or misleading information, including in connection with its disclosure of information about individual culpability; (c) knowingly and materially fails to cooperate as provided in Section E of this Agreement; (d) knowingly fails to implement compliance programs in all material respects as provided in Section I of this Agreement and **Attachment C**; or (e) otherwise knowingly and materially fails to perform or fulfill any term or condition of this Agreement, AUS shall be in breach, and thereafter be subject to prosecution for violations of applicable federal law, including, but not limited to, for conduct described in the attached Statement of Facts, regardless of whether the Government obtains knowledge of the breach after the Term expires.

24. Any prosecution resulting from a knowing and material breach of this Agreement, as defined in Section L, Paragraph 23, may be pursued by the Government in the United States District Court for the District of Rhode Island or any other appropriate venue. As to the conduct described in the Statement of Facts, AUS knowingly waives any constitutional or statutory right to venue and to presentment to or indictment by a grand jury for felony crimes, and consents to the filing of an information or complaint for said crimes. Determination of whether AUS has breached this Agreement and whether to pursue prosecution shall be in the Government's sole discretion, acting reasonably, after good-faith consideration of any written response submitted by AUS pursuant to Paragraph 26. Any such prosecution may be premised on information provided by AUS.

25. Any prosecution relating to the conduct described in this Agreement or relating to the conduct of AUS in connection with a violation of the FDCA known to the Government prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against AUS notwithstanding the expiration of the statute of limitations, for the period between the signing of this Agreement and the expiration of the Term plus six months. Thus, by signing this Agreement, AUS agrees that the statute of limitations with respect to any such prosecution against AUS that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus six months. In addition, AUS agrees to toll the running of the statute of limitations as to any violation that occurs during the Term for one year from the date upon which the violation occurs, and that this period shall be excluded from any calculation of time for purposes of the application of any applicable statute of limitations.

26. In the event the Government determines that AUS has knowingly and materially breached this Agreement, as defined in Section L, Paragraph 23, the Government agrees to provide AUS with written notice of such breach prior to instituting any prosecution resulting from such breach. Written notice of breach shall include: (a) the provision breached; (b) the approximate date of the breach; and (c) a description of the breach sufficient to permit AUS to cure. Within thirty (30) calendar days of receipt of such notice, AUS shall have the opportunity to respond to the Government in writing to explain the nature and circumstances of such breach, as well as the actions AUS has taken to address and remediate the breach, which explanation the Government shall consider in determining whether to pursue prosecution of AUS.

27. In the event that the Government determines that AUS has knowingly and materially breached this Agreement, as defined in Section L, Paragraph 23: (a) all statements made by or on behalf of AUS to the Government, including the Statement of Facts, and any testimony given by AUS before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Government against AUS; and (b) AUS shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, Section 1B1.1(a) of the USSG, or any other federal rule that any such statements or testimony made by or on behalf of AUS prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current officer, director, or employee, or any person acting on behalf of, or at the direction of, AUS will be imputed to AUS for the purpose of determining whether AUS has knowingly and materially violated any provision of this Agreement as defined in Section L, Paragraph 23 shall be in the sole discretion of the Government, acting reasonably.

28. It is further understood that within thirty (30) calendar days after receiving a notice of breach, or to such longer period as the Government may agree in writing, AUS may cure the breach to the Government's reasonable satisfaction ("Cure Period").

29. AUS acknowledges that the Government has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if AUS breaches this Agreement and this matter proceeds to judgment. AUS further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

30. On the date that the period of non-prosecution specified in this Agreement expires, AUS, by its respective Chief Executive Officer and the Chief Compliance Officer, shall submit their certification set forth in **Attachment D** and certify to the Government that AUS has met its obligations pursuant to this Agreement. Each certification will be deemed a material statement and representation by AUS in a matter within the jurisdiction of the executive branch of the United States for purposes of Title 18, United States Code, Sections 1001 and 1519, and it will be deemed to have been made in the District of Rhode Island.

## M. Applicability to AUS's Related Business Entities

31. Except as may otherwise be agreed by the Government and AUS in connection with a particular transaction, AUS agrees that in the event that, during the Term, AUS undertakes any change in corporate form, including if AUS sells, merges, or transfers business operations that are material to AUS's consolidated operations, or to the operations of any of its subsidiaries or affiliates involved in the conduct described in the Statement of Facts, as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form, AUS shall include in any contract for sale, merger, transfer, or other

change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement.

32. The purchaser or successor in interest must also agree in writing that the Government's ability to declare breach under this Agreement is applicable in full force as to that entity. AUS agrees that the failure to include these provisions in the transaction will make any such transaction null and void. AUS shall provide notice to the Government at least thirty (30) calendar days prior to undertaking any such sale, merger, transfer, or other change in corporate form. The Government shall notify AUS within fifteen (15) calendar days if it determines that the transaction(s) will have the effect of circumventing or frustrating the enforcement purposes of this Agreement. If, at any time during the Term, AUS engages in a transaction that has the effect of circumventing or frustrating the enforcement purposes of this Agreement, the Government may deem it a breach of this Agreement pursuant to Section L, paragraph 23 of this Agreement. Nothing in this Agreement shall restrict AUS from indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction, so long as such indemnification does not have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the Government, acting reasonably.

## N. <u>Public Statements by AUS</u>

33. AUS shall not, through present or future attorneys, officers, directors, employees, agents, or any other person authorized to speak for AUS, make any public statement, contradicting in whole or in part the acceptance of responsibility by AUS as set forth in this Agreement. Any such contradictory statement shall, subject to cure rights of the Company described in this paragraph, constitute a knowing and material breach of this Agreement, as defined in Section L, Paragraph 23, and AUS thereafter shall be subject to prosecution as set forth in this Agreement. The decision whether any public statement by any such person contradicting a fact contained in this Agreement will be imputed to AUS for the purpose of determining whether it has knowingly and materially breached this Agreement, as defined in Section L, Paragraph 23, shall be in the sole discretion of the Government, acting reasonably.

34. If the Government determines that a public statement by any such person contradicts in whole or in part a statement contained in the Statement of Facts, the Government shall notify AUS, and AUS may avoid a breach of this Agreement by publicly repudiating such statement(s) within ten (10) Business Days after notification. AUS shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in this Agreement provided that such defenses and claims do not contradict, in whole or in part, a statement contained in this Agreement. This paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of AUS in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of AUS. Any determination by the Government, acting reasonably, that a public statement constitutes a knowing and material breach of this Agreement shall be subject to the 30-day written notice and opportunity to respond procedure set forth in Paragraph 26 before any prosecution may be initiated.

35. If AUS issues a press release or holds any press conference in connection with this Agreement, AUS shall first consult with the Government to determine: (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Government and AUS; and (b) whether the Government has any objection to the release.

36. The Government agrees, if requested to do so, to bring to the attention of law enforcement and regulatory authorities the facts and circumstances relating to the nature of the conduct underlying this Agreement, including the nature and quality of AUS's cooperation and remediation. By agreeing to provide this information to such authorities, the Government does not agree to advocate on behalf of AUS. Instead, the Government only agrees to provide facts to be evaluated independently by such authorities.

**O. Limitations on Binding Effect of Agreement**

37. This Agreement is binding on AUS and the United States Department of Justice, including the United States Attorney's Office for the District of Rhode Island, the United States Department of Justice's Enforcement & Affirmative Litigation Branch, and the United States Department of Justice's Money Laundering, Narcotics and Forfeiture Section. It does not bind any other federal agencies, or any state, local, or foreign law enforcement or regulatory agencies. The Government shall bring the cooperation of AUS and its compliance with its obligations under this Agreement to the attention of such agencies and authorities if requested to do so by AUS.

**P. Notice**

38. Any notice to the Government under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to:

Chief, Criminal Division
U.S. Attorney's Office
District of Rhode Island
One Financial Plaza, 17th Floor
Providence, RI 02903

Director, Enforcement & Affirmative Litigation Branch, Civil Division
U.S. Department of Justice
450 5th Street NW, Room 6400 South
Washington, DC 20001

Chief, Bank Integrity Unit
Money Laundering, Narcotics, and Forfeiture Section, Criminal Division
U.S. Department of Justice
1400 New York Avenue NW
Washington, DC 20005

39. Any notice to AUS under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to:

AUS Merchant Services, Inc.
525 Almanor Avenue
Sunnyvale, CA 94085

40. Notice shall be effective upon actual receipt by the Government or AUS. Notice shall also be given by email to any email addresses designed by the Government or AUS.

**Q. Complete Agreement**

41. The Government and AUS acknowledge that each party has had a full opportunity to negotiate the terms of this Agreement. The rule of construction that interprets contracts against the drafter, therefore, shall not apply to this Agreement. This Agreement, including its attachments, sets forth all the terms of the Agreement between AUS and the Government. No amendments, modifications, or additions to this Agreement shall be valid unless they are in writing and signed by the Government, the attorneys for AUS, and a duly authorized representative of AUS. The following documents are attached to and incorporated into this Agreement:

**Attachment A:** The AUS Merchant Services, Inc. Statement of Facts

**Attachment B:** The AUS Merchant Services, Inc. Certificate of Corporate Resolutions

**Attachment C:** The AUS Merchant Services, Inc. Corporate Compliance Program

**Attachment D:** The AUS Merchant Services, Inc. Disclosure Certification

**Attachment E:** The AUS Merchant Services, Inc. Compliance Certification

**AGREED AND CONSENTED TO:**

***The United States of America***

CHARLES C. CALENDA
First Assistant United States Attorney

Date: 6/29/2026 By: ______________________
Dulce Donovan
Executive Assistant U.S. Attorney

Date: 6/29/2026 By: Julianne Klein
Julianne Klein
Assistant U.S. Attorney

LISA K. HSIAO
Director
Enforcement and Affirmative Litigation Branch,
Civil Division

Date: 6/29/2026 By: ______________________
Patrick R. Runkle
Assistant Director

Date: 6/29/2026 By: ______________________
Colin W. Trundle
Trial Attorney

Date: 6/29/2026 By: ______________________
Cadesby B. Cooper
Trial Attorney

MARGARET A. MOESER
Chief
Money Laundering, Narcotics and Forfeiture
Section, Criminal Division

Date: 6/29/2026 By: ______________________
Rachel N. Agress
Trial Attorney

Date: 6/29/2026 By: ______________________
Elysa Wan
Trial Attorney

**AGREED AND CONSENTED TO:**

***AUS Merchant Services, Inc.***

Date: June 29, 2026 By: Roseate Wagner
Roseate Wagner
Chief Executive Officer and President
AUS Merchant Services, Inc.

Date: June 29, 2026 By: Sharon Cohen Levin
Sharon Cohen Levin, Esq.
Counsel for AUS Merchant Services, Inc.

**ATTACHMENT A**

**STATEMENT OF FACTS**

The following Statement of Facts is incorporated by reference as part of the Non-Prosecution Agreement (the "Agreement") between the Government and AUS (as defined in the Agreement). AUS agrees and stipulates that the following information is true and accurate. AUS admits, accepts, and acknowledges that it is responsible for the acts of its officers, directors, employees and agents as set forth below. Should the Government later pursue the prosecution that is covered by this Agreement, AUS agrees that it will neither contest the admissibility of, nor contradict, this Statement of Facts in any such proceeding. The following facts describe events that occurred between approximately January 2020 and December 2023.

## A. AUS Background and Business Model

1. AUS (formerly known as Alipay U.S., Inc. and Alipay U.S. Escrow, Inc.) was registered in Delaware and maintained its principal place of business at 525 Almanor Avenue, Sunnyvale, California 94085.

2. Partnering with certain of its affiliates, AUS offered payment processing services to the e-commerce platforms that were owned and operated by Alibaba Group Holding Limited and its relevant subsidiaries ("Alibaba"), including Alibaba.com. Alibaba Group Holding Limited was organized and existed under the laws of the Cayman Islands, with its principal executive offices in Hangzhou, China.

3. AUS's business model included, but was not limited to, providing payment processing and settlement services to enable overseas sellers on Alibaba.com to accept payments from United States-based buyers. When AUS facilitated payment processing and settlement services for Alibaba's merchants selling to United States-based buyers, it received certain information about transactions. The information generally included the merchant's and buyer's identities as well as a description of the product ordered ("sale order") through Alibaba.com. AUS commenced payment processing and settlement services for Alibaba.com transactions in 2020.

4. AUS's payment processing and settlement services included accepting United States Dollar-denominated payments on behalf of overseas merchants linked to sales orders on Alibaba.com.

5. Payors could make payments linked to Alibaba's e-commerce transactions in multiple ways, including through credit card payments, other alternative payment methods, or, solely for Alibaba.com, wire transfer. The United States Dollar-denominated wire transfer payments directed to overseas merchants on Alibaba.com were accepted by AUS into one of two United States based-bank accounts of AUS. When Alibaba.com buyers paid via wire transfer in U.S. dollars, the checkout page instructed buyers to include in the wire transfer instructions what was identified as the overseas merchant's "beneficiary account number" as well as the Alibaba.com order number.

6. The "beneficiary account number" was a unique routable identification number, which caused the deposits to be transferred to one of AUS's United States-based bank accounts, and for AUS or its affiliate to associate that credit with a specific merchant. Once payments were deposited into AUS's United States-based bank accounts, AUS transferred the funds to offshore accounts held by an AUS affiliate. The AUS affiliate then handled settlement of the transaction to the overseas merchant associated with that particular "beneficiary account number."

7. Beginning in July 2021, AUS also offered settlement services to support payments to merchants using the Alibaba.com Pay service ("Alibaba.com Pay"), which was separate from the Alibaba.com e-commerce platform. Unlike the global payment processing and settlement services for orders made on the Alibaba.com e-commerce site, merchants uploaded supporting documentation into a portal for sales consummated outside of the e-commerce site. Such transactions were higher risk because the Alibaba e-commerce platform did not electronically monitor data in real time as to the nature and purpose of the transaction.

**B. Legal and Regulatory Background**

8. Congress enacted the Bank Secrecy Act ("BSA") to address an increase in criminal money laundering activity utilizing financial institutions. The BSA requires financial institutions to establish, implement, and maintain risk-based anti-money laundering ("AML") programs to combat money laundering and the financing of terrorism through financial institutions.

9. AUS is a "financial institution" as defined in the BSA. 31 U.S.C. § 5312(a)(2); 31 C.F.R. § 1010.100. As a financial institution and money services business ("MSB"), AUS is required to establish, implement, and maintain an effective AML compliance program that, at a minimum, provides for: (a) internal policies, procedures, and controls reasonably designed to prevent money laundering; (b) a program design commensurate with the risks posed by the location, size, nature, and volume of the financial services provided by the MSB; (c) an individual to coordinate and monitor day-to-day compliance with the BSA and AML requirements; (d) an ongoing employee training program; (e) independent review of programs; and (f) procedures reasonably designed to assure compliance with BSA and AML requirements when conducting operations via data processing systems. 31 U.S.C. § 5318(h); 31 C.F.R. § 1022.210.

10. To satisfy the BSA's requirements, an MSB must maintain a risk-based AML program, tailor its systems for identifying suspicious activity to effectively monitor its customer base and the products and services it offers, and report suspicious activity. Moreover, an MSB's AML policies, procedures, and controls must be calibrated to address emerging and evolving risk, including risk associated with new products and services and new patterns of suspicious activity.

11. The BSA authorizes the United States Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN") to "require any financial institution, and any director, officer, employee, or agent of any financial institution, to report any suspicious transaction relevant to a possible violation of law or regulation." 31 U.S.C. § 5318(g)(1).

12. At all times relevant to this case, by regulation, FinCEN required MSBs to file a Suspicious Activity Report ("SAR") on any transaction involving or aggregating at least $2,000

where the MSB "knows, suspects, or has reason to suspect." 31 C.F.R. § 1022.320(a)(2). These requirements apply to a transaction that:

a. involves funds derived from illegal activities or is intended or conducted in order to hide or disguise funds or assets derived from illegal activities (including, without limitation, the ownership, nature, source, location, or control of such funds or assets) as part of a plan to violate or evade any federal law or regulation or to avoid any transaction reporting requirement under federal law or regulation;

b. is designed to evade any requirements of the BSA or of any other regulations promulgated under the BSA;

c. has no business or apparent lawful purpose, and the MSB knows of no reasonable explanation for the transaction after examining the available facts, including the background and possible purpose of the transaction; or

d. involves use of the MSB to facilitate criminal activity.

13. MSBs have an obligation to file a SAR "no later than 30 calendar days after the date of initial detection . . . of facts that may constitute a basis for filing a SAR." *Id.* § 1022.320(b)(3).

**C. AUS's Risk Function and AML Compliance Program Did Not Prevent Federal Food, Drug, and Cosmetic Act ("FDCA") Violations by Alibaba Merchants and Other Bad Actors.**

14. With respect to AUS's U.S.-based customers, AUS conducted "Know Your Customer" protocols and due diligence. With respect to AUS's affiliates' overseas customers, AUS relied upon AUS's overseas affiliates to conduct certain functions of its AML compliance program for overseas merchants, including those customers using AUS for wire transfers. Until 2022, AUS relied upon AUS's overseas affiliates to monitor transactions involving overseas merchants selling goods on Alibaba.com, including those using AUS's unique routable identification numbers for wire transfers. In 2022, AUS also began using its own transaction monitoring system, previously used for other products—for transactions originating on Alibaba.com, rather than continuing to rely on its overseas affiliates. However, when implementing this change, AUS failed to fully incorporate wire data from its United States-based bank accounts to supplement the sales order data that it used to monitor. As a result, AUS's monitoring did not always show that some of these wire transfer transactions were funded by payments originating from high-risk jurisdictions or from multiple payors on a single invoice.

15. AUS and its affiliates would, in certain instances, report merchants who sold Subject Merchandise on Alibaba's e-commerce platforms, including Alibaba.com, to Alibaba, rather than systematically restricting those merchants themselves.

16. At times, Alibaba.com's overseas merchants used AUS's payment processing and settlement services to facilitate the sale and importation of Subject Merchandise, including pharmaceutical products, into the United States, in violation of the FDCA.

17. In October 2022, AUS created a case investigating Merchant A, an Alibaba overseas merchant who used AUS's payment processing and settlement services. An AUS employee reviewed the sales order information and noted that Merchant A had sold prohibited Subject Merchandise to United States customers using AUS's payment processing services. AUS filed a regulatory report in connection with Merchant A's transaction in October 2022 and relevant prior activity. In January 2023, Merchant A sold additional prohibited Subject Merchandise to a United States customer. In July 2023, an AUS employee reviewed the transaction and sales order and noted that the product was "prohibited" and could not "be sold online without prescription," but concluded that the activity was below the regulatory reporting requirements.

18. AUS acknowledges that it processed transactions for sales between overseas merchants for Alibaba.com and United States-based buyers, which involved Subject Merchandise that was imported into the United States in violation of law. AUS agrees not to contest the forfeiture of the Forfeiture Amount of $190 million pursuant to Title 18, U.S. Code, Section 545.

# ATTACHMENT B

## THE AUS MERCHANT SERVICES, INC. CERTIFICATE OF CORPORATE RESOLUTIONS

WHEREAS, AUS Merchant Services, Inc. ("AUS") has been engaged in discussions with the United States Attorney's Office for the District of Rhode Island, the United States Department of Justice's Enforcement & Affirmative Litigation Branch, and the United States Department of Justice's Money Laundering, Narcotics and Forfeiture Section (collectively, the "Government"); and

WHEREAS, in order to resolve such discussions, it is proposed that AUS enters into a certain non-prosecution agreement with the Government (the "Agreement"); and

WHEREAS, AUS's internal counsel, together with outside counsel for AUS (collectively, "AUS Counsel"), have advised AUS's Board of Directors of its rights, possible defenses, the provisions of the U.S. Sentencing Guidelines, and the consequences of entering into such Agreement with the Government;

Therefore, the Board of Directors has RESOLVED that:

1. AUS agrees to pay a monetary penalty in the amount of $85,000,000 and consents to a civil forfeiture of $190,000,000 pursuant to Sections F and G of the Agreement;

2. AUS accepts the terms and conditions of this Agreement, including, but not limited to: (a) a knowing waiver for purposes of the Agreement and any charges by the United States arising out of the conduct described in the Statement of Facts in **Attachment A** of the Agreement of any objection with respect to indictment and venue and consents to the filing of a civil forfeiture complaint, as provided under the terms of the Agreement, in the United States District Court for the District of Rhode Island, or any other appropriate venue; and (b) a knowing waiver of any defenses based on the statute of limitations for any prosecution relating to the conduct described in the Statement of Facts or relating to conduct known to the Government prior to the date on which the Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of the Agreement;

3. Roseate Wagner, Chief Executive Officer and President of AUS, is hereby authorized, empowered, and directed, on behalf of AUS, to execute the Agreement substantially in such form as reviewed by this Board of Directors at this meeting with such changes as AUS Counsel may approve;

4. Roseate Wagner, Chief Executive Officer and President of AUS, is hereby authorized, empowered, and directed to take any and all actions as may be necessary or appropriate and to approve the forms, terms or provisions of any agreement, or other documents as may be necessary or appropriate, to carry out and effectuate the purpose and intent of the foregoing resolutions; and

5. All of the actions of AUS Counsel, which actions would have been authorized by the foregoing resolutions except that such actions were taken prior to the adoption of such resolutions, are hereby severally ratified, confirmed, approved, and adopted as actions on behalf of AUS.

Date: June 29, 2026

By: [signature]
Richard Chih-Chiu Lin
Board of Directors
AUS Merchant Services, Inc.

## ATTACHMENT C

## THE AUS MERCHANT SERVICES, INC. CORPORATE COMPLIANCE PROGRAM

In order to ensure the adequacy of its internal controls, policies, and procedures regarding compliance with the Bank Secrecy Act, Title 31, United States Code, Section 5311, *et seq.* ("BSA") and anti-money laundering ("AML") laws and regulations, which include but are not limited to Title 31, Code of Federal Regulations, Part 1022 (collectively, "BSA and AML Laws"), and the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 301 et seq.) ("FDCA"), AUS Merchant Services, Inc. ("AUS"), a payment processor operating in the United States, agrees to continue to conduct, in a manner consistent with all of its obligations under this Agreement, appropriate reviews of its existing internal controls, policies, and procedures.

AUS has taken steps to remediate and enhance its BSA/AML and other compliance programs to prevent violations of the FDCA and other federal laws. These efforts included the hiring of additional staff and retaining the support of outside compliance consultants and counsel.

Where necessary and appropriate, AUS agrees to ensure that its compliance program, including internal controls, compliance policies, and procedures, complies with BSA and AML Laws and other federal laws. AUS further agrees to ensure that its compliance program is designed to detect, deter, investigate, and report violations of the FDCA and other federal laws, where required. At a minimum, this should include, but not be limited to, the following elements to the extent they are not already part of AUS's existing internal controls, compliance program, policies, and procedures:

### *Commitment to Compliance*

1. AUS will ensure that its directors and management provide strong, explicit, and visible support for compliance with BSA/AML Laws, the FDCA, and the Controlled Substances Act ("CSA"). AUS directors and management will demonstrate this commitment through their actions and communications with employees.

2. AUS will continue to ensure that management reinforces AUS's commitment to compliance policies and principles related to BSA/AML, the FDCA, and prevention of federal criminal statutory violations. Management will enforce adherence to those policies and principles. AUS will continue to foster a culture of ethics and compliance with the laws of the United States in its day-to-day operations at all levels of AUS.

### *Risk Assessment and Review*

3. AUS will continue to utilize a risk management process to identify, analyze, and address the individual circumstances of AUS, in particular the risks facing AUS from the potential sale of Subject Merchandise in the United States through its payment processing for e-commerce services and from violations of BSA and AML Laws.

4. On the basis of its risk assessment, AUS shall continue to take appropriate steps to re-design, enhance, implement, or modify its compliance program to reduce the risk of violations of BSA and AML Laws, and the FDCA.

*Policies and Procedures*

5. AUS will continue to maintain a clearly articulated and visible corporate policy against violations of BSA and AML Laws and the FDCA. These policies shall be memorialized in written compliance policies.

6. AUS will continue to maintain and appropriately enhance compliance policies and procedures designed to reduce the prospect of violations of BSA and AML Laws and the FDCA, including addressing any systemic issues. AUS will continue to take appropriate measures to encourage and support the observance of ethics and compliance policies and procedures against violations of BSA and AML Laws and the FDCA by personnel at all levels of AUS. These policies and procedures shall apply to all directors, officers, and employees and, where necessary and appropriate, outside parties acting on behalf of AUS in the United States or foreign jurisdictions, including, but not limited to, agents, intermediaries, consultants, representatives, distributors, contractors, suppliers, and joint venture partners (collectively, "agents and business partners"). AUS shall notify all employees that compliance with the policies and procedures is the duty of individuals at all levels of AUS.

7. Within ninety (90) calendar days of the execution of the Agreement, AUS shall implement an electronic portal or mailbox ("Law Enforcement Mailbox" or "Mailbox") that is dedicated to producing information related to United States-based users of AUS's online services in response to United States-based legal process, including valid U.S. subpoenas, court orders, and search warrants, that is related to United States-based criminal investigations. The Law Enforcement Mailbox shall be available to federal, state, and local law enforcement agencies in the United States. AUS agrees to waive any federal or state statutory right to personal service of United States-based legal process that is related to United States-based criminal investigations. AUS will comply with such legal process unless it receives relief from doing so by a court of competent jurisdiction in the United States. AUS will provide appropriate instructions on how to use the Law Enforcement Mailbox. The Mailbox is for the exclusive use of U.S.-based law enforcement agencies conducting criminal investigations.

8. AUS will continue to maintain a system of internal controls reasonably designed to ensure the completeness and accuracy of records to the extent required by applicable laws and regulations.

9. AUS will continue to maintain a system to retain books and records, including a system of internal controls, reasonably designed to ensure the prevention and detection of violations of BSA/AML Laws, the FDCA, and the CSA.

10. AUS will continue to review its compliance policies and procedures regarding BSA, AML, FDCA, and other applicable federal laws as needed, to address changing and emerging risks.

*Suspicious Activity Reports*

11. AUS has created and will continue to maintain and appropriately enhance policies and procedures to ensure that it will continue to follow all laws and regulations concerning the filing of Suspicious Activity Reports ("SARs") in the United States for any suspicious activity, as defined by the BSA and its implementing regulations. This includes, but is not limited to, filing SARs identifying: suspicious activity identified by AUS related to transactions or attempted transactions that involve $2,000 or more in funds or in aggregate funds and are to, from, or through the United States, regardless of where in the world the suspicious transactions originate or are received, and regardless of where in the world the data relating to such transactions is located.

*Transaction Monitoring and Reporting*

12. As part of its compliance program, AUS has instituted and will continue to maintain and appropriately enhance its transaction monitoring program. The transaction monitoring program operated by AUS will be adaptive to identified risks, including risks identified internally by AUS, by regulators, and in written findings, including review of publicly available information and law enforcement referrals or inquiries. AUS will continue to ensure the transaction monitoring program is informed by its risk profile and appropriately accounts for the areas of greatest risk, with particular emphasis on higher-risk products, services, customers, and geographies. AUS will continue to regularly review its transaction monitoring program, including its scope, resources, and coverage. AUS will continue to test and update the transaction monitoring program as needed to ensure it appropriately addresses risk areas.

13. As part of its compliance program, AUS has instituted and will continue to maintain and appropriately enhance procedures for monitoring transactions settled or cleared on behalf of any other money services business or e-commerce businesses that AUS provides services to, which includes collection, transmission, and monitoring of transactions and counterparty information for all transactions processed through AUS. Transaction monitoring will conform with applicable laws and regulations. AUS will maintain clear records of the data it utilizes to conduct transaction monitoring, including a description of the categories of data used by AUS for transaction monitoring that is made available upon request to U.S. regulators.

14. AUS has instituted and will continue to maintain and appropriately enhance its policies, procedures, and processes for managing alerts identified by its transaction monitoring program. This includes, but is not limited to, making decisions on SARs, and completing and filing SARs. AUS will continue to ensure adequate staff are assigned to the identification, research, and reporting of suspicious activities.

15. AUS will continue to maintain and appropriately enhance its policies, procedures, and processes for identifying subjects of law enforcement requests, monitoring the transaction activity of those subjects when appropriate, identifying suspicious activity related to those subjects, and filing, as appropriate, SARs related to those subjects.

16. AUS has and will continue to generate reports for its BSA Officer's review which includes patterns or outliers in transaction activity that may be indicative of illicit conduct. AUS's BSA Officer or their designee, who shall be located in the United States, will continue to review

patterns or outliers in transaction activity and shall consider those reports in enhancing AUS's compliance with BSA and AML Laws, including the reporting of potential FDCA violations and other federal criminal statutes. AUS's management and AUS's BSA officer will continue to select filtering criteria and thresholds to produce such transaction reports, subject to review and approval, that will continue to enable AUS to detect potential patterns and typologies of unusual activity and for AUS management to receive reports of that activity.

17. AUS's transaction monitoring systems have been and will continue to be independently tested and reviewed for reasonable filtering criteria and thresholds, and such reviews are included in independent audits of AUS's compliance program and function.

*Third-Party Relationships*

18. As part of its compliance program, AUS will continue to institute and enhance appropriate, risk-based policies and procedures related to third-party money services business or e-commerce businesses who utilize AUS payment processing or settlement services in accordance with applicable laws and regulations.

*Independent, Autonomous, and Empowered Oversight*

19. AUS has assigned and will continue to assign responsibility to one or more senior corporate executives of AUS for the implementation and oversight of AUS's compliance policies and procedures regarding BSA and AML Laws and the FDCA. Such corporate official(s) shall have the authority to report directly to independent monitoring bodies, including internal audit, AUS's Board of Directors, or any appropriate committee of the Board of Directors, and shall have an adequate level of stature and autonomy from management as well as sufficient resources and authority to maintain such autonomy.

*Training and Guidance*

20. AUS has implemented and will continue to enhance and maintain mechanisms designed to ensure that its policies and procedures regarding BSA and AML Laws and the FDCA are effectively communicated to all directors, officers, employees, and, where necessary and appropriate, agents and business partners. These mechanisms shall include: (a) training for all directors and officers, all employees in positions of leadership or trust, any positions that require such training (*e.g.*, internal audit, sales, legal, compliance, finance), and, where necessary and appropriate, agents and business partners; (b) metrics for measuring knowledge retention and effectiveness of the training; and (c) corresponding certifications by all such directors, officers, employees, agents and business partners, certifying compliance with the training requirements. AUS will continue to conduct training in a manner tailored to the audience's size, sophistication, and subject-matter expertise and, where appropriate, will continue to discuss prior compliance incidents.

21. AUS will continue to maintain or, where necessary, establish an effective system for providing guidance and advice to directors, officers, employees, and, where necessary and appropriate, agents and business partners, on complying with its policies and procedures regarding

BSA and AML Laws and the FDCA, including when such individuals need advice on an urgent basis, or need advice in any foreign jurisdiction in which AUS operates.

*Confidential Reporting Structure and Investigation of Misconduct*

22. AUS will continue to maintain or, where necessary, establish an adequate system for internal and, where possible, confidential reporting by, and protection of, directors, officers, employees, and, where appropriate, agents and business partners concerning violations of AUS's policies and procedures regarding BSA and AML Laws and the FDCA.

23. AUS will continue to maintain or, where necessary, establish an effective process and sufficient resources for responding to, investigating, and documenting allegations of violations of BSA and AML Laws, its compliance policies, and the FDCA. AUS will continue to handle the investigations into such complaints in an effective manner, including routing the complaints to proper personnel, conducting timely and thorough investigations, and following up with appropriate discipline where necessary.

24. AUS will conduct a root cause analysis of any shortcomings related to compliance with BSA and AML Laws, the FDCA, or AUS's compliance policies, which shall include the review of any prior failures during the time period covered in the Agreement. This root cause analysis shall identify whether there are any systemic issues and/or any control failures. AUS will timely and appropriately remediate any identified issues related to compliance with BSA and AML Laws, the FDCA, or AUS's compliance policies. AUS will ensure that root causes, including systemic issues and control failures, and relevant remediation are shared with management as appropriate.

*Mergers and Acquisitions*

25. AUS will continue to develop and implement policies and procedures for mergers and acquisitions requiring that AUS conduct appropriate risk-based due diligence on potential new business entities, including appropriate due diligence regarding compliance with BSA and AML Laws and the FDCA by legal, accounting, and compliance personnel associated with those new business entities.

26. AUS will continue to ensure its compliance policies and procedures regarding BSA and AML Laws and the FDCA apply as quickly as is practicable to newly-acquired businesses or entities merged with AUS, and will promptly (a) train the directors, officers, employees, agents, and business partners consistent with Paragraph 20; (b) where warranted, conduct an audit of all newly acquired or merged businesses as quickly as is practicable concerning compliance with BSA and AML Laws and the FDCA; and (c) where warranted, establish a plan to integrate the acquired businesses or entities into AUS's enterprise resource planning systems as quickly as practicable.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

---

Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.

**No. 4:26-cv-00611-DPM**

# EXHIBIT C

## ECF No. 14 - Order Denying Initial Early-Discovery Motion Without Prejudice

The reproduced source document follows this cover page.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim — PLAINTIFF

v. No. 4:26-cv-611-DPM

ALIBABA GROUP HOLDING LIMITED; ALIBAA.COM SINGAPORE E-COMMERCE PTE. LIMITED, a/k/a Alibaba.com Singapore E-commerce Private Limited; ALIBABA.COM U.S. LLC; ALIBABA.COM U.S. E-COMMERCE CORP., a/k/a Alibaba.com US E-Commerce Corp.; ALIBABA GROUP (U.S.) INC.; ALIEXPRESS E-COMMERCE ONE PTE. LTD.; AUS MERCHANT SERVICES, INC., f/k/a Alipay U.S., Inc. and Alipay U.S. Escrow, Inc.; ZICHANG NEW MATERIALS (SHANDONG) CO., LTD; ZHISHANG NEW MATERIALS (SHANDONG) CO., LTD.; SHAANXI BLOOM TECH CO., LTD; JOHN DOE, Alibaba Platform Payment, Owner, Operator, Parent, Subsidiary, Affiliate, Agent, Business Partner, Compliance, Payment Routing, or Alter-Ego Entities 1-10; and JOHN DOE Seller/Merchant Account Operators, Sales Agents, Payment Beneficiaries, Payment Processors, Payment Routing Participants, Chemical Product Solicitors, — DEFENDANTS

**Import/Shipment Participants, and Co-Conspirators 1–20**

## ORDER

*First,* Burchfield amended his complaint as a matter of course. *Doc. 11;* Fed. R. Civ. P. 15(a)(1). His request to do so is moot. If Burchfield wishes to amend again, he must ask for leave. Fed. R. Civ. P. 15(a)(2). *Second,* this case is just beginning. There's no need for the Court to rule on discovery now. And, of course, the defendants must follow all applicable Federal Rules of Civil Procedure. Motion, *Doc. 2,* denied without prejudice.

So Ordered.

D.P. Marshall Jr.
United States District Judge

14 July 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

---

Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.

**No. 4:26-cv-00611-DPM**

# EXHIBIT D

## ECF No. 15 - Appearance of Counsel for AGHL and Alibaba.com US E-Commerce Corp.

The reproduced source document follows this cover page.

AO 458 (Rev. 06/09) Appearance of Counsel

# UNITED STATES DISTRICT COURT

for the

Eastern District of Arkansas

BRADLEY BURCHFIELD, et al.

*Plaintiff*

v. ) Case No. 4:26-cv-00611-DPM

ALIBABA.COM SINGAPORE E-COMMERCE PRIVATED LIMITED, et al. )

*Defendant*

## APPEARANCE OF COUNSEL

To: The clerk of court and all parties of record

I am admitted or otherwise authorized to practice in this court, and I appear in this case as counsel for:

Alibaba Group Holding Limited and Alibaba.com US E-Commerce Corp.

Date: July 20, 2026

B. Robert Liu NY Bar: 5697552
*Attorney's printed name and bar number*

1 World Trade Ctr Ste 8500, New York,NY 10007
*Address*

robert.liu@balancelawfirm.com
*E-mail address*

(212) 741-8080
*Telephone number*

(631) 490-4465
*FAX number*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

---

Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.

**No. 4:26-cv-00611-DPM**

# EXHIBIT E

## June 18, 2026 Alibaba Customer-Service Response Concerning Order 91906090501027582

The reproduced source document follows this cover page.

EXHIBIT E · JUNE 18, 2026 CUSTOMER-SERVICE RESPONSE



Gmail Burchfield Bradley <burchfieldbradley123@gmail.com>

## Solution for Trade Assurance Order 91906090501027582

**Alibaba Customer Service** <queryreply@service.alibaba.com> Thu, Jun 18, 2026 at 1:28 AM
To: burchfieldbradley123@gmail.com

Hi Bradley,

We have received your complaint regarding to this order 91906090501027582, please rest assured that this case been escalated to our senior team.

Since this order is over three years old, the logistics information can no longer be verified. Additionally, the platform has no record of you contacting customer service regarding this order.

However, we fully understand your concerns, to better assist you and enhance your purchasing experience on our platform, we will help you apply 500USD Alibaba credit (validity period is 90days from the date of issue) to settle this case. This credit can be applied to your future trade assurance order, including product and shipping costs, but please kindly note it cannot be applied to payment processing fees, taxes, or other additional services.
You may check the credit amount/validity in My Alibaba > Coupons and Credit.

Important note: All discounts (includes coupons & credit) can be combined used in your future trade assurance order as long as your order exceeds the minimum amount of USD 0.30.

Alibaba.com Credit cannot be used to settle the remaining balance of an order.

Please reply AGREE if you can accept this option.

Thank you for your kindly trust and patience with us.

Best Regard,
Alibaba Service Team

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

---

Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.

**No. 4:26-cv-00611-DPM**

# EXHIBIT F

## Proof of Service of Amended Complaint on Alibaba.com US E-Commerce Corp.

The reproduced source document follows this cover page.

4:26-cv-611-DPM

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 22 2026

TAMMY H. DOWNS, CLERK
By: [signature] DEP CLERK

Federal Amended

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
Alibaba.Com U.S. ECommerce Corp
C/o Incorporating Serv. Ltd.
7801 Folsom Blvd Ste 202
Sacramento, CA 95826

9590 9402 9767 5266 0385 99

2. Article Number (Transfer from service label)
9589 0710 5270 3840 0925 39

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X [signature] ☐ Agent ☐ Addressee

B. Received by (Printed Name): K. Sttn B

C. Date of Delivery: 07-14-26

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
Mail
Mail Restricted Delivery
(over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 Domestic Return Receipt

USPS TRACKING #

957
3 L

9590 9402 9767 5266 0385 99

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

Bradley Burchfield
5420 Kavanaugh Blvd #7927
Little Rock, AR 72217

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

---

Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.

**No. 4:26-cv-00611-DPM**

# EXHIBIT G

## CHS Properties Docket Screenshot Showing Notice of Plaintiff's Videotaped Deposition

*Offered for the limited purpose stated in the opposition; this screenshot is not itself a judicial finding of expert qualification.*

The reproduced source document follows this cover page.

EXHIBIT G · CHS PROPERTIES DOCKET SCREENSHOT (ENTRY 39)

**CHS Properties, LLC v. Axis Surplus Insurance Company**

| | | | |
|---|---|---|---|
| **Arkansas Western District Court** | | **Case Filed:** | Feb 14, 2025 |
| **Judge:** | Timothy L Brooks | **Terminated:** | Jan 21, 2026 |
| **Case #:** | 6:25-cv-06020 | **Case in other court:** | Garland County Circuit Court, 26CV-24-01686 |
| **Nature of Suit** | 110 Contract - Insurance | | |
| **Cause** | 28:1441 Petition for Removal- Breach of Contract | | |

Docket Parties (2)

Docket last updated: 07/21/2026 11:58 PM CDT

**Wednesday, January 21, 2026**

41 ORDER OF DISMISSAL WITH PREJUDICE. Signed by Chief District Judge Timothy L Brooks on January 21, 2026. (mbm)

**Tuesday, January 13, 2026**

40 TEXT ONLY ORDER Cancelling Settlement Conference as the parties have notified the court that they have reached a settlement. Signed by Honorable Spencer G Singleton on January 13, 2026. (vme)

**Monday, December 15, 2025**

39 NOTICE by Axis Surplus Insurance Company of Videotaped Deposition of Bradley Burchfield (Grabouski, Laura)

**Tuesday, December 09, 2025**

38 TEXT ONLY ORDER Resetting Settlement Conference: Settlement Conference reset for 2/5/2026 10:00 AM before Magistrate Judge Spencer G. Singleton.. Signed by Honorable Spencer G Singleton on December 9, 2025. (vme)

37 ORDER granting35 Motion to Amend/Correct Settlement Conference. Reset for February 5, 2026, 10:00 a.m. Hot Springs. Signed by Honorable Spencer G Singleton on December 9, 2025. (vme)

36 TEXT ONLY ORDER REFERRING MOTION:35 Joint MOTION to Amend/Correct The Settlement Conference Scheduling Order filed by Axis Surplus Insurance Company to Honorable Spencer G. Singleton. Signed by Chief District Judge Timothy L Brooks on December 9, 2025. Motions referred to Spencer G Singleton.(slc)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

---

Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.

**No. 4:26-cv-00611-DPM**

# EXHIBIT H

## Permanently Redacted Invoice for Expert-Witness Testimony in CHS Properties

*Bank-account, routing, and payment information has been permanently removed.*

The reproduced source document follows this cover page.

**Burchfield Sales & Consulting LLC**
PO BOX 7927
Little Rock, AR 72207
Phone: (479) 223-0038
Fax: (000) 000-0000

# INVOICE

**INVOICE: 00003**
**DATE: 12/15/25**

**TO:**
National Insurance Advocates
5900 Balcones Drive, STE 100
Austin, TX 78731

**FOR:**
Consulting Services
CHS PROPERTIES LLC
125 OAK ST.
HOT SPRINGS, AR 71901

| DESCRIPTION | HOURS | RATE | AMOUNT |
|---|---|---|---|
| EXPERT WITNESS TESTIMONY | 4.5 | $200.00 | $900.00 |
| | | | 0 |
| | | | 0 |
| | | | 0 |
| [redacted] | | | |
| [redacted] | | | |
| [redacted] | | | |
| | | | |
| | | | |
| [redacted] | | | |
| | | | DUE |
| | | TOTAL | $900.00 |

Make all checks payable to Burchfield Sales & Consulting LLC
Total due in 15 days. Overdue accounts subject to a 1.40% per day late fee.

**THANK YOU FOR YOUR BUSINESS!**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

---

Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.

**No. 4:26-cv-00611-DPM**

# EXHIBIT I

## Declaration of Jieyun Li (ECF No. 17-7)

The reproduced source document follows this cover page.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| BRADLEY BURCHFIELD,<br><br>Plaintiff,<br><br>v.<br><br>ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, *et al.*,<br><br>Defendants. | No. 4:26-cv-00611-DPM |

**DECLARATION OF JIEYUN LI**

I, Jieyun Li, declare as follows:

1. I make this declaration based on personal knowledge and my review of corporate records in the regular course of my duties. I am over the age of eighteen and am authorized to make the statements set forth in this declaration. If called as a witness, I could and would competently testify to the statements set forth below.

2. I am Senior Legal Counsel providing legal services to Alibaba Group Holding Limited ("AGHL"), one of the defendants in this lawsuit. AGHL and certain other companies—including Defendant Alibaba.com Singapore E-Commerce Private Limited ("Alibaba Singapore") and Defendant Alibaba.com US E-Commerce Corp.—are affiliated companies.

3. My duties and responsibilities include providing legal services and guidance to "Alibaba" companies, including AGHL. As part of my job, I coordinate and supervise the work of outside counsel representing "Alibaba" companies in U.S. litigation, including AGHL in this lawsuit. I have learned, and on that basis can testify to, the following information in the course of providing legal services and guidance to "Alibaba" companies, including AGHL.

4. AGHL is a corporation that is incorporated under the laws of the Cayman Islands and has its principal place of business in the People's Republic of China.

5. AGHL is a non-operating holding company that has numerous subsidiaries.

6. AGHL is a separate legal entity from all of its subsidiaries. AGHL maintains its own books and records separate from those of any subsidiary.

7. Alibaba.com ("the Alibaba.com Platform") is an electronic web-based platform for exchanging information and offering services online between buyers and sellers all over the world. The Alibaba.com Platform is a "business-to-business" platform, which means that the platform connects potential buyers that are businesses and potential sellers that are businesses.

8. Alibaba Singapore, which is an indirect subsidiary of AGHL, owns and operates the Alibaba.com Platform. Alibaba Singapore is not organized under the laws of any state in the United States of America and does not have any offices in the United States of America. AGHL does not exercise day-to-day control over Alibaba Singapore, Alibaba.com US E-Commerce Corp., or any other AGHL subsidiaries.

9. AGHL does not own, operate, or control the Alibaba.com Platform and does not exercise any control over any products listed for sale, or actually sold, by third-party sellers on the Alibaba.com Platform.

10. AGHL is not registered to do business in the State of Arkansas or in any other state in the United States of America. AGHL does not direct, target, or specifically tailor any of its business activities to or at the State of Arkansas or the United States of America.

11. AGHL does not have any offices in the State of Arkansas or elsewhere in the United States of America.

12. AGHL does not have any employees in the State of Arkansas, in the United States of America, or anywhere else in the world.

13. AGHL did not participate in or supervise any transaction where Plaintiff Bradley Burchfield (or his company) allegedly bought or tried to buy a product on the Alibaba.com Platform from a third-party seller called Zichang New Materials (shandong) Co. Ltd. ("Zichang").

14. AGHL does not represent—and is not an agent for—any buyers or any sellers in any transactions where a buyer and a seller have made contact via the Alibaba.com Platform, so AGHL was not an agent for Zichang when Mr. Burchfield (or his company) allegedly bought or tried to buy a product from Zichang.

15. AGHL does not have any communications with users or members of the Alibaba.com Platform, so Mr. Burchfield could not have communicated with AGHL about any product that Mr. Burchfield (or his company) allegedly bought or tried to buy from Zichang.

16. AGHL does not send advertisements, marketing e-mails, or other messages—or control or have any input into the content of advertisements, marketing e-mails, or other messages—that may be sent or otherwise transmitted to potential buyers of products that sellers make available for purchase on the Alibaba.com Platform. Therefore, neither Mr. Burchfield nor his company could have received: (a) any advertisements, marketing e-mails, or other messages from AGHL; or (b) any advertisements, marketing e-mails, or messages where AGHL had any control over their content.

17. AGHL does not introduce potential buyers to sellers or otherwise play any role in creating any contacts between sellers and potential buyers, so AGHL could not have introduced Mr. Burchfield (or his company) to Zichang or played any role in creating any contacts between him (or his company) and Zichang.

18. AGHL plays no role in the sale process involving a product offered for sale by a seller to a buyer via the Alibaba.com Platform, so AGHL could not have played any role in the sale process involving any purchase (or attempted purchase) by Mr. Burchfield (or his company) of a product offered for sale by Zichang.

19. AGHL plays no role in manufacturing any product offered for sale by a seller to a buyer via the Alibaba.com Platform, so AGHL could not have played any role in manufacturing the product that Mr. Burchfield (or his company) allegedly bought or tried to buy from Zichang.

20. AGHL plays no role in the shipping and distribution process for any product offered for sale by a seller to a buyer via the Alibaba.com Platform, so AGHL could not have played any role in the shipping or distribution process for the product that Mr. Burchfield (or his company) allegedly bought or tried to buy from Zichang.

21. AGHL does not take possession or control of, and does not take title to, products offered for sale on the Alibaba.com Platform, so AGHL could not have taken possession or control of, and could not have taken title to, the product that Mr. Burchfield (or his company) allegedly bought or tried to buy from Zichang.

22. Zichang has never been an agent for AGHL. AGHL has never stated or done anything to suggest, or create the appearance, that Zichang is AGHL's agent.

23. While Corporation Service Company serves as AGHL's agent for service of process in the United States, their authorization is strictly limited. They do not have the legal authority to accept service of general civil lawsuits against AGHL.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**Executed on this 21 day of July, 2026.**

Jieyun Li

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

---

Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.

**No. 4:26-cv-00611-DPM**

# EXHIBIT J

## Declaration of Xingjian Zhao (ECF No. 17-8)

The reproduced source document follows this cover page.

# EXHIBIT 8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| BRADLEY BURCHFIELD,<br><br>Plaintiff,<br><br>v.<br><br>ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, *et al.*,<br><br>Defendants. | No. 4:26-cv-00611-DPM |

**DECLARATION OF XINGJIAN ZHAO**

I, Xingjian Zhao, declare as follows:

1. I make this declaration based on personal knowledge and my review of corporate records in the regular course of my duties. I am over the age of eighteen and am authorized to make the statements set forth in this declaration. If called as a witness, I could and would competently testify to the statements set forth below.

2. I am Senior Legal Counsel for Alibaba.com Hong Kong Limited, which provides legal services to "Alibaba" entities and affiliates, including Defendant Alibaba.com US E-Commerce Corp.

3. As part of my duties and responsibilities, I coordinate and supervise the work of outside counsel representing "Alibaba" companies in U.S. litigation, including Defendant Alibaba.com Singapore E-Commerce Private Limited and, in particular, Defendant Alibaba.com US E-Commerce Corp. In the course of providing legal services and guidance to "Alibaba" companies, I have learned, and on that basis can testify to, the following information.

4. Alibaba US E-Commerce Corp. is a corporation that is incorporated under the laws of the State of Delaware and has its principal place of business in the State of New York.

5. Alibaba US E-Commerce Corp. is a separate legal entity and maintains its own books and records.

6. Alibaba US E-Commerce Corp. does not own, operate, or control the Alibaba.com Platform and does not exercise any control over any products listed for sale, or actually sold, by third-party sellers on Alibaba.com ("the Alibaba.com Platform").

7. Alibaba US E-Commerce Corp. is not registered to do business in the State of Arkansas. Alibaba US E-Commerce Corp. does not direct, target, or specifically tailor any of its business activities to or at the State of Arkansas.

8. Alibaba US E-Commerce Corp. has no office in the State of Arkansas.

9. Alibaba US E-Commerce Corp. has no employee in the State of Arkansas.

10. Alibaba US E-Commerce Corp. did not participate in or supervise any transaction where Plaintiff Bradley Burchfield (or his company) allegedly bought or tried to buy a product on the Alibaba.com Platform from a third-party seller called Zichang New Materials (shandong) Co. Ltd. ("Zichang").

11. Alibaba US E-Commerce Corp. does not represent – and is not an agent for – any buyers or any sellers in any transactions where a buyer and a seller have made contact via the Alibaba.com Platform, so Alibaba US E-Commerce Corp. was not an agent for Zichang when Mr. Burchfield (or his company) allegedly bought or tried to buy a product from Zichang.

12. Alibaba US E-Commerce Corp. does not have any communications with users or members of the Alibaba.com Platform, so Mr. Burchfield could not have communicated with

Alibaba US E-Commerce Corp. about any product that Mr. Burchfield (or his company) allegedly bought or tried to buy from Zichang.

13. Alibaba US E-Commerce Corp. does not send advertisements, marketing e-mails, or other messages – or control or have any input into the content of advertisements, marketing e-mails, or other messages – that may be sent or otherwise transmitted to potential buyers of products that sellers make available for purchase on the Alibaba.com Platform. Therefore, neither Mr. Burchfield nor his company could have received: (a) any advertisements, marketing e-mails, or other messages from Alibaba US E-Commerce Corp.; or (b) any advertisements, marketing e-mails, or messages where Alibaba US E-Commerce Corp. had any control over their content.

14. Alibaba US E-Commerce Corp. does not introduce potential buyers to sellers or otherwise play any role in creating any contacts between sellers and potential buyers, so Alibaba US E-Commerce Corp. could not have introduced Mr. Burchfield (or his company) to Zichang or played any role in creating any contacts between Mr. Burchfield (or his company) and Zichang.

15. Alibaba US E-Commerce Corp. plays no role in the sale process involving a product offered for sale by a seller to a buyer via the Alibaba.com Platform, so Alibaba US E-Commerce Corp. could not have played any role in the sale process involving any purchase (or attempted purchase) by Mr. Burchfield (or his company) of a product offered for sale by Zichang.

16. Alibaba US E-Commerce Corp. plays no role in manufacturing any product offered for sale by a seller to a buyer via the Alibaba.com Platform, so Alibaba US E-Commerce Corp. could not have played any role in manufacturing the product that Mr. Burchfield (or his company) allegedly bought or tried to buy from Zichang.

17. Alibaba US E-Commerce Corp. plays no role in the shipping and distribution process for any product offered for sale by a seller to a buyer via the Alibaba.com Platform, so Alibaba

US E-Commerce Corp. could not have played any role in the shipping or distribution process for the product that Mr. Burchfield (or his company) allegedly bought or tried to buy from Zichang.

18. Alibaba US E-Commerce Corp. does not take possession or control of, and does not take title to, products offered for sale on the Alibaba.com Platform, so Alibaba US E-Commerce Corp. could not have taken possession or control of, and could not have taken title to, the product that Mr. Burchfield (or his company) allegedly bought or tried to buy from Zichang.

19. Zichang has never been an agent for Alibaba US E-Commerce Corp. Alibaba US E-Commerce Corp. has never stated or done anything to suggest, or create the appearance, that Zichang is Alibaba US E-Commerce Corp.'s agent.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 20th day of July, 2026.

Xingjian Zhao

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS**

---

Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.

**No. 4:26-cv-00611-DPM**

# EXHIBIT K

## Nonparty Document Subpoena Directed to CSC

*Included as supplied by Plaintiff; this exhibit does not by itself establish completed service or compliance.*

The reproduced source document follows this cover page.

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 22 2026

TAMMY H. DOWNS, CLERK
By: ____________ DEP CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

BRADLEY BURCHFIELD
Plaintiff,

Civil Action No.
4:26-cv-00611-DPM

v.

ALIBABA GROUP HOLDING LIMITED, et al.
Defendants.

## NOTICE OF INTENT TO SERVE NONPARTY DOCUMENT SUBPOENA

Pursuant to Federal Rule of Civil Procedure 45(a)(4), Plaintiff Bradley Burchfield gives notice that, after this notice and the attached copy of the subpoena have been served on each party, Plaintiff intends to serve a document-only subpoena on nonparty Corporation Service Company at 300 S. Spring Street, Suite 900, Little Rock, Arkansas 72201.

The subpoena seeks narrowly defined records concerning CSC Transmittal No. 34483454 and CSC's July 9, 2026 rejection of federal process directed to Alibaba Group Holding Limited in this action. The subpoena does not require testimony, does not command a personal appearance, and expressly excludes records concerning any Arkansas state-court summons or mailing.

A copy of the proposed subpoena and Attachment A is served with this notice. Plaintiff will not serve the subpoena on Corporation Service Company until the Rule 45(a)(4) notice requirement has been satisfied.

Date: 7/22/26

Respectfully submitted,

Bradley Burchfield

Bradley Burchfield, Pro Se
5420 Kavanaugh Blvd #7927
Little Rock, AR 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS

**BRADLEY BURCHFIELD**
Plaintiff,

**Civil Action No.**
**4:26-cv-00611-DPM**

v.

**ALIBABA GROUP HOLDING LIMITED, et al.**
Defendants.

## CERTIFICATE OF SERVICE

I certify that on July 22, 2026, before service of the subpoena on Corporation Service Company, I served a copy of the Notice of Intent to Serve Nonparty Document Subpoena, the proposed subpoena, and Attachment A on each named party in this action by U.S. Mail at the address stated below:

| Party | Address Used | Method |
|---|---|---|
| Alibaba Group Holding Limited | c/o Corporation Service Company<br>19 West 44th Street, Suite 200<br>New York, NY 10036 | U.S. Mail |
| Alibaba.com Singapore E-Commerce Pte. Limited<br>*a/k/a Alibaba.com Singapore E-Commerce Private Limited* | 51 Bras Basah Road, #01-21, Lazada One<br>Singapore 189554 | U.S. Mail |
| Alibaba.com U.S. LLC | c/o Corporation Service Company<br>251 Little Falls Drive<br>Wilmington, DE 19808 | U.S. Mail |
| Alibaba.com U.S. e-Commerce Corp.<br>*a/k/a Alibaba.com US E-Commerce Corp.* | c/o Incorporating Services, Ltd.<br>7801 Folsom Blvd., Suite 202<br>Sacramento, CA 95826 | U.S. Mail |
| Alibaba Group (U.S.) Inc | c/o Incorporating Services, Ltd.<br>3500 S. Dupont Hwy.<br>Dover, DE 19901 | U.S. Mail |
| AliExpress E-Commerce One Pte. Ltd. | c/o Alibaba Group Holding Ltd., Legal Department<br>26/F Tower One, Times Square<br>1 Matheson Street, Causeway Bay, Hong Kong | U.S. Mail |
| AUS Merchant Services, Inc.<br>*f/k/a Alipay U.S., Inc. and Alipay U.S. Escrow, Inc.* | c/o The Corporation Trust Company<br>1209 Orange Street<br>Wilmington, DE 19801 | U.S. Mail |
| Zichang New Materials (Shandong) Co., Ltd. | Room A2-907, Xinyuanxin Center<br>Huaxin Road, Jinan, Shandong, China | U.S. Mail |
| Zhishang New Materials (Shandong) Co., Ltd. | 400 S. El Camino Real<br>San Mateo, CA 94402 | U.S. Mail |
| Shaanxi Bloom Tech Co., Ltd. | 400 S. El Camino Real<br>San Mateo, CA 94402 | U.S. Mail |

Bradley Burchfield
Date: 7/22/26

*Unidentified Doe defendants are not listed because no mailing address has been identified.*

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Arkansas

Bradley Burchfield
*Plaintiff*
v.
Alibaba Group Holding Limited, et al.
*Defendant*

Civil Action No. 4:26-cv-00611-DPM

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: CORPORATION SERVICE COMPANY, through its Custodian of Records
300 S. Spring St. Suite 900
Little Rock, AR 72201

*(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: The documents and electronically stored information described in "Attachment A", incorporated into this subpoena. This Subpoena concerns only CSC's receipt, processing and rejection of federal process in Civil Action No: 4:26-cv-00611-DPM and CSC Transmittal No. 34483454. No Arkansas State-Court service records are requested.

| Place: 300 S. Spring St. Suite 900, Little Rock, AR 72201. Electronic production permitted to: burchfieldbradley123@gmail.com | Date and Time: Thirty (30) days after Service, but not earlier than September 11, 2026 at 5:00 pm Central time. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 7/22/26

**TAMMY H. DOWNS**
*CLERK OF COURT*

[signature]
*Signature of Clerk or Deputy Clerk*

OR

*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Bradley Burchfield
Pro Se, representing Plaintiff, who issues or requests this subpoena, are:
5420 Kavanaugh Blvd. #7927, Little Rock, AR 72217; 479-223-0038
Email: burchfieldbradley123@gmail.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ______________ .

☐ I served the subpoena by delivering a copy to the named person as follows: ______________________

______________________________________________ on *(date)* ______________ ; or

☐ I returned the subpoena unexecuted because: ______________________

______________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ ______________ .

My fees are $ ______________ for travel and $ ______________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ______________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT A

## DOCUMENTS AND ELECTRONICALLY STORED INFORMATION TO BE PRODUCED

*Burchfield v. Alibaba Group Holding Limited, et al. | Case No. 4:26-cv-00611-DPM*

**Scope limitation.** This subpoena is limited to CSC's receipt, intake, coding, processing, rejection, retention, return, and forwarding of the federal summons and First Amended Complaint directed to Alibaba Group Holding Limited in the above-captioned federal action, including CSC Transmittal No. 34483454 and the July 9, 2026 Rejection of Service of Process. It does not request records concerning any Arkansas state-court summons or mailing.

## DEFINITIONS

"**CSC**" means Corporation Service Company and the departments, offices, employees, agents, databases, and service-of-process systems reasonably involved in the federal service attempt described above.

"**Federal Process**" means the federal summons, First Amended Complaint, envelope, certified-mail materials, and any accompanying papers received in connection with Civil Action No. 4:26-cv-00611-DPM.

"**Transmittal**" means CSC Transmittal No. 34483454 and the related July 9, 2026 Rejection of Service of Process.

"**Document**" includes writings, records, forms, images, scans, emails, messages, databases, logs, audit trails, metadata, and other electronically stored information within CSC's possession, custody, or control.

"**Communication**" means any transmission of information by email, letter, message, ticket, note, telephone memorandum, or other medium.

## INSTRUCTIONS

1. Search the centralized or other reasonably accessible CSC systems using Transmittal No. 34483454, the party name Alibaba Group Holding Limited, the case number, and the July 9, 2026 rejection date.

2. Produce documents as kept in the ordinary course of business or organize and label them to correspond to the numbered requests below.

3. Produce searchable PDF files for documents and native or reasonably usable format for logs, spreadsheets. database exports, and other structured data, preserving available date, sender, recipient, and audit metadata.

4. Electronic production is permitted. No personal appearance is required.

5. CSC may redact unrelated customer information and may mark responsive material confidential. If any responsive material is withheld based on privilege or protection, provide a privilege log sufficient to assess the claim.

6. If a request can be answered by producing documents sufficient to establish the requested fact, CSC need not produce duplicative versions of the same information.

## DOCUMENT REQUESTS

**REQUEST NO. 1:** The complete CSC file for Transmittal No. 34483454, including the Federal Process as received; all scans or images; the envelope and mailing label; certified-mail and tracking information; intake records; internal notes; routing entries; status history; audit trail; rejection record; and records showing what CSC retained, returned, destroyed, or forwarded.

**REQUEST NO. 2:** Documents showing the exact rejection reason or reasons selected or applied to the Transmittal, including all reason codes, database fields, decision entries, checkboxes, notes, and documents relied upon. If more than one reason was considered, identify each reason and the final operative reason.

**REQUEST NO. 3:** Documents sufficient to identify each CSC employee, contractor, office, team, or automated system that received, opened, scanned, reviewed, coded, routed, approved, generated, mailed, or otherwise processed the Transmittal, including each person's title or function and the date and time of the act.

**REQUEST NO. 4:** Documents sufficient to explain why the rejection form identifies "Alibaba Group Holding Limited" as the "Party Served" but identifies the "Title of Action" as "Bradley Burchfield vs. Alibaba.com Singapore E-Commerce Private Limited," including the source of each entry, whether either entry was manually entered or system-generated, and whether the title entry affected the rejection decision.

## ATTACHMENT A - DOCUMENT REQUESTS (CONTINUED)

**REQUEST NO. 5:** All nonprivileged communications between CSC and Alibaba Group Holding Limited, any Alibaba affiliate, or any representative or counsel for either concerning the Federal Process, Transmittal No. 34483454, the rejection decision, or the return or forwarding of the Federal Process.

**REQUEST NO. 6:** Documents sufficient to show whether CSC was appointed or authorized, as of July 9, 2026, to receive, accept, transmit, or forward service of process for Alibaba Group Holding Limited in New York, including the effective dates and scope of any appointment and any limitation based on the type of action, court, claim, statute, or method of service. CSC may produce an excerpt, designation record, or other document sufficient to establish the relevant authority and limitations rather than an entire unrelated commercial agreement.

**REQUEST NO. 7:** Documents sufficient to show the source, date, and content of the records CSC consulted when it concluded that it was not the registered or authorized agent for Alibaba Group Holding Limited or that the entity was inactive, had resigned, withdrawn, surrendered, merged, dissolved, or been revoked, including any Secretary of State or other governmental records consulted.

**REQUEST NO. 8:** Documents sufficient to show the CSC policies or procedures in effect on July 9, 2026 that governed intake and rejection of certified-mail service directed to a foreign entity at CSC's New York service-of-process office, including the procedure for selecting the party served, title of action, jurisdiction served, rejection reason, and return-to-sender disposition.

**REQUEST NO. 9:** Documents showing when, where, and by what method CSC sent the rejection notice and returned or disposed of the Federal Process, including mailing, delivery, tracking, chain-of-custody, scan, or destruction records.

**REQUEST NO. 10:** A declaration or certification from a qualified CSC custodian under 28 U.S.C. § 1746 sufficient to authenticate the produced records as records of a regularly conducted activity under Federal Rules of Evidence 803(6) and 902(11), or, alternatively, the name, title, office address, telephone number, and email address of the custodian who can authenticate the records.

**Production contact:** Bradley Burchfield, burchfieldbradley123@gmail.com, 479-223-0038. Electronic production may be arranged by secure link, encrypted email, or other mutually agreeable method.

# FEDERAL RULE OF CIVIL PROCEDURE 45
# REQUIRED PROVISIONS

*Rule 45(c), (d), (e), and (g)*

## Rule 45(c) - Place of Compliance

(1) For a Trial, Hearing, or Deposition. A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense.

(2) For Other Discovery. A subpoena may command: (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and (B) inspection of premises at the premises to be inspected.

## Rule 45(d) - Protecting a Person Subject to a Subpoena; Enforcement

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction - which may include lost earnings and reasonable attorney's fees - on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises - or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the serving party may move the court for the district where compliance is required for an order compelling production or inspection, and any order must protect a nonparty from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that fails to allow a reasonable time to comply, requires compliance beyond Rule 45(c)'s geographical limits, requires disclosure of privileged or other protected matter when no exception or waiver applies, or subjects a person to undue burden. The court may also quash or modify a subpoena that requires disclosure of trade secrets or other confidential commercial information, or certain unretained-expert information, and may impose appropriate conditions instead.

# FEDERAL RULE OF CIVIL PROCEDURE 45
# REQUIRED PROVISIONS (CONTINUED)

## Rule 45(e) - Duties in Responding to a Subpoena

(1) Producing Documents or Electronically Stored Information.

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources identified as not reasonably accessible because of undue burden or cost. On a motion to compel or for protective order, the responding person must show the inaccessibility; the court may nonetheless order discovery for good cause and may specify conditions.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim of privilege or trial-preparation protection must expressly make the claim and describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing privileged or protected information, will enable the parties to assess the claim.

(B) Information Produced. If information produced is subject to a claim of privilege or protection, the person making the claim may notify any party that received the information. After notification, the receiving party must promptly return, sequester, or destroy the specified information and must not use or disclose it until the claim is resolved; the receiving party may promptly present the information under seal to the court for the district where compliance is required.

## Rule 45(g) - Contempt

The court for the district where compliance is required - and also, after a motion is transferred, the issuing court - may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

CSC

null
Transmittal Number: 34483454

# Rejection of Service of Process

**Return to Sender Information:**

Bradley Burchfield null
Pro Se
5420 Kavanaugh Blvd #7927
Little Rock, AR 72217

| | |
|---|---|
| **Date:** | 07/09/2026 |
| **Party Served:** | Alibaba Group Holding Limited |
| **Jurisdiction Served:** | NY |
| **Method Served:** | Certified Mail |
| **Title of Action:** | Bradley Burchfield vs. Alibaba.com Singapore E-Commerce Private Limited |
| **Case/Reference No:** | 4:26CV611-DPM |

The service of process received for the party served, as listed above, cannot be forwarded to the intended party for one of the reasons listed below:

- **Agent -** According to our records and the records at the Secretary of State, or other appropriate state agency, we are not the registered agent for the company you are trying to serve or the status of the entity is no longer active.
- **Name -** Because two or more companies can have very similar names, the name of the company to which service of process is directed MUST BE IDENTICAL to the company name on file with the Secretary of State or other appropriate state agency.
- **Resignation -** CSC has resigned as the registered agent for the company being served.

Or the entity served is inactive at the state for one of the reasons listed below:

- **Withdrawn**
- **Surrendered**
- **Merged Out of Existence**
- **Dissolved**
- **Revoked**

It is your responsibility to verify this information with the Secretary of State or other appropriate state agency.

Our customer records are confidential. We do not release any information related to our customers, agent representation or service of process received. Please contact the Secretary of State or other appropriate agency for more information.

For an electronic copy of the identified service of process, send your request by e-mail to sop@cscglobal.com. Please include the transmittal number located in the upper right-hand corner of this letter.

251 Little Falls Drive, Wilmington, Delaware 19808-1674
(888) 690-2882 | sop@cscglobal.com

STATE

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
Alibaba Group Holding Limited
c/o Corporation Service Company
19 W. 44th St. Suite 200
New York, NY 10036

9590 9402 9885 5335 7266 81

2. Article Number *(Transfer from service label)*
9589 0710 5270 2919 0404 64

PS Form 3811, July 2020 PSN 7530-02-000-9053

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X Michael
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

C. Date of Delivery
1/13

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
d Mail
d Mail Restricted Delivery
$500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS**

---

Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.

**No. 4:26-cv-00611-DPM**

# EXHIBIT L

## Notice of Intent to Serve the CSC Nonparty Document Subpoena on Counsel of Record

*Notice to counsel is distinct from proof that CSC was served.*

The reproduced source document follows this cover page.

Gmail Burchfield Bradley <burchfieldbradley123@gmail.com>

## Case No. 4/26-cv-00611-DPM

**Burchfield Bradley** <burchfieldbradley123@gmail.com> Wed, Jul 22, 2026 at 4:49 PM
To: robert.liu@balancelawfirm.com

Please see attached. Have a nice day.

Bradley Burchfield
Burchfield Sales & Consulting LLC
479-223-0038
burchfieldbradley123@gmail.com
burchfieldbradley123@icloud.com
ID#2503103532

**NON PARTY DOCUMENT SUBPOENA.pdf**
10455K

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

---

Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.

**No. 4:26-cv-00611-DPM**

# EXHIBIT M

## Trade Assurance Purchase Contract

The reproduced source document follows this cover page.

print this page 中文版本

# Trade Assurance Purchase Contract

## (this "Contract")

Order No. : 91906090501027582

Version: 20210428003656

Date: 2021-06-01

Seller's Registered Company Name: Zichang New Materials (shandong) Co., Ltd.

Buyer's Registered Company Name/Contact Name : Burchfield Sales and Consulting LLC

Seller's Registered Company Address: Room A2-907, Xinyuanxin Center, Huaxin Road,Jinan,Shandong,CN

Buyer's Registered Company Address/Shipping Address: 121 2nd st Apt A Hot Springs, AR 71913,Hot Springs,Arkansas,US

Email: sweety@sdzcchemical.com

Email: burchfieldbradley123@gmail.com

## Important Conditions

By logging onto the Alibaba.com international platform, and clicking and agreeing to this Contract, both Buyer and Seller acknowledge, agree and confirm to be bound by the terms and conditions of this Contract and the applicable " Trade Assurance Services Rules ", including in particular those terms which are in bold and underlined. Unless otherwise defined herein, capitalized terms used in this Contract shall have the same meaning as those defined in the applicable " Trade Assurance Services Rules ".

## Contract Terms

Seller agrees to provide Trade Assurance Services to Buyer pursuant to this Contract. Seller hereby agrees to sell, and Buyer agrees to purchase, the products of Seller under the terms and conditions set forth in this Contract. Each of Seller and Buyer represents and warrants that it has obtained all necessary rights and authorizations to sell (in the case of Seller) or purchase (in the case of Buyer) the products respectively pursuant to this Contract.

### 1. Trade Terms

Trade Terms (Incoterms 2010) :EXW

## 2. Products

| No. | Product Name | Product Description and Specifications | Product SKU | Quantity | Unit | Unit Price | Contract Sum |
|---|---|---|---|---|---|---|---|
| 1 | factory N-Isopropylbenzylamine CAS 102-97-6 | | | 1.00 | Kilograms | USD 615.00 | USD 615.00 |

| | | | |
|---|---|---|---|
| Discount (if any): | USD 0.00 | Shipping Fee: | USD 50.00 |
| | | Total Amount: | USD 715.00 |

attachment files:

## 3. Delivery Terms

| | |
|---|---|
| 3.1 Shipping Address: | Bradley Burchfield +1 8706174081, Burchfield Sales and Consulting LLC, 6834 Cantrell Road Suite 210 little rock Arkansas 72207, 4 mile corner, Arkansas, 72207, United States of America |
| 3.2 Transportation Method: | Express |
| 3.3 Shipping Fee: | The shipping fee for this Contract is USD 50.00 |
| 3.4 Insurance charges: | The insurance charges for this Contract is USD 50.00 |
| 3.5 Shipment Date* :*Shipment Date refers to such date as indicated for completion of the shipping out of Products at the Port/Place of Loading or pickup of the express delivery of the Products | Seller should ship out Products at the designated Port/Place of Loading within 7 calendar day(s) after receiving the Deposit. |
| 3.6 Identification of Actual Date of Shipment: | Unless otherwise mutually agreed by the Buyer and Seller, for the purposes of the Trade Assurance Terms of this Contract, the date of shipment according to the records of the Alibaba.com transaction system, except where Seller provides original |

| | |
|---|---|
| | conclusive information on date of shipment to the contrary (in which case such information shall prevail). |
| 3.7 Port / Place of Destination Tips: | Ports / Places of Destination in Iran, North Korea, Syria, Cuba, Sudan, Egypt and the Crimea region are not currently covered by Trade Assurance. |

## 4. Payment Terms

| | |
|---|---|
| 4.1Total Amount: | The Total Amount for this Contract is USD 715.00 |
| 4.2 Deposit before Shipment (if applicable): | The Deposit (if applicable) before shipment for this Contract is USD 715.00 |
| 4.3 Discount: | The Discount for this Contract is USD 0.00 |
| 4.4 Remaining Balance(if applicable): | The Remaining Balance (if applicable) to this Contract shall be USD 0.00. Seller retains all ownership to the Product before Buyer completes payment of the Balance Amount (if applicable) under this Contract unless otherwise agreed between the Seller and Buyer, in which case Seller and Buyer shall act accordingly to such alternative arrangements. |
| 4.5 Payment Method : | Remittance to be made through those Payment Methods supported by Alibaba.com to the designated Beneficiary Bank Account under this Contract. |
| 4.6 Deadline of Payment of Deposit by Buyer (if applicable): | Buyer must remit the Deposit (if applicable) to the Beneficiary Bank Account set forth in this Contract within 15 days (with the 15th day inclusive) from the date both Seller and Buyer have executed this Contract and before shipment, otherwise Seller shall have the right to unilaterally terminate this Contract. |
| 4.7Deadline for paying Remaining Balance by Buyer(if applicable): | Unless otherwise mutually agreed between Seller and Buyer, Buyer shall pay the full amount of the Remaining Balance (if applicable) upon receiving the copy of bill of lading (or other delivery voucher). |
| 4.8 Bank Charges : | Buyer shall bear any and all relevant bank charges. |

## 5. Liquidated Damages

5.1 Unless otherwise provided in this Contract, or unless Buyer and Seller have agreed otherwise, Buyer's unilateral termination of this Contract without cause and/or failure to pay the Remaining Balance in accordance with this Contract shall constitute a material breach of this Contract. If both Buyer and Seller have separately agreed on a sum to be paid as liquidated damages pursuant to the breach, such sum shall be remitted to the Beneficiary Bank Account under this Contract or deducted directly from any and all Payment that has been received by Seller.

5.2 Unless otherwise agreed by both Buyer and Seller, if the events of breach under the "Trade Assurance Terms" section (Section 6) occurs after Buyer pays the Deposit (if applicable) in full, this Contract shall be terminated accordingly and Seller shall bear the relevant liability as agreed.

## 6. Trade Assurance Terms

6.1 Trade Assurance Amount:

The Trade Assurance Amount for this Contract is USD 715.00

Trade Assurance Amount (as defined in the applicable " Trade Assurance Services Rules ")

6.2 Trade Assurance Scope:

Trade Assurance until 30 days (inclusive of the 30th day) after the Date of the Con firmed Receipt of the Products

*See Section 6.3 for detailed terms and conditions.

6.3 Trade Assurance Obligations: 6.3.1 Seller agrees to be liable for Trade Assurance Obligations if the Seller commi ts any of the following breaches:

(1)Shipping out Products later than Shipment Date in section 3.5 or did not ship o ut the Products at all; or

(2)Failing to: (i) deliver Products in compliance with the Product Description and S pecifications, or (ii) provide valid documentation in support of change of ownershi p of the Products to the Buyer, or (iii) provide valid documentation including but no t limited to corresponding invoice (or certification) in support of delivery, or (iv) co mmits any other material breach of this Contract, either (i) to (iv) scenario resultin g in a material damage to the value of the Products or the commercial objective k nown or should be known to both Seller and Buyer becoming unachievable.

6.3.2 Upon the occurrence of (1) or (2) of above 6.3.1, Seller shall assume the foll owing Trade Assurance Obligations:

Seller agrees to fully refund the Contract Sum received by the Seller or an amount mutually agreed upon by the Buyer and Seller (in accordance with the system reco rds of the Complaints Platform), or other amount as designated by Alibaba.com (Partial refund shall be conditional upon the Buyer's acceptance of the Seller's act of breach of contract).

6.3.3 If Buyer has not paid the Remaining Balance in accordance with the terms of this Contract, the Seller's Trade Assurance Obligations under the Contract shall be corresponded to payment of the purchase price received by the Seller.

6.4 Refund on behalf of the Seller : If Buyer submits a request to Alibaba.com for Dispute Determination in accordanc e with the terms of applicable " Trade Assurance Services Rules" during the corres ponding Claim Period, and the determination of Alibaba.com confirms that Seller h as committed a breach of any of the conditions in sections 6.3.1(1), (2) or (3), the n Buyer may receive refund to be paid for and on behalf of the Seller in accordanc

e with the terms and conditions of the applicable " Trade Assurance Services Rules " subject to the Trade Assurance Amount specified in this Contract. When the Trade Assurance Amount is zero (0) as agreed under section 6.1, Seller shall itself refund payment to Buyer.

6.5 Claim Period:

Buyer must submit a request to Alibaba.com for Dispute Determination (section 6.6) within the applicable Claim Period set out below, failing which, Alibaba.com shall have no obligation to make any refunds for and on behalf of Seller (unless Alibaba.com in its sole discretion decides to extend the Claim Period).

6.5.1 Where the Buyer complains the Seller of breaches sections 6.3.1 (1) and/or (2), the Buyer shall lodge a dispute claim no later than 30 days (inclusive of the 30th day) after the Date of Confirmed Receipt of the Products. 6.5.2 Date of Confirmed Receipt of the Products means either (1) the day when the Buyer clicks "Confirm" on the order system to confirm the receipt of the Products or (2) if the buyer did not click "Confirm" in the order system, then depending on which shipment method, should be no later than the following days after the Actual Date of Shipment (i) by express: 15 days; (ii) by air freight: 30 days; (iii) by land transportation, sea freight or postal parcel: 60 days; (iv) from overseas warehouse: 10 days. For the avoidance of doubt, the system's default Date of Confirmed Receipt shall only apply upon (i) receipt of Products or (ii) where there is no logistics status available. Where the logistics status states that the Products are still being delivered, the Date of Confirmed Receipt shall only be the day when the Buyer clicks "Confirm" on the order system to confirm the receipt of the Products. Where there is only partial shipment of the Products, the Claim Period shall commence on the Shipment Date of the final consignment of the remaining Products.

6.6 Dispute Determination: If Seller refused to fulfill the "Trade Assurance Terms", Buyer may submit a request to Alibaba.com for dispute determination in accordance with the terms of " Trade Assurance Services Rules ". Each of the Buyer and Seller agrees to abide by the terms and conditions of the " Trade Assurance Services Rules " (including those versions updated from time to time).

## 7. Insurance

Unless otherwise agreed by both Buyer and Seller, if the Trade Terms selected for this Contract is Free on Board (FOB) or Cost and Freight (CFR), then insurance is to be effected by Buyer at Buyer's cost. Alternatively if the Trade Terms selected for this Contract is Cost, Insurance and Freight (CIF), then Seller must obtain insurance for the shipment at Seller's cost.

## 8. Product Inspection

If Buyer and Seller agreed to arrange for the products go through a product inspection process, the parties may agree on the terms of the inspection, such as method, inspection institution, fees, and etc., by way of a supplemental

agreement. If both Parties have agreed "Inspection & Logistics Service Trade Assurance", Buyer shall also be entitled to have the Products inspected before shipping (and Seller shall provide all necessary assistance to complete the relevant inspection so that the shipping of Products remains unaffected), so that Buyer can benefit from information relating to the inspection and shipping of the Products.

## 9. Force Majeure

If either Buyer or Seller is unable to perform or delayed in performing its obligations under this Contract due to events beyond its reasonable control (including but not limited to war, industry actions, acts of God, breakdown of network or public utilities), the party encountering such events shall not be liable thereto.

## 10. Termination

10.1 Either Buyer or Seller may terminate this Contract without liability to the other party if the Contract is terminated a s follows:

**a) Seller terminates this Contract before Buyer has paid the Deposit or Total Amount (as applicable);**

**b) Seller terminates this Contract after returning Deposit (if applicable) to Buyer, and if other sums have also bee n received by Seller, such other sums received as well, in accordance with this Contract; or**

**c) This Contract is terminated in accordance with other terms agreed by both parties in writing.**

10.2 Unless otherwise expressly provided in this Contract, neither Buyer nor Seller may unilaterally terminate this Cont ract.

10.3 Upon termination of this Contract, the Seller and Buyer shall agree in writing on such other terms not explicitly set out in this Contract (such as, but not limited to, any arrangements relating to return of Products).

## 11. Tax

Unless otherwise agreed, all amounts required to be paid by Seller or Alibaba.com under the "Trade Assurance Services Rules" do not include any taxes, duties or other assessments levied or based upon such amounts. Buyer shall be responsible for all such taxes, duties, other assessments due under this Agreement and on all amounts payable hereunder. Taxes will be added to the amounts payable by Buyer to Seller or Alibaba.com (as the case may be) as

applicable and as required by law such that the net amount actually received by Seller or Alibaba.com (as the case may be) equals the full amount of the payment due hereunder. For greater certainty, Taxes will not be added to the amounts payable by Buyer to Seller or Alibaba.com (as the case may be) where Buyer has provided with evidence to Seller's or Alibaba.com 's (as the case may be) satisfaction of a lawful and applicable exemption for such Taxes

If Buyer is or may be required under any law or regulation of any governmental entity or authority, domestic or foreign, to withhold or deduct any withholding tax from any amount due to Seller or Alibaba.com pursuant to this Agreement, the amount payable by Buyer shall be increased to the extent necessary to ensure that after making such deduction or withholding, Seller or Alibaba.com (as the case may be) receives and retains a net sum equal to the sum it would have received but for such deduction or withholding being required. Buyer shall promptly deliver to Seller or Alibaba.com (as the case may be) all receipts and/or certificates or other proof evidencing the amounts (if any) paid in respect of any such deduction or withholding. In determining whether and to what extent a deduction or withholding of tax is required by law, the Parties shall cooperate with each other and with Alibaba.com and use their reasonable efforts to apply for any exemption, and shall bear their respective cost and expenses in this regard.

The Buyer and the Seller shall each be responsible for the direct tax liability imposed on its own net income, unless otherwise agreed between the Buyer and the Seller.
Buyer shall be responsible for the payment of all other taxes including the local levies imposed by any relevant government authority in connection with Alibaba.com's provision of any services relating to this Contract. Buyer agrees to execute any and all documents with the Seller or such party as the Seller designated for the benefit of Alibaba.com to give effect to this provision.

If Seller or Buyer under this transaction is subject to any tax (such as US State Sales Tax) obligation or liability under any law or regulation of any local or non-local taxation authority of any jurisdiction, Seller or Buyer shall independently assume such obligation or liability, and Alibaba.com does not assume any tax obligation or liability attributable to Seller or Buyer. For the overseas warehouse goods, Seller shall be responsible independently for the processing fee and related taxes (including but not limited to customs duties) in relation to the import, customs clearance, logistics of goods. Alibaba.com does not assume any obligation or liability for the responsibility and expense for the Seller's goods.

"Taxes" refer to all federal, state, provincial, territorial, county, municipal, local, or foreign taxes and fees, including but not limited to sales, use, license, excise, goods and services, value added, stamp or transfer taxes, duties, imposts, levies, assessments, tariffs, fees, charges or withholdings of any nature whatsoever levied, imposed, assessed or collected by a taxation authority together with all interest, penalties, fines, or other additional amounts imposed in respect thereof, but for greater certainty excludes any of the foregoing which are (i) based on gross or net income, (ii) franchise tax, or (iii) property, personal property, or rental taxes (collectively referred to as "Excluded Taxes"). Each party shall be responsible for any and all Excluded Taxes that it is liable for under applicable law.

"Taxation Authority" refers to any government, state, municipality or any local, provincial, state or other fiscal, customs, excise or taxing authority, body or official anywhere in the world with responsibility for, and competency to, impose, collect, audit, assess, administer or levy any Taxes or make any decision or ruling in respect of any Taxes.

## 12. Other conventions

| | |
|---|---|
| 12.1 Limitation of Liability: | TO THE MAXIMUM EXTENT PERMITTED BY LAW, NEITHER PARTY SHALL BE LIAB LE TO THE OTHER PARTY FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL OR INC IDENTAL DAMAGES (INCLUDING WITHOUT LIMITATION DAMAGES FOR LOSS OF PROFITS OR REVENUE, INTERRUPTION OF BUSINESS, LOSS OF BUSINESS INFOR MATION OR DATA, ETC) ARISING IN CONNECTION WITH THIS CONTRACT, EVEN I F ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR EVEN IF THE POSSIBILIT Y OF SUCH DAMAGES IS FORESEEABLE. TO THE MAXIMUM EXTENT PERMITTED BY LAW, EITHER PARTY'S AGGREGATE LIABILITY UNDER THIS CONTRACT SHALL NOT EXCEED THE TOTAL ORDER AMOUNT OF THIS CONTRACT. |
| 12.2 Governing Law: | This Contract shall be governed by and construed in accordance with the laws of t he People's Republic of China without recourse to its conflict of laws principles. |

| | |
|---|---|
| 12.3 Disputes : | Any dispute between both parties that arise out of this Contract (the "Dispute") sh all first be resolved amicably by negotiation. The parties agree to submit a request to Alibaba.com for dispute determination in the event that both parties fail to reac h a settlement on the Dispute. If either party does not agree to the final determinat ion or decision made by Alibaba.com in connection with the Dispute, the Dispute may be referred to and resolved by arbitration at the Shenzhen Court of Internation al Arbitration, and the party should inform alibaba.com. |
| 12.4 Notice : | Any and all notice and other communications in respect of this Contract shall be i n writing in English and sent by email, or international express courier to the addre ss of the other party stated in this Contract. Any changes to the address shall be n otified to the other party within five (5) calendar days from the date the change ha s taken effect. Unless otherwise provided in this Contract or in the " Trade Assuran ce Services Rules ", any notice given pursuant to this clause shall be deemed effec tive if: i) delivered by email, when the email is successfully sent; ii) if sent by intern ational express courier, when the courier has been received by the recipient. |
| 12.5 Contract Term : | This Contract is established from the time Buyer has clicked "confirm Contract" on the Alibaba.com.<br>This Contract shall take effect from the time Buyer had remitted the Deposit or the Total Amount (as applicable) to Seller in accordance with Contract. |
| 12.6 Electronic Order : | This Contract constitutes an electronic Contract between Seller and Buyer and sha ll have the same validity and binding effect as if the Contract is executed by both p arties on paper. |
| 12.7 Export and Import Agent : | Seller may agree separately on the rights and obligations for its import and export agent in fulfilling the relevant obligations pursuant to this Contract. Seller shall be l iable for any acts committed by its import and export agent for any obligations tha t are performed by the agent for and on behalf of Seller in connection with this Co ntract. |
| 12.8 Other Provisions : | Neither party may assign this Contract, in whole or in part, to any third party. In the event of any inconsistency between the Chinese and English versions of this Contr act, the English version shall prevail. |
| 12.9 Remarks : | |

## The end of text

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

---

Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.

**No. 4:26-cv-00611-DPM**

# EXHIBIT N

## Receipt for Trade Assurance Order 91906090501027582

The reproduced source document follows this cover page.

# Receipt

Receipt number: #91906090501027582
Receipt date: 10:41 AM, May 29th, 2026 (PDT)

Marketplace Operator:
**Alibaba.com Singapore E-Commerce Private Limited**
51 Bras Basah Road, #01-21 Lazada One, Singapore 189554

Sold by:
**Zichang New Materials (shandong) Co., Ltd.**
Room A2-907, Xinyuanxin Center, Huaxin Road, Jinan, Shandong, CN

Buyer's company address:
**Burchfield Sales and Consulting LLC**
121 2nd st Apt A Hot Springs, AR 71913, Hot Springs, Arkansas, US

Ship to:
**Bradley Burchfield**
Bradley Burchfield +1 8706174081, Burchfield Sales and Consulting LLC, 6834 Cantrell Road Suite 210 little rock Arkansas 72207, 4 mile corner, Arkansas, 72207, United States of America

Order number: **#91906090501027582**

Order date: **8:55 PM, Jun 1st, 2021 (PDT)**

**Order details**

| Item description | Qty | Unit price (excl. tax) | Total amount (excl. tax) |
|---|---|---|---|
| factory N-Isopropylbenzylamine CAS 102-97-6 | 1.00 | USD 615.0000 | USD 615.00 |
| | Subtotal | | USD 615.00 |
| | Shipping fee | | USD 50.00 |
| | Logistics insurance fee | | USD 50.00 |
| | **Order total** | | **USD 715.00** |

**Payment information**

| | |
|---|---|
| Order total | USD 715.00 |
| Payment processing fee | USD 21.38 |
| **Amount paid** | **USD 736.38** |
| Paid on June 01, 2021 (Credit/debit card) | USD 736.38 |

**Notice:**

- Alibaba.com reserves the right to determine and conclude payment processing fee in this receipt.
- This is a computer-generated document and no signature is required.
- You alone shall bear any adverse consequences arising from tampering with the content for purposes other than intended.
- This receipt is not a tax invoice. You may download a tax invoice after your order is completed.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

---

Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.

**No. 4:26-cv-00611-DPM**

# EXHIBIT O

## Email Referred to by Plaintiff as the 'Keep Silent' Email

The reproduced source document follows this cover page.

Gmail

Burchfield Bradley <burchfieldbradley123@gmail.com>

**Details N-Isopropylbenzylamine**
4 messages

**sales@bloomtechz.com** <sales@bloomtechz.com>
To: burchfieldbradley123@gmail.com

Sun, Jan 9, 2022 at 8:47 PM

**Fresh batch out!**
**Only 16kg Blue Pure N iso crystal in stock, if miss each other, wait another month.**
**Price list (EXW USD$):**
**100g, $298usd, 500g, $496, 1kg, $820**



**Very Important information of Isopropylbenzylamine, CAS 102-97-6 crystal series product:**
Welcome to become a new comer of our group of buyers, I am Aurora Song, sales manager.
**WhatsApp/WeChat: +86 17791833715**
Frankly, the most we have been asked is the **effect**.

We have made many kinds of chemicals into crystals successfully. The **FAQ** pls check below:
**1.How we set the price**
We set the product price according to the price of raw materials and product production cycle, The price has nothing to do with whether the product is nice to use.
**2.Which is the best**
From shape, Pure N ISO is big bar, it is the best. From smell, the 170N ISO and 2A4P is the best. Or some other new kinds of chemical, we researched it for our stable buyers, we can't disclose it to you.
If you request the big bar crystal is no smell, it is impossible. Because it is the theory of chemistry, it is nothing to do with capacity.
**Each words and pictures here is real, dont talk about any fake here!**
**3.Could you disclose the shortcoming of our product?**
Yes, Pure N ISO has a bit of smell, and our 170MP N ISO is little smell. 2A4P is also little smell, in addition, it

has many other positive comments from other users.
**4.Crystal Mixed service**
It must be a legal product, otherwise you have better keep silent.
**Welcome to buy more chemicals from our company, welcome to be the senior buyer of our company and we can share more technology support for you!**
Maybe some of yours want to use the crystal for diluting, or want it has some effect of you want.

From the opinion of chemical researching, this is the Same Molecule Formula of C10H15N.

Does this chemical meet your requirements? Is it easy to use? This depends not only on his molecule formula, but also on his chemical space structure and the pharmaceutical properties that this structure should give.

## Price List(Without Shipping fee)

**1.CAS 102-97-6, N-Isopropylbenzylamine(N ISO)**

100g,$168, 500g,$389, 1kg,$650/kg

Please choose one specification below:

(1)Pure N iso 210, Largest crystal, smell

Pink/Blue/Yellow/Green etc. color N ISO,

1kg, $980/kg, Customization, Food grade

(2)N-ISO mixed 180 Medium

(3)N-ISO mixed 170, Smallest crystal, No smell

**2.CAS 4395-73-7, 4-Isopropylbenzylamine(4 ISO)**

100g,$280, 500g,$900, 1kg,$1,500/kg

**3.CAS 22374-89-6, 2-Amino-4-phenylbutane(2A4P)**

100g,$280, 500g,$900, 1kg,$1,500/kg

---

**Burchfield Bradley** <burchfieldbradley123@gmail.com> Sun, Apr 10, 2022 at 10:12 AM
To: sales@bloomtechz.com

Alex how you doing? Actually this product doesn't have a schedule with the DEA. But it's illegal in this state. I use it for a rust inhibitor, as was advertised. It didn't work.
[Quoted text hidden]
--
Hope credit

---

**Burchfield Bradley** <burchfieldbradley123@gmail.com> Fri, Jun 10, 2022 at 12:43 PM
To: nick@covenantrecovery.com

[Quoted text hidden]

---

**Burchfield Bradley** <burchfieldbradley123@gmail.com> Mon, Jun 13, 2022 at 11:01 AM
To: s.nathan300192@yahoo.com

---------- Forwarded message ---------
From: <sales@bloomtechz.com>
Date: Sun, Jan 9, 2022 at 8:47 PM
Subject: Details N-Isopropylbenzylamine
To: <burchfieldbradley123@gmail.com>

[Quoted text hidden]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

---

Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.

**No. 4:26-cv-00611-DPM**

# EXHIBIT P

## January 2016 Haihangchem Email Chain

*Included as source material; it does not alone establish the complete purchase, shipment, laboratory-test, or criminal-case chain.*

The reproduced source document follows this cover page.

Outlook

RE: Urgent things !!! COA & Photo of N-Isopropylbenzylamine CAS: 102-97-6 From Rita -Haihang Industry

From Brad Burchfield <boatsofavalon@outlook.com>
Date Sat 1/16/2016 11:06 PM
To export023@haihangchem.com <export023@haihangchem.com>

Made a mistake won't be needing your services.

---

Date: Thu, 14 Jan 2016 09:50:50 +0800
From: export023@haihangchem.com
To: boatsofavalon@outlook.com
Subject: Re:RE: Urgent things !!! COA & Photo of N-Isopropylbenzylamine CAS: 102-97-6 From Rita - Haihang Industry

Dear Bull Peterbilt,

May i please know that what is your biggest budget for this products at now?? Then i will check here and choose the best quantity for you.

Waiting your kindly reply~

- - - - - - - - - -
Thanks & Best regards
Rita Tian
International Dept.

*****************************************************
**Haihang Industry Co., Ltd.**
**Add: 11/f,Sanqing Fengrun BLDG, No.100 South Gongye Road, Jinan City, China. PC.250100.**
**Contact: Rita Tian**
**Tel : +86 - 531-88031599**
**Fax : +86 - 531 - 85821093**
**Mobile : +86 -15153118489**
**Skype: haihang023**
**Wetchat: ritatian2011**
**Website : www.haihangchem.com**
**E-mail : export023@haihangchem.com**
*****************************************************

--------------Original Message-------------
From: boatsofavalon@outlook.com
To: export023@haihangchem.com
Subject: RE: Urgent things !!! COA & Photo of N-Isopropylbenzylamine CAS: 102-97-6 From Rita - Haihang Industry
Date: 2016-01-14 02:55:43

---

If I bought it in liquid form would it be cheaper? And what is the process to crystallize it myself? It would be a few weeks before I made a purchase.

---

Date: Wed, 13 Jan 2016 14:12:41 +0800
From: export023@haihangchem.com
To: boatsofavalon@outlook.com
Subject: Re:RE: Urgent things !!! COA & Photo of N-Isopropylbenzylamine CAS: 102-97-6 From Rita - Haihang Industry

Dear Bull Peterbilt,

I can understand that you need to consider your budget.

But dear, as i have said , at now , we have another customer order this , we could produce it by our production dept for you also based on usd315.00/kg.

If few weeks, i am not sure if we send out all our stock?? If then, we could only produce it for 500g in our lab.
So , i wonder if you can conform the purchase things timely~

Waiting your kindly reply~

----------
Thanks & Best regards
Rita Tian
International Dept.
*****************************************************

**Haihang Industry Co., Ltd.**
**Add: 11/f,Sanqing Fengrun BLDG, No.100 South Gongye Road, Jinan City, China. PC.250100.**
**Contact: Rita Tian**
**Tel : +86 - 531-88031599**
**Fax : +86 - 531 - 85821093**
**Mobile : +86 -15153118489**
**Skype: haihang023**
**Wetchat: ritatian2011**
**Website : www.haihangchem.com**
**E-mail : export023@haihangchem.com**
*****************************************************

--------------Original Message-------------
From: boatsofavalon@outlook.com
To: export023@haihangchem.com
Subject: RE: Urgent things !!! COA & Photo of N-Isopropylbenzylamine CAS: 102-97-6 From Rita - Haihang Industry
Date: 2016-01-13 12:08:18

I'll keep you in mind but right now I don't have the money. It'll be a few weeks. Thanks

---

Date: Wed, 13 Jan 2016 09:10:20 +0800
From: export023@haihangchem.com
To: boatsofavalon@outlook.com
Subject: Re:RE: Urgent things !!! COA & Photo of N-Isopropylbenzylamine CAS: 102-97-6 From Rita - Haihang Industry

Dear Bull Peterbilt,

Great day.

dear , it is like this, we now have no stock for crystal format , and you need. With sincerity we want to cooperate with your company, we would like to produce the 500g by our lab at cost USD315.00/500g.

At now, lucky our another customer need this one, we could produce it for you by production dept . The price is USD315.00/kg. but dear, 500g for production dept are too less to produce, you please understand this.~

So may i please know that which one do you prefer?? a or b ???
a. usd315.00/500g produced by our lab in crystal format.
b. USD315.00/kg produced by our production dept , this one need to conform timely.

No matter what your decision is, kindly please let me know ~

Waiting your kindly reply~

----------
Thanks & Best regards
Rita Tian
International Dept.
****************************************************
**Haihang Industry Co., Ltd.**
**Add: 11/f,Sanqing Fengrun BLDG, No.100 South Gongye Road, Jinan City, China. PC.250100.**
**Contact: Rita Tian**
**Tel : +86 - 531-88031599**

**Fax : +86 - 531 - 85821093**
**Mobile : +86 -15153118489**
**Skype: haihang023**
**Wetchat: ritatian2011**
**Website : www.haihangchem.com**
**E-mail : export023@haihangchem.com**
****************************************************

-------------Original Message-------------
From: boatsofavalon@outlook.com
To: cxport023@haihangchem.com
Subject: RE: Urgent things !!! COA & Photo of N-Isopropylbenzylamine CAS: 102-97-6 From Rita - Haihang Industry
Date: 2016-01-12 23:30:51

---

All I need for a sample is the 500g at the price based on a $315/kg. Which would be $140, correct?

---

Date: Tue, 12 Jan 2016 23:22:38 +0800
From: export023@haihangchem.com
To: boatsofavalon@outlook.com
Subject: Re:RE: Urgent things !!! COA & Photo of N-Isopropylbenzylamine CAS: 102-97-6 From Rita - Haihang Industry

Dear Bull Peterbilt,

Okay, dear , Just now i called with our production dept, they said lucky we now producing for another customer, so we can supply you 1kg produced by production dept instead of lab with 500g,

So the price will keep as before: usd 315.00/kg by courier door to door with freight including based on 1kg.

Can you conform this timely?? As i need to tell our production dept to produce extra 1kg for you.

Thanks & waiting your reply~

----------
Thanks & Best regards
Rita Tian
International Dept.
****************************************************
**Haihang Industry Co., Ltd.**
**Add: 11/f,Sanqing Fengrun BLDG, No.100 South Gongye Road, Jinan City, China. PC.250100.**
**Contact: Rita Tian**
**Tel : +86 - 531-88031599**

**Fax : +86 - 531 - 85821093**
**Mobile : +86 -15153118489**
**Skype: haihang023**
**Wetchat: ritatian2011**
**Website : www.haihangchem.com**
**E-mail : export023@haihangchem.com**
****************************************************

--------------Original Message-------------
From： boatsofavalon@outlook.com
To： export023@haihangchem.com
Subject： RE: Urgent things !!! COA & Photo of N-Isopropylbenzylamine CAS: 102-97-6 From Rita - Haihang Industry
Date： 2016-01-12 22:55:32

---

315 was the price of a kg. Wouldn't pay more than 140 for 500.

---

Date: Tue, 12 Jan 2016 20:51:23 +0800
From: export023@haihangchem.com
To: boatsofavalon@outlook.com
Subject: Urgent things !!! COA & Photo of N-Isopropylbenzylamine CAS: 102-97-6 From Rita -Haihang Industry

Dear Bull Peterbilt,

How are you ??
Kindly please let me know your comment now on the products of N-Isopropylbenzylamine CAS: 102-97-6?? We can supply you for 500g for you N-Isopropylbenzylamine CAS: 102-97-6 in crystal format with the best price of :
**USD315.00/500g by courier door to door with freight including based on 500g.**

Hope we could keep a good communication with you ~
Looking forward to your kindly reply~

- - - - - - - - - -
Thanks & Best regards
Rita Tian
International Dept.
****************************************************
**Haihang Industry Co., Ltd.**
**Add: 11/f,Sanqing Fengrun BLDG, No.100 South Gongye Road, Jinan City, China. PC.250100.**
**Contact: Rita Tian**
**Tel : +86 - 531-88031599**
**Fax : +86 - 531 - 85821093**
**Mobile : +86 -15153118489**

**Skype: haihang023**
**Wetchat: ritatian2011**
**Website : www.haihangchem.com**
**E-mail : export023@haihangchem.com**
*************************************************

-------------Original Message-------------
From: export023@haihangchem.com
To: boatsofavalon@outlook.com
Subject: Re:RE: COA & Photo of N-Isopropylbenzylamine CAS: 102-97-6 From Rita -Haihang Industry
Date: 2016-01-09 09:21:47

---

Dear Bull Peterbilt,

Great day .

As you know , we here produce the product in crystal format, 50g is not very easy for our production dept. As for us one batch need at least for 100kgs.

In order to start our long time business relationship, i keep talking with my boss, and finally we could produce 500g for you. You please do not worry about this, we have deal with this product for more than 10 years, we can guaranteed our quality.Hope you understand this.

Also , could you kindly please let me know your contact detail information including: company name, contact person, delivery address, mobile phone??

Waiting your kindly reply~

----------
Thanks & Best regards
Rita Tian
International Dept.

*************************************************
**Haihang Industry Co., Ltd.**
**Add: 11/f,Sanqing Fengrun BLDG, No.100 South Gongye Road, Jinan City, China. PC.250100.**
**Contact: Rita Tian**
**Tel : +86 - 531-88031599**
**Fax : +86 - 531 - 85821093**
**Mobile : +86 -15153118489**
**Skype: haihang023**
**Wetchat: ritatian2011**
**Website : www.haihangchem.com**
**E-mail : export023@haihangchem.com**
*************************************************

--------------Original Message-------------
From: boatsofavalon@outlook.com
To: export023@haihangchem.com
Subject: RE: COA & Photo of N-Isopropylbenzylamine CAS: 102-97-6 From Rita -Haihang Industry
Date: 2016-01-09 03:31:41

---

I have a large need for your product but am unsure if this is the correct product I need. Would your boss consider a 250g $50 order for a sample. If this product works there will be many more orders.

---

Date: Fri, 8 Jan 2016 15:06:36 +0800
From: export023@haihangchem.com
To: boatsofavalon@outlook.com
Subject: Re:RE: COA & Photo of N-Isopropylbenzylamine CAS: 102-97-6 From Rita -Haihang Industry

Dear Bull Peterbilt,

Thanks for your kindly reply.

Here i just discussed with my technicist again, with sincerity we would like to cooperate with your company, finally my boss agree that we can produce 500g for you N-Isopropylbenzylamine CAS: 102-97-6 in crystal format with the best price of :

**USD315.00/kg by courier door to door with freight including based on 500g.**

If you conform the information, contact me freely~
Looking forward to your kindly reply~

----------

Thanks & Best regards
Rita Tian
International Dept.
****************************************************
**Haihang Industry Co., Ltd.**
**Add: 11/f,Sanqing Fengrun BLDG, No.100 South Gongye Road, Jinan City, China. PC.250100.**
**Contact: Rita Tian**
**Tel : +86 - 531-88031599**
**Fax : +86 - 531 - 85821093**
**Mobile : +86 -15153118489**
**Skype: haihang023**
**Wetchat: ritatian2011**
**Website : www.haihangchem.com**
**E-mail : export023@haihangchem.com**
****************************************************

--------------Original Message-------------
From: boatsofavalon@outlook.com
To: export023@haihangchem.com
Subject: RE: COA & Photo of N-Isopropylbenzylamine CAS: 102-97-6 From Rita -Haihang Industry
Date: 2016-01-08 12:45:26

---

A kilogram or less sample would be needed first. Actually the smaller the better. And after that I'm not sure the quantity.

---

Date: Fri, 8 Jan 2016 12:10:32 +0800
From: export023@haihangchem.com
To: boatsofavalon@outlook.com
Subject: Re:RE: COA & Photo of N-Isopropylbenzylamine CAS: 102-97-6 From Rita -Haihang Industry

Dear Bull Peterbilt,

I have just talked with our technicist , your required crystal format is N-Isopropylbenzylamine HCL and we can produce it for you too.

The N-Isopropylbenzylamine HCL need another more step than N-Isopropylbenzylamine liquid. Here we want to know what exactly quantity do you need?? Then i will ask if our production dept can do it as your quantity.

Looking forward to your kindly reply~

----------

Thanks & Best regards
Rita Tian
International Dept.
*****************************************************

**Haihang Industry Co., Ltd.**
**Add: 11/f,Sanqing Fengrun BLDG, No.100 South Gongye Road, Jinan City, China. PC.250100.**
**Contact: Rita Tian**
**Tel : +86 - 531-88031599**
**Fax : +86 - 531 - 85821093**
**Mobile : +86 -15153118489**
**Skype: haihang023**
**Wetchat: ritatian2011**
**Website : www.haihangchem.com**
**E-mail : export023@haihangchem.com**
*****************************************************

--------------Original Message-------------
From: boatsofavalon@outlook.com

To: export023@haihangchem.com
Subject: RE: COA & Photo of N-Isopropylbenzylamine CAS: 102-97-6 From Rita -Haihang Industry
Date: 2016-01-08 11:56:42

---

I'm looking for the crystal form of the product not the liquid.

---

Date: Fri, 8 Jan 2016 09:47:36 +0800
From: export023@haihangchem.com
To: boatsofavalon@outlook.com
Subject: COA & Photo of N-Isopropylbenzylamine CAS: 102-97-6 From Rita -Haihang Industry

Dear Bull Peterbilt,

Enclosed you please check our COA & Photo of N-Isopropylbenzylamine CAS: 102-97-6, If you have any other question , contact me freely~

dear, kindly please let me know know what your comments on our price?? And what exactly quantity do you need??

By the way, you skype ID is : **boatsofavalon**, right?? I have add you on skype , you please accept~Then we can chat freely on it .

Looking forward to your kindly reply~

----------
Thanks & Best regards
Rita Tian
International Dept.
****************************************************
**Haihang Industry Co., Ltd.**
**Add: 11/f,Sanqing Fengrun BLDG, No.100 South Gongye Road, Jinan City, China. PC.250100.**
**Contact: Rita Tian**
**Tel : +86 - 531-88031599**
**Fax : +86 - 531 - 85821093**
**Mobile : +86 -15153118489**
**Skype: haihang023**
**Wetchat: ritatian2011**
**Website : www.haihangchem.com**
**E-mail : export023@haihangchem.com**
****************************************************

--------------Original Message-------------
From: export023@haihangchem.com
To: boatsofavalon@outlook.com

Subject: Re:RE: Quotation of N-Isopropylbenzylamine CAS: 102-97-6 From Rita -Haihang Industry
Date: 2016-01-08 09:11:08

---

Dear Bull Peterbilt,

Good evening,

It is clear liquid. not crystal format with the assay more than 98%, later i will sent you the COA for your reference~

dear, may i please know what your comments on our price?? And what exactly quantity do you need??

Looking forward to your kindly reply~

\- - - - - - - - - -

Thanks & Best regards
Rita Tian
International Dept.

*****************************************************

**Haihang Industry Co., Ltd.**
**Add: 11/f,Sanqing Fengrun BLDG, No.100 South Gongye Road, Jinan City, China. PC.250100.**
**Contact: Rita Tian**
**Tel : +86 - 531-88031599**
**Fax : +86 - 531 - 85821093**
**Mobile : +86 -15153118489**
**Skype: haihang023**
**Wetchat: ritatian2011**
**Website : www.haihangchem.com**
**E-mail : export023@haihangchem.com**

*****************************************************

--------------Original Message-------------
From: boatsofavalon@outlook.com
To: export023@haihangchem.com
Subject: RE: Quotation of N-Isopropylbenzylamine CAS: 102-97-6 From Rita -Haihang Industry
Date: 2016-01-08 01:43:40

---

Is this the crystal form of the product?

---

Date: Tue, 5 Jan 2016 18:04:50 +0800
From: export023@haihangchem.com
To: boatsofavalon@outlook.com
Subject: Quotation of N-Isopropylbenzylamine CAS: 102-97-6 From Rita -Haihang Industry

Dear Bull Peterbilt,

This is Rita from Haihang Industry, very nice to contact you.

Happy to know that you are looking for the N-Isopropylbenzylamine CAS: 102-97-6 , we are professional manufacturer of this products, below you please check our price :
Re this products, we now have about 3MT in our stock ,and we could supply you 1kg for you test approval, the price as below:

1. Product: N-Isopropylbenzylamine
2. **Price: USD315.00/kg by courier door to door with freight including based on 1kg.**
3. CAS: 102-97-6 assay: 98%
4. Packing: 1kg/bag
5. Payment: T/T West Union or Paypal
6. Delivery: within 2-3 days after receipt of your payment.
7. Validity date: 7 working days.

Dear , could you kindly please let me know the below:
a. Have you ever bought this product before? from China??
b. what about your future quantity of this product??
c. what your comment on our price??

Thanks & waiting your kindly reply~smiley

----------
Thanks & Best regards
Rita Tian
International Dept.
**************************************************

**Haihang Industry Co., Ltd.**
**Add: 11/f,Sanqing Fengrun BLDG, No.100 South Gongye Road, Jinan City, China. PC.250100.**
**Contact: Rita Tian**
**Tel : +86 - 531-88031599**
**Fax : +86 - 531 - 85821093**
**Mobile : +86 -15153118489**
**Skype: haihang023**
**Wetchat: ritatian2011**
**Website : www.haihangchem.com**
**E-mail : export023@haihangchem.com**
**************************************************

--------------Original Message-------------
From: alisourcepro@service.alibaba.com

To：export036@haihangchem.com
Subject：您对United States买家的报价已经成功发送!
Date：2016-01-04 17:20:12

---

www.Alibaba.com AliSourcePro My Alibaba | Trade Manager | 外贸圈

您的报价已成功发送至买家

此邮件为系统邮件，请勿直接答复

尊敬的中国供应商会员（Member ID: cn1515309815lfps）：

恭喜您！您针对 RFQ 102-97-6 的报价已成功发送至买家。立即 查看并联系买家

重要提醒:
为保障您和买家的信息安全，预计2015年4月20日起，阿里巴巴的官方邮件中不再包含买家联系信息，您可以在My Alibaba后台查看买家联系信息，谢谢您的支持和配合。

RFQ Subject: 102-97-6

Buyer Name: bull peterbilt

Company Name: No Company Name

Country/Region: United States

您也可以登录“My Alibaba” > “采购直达” > “报价管理”，查看报价详情信息及买家信息。
了解采购直达服务> 查看更多采购直达买家需求（RFQ） 立即登录采购直达频道>

86 185*****990 这是您在阿里巴巴上绑定的手机号码，如有缺失或错误，则该邮件并非发送自阿里巴巴。确保您的账户安全，请注意核对。

祝您早日与买家达成交易!

阿里巴巴采购直达团队

Mobile App | Customer Services | My Alibaba | Business Identity

This email was sent to
Click here to unsubscribe from Alibaba.com emails
點擊 此處 退訂來自阿里巴巴的郵件

Read our Privacy Policy and Terms of Use

Alibaba.com Hong Kong Limited.
26/F Tower One, Times Square, 1 Matheson Street, Causeway Bay, Hong Kong
Tel: (+852) 2215-5100
Email: alibaba@service.alibaba.com

阿里巴巴香港有限公司
香港銅鑼灣勿地臣街1號時代廣場1座26樓
電話：(+852) 2215-5100
電郵：alibaba@service.alibaba.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

---

Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.

**No. 4:26-cv-00611-DPM**

# EXHIBIT Q

## Platform Monitoring / 1000kg Order Record Supplied by Plaintiff

The reproduced source document follows this cover page.

My Alibaba

Upgrade to Gold Supplier | My Account | Help | English

Buy Sell

Home
Messages
Buying Leads
Orders
Transacti
Contacts
My Lists
Trade Services

Search

**Amy Shao** 2022-4-25
Shenzhen Conquest Communication Eq...
[Message]

**Anna Ran** 2022-4-24
Suzhou Xiaoli Pharmatech Co., Ltd.
[Inquiry]

**Sunny Lin** 2022-4-20
Sheng Shi Yuan (Xiamen) Hardware Pro...
[Inquiry]

**grace hu...** 2022-4-15
Hebei Shengyuan Jinlong Imp. & Exp. C...
what product do you need?

**Starry Liao** 2022-4-14
Changsha Xiangqian Supply Chain Man...
Dear friend!�� We would ...

**Rose Hou** 2022-4-13
Yiwu Meian Arts & Crafts Co., Ltd.
you need one colour how ...

**Cassie Yi** 2022-4-13
Changsha Ayhhed Biotechnology Co., Ltd.
ok

**Vivian Ya...** 2022-4-13
Hangzhou Singer Building Materials Co.,...
So if you will sell in USA m...

**Jason Wa...** 2022-4-13
Hebei Luantong Trade Co., Ltd.
yes, our quality is high and ...

**Erica N** 2022-4-13
Beijing Hanbo Technology Deve...
[Image]

**Cristina S...** 2022-4-12
Shaanxi Chuzhan Chemical Co.,...
[Message]

**Lucy cai** 2022-2-26
Shenzhen Laserwin Technology Ltd.
Hello We have a live show ...

**N Hitech** 2022-2-16
Shenzhen Hitech Development Technol...

**JoJo Luo** 2022-1-21
Shenzhen Hosto Logistics Technology C...
[Message]

Can not find old inquiry messages? Old inquiry messages will be stored in Buying Leads.

**sweety yin**
Local Time:
11:53 PM

I GOT IT TODAY. BETTER THAN WHAT I GOT BEFORE BUT I CANT REALLY SEE IT CAUSE GLASS DIRTY. BUT THE PIECES POP CRISP WHEN BREAK THEM AND IT DOESNT BEND. STRAIGHT LINES RUN PARALLEL.

Read

sweety yin 2021-06-19 22:30

wow !!!Great !

sweety yin 2021-06-19 22:31

friend ,Due to Alibaba's monitoring, orders over $5000 must be delivered to Alibaba for transportation. It will bring you and me a lot of inconvenience. Therefore,I sent you Proform Invoice of 1000 kg order .Plz pay for us by bank .Hoping you will kindly understand .

sweety yin 2021-06-19 22:31

PI---1000kg order.pdf
238.55 K

sweety yin 2021-06-19 22:31

plz check PI ,Any questions about PI ,plz tell me .

sweety yin 2021-06-19 22:32

The mode of shipping is up to you .

Booking your shipment? Check out the shockingly simple experience at Alibaba.com Freight. Compare rates

2021-06-20 10:37

I got it. better than what usually comes in but test piece was dirty.

Read

sweety yin 2021-06-20 20:03

HI

sweety yin 2021-06-20 20:04

if you have any questions and new needs ,plz just contact me .Beucase i am the only one who charge your business .

sweety yin 2021-06-20 20:15

Rate supplier | Start Order | Logistics Inquiry

The buyer's account is invalid and cannot be replied to.

Conversation

View More >

Inquiries | Quotations

No inquiries with this supplier

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

---

Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.

**No. 4:26-cv-00611-DPM**

# EXHIBIT R

## November 21, 2025 Axis Notice of Oral and Videotaped Deposition of Bradley Burchfield

*The notice establishes that Axis formally noticed the deposition; it does not itself identify Plaintiff as an expert or constitute a judicial qualification ruling.*

The reproduced source document follows this cover page.

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

| | | |
|---|---|---|
| CHS PROPERTIES, LLC,<br>Plaintiff, | §<br>§<br>§ | |
| v. | § | CIVIL ACTION NO. 6:25-cv-06020-TLB |
| AXIS SURPLUS INSURANCE COMPANY,<br>Defendant. | §<br>§<br>§ | |

**DEFENDANT AXIS' SURPLUS INSURANCE COMPANY NOTICE OF INTENTION TO TAKE THE ORAL AND VIDEOTAPED DEPOSITION OF BRADLEY BURCHFIELD**

TO: Plaintiff, CHS PROPERTIES, LLC, by and through its attorneys of record, Anthony Pastor, National Insurance Advocates, PLLC, 6619 S. Dixie Highway, Suite 363, Miami, Florida 33143.

PLEASE TAKE NOTICE that beginning at **10:00 a.m. on Monday, December 15, 2025,** and continuing thereafter from day to day until completed, Defendant AXIS Surplus Insurance Company, by and through its attorneys of record, will take the oral and videotaped deposition of **BRADLEY BURCHFIELD** at the time and place designated below to be used in the above-styled and numbered suit.

The deposition will commence at 10:00 a.m. on Monday, December 15, 2025, and continue thereafter from day to day until completed. The deposition will be conducted remotely, with access instructions to be sent separately. Moreover, all parties are advised that the deposition will be recorded stenographically before an official court reporter, and will be recorded by certified videographer.

Respectfully submitted,

Ellen Van Meir
Texas State Bar No. 00794164
evanmeir@nicolaidesllp.com
Laura J. Grabouski, *pro hac vice granted*
Texas State Bar No. 24031595
lgrabouski@nicolaidesllp.com
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN, LLP
2911 Turtle Creek Blvd., Suite 1025
Dallas, TX 75219
469.777.8871
469.290.9041 – FAX

**COUNSEL FOR DEFENDANT**
**AXIS SURPLUS INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

This is to certify that on November 21, 2025, a true and correct copy of the foregoing was served via e-mail upon plaintiff's counsel of record:

Anthony Pastor
anthony@nia.law
intake@nia.law
NATIONAL INSURANCE ADVOCATES, PLLC
701 South Street, Suite 100
Mountain Home, AR 72653
**Counsel for plaintiff**

Michelle Miranda
mmiranda@plglawyersfl.com
Maxwell Barnard
mbarnard@plglawyersfl.com
NATIONAL INSURANCE ADVOCATES, PLLC
5900 Balcones Drive, Suite 100
Austin, TX 78731
***Pro Hac Vice* Counsel for plaintiff**

Laura J. Grabouski

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

---

Burchfield v. Alibaba.com Singapore E-Commerce Private Limited, et al.

**No. 4:26-cv-00611-DPM**

# EXHIBIT S

## Bradley Burchfield Declaration Regarding Personal Funding and LLC Status

*UNSIGNED DRAFT: Plaintiff must verify every statement, complete the execution date and place, and sign under penalty of perjury before filing.*

The reproduced source document follows this cover page.

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

Case No. 4:26-cv-00611-DPM

v.

JURY TRIAL DEMANDED

ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, et al.,

Defendants.

**DECLARATION OF BRADLEY BURCHFIELD REGARDING PERSONAL FUNDING OF SUBJECT TRANSACTION**

I, Bradley Burchfield, declare as follows:

**1.** I am the Plaintiff in this action. I am over eighteen years old, competent to make this declaration, and have personal knowledge of the facts stated here.

**2.** This declaration concerns Alibaba.com Trade Assurance Order No. 91906090501027582, dated June 1, 2021, involving Zichang New Materials (Shandong) Co., Ltd.

**3.** I personally provided all funds used to make the $736.38 payment associated with the Order.

**4.** At the time of the transaction, Burchfield Sales and Consulting LLC had no bank account and did not fund the transaction.

**5.** At the time of the transaction, I was the sole member and owner of Burchfield Sales and Consulting LLC and its only employee.

**6.** Although the LLC's name appears in the contract or receipt, I personally bore the economic loss associated with the payment and alleged nondelivery.

**7.** I have not used the LLC to conceal my identity or avoid responsibility, and I am not attempting to appear as legal counsel for the LLC in this action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. See 28 U.S.C. § 1746.

Executed on: ____________________, 2026

Place of execution: ______________________________

______________________________________

Bradley Burchfield

CSC Subpoena Rule 45 Exhibit E



Civil Action No.

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* CSC - Corporation Service Company
on *(date)* 7/27/26 .

☐ I served the subpoena by delivering a copy to the named person as follows: Jeff Johnson
Authorized Agent
on *(date)* 7/27/26 ; or

☐ I returned the subpoena unexecuted because:
.

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of
$ .

My fees are $ 65 for travel and $ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: 7/27/26

[signature]
*Server's signature*

Allison Douglas Process Server
*Printed name and title*

22 Baltimore St. LR AR 72206
*Server's address*

Additional information regarding attempted service, etc.:

Gmail

Burchfield Bradley <burchfieldbradley123@gmail.com>

**Payment sent**
1 message

**Cash App** <cash@square.com>
To: burchfieldbradley123@gmail.com

Mon, Jul 27, 2026 at 12:50 PM

Cash App



# RedVelvet

Today

For Bradley Burchfield 4:26-cv-00611 csc subpoena

# $65.00

## Transaction details

Complete
Payment sent successfully

Payment between
Recipient: RedVelvet
Sender: Bradley Burchfield

Payment source
Mastercard debit 4619

Transaction number

#D-4E4NJMRNG

Open this receipt in Cash App >

Don't forward this email

Cash App doesn't need this email to assist you. Anyone asking for it could be trying to access your Cash App.

For any issues, including the recipient not receiving funds, please contact us at support or you can reach Cash App Support by calling 1 (800) 969-1940. We're here to help every day from 8 AM to 9:30 PM ET.

Privacy Policy | Terms of Service

Going forward, emails from Cash App for transactions, activity, and security updates will come from noreply@notifications.cash.app.
You may receive emails from either address while we make the change.

Cash App

Cash App is a service of Block, Inc., 1955 Broadway Street, Suite 600, Oakland, CA 94612. Review licenses.

Cash App is a financial services platform, not a bank. Banking services are provided by Cash App's bank partner(s). Prepaid debit cards issued by Sutton Bank, Member FDIC. Cash App Visa® Debit Flex Cards issued by Sutton Bank, Member FDIC, and The Bancorp Bank, N.A., pursuant to a license from Visa U.S.A. Inc. Money transmission and bitcoin services by Block, Inc. Tax preparation services by Cash App Taxes, Inc.

THIS PAGE IS LEFT
INTENTIONALLY BLANK

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2026-Aug-10 15:37:09
60CV-26-8633
C06D03 : 4 Pages

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**CIVIL DIVISION**

| | |
|---|---|
| BRADLEY BURCHFIELD,<br>Plaintiff,<br>v.<br>ALIBABA GROUP HOLDING LIMITED, *et al.*,<br>Defendants. | No. 60CV-26-8633 |

**FIVE DEFENDANTS' OPPOSITION TO**
**PLAINTIFF'S MOTION FOR JURISDICTIONAL AND**
**OTHER DISCOVERY AND TO DEFER RELATED DEFENSES**

Five companies named by *pro se* Plaintiff Bradley Burchfield as defendants in this lawsuit—Alibaba Group Holding Limited; Alibaba.com U.S. LLC; Alibaba.com US E-Commerce Corp.; Alibaba Group (U.S.) Inc.; and AUS Merchant Services, Inc. (collectively, "the Opposing Defendants")—hereby oppose Plaintiff's July 22, 2026 "Plaintiff's Motion for Limited Corporate-Structure, Jurisdictional, Agency, Alter-Ego, Seller-Verification, Trade Assurance, Payment, and Actual-Control Discovery and to Defer Related Defenses" ("Plaintiff's Discovery Motion").

Although the Opposing Defendants have not yet filed any responses to Plaintiff's Complaint in this lawsuit (the 30-day deadline for filing such responses has not elapsed), the Opposing Defendants file this Opposition out of an abundance of caution because the certificate of service for Plaintiff's Discovery Motion is improperly vague, which precludes the Opposing Defendants from ascertaining on which of the numerous defendants named in this lawsuit Plaintiff claims to have served Plaintiff's Discovery Motion. Plaintiff's certificate of service fails to identify any allegedly served defendant by name and fails to specify, for any allegedly served defendant,

the alleged method of service or who (which person) allegedly was served. Moreover, that certificate discusses service "on all counsel of record, if any," but there were no counsel of record when Plaintiff's Discovery Motion was filed on July 22, 2026 because no defendant had entered its appearance (or otherwise filed any papers) in this lawsuit at that time.

Plaintiff's Discovery Motion should be denied because it is premature and otherwise fundamentally flawed. Plaintiff is improperly jumping the gun by trying to present discovery issues for advisory rulings by this Court that are not actual, live discovery disputes. To be clear, there are ***no*** discovery disputes at this point in this lawsuit: (a) no defendants have filed responses to Plaintiff's Complaint; (b) there are no pending discovery requests, so the Opposing Defendants have not objected or otherwise responded to any discovery requests; and (c) the parties have not conferred about any discovery disputes, as required by Rule 37(a)(2) of the Arkansas Rules of Civil Procedure. The Court should not waste its time ruling—in a vacuum—on numerous, complicated discovery issues addressed in Plaintiff's Discovery Motion, instead of issuing a ruling based on a proper record that includes one or more specific discovery disputes arising out of one or more specific interrogatories and/or document requests and the statement required by Rule 37(a)(2).

Plaintiff's Discovery Motion (and the memorandum in support) make various assertions and arguments that are irrelevant, erroneous, and/or otherwise lack merit, but, for the reasons discussed above, there is no need and no good reason for the Opposing Defendants to litigate those assertions and arguments at this time. The lack of point-by-point rebuttals in this Opposition to Plaintiff's assertions and arguments should not be construed as any admissions by the Opposing Defendants that those assertions and arguments are relevant and/or meritorious. The Opposing

Defendants reserve the right to rebut those assertions and arguments during a later phase of this lawsuit, if necessary.

By filing this Opposition, the Opposing Defendants do not waive any defenses (including but not limited to lack of personal jurisdiction) to Plaintiff's allegations and claims, and they reserve the right to assert all defenses at a later date. This Opposition is filed to ensure that the record in this lawsuit cannot be construed by the Court or by Plaintiff as a lack of opposition to Plaintiff's Discovery Motion.

In conclusion, for the foregoing reasons, the Court should deny Plaintiff's Discovery Motion.

Dated: August 10, 2026

Respectfully submitted,

MCDANIEL WOLFF, PLLC

Bart W. Calhoun, No. 2011221
Brittany D. Webb, No. 2023139
Ginny Ashcraft, No. 2023232
1307 West 4th Street
Little Rock, AR 72201
(501) 954-8000
bart@mcdanielwolff.com
bwebb@mcdanielwolff.com
gashcraft@mcdanielwolff.com

*Attorneys for Defendants Alibaba Group Holding Limited, Alibaba.com U.S. LLC, Alibaba.com US E-Commerce Corp., Alibaba Group (U.S.) Inc., and AUS Merchant Services, Inc.*

CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2026, I electronically filed the foregoing Opposition with the Clerk of the Court using the eFlex system. I further certify that, because Plaintiff is proceeding pro se and is not a registered eFlex participant, I served a true and correct copy of the foregoing Opposition via United States First-Class Mail, postage prepaid, addressed to Plaintiff as follows:

Bradley Burchfield
5420 Kavanaugh Blvd #7927
Little Rock, AR 72217

/s/ Brittany D. Webb
Brittany D. Webb, Ark. Bar No. 2023139