ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2026-Jul-22 12:27:20
60CV-26-8633
C06D03 : 33 Pages

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**CIVIL DIVISION**

**BRADLEY BURCHFIELD** **PLAINTIFF**

v. **CASE NO.** 60CV-26-8633

**ALIBABA GROUP HOLDING LIMITED, et al.** **DEFENDANTS**

## PLAINTIFF'S NOTICE OF RELATED ACTIONS AND MOTION TO CONSOLIDATE, DESIGNATE LEAD CASE, PRESERVE THE TRANSFERRED RECORD, AND ESTABLISH A SINGLE OPERATIVE PLEADING

Plaintiff Bradley Burchfield respectfully gives notice that two Pulaski County Circuit Court actions now arise from the same Alibaba.com Trade Assurance transaction and moves under Arkansas Rule of Civil Procedure 42(a) to consolidate the actions for all purposes, or at minimum for case management, jurisdictional discovery, entity discovery, and pretrial proceedings.

### BACKGROUND

1. Plaintiff originally filed Pulaski County District Court, Small Claims Division Case No. PCSC-26-189 concerning Alibaba.com Trade Assurance Order No. 91906090501027582 and naming Alibaba.com Singapore E-Commerce Private Limited, Alibaba.com US E-Commerce Corp., Alibaba Group Holding Limited, and Zichang New Materials (Shandong) Co., Ltd.

2. Alibaba.com US E-Commerce Corp. was served in that action and filed an answer on July 9, 2026 denying liability, disputing personal jurisdiction, identifying Zichang as the allegedly responsible seller, disputing Plaintiff's status as the proper party, and objecting to alter-ego and veil-piercing theories.

3. The district court entered an Order of Transfer on July 16, 2026. Plaintiff filed an objection to the allegedly untimely and unserved answer and renewed request for default on July 17, 2026. Plaintiff asks that those papers and objections remain part of the transferred record without requesting that this motion itself decide default.

4. Plaintiff separately filed a broader Pulaski County Circuit Court action concerning the same order, payment, Trade Assurance representations, seller account, customer-service response, payment participants, alleged non-delivery, and related communications. The broader action names additional Alibaba, payment-processing, seller, affiliate, and Doe defendants and asserts broader Arkansas claims and equitable theories.

5. Certain defendants in the separately filed circuit action have been served, as shown by returned certified-mail receipts. As of the filing of this motion, no defendant has filed an answer, Rule 12 motion, notice of appearance, or other responsive filing in that action. The returned receipts establish service; they are not appearances.

6. The two cases share the same transaction, witnesses, documents, Trade Assurance records, customer-service records, seller-verification records, payment records, and questions concerning which Alibaba-related entity controlled or administered the order and seller relationship.

7. Plaintiff does not rely on a theory that Alibaba or its owners invested in private-prison companies. Public filings reviewed as of July 21, 2026 identify no direct Alibaba holding in GEO Group or CoreCivic; a shared outside institutional investor such as BlackRock does not establish alter ego, conspiracy, operational control, or criminal pecuniary gain. Consolidation is requested because the cases arise from the same transaction and overlapping parties and evidence.

**GROUNDS FOR CONSOLIDATION**

1. Rule 42(a) permits consolidation where actions involve common questions of law or fact and authorizes orders designed to avoid unnecessary costs or delay.
2. Consolidation will prevent inconsistent rulings concerning service, personal jurisdiction, the identity of the proper Alibaba entity, the seller's status, Trade Assurance, the effect of the July 9 answer, and the scope of permissible discovery.
3. Consolidation will not erase the transferred record, alter the parties' substantive rights, or establish liability. Plaintiff asks the Court to preserve the filing and service history of each case and determine their effect in one coordinated proceeding.
4. The separately filed circuit action contains the broader party structure and claims. It should be designated the lead case, with the transferred record incorporated and a single consolidated amended complaint established as the operative pleading after filing.
5. If complete consolidation is denied, the Court should coordinate the cases for jurisdictional, corporate-structure, seller-verification, payment, and alter-ego discovery and stay duplicative deadlines to prevent conflicting rulings.

**REQUESTED RELIEF**

1. Consolidate the two actions under Rule 42(a), with the separately filed broader circuit action designated as the lead case;
2. Direct the clerk to associate the complete PCSC-26-189 record with the lead case while preserving the original filing, service, answer, objection, and transfer dates;
3. Establish a single operative pleading after Plaintiff files a clean consolidated amended complaint under the lead case number;
4. Preserve, without presently deciding, Plaintiff's objection to the timeliness and service of Alibaba.com US E-Commerce Corp.'s district-court answer and Defendant's defenses to that objection;
5. Preserve prior valid service to the extent provided by law, while requiring proper Rule 4 service on defendants not previously served;
6. Coordinate response deadlines, discovery, motions, and trial settings in one case; and
7. Grant any other relief necessary to prevent duplication, inconsistent rulings, or prejudice.

Respectfully submitted,

Bradley Burchfield 7/22/26

**Bradley Burchfield, Plaintiff Pro Se**
5420 Kavanaugh Blvd #7927

Little Rock, Arkansas 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

Date: 7/22/26, 2026

**CERTIFICATE OF SERVICE**

I certify that on 7/22/26, 2026, I served a true and correct copy of the foregoing on every defendant that had been validly served in the applicable action, at the address shown on that defendant's proof of service, and on all counsel of record, if any, by a method permitted under Arkansas Rule of Civil Procedure 5. Returned certified-mail receipts establish service; they do not by themselves constitute an appearance. No representation is made that this certificate constitutes original service of process on an unserved defendant.

Bradley Burchfield

**Bradley Burchfield, Plaintiff Pro Se**
5420 Kavanaugh Blvd #7927
Little Rock, Arkansas 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**CIVIL DIVISION**

BRADLEY BURCHFIELD, individually and as the direct purchaser/beneficial owner of the subject claim,

Plaintiff,

v.

ALIBABA GROUP HOLDING LIMITED;
ALIBABA.COM SINGAPORE E-COMMERCE PTE. LIMITED, also known as ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED;
ALIBABA.COM U.S. LLC;
ALIBABA.COM U.S. E-COMMERCE CORP., also known as ALIBABA.COM US E-COMMERCE CORP.;
ALIBABA GROUP (U.S.) INC.;
ALIEXPRESS E-COMMERCE ONE PTE. LTD.;
AUS MERCHANT SERVICES, INC., formerly known as ALIPAY U.S., INC. and ALIPAY U.S. ESCROW, INC.;
ZICHANG NEW MATERIALS (SHANDONG) CO., LTD.;
ZHISHANG NEW MATERIALS (SHANDONG) CO., LTD. (name, translation, beneficiary, affiliate, or account variation to be clarified);
SHAANXI BLOOM TECH CO., LTD.;
JOHN DOE ALIBABA PLATFORM, PAYMENT, OWNER, OPERATOR, PARENT, SUBSIDIARY, AFFILIATE, AGENT, BUSINESS-PARTNER, COMPLIANCE, PAYMENT-ROUTING, OR ALTER-EGO ENTITIES 1-10; and
JOHN DOE SELLER/MERCHANT ACCOUNT OPERATORS, SALES AGENTS, PAYMENT BENEFICIARIES, PAYMENT PROCESSORS, PAYMENT-ROUTING PARTICIPANTS, CHEMICAL-PRODUCT SOLICITORS, IMPORT/SHIPMENT PARTICIPANTS, AND CO-CONSPIRATORS 1-20,

**Lead Case No. 60CV-26-8633**

**Consolidated With:**

**Case No.**

**FOR TRANSFERRED PCSC-26-189**

**(from PCSC-26-189)**

**JURY TRIAL DEMANDED**

Defendants.

**PROPOSED CONSOLIDATED FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, FRAUD, ARKANSAS DECEPTIVE TRADE PRACTICES, ARKANSAS CIVIL ACTION BY CRIME VICTIM / CRIMINAL ENTERPRISE PREDICATE CONDUCT, UNJUST ENRICHMENT, MONEY HAD AND RECEIVED, CIVIL CONSPIRACY, ALTER-EGO / AGENCY RELIEF, ACCOUNTING, AND RELATED RELIEF**

**Plaintiff seeks monetary relief exceeding the jurisdictional limits of small claims and district civil court, in an amount to be determined by the jury and up to the highest amount proven and permitted by Arkansas law.**

Plaintiff Bradley Burchfield, appearing pro se only as to his own individual claims and not purporting to represent any separate limited liability company unless counsel appears for that entity, files this Complaint and alleges as follows based on personal knowledge as to his own actions and records and on information and belief as to Defendants' internal acts, agency relationships, account records, payment routing, communications, and platform records:

## I. NATURE OF THE ACTION

1. This is an Arkansas civil action arising from Alibaba.com Trade Assurance Order No. 91906090501027582, dated on or about June 1, 2021, involving a chemical product identified in the contract records as factory N-Isopropylbenzylamine, CAS 102-97-6, and related marketplace, seller, payment, customer-service, dispute-resolution, and post-order communications.
2. Plaintiff alleges that Defendants and related John Doe participants used Alibaba.com marketplace systems, Trade Assurance representations, seller accounts, sales-agent communications, payment channels, platform records, and customer-service/dispute-resolution systems to induce Plaintiff to pay money for goods while failing to deliver the contracted goods, failing to honor Trade Assurance remedies, concealing or denying material records, and using coercive or misleading communications to discourage complaints, reports, or refund demands.
3. Plaintiff pleads in the alternative. Plaintiff alleges first that the contracted goods were not delivered as promised. To the extent any Defendant contends that any goods were

delivered, Plaintiff alternatively alleges that the goods were not as represented, were not fit for the lawful commercial, industrial, rust-inhibitor, or similar represented use, and did not satisfy the contract, advertising, seller representations, or Trade Assurance promises.

4. Plaintiff does not admit any unlawful purpose for any purchase. Plaintiff alleges that the product was represented and sold to him as a lawful commercial or industrial product and/or rust-inhibitor product. Plaintiff seeks relief for injury to his money, property, business, and related property interests arising from alleged deception, non-delivery, failed dispute resolution, wrongful retention of money, and related conduct.

5. This Complaint is intended for filing in the Circuit Court of Pulaski County, Arkansas, Civil Division. It is separate from Plaintiff's pending or filed federal civil RICO action in the United States District Court for the Eastern District of Arkansas, Case No. 4:26-cv-00611-DPM. The federal case and this state case involve overlapping facts, documents, defendants, and exhibits, but this state pleading asserts Arkansas statutory, common-law, equitable, and state racketeering-type claims.

6. This pleading is proposed as the single operative state-court complaint after consolidation of the separately filed Pulaski County Circuit Court action and the action transferred from Pulaski County District Court Small Claims Case No. PCSC-26-189. Certain defendants in the separately filed circuit action have been served, as shown by returned certified-mail receipts, but no defendant has filed an answer, Rule 12 motion, notice of appearance, or other responsive filing in that action as of the date of this pleading. The returned receipts establish service only and are not appearances. Plaintiff requests preservation of the filing and service history of both actions and does not seek duplicative recovery.

## II. PARTIES

7. Plaintiff Bradley Burchfield is an Arkansas resident. Plaintiff alleges that he paid for, controlled, or beneficially owned the claim arising from Alibaba.com Order No. 91906090501027582 and suffered direct injury to his money, property, business, use of funds, expected goods, and related property interests. To the extent the Court determines that Burchfield Sales and Consulting LLC is the real party in interest for any portion of the claim, Plaintiff requests leave for ratification, joinder, substitution, or appearance of counsel for the LLC rather than dismissal on that technical ground.

8. Defendant Alibaba Group Holding Limited is alleged to be the parent, affiliate, controlling entity, and/or alter ego of relevant Alibaba platform operations. The Alibaba Non-

Prosecution Agreement identifies Alibaba Group Holding Limited as an exempted Cayman Islands company whose ADSs are listed on the New York Stock Exchange and identifies subsidiaries, officers, directors, employees, and agents acting within the scope of employment or agency relationships as included within the term "Alibaba." Plaintiff does not sue Alibaba Group merely because it is a parent, publicly traded issuer, or subject to passive institutional investment. Plaintiff sues based on alleged operational control, participation, benefit, agency, platform control, payment infrastructure, policy control, and discovery facts to be proven.

9. Defendant Alibaba.com Singapore E-Commerce Pte. Limited, also known in Plaintiff's records as Alibaba.com Singapore E-Commerce Private Limited, is identified by Plaintiff's transaction records as the marketplace operator connected to Order No. 91906090501027582. The Alibaba Non-Prosecution Agreement also identifies Alibaba.com Singapore E-Commerce Pte. Limited as a Singapore-based subsidiary and as a legal entity housing Alibaba's International Commerce Business Unit, which operates Alibaba.com. Plaintiff alleges this entity operated, managed, controlled, or materially participated in the Alibaba.com marketplace, Trade Assurance contracting system, seller support, order records, customer-service functions, and dispute-resolution process relevant to this case.

10. Defendant Alibaba.com U.S. LLC is identified in the Alibaba Non-Prosecution Agreement as a Delaware company and as a legal entity that housed Alibaba's International Commerce Business Unit, which operates Alibaba.com. Plaintiff alleges this entity was involved in, benefitted from, administered, monitored, or supported United States-facing Alibaba.com marketplace operations, seller support, buyer support, payment, compliance, customer-service, or records functions. Its precise role is within Defendants' control and requires discovery.

11. Defendant Alibaba.com U.S. e-Commerce Corp., also known in Plaintiff's filings as Alibaba.com US E-Commerce Corp., is identified in the Alibaba Non-Prosecution Agreement as a legal entity that housed Alibaba's International Commerce Business Unit, which operates Alibaba.com. Plaintiff's small-claims service materials also treated Alibaba.com US E-Commerce Corp. as a proper Alibaba.com United States entity. Plaintiff alleges this entity was involved in, benefitted from, or provided United States-facing marketplace, seller-support, buyer-support, payment, record, compliance, or dispute-resolution functions.

12. Defendant Alibaba Group (U.S.) Inc. is identified in the Alibaba Non-Prosecution Agreement as a Delaware company and subsidiary of Alibaba Group Holding Limited. Plaintiff alleges this entity may have participated in United States-facing Alibaba platform operations, compliance, payment, records, support, or agency functions relevant to United States buyers and requires discovery into its relationship to Alibaba.com, Trade Assurance, AUS Merchant Services, and Order No. 91906090501027582.

13. Defendant AliExpress E-Commerce One Pte. Ltd. is identified in the Alibaba Non-Prosecution Agreement as a Singapore-based subsidiary of Alibaba Group Holding Limited and as a legal entity housing the AliExpress platform. Plaintiff's transaction was through Alibaba.com, not AliExpress.com. Plaintiff names this entity because the Non-Prosecution Agreement describes Alibaba Platforms and cross-platform compliance, subject-merchandise, payment, and policy failures involving Alibaba.com and AliExpress, and because discovery is needed to determine whether any shared policies, compliance controls, payment flows, seller records, or platform agents affected the transaction at issue. If discovery shows that this entity had no role, Plaintiff will amend or dismiss it as appropriate.

14. Defendant AUS Merchant Services, Inc., formerly known as Alipay U.S., Inc. and Alipay U.S. Escrow, Inc., is identified in the AUS Non-Prosecution Agreement as a Delaware company with its principal place of business at 525 Almanor Avenue, Sunnyvale, California 94085. The AUS Non-Prosecution Agreement states that AUS offered payment processing and settlement services to Alibaba-owned e-commerce platforms, including Alibaba.com, and processed United States dollar payments on behalf of overseas merchants selling to United States-based buyers. Plaintiff alleges on information and belief that AUS, Alipay, or a related payment entity may have processed, screened, retained, monitored, or possessed records concerning Plaintiff's Alibaba.com payment or related seller/beneficiary payment flow. Its precise relationship to Plaintiff's payment must be determined through discovery.

15. Defendant Zichang New Materials (Shandong) Co., Ltd. is identified in the Trade Assurance Purchase Contract as the seller for Alibaba.com Order No. 91906090501027582. Plaintiff alleges this seller or its agents represented the goods, induced the order, accepted or benefited from the transaction, communicated through Alibaba.com or related channels, and failed to deliver the contracted goods or provide a refund. Plaintiff states that each supplier, including

this one, listed on the Alibaba site, advertised a supply rate of 20 metric tons per month each for CAS # 102-97-6.

16. Defendant Zhishang New Materials (Shandong) Co., Ltd. is identified in uploaded payment records as a beneficiary associated with a domestic wire transfer account or payment instructions. Plaintiff alleges that Zichang and Zhishang may be a spelling, translation, beneficiary, account, affiliate, or alter-ego variation related to the seller and seeks discovery to determine the correct legal identity and payment beneficiary. Plaintiff states that each supplier, including this one, listed on the Alibaba site, advertised a supply rate of 20 metric tons per month each for CAS # 102-97-6.

17. Defendant Shaanxi Bloom Tech Co., Ltd. is identified in uploaded payment records and in the bloomtechz.com email evidence. Plaintiff alleges that this entity, sales@bloomtechz.com, Aurora Song, and/or related agents participated in chemical-product solicitations, direct WhatsApp/WeChat communications, payment routing, buyer communications, post-order communications, concealment, or related enterprise conduct. Plaintiff states that each supplier, including this one, listed on the Alibaba site, advertised a supply rate of 20 metric tons per month each for CAS # 102-97-6.

18. The John Doe Alibaba Platform owner, operator, parent, subsidiary, affiliate, agent, payment, compliance, business-partner, payment-routing, or alter-ego entities 1-10 are presently unknown entities that owned, operated, controlled, administered, profited from, provided payment or compliance services to, or exercised authority over Alibaba.com, Trade Assurance, seller accounts, buyer communications, payment records, customer-service responses, dispute records, platform-level compliance functions, or related post-order communications relevant to Plaintiff's transaction. These Doe Defendants include, without limitation, any Alibaba-related entity, affiliate, business unit, agent, service provider, payment participant, compliance participant, or alter-ego entity that operated or controlled seller or merchant accounts; communicated with Plaintiff; issued or participated in chemical-product solicitations; used WhatsApp, WeChat, email, Alibaba.com messaging, or other channels to solicit or discuss N-Isopropylbenzylamine or related chemicals; represented product properties or legality; routed or received funds; controlled beneficiary accounts; participated in the alleged non-delivery or misrepresentation; or assisted in concealing, discouraging, threatening, or obstructing complaints concerning Order No. 919060905010275 82 and related post-order communications, including the January 9, 2022 email from sales@bloomtechz.com titled "Details N-Isopropylbenzylamine."

19. The John Doe seller account operators, sales agents, payment beneficiaries, payment processors, payment-routing participants, chemical-product solicitors, import/shipment participants, and co-conspirators 1-20 are presently unknown individuals or entities that used seller accounts, email addresses, payment channels, beneficiary accounts, direct communications, WhatsApp, WeChat, Alibaba.com messaging, or other means to solicit, process, conceal, route, retain payment, retain records, or obstruct complaints connected to Plaintiff's order and related chemical-product communications. For purposes of this Complaint, the term "related communications" includes, without limitation, Alibaba.com platform messages, Trade Assurance communications, seller or sales-agent emails, payment instructions, WhatsApp or WeChat solicitations, customer-service responses, dispute-resolution communications, and the January 9, 2022 email from sales@bloomtechz.com titled "Details N-Isopropylbenzylamine."

20. At all relevant times, each Defendant acted personally, through agents, through affiliated accounts, through apparent authority, through alter egos, through business partners, through payment-routing participants, or through a joint or association-in-fact enterprise, and each Defendant is liable for its own acts and for acts of agents, alter egos, co-conspirators, or joint enterprise participants where proven.

## III. JURISDICTION, VENUE, AND SERVICE

21. This Court has subject-matter jurisdiction because the Circuit Court of Pulaski County, Arkansas, is a court of general jurisdiction for civil actions and because Plaintiff seeks damages exceeding the jurisdictional limits of Arkansas small claims and district civil court.

22. Arkansas state district courts have civil jurisdiction only up to the monetary limits set by Arkansas law and court structure, and small-claims jurisdiction is lower. Plaintiff seeks damages exceeding those limits and therefore seeks adjudication in Pulaski County Circuit Court, Civil Division.

23. Venue is proper in Pulaski County because Plaintiff resides in Pulaski County; Plaintiff received marketplace, seller, payment, and customer-service communications in Arkansas; Plaintiff suffered injury to money, property, business, and related interests in Arkansas; and Defendants purposefully directed e-commerce, payment, customer-service, and dispute-resolution activity toward Plaintiff in Arkansas and/or the United States.

24. Personal jurisdiction exists to the fullest extent permitted by Arkansas law and due process because Defendants and their agents used an interactive marketplace to solicit or process orders from Arkansas, accepted or processed payment from an Arkansas resident, used United States payment channels and United States-facing Alibaba.com operations, sent or received electronic communications connected to Arkansas, and caused injury in Arkansas.

25. To the extent this case is transferred from District Court or Small Claims Division, Plaintiff requests that the filing date of the original state action be preserved to the fullest extent permitted by Arkansas law, and that the pleadings, exhibits, docket sheet, service papers, and related filings be transferred to the Circuit Court of Pulaski County, Arkansas, Civil Division.

26. Plaintiff will serve each Defendant according to Arkansas Rule of Civil Procedure 4, applicable statutes, treaty procedures, waiver, authorized registered agent, or court order. Plaintiff does not contend that counsel identified in any Non-Prosecution Agreement represents any Defendant in this state civil action unless counsel appears or expressly agrees in writing to accept service.

## IV. FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### A. The Trade Assurance Transaction

27. On or about June 1, 2021, Plaintiff entered into an Alibaba.com Trade Assurance Purchase Contract for Order No. 91906090501027582. The contract records identify the seller as Zichang New Materials (Shandong) Co., Ltd., and identify the buyer/contact as Burchfield Sales and Consulting LLC / Bradley Burchfield. The product was identified as factory N-Isopropylbenzylamine, CAS 102-97-6.

28. The contract identifies a 1.00 kilogram quantity, a unit price around $615.00, shipping charges around $50.00, insurance charges around $50.00, and a total contract amount around $715.00. Plaintiff alleges that he paid approximately $736.38 in connection with the order, including any platform, payment, tax, insurance, shipping, transaction, or related charges reflected in his records.

29. Plaintiff alleges that he relied on Alibaba.com marketplace structure, Trade Assurance branding, seller verification or platform presentation, order records, buyer/seller records, and dispute-resolution representations in making payment.

30. Plaintiff alleges the goods were not delivered as promised and that Defendants failed to provide a timely refund, meaningful Trade Assurance remedy, or accurate logistics/dispute

records. Alternatively, if any goods are alleged to have been delivered, Plaintiff alleges they were not as represented or fit for the represented lawful commercial use.

31. Plaintiff alleges that the transaction was not presented as an offline transaction with an unrelated stranger. It was presented through the unified Alibaba.com marketplace, Alibaba.com branding, Alibaba.com order system, Trade Assurance framework, customer-service channels, and dispute-resolution process.

**B. Marketplace, Seller, Payment, and Bank Communications**

32. Plaintiff's uploaded Alibaba message record shows a communication from a seller account identified as Sweety Yin stating that, due to Alibaba monitoring, orders over $5,000 must be delivered to Alibaba for transportation, that the seller sent a pro forma invoice for a 1,000 kg order, and that payment could be made by bank. Plaintiff alleges that this communication shows the use of Alibaba.com platform messages, seller-agent accounts, Alibaba monitoring representations, and bank-payment routing in the same general course of chemical-product sales.

33. Plaintiff's uploaded payment records identify United States domestic wire-transfer account information for Shaanxi Bloom Tech Co., Ltd. through Citibank N.A., New York Branch, with a beneficiary address in San Mateo, California. For public filing, Plaintiff identifies the account only by beneficiary name and account ending 8500 unless the Court permits or requires an unredacted filing under seal.

34. Plaintiff's uploaded payment records also identify United States domestic wire-transfer account information for Zhishang New Materials (Shandong) Co., Ltd. through Citibank N.A., New York Branch, with a beneficiary address in San Mateo, California. For public filing, Plaintiff identifies the account only by beneficiary name and account ending 3443 unless the Court permits or requires an unredacted filing under seal.

35. Plaintiff alleges that these bank records are material because they show that foreign seller or affiliate entities used United States banking channels, United States addresses, and United States wire-transfer infrastructure in connection with the same marketplace or seller network at issue.

36. Plaintiff alleges on information and belief that Defendants used multiple related names, seller accounts, sales agents, beneficiary names, and payment instructions to move money, conceal responsible parties, avoid direct refund obligations, and frustrate customer disputes.

C. Alibaba Buyer-Information Routing, Supplier Follow-Up, and Continued Seller Outreach

37. Plaintiff references Exhibit A-4, the Haihang email with attached translation. The exhibit reflects a January 4, 2016 Alibaba/AliSourcePro system email from alisourcepro@service.alibaba.com to export036@haihangchem.com concerning RFQ 102-97-6. The translated email states that the supplier's quotation for RFQ 102-97-6 was successfully sent to a United States buyer, instructs the supplier to view the quotation and contact the buyer, and states that buyer contact information could be viewed in the My Alibaba backend or Procurement Direct quotation-management system.

38. Plaintiff alleges that Exhibit A-4 is evidence that Alibaba made buyer inquiry information, buyer identity information, buyer country/region information, and buyer contact information available to suppliers or supplier-side users through Alibaba's own platform systems, and that Alibaba encouraged supplier follow-up with buyers for RFQ 102-97-6. Plaintiff pleads this evidence as relevant to platform control, buyer-information routing, supplier solicitation, agency, selling or monetizing buyer information, enterprise methods, and discovery into how suppliers and seller agents obtained buyer information for chemical-product inquiries.

39. Plaintiff further references Exhibit A-3, the 2025 email from Decho Chemical. In that email, a Decho Chemical sales representative states that she found Plaintiff had an inquiry for N-Isopropylbenzylamine, CAS 102-97-6, asks about Plaintiff's business regarding that chemical, and offers to provide current prices and further chemical-product sales assistance. Plaintiff alleges that Exhibit A-3 shows that the same type of selling or making available of buyer-information, buyer-information routing, supplier follow-up, or seller outreach concerning CAS 102-97-6 continued in 2025, years after the 2016 Haihang/AliSourcePro email and after Plaintiff's 2021 Trade Assurance transaction. Plaintiff pleads Exhibits A-3 and A-4 as evidence of continuity, relatedness, platform-enabled solicitation, and the need for discovery concerning Alibaba's buyer-information practices, supplier access to buyer data, and seller-agent contact methods.

40. Plaintiff alleges that Exhibits A-3 and A-4 support his claims of platform control, seller outreach, buyer-information routing, continued solicitation, notice, continuity, deceptive trade practices, computer-system use, Arkansas criminal-enterprise predicate context if proven, and the need for discovery into how Alibaba.com, seller accounts, payment participants, and related agents collected, disclosed, sold, routed, monetized, or permitted use of buyer inquiry information for CAS 102-97-6 and related chemical-product solicitations.

**D. The January 9, 2022 BloomTechz Email and Alternative Analogue / Chemical-Risk Theory**

41. On or about January 9, 2022, Plaintiff received an email from sales@bloomtechz.com under the subject "Details N-Isopropylbenzylamine." The forwarded-header evidence identifies the sender as sales@bloomtechz.com, the date as January 9, 2022 at approximately 8:47 p.m., and the recipient as Plaintiff's email address.

42. Plaintiff alleges that the email promoted "Blue Pure N iso crystal" or similar chemical products, listed prices for 100g, 500g, and 1kg quantities, solicited direct WhatsApp/WeChat contact, and discussed N-Isopropylbenzylamine, 4-Isopropylbenzylamine, 2-Amino-4-phenylbutane / 2A4P, and related products.

43. Plaintiff further alleges that the email used terms such as "effect," "diluting," "Food grade," "molecule formula," "chemical structure," and "pharmaceutical properties," and stated in substance that from the sender's chemical-research opinion the product had the "Same Molecule Formula of C10H15N."

44. Plaintiff alleges that C10H15N is a molecular formula commonly associated with methamphetamine, and that Defendants' own marketing language therefore created a material red flag that the product was being compared to, substituted for, or promoted in relation to a controlled stimulant substance. Plaintiff does not allege that molecular formula alone conclusively proves illegality. Plaintiff pleads the statement as evidence of knowledge, scienter, deceptive marketing, concealment, materiality, and the need for discovery and expert proof concerning chemical structure, intended use, represented effects, and platform compliance.

45. The same email also used coercive language, including "Each words and pictures here is real, dont talk about any fake here!" and "It must be a legal product, otherwise you have better keep silent." Plaintiff alleges that this language was intended or reasonably calculated to discourage questions, disputes, refund demands, reports to platform compliance, reports to law enforcement or regulators, or court complaints.

46. Plaintiff pleads in the alternative, subject to discovery and expert testimony, that if the product marketed as N-Isopropylbenzylamine / N ISO is found to have a substantially similar chemical structure to methamphetamine or another controlled substance, and if the product was represented, intended, or marketed to have substantially similar stimulant effects or intended for human consumption, then the January 9, 2022 email supports an analogue-style theory or chemical-risk representation theory. Plaintiff does not admit any

unlawful purchase purpose and does not seek to privately prosecute criminal drug laws. Plaintiff pleads these facts to show fraudulent inducement, scienter, concealment, intimidation, deceptive trade practices, Arkansas felony predicate context if proven, and the need for discovery.

**E. Failure of Trade Assurance and June 2026 Customer-Service Email**

47. Plaintiff repeatedly attempted to resolve the matter through Alibaba.com's internal complaint or dispute-resolution process. Plaintiff alleges that for approximately three years he received no meaningful delivery, refund, credit, disclosure of logistics records, or remedy. On or about June 1, 2026, Plaintiff sought relief by filing the small claims court complaint referenced herein.

48. On or about June 18, 2026, Alibaba Customer Service sent Plaintiff an email concerning "Solution for Trade Assurance Order 91906090501027582." The email stated that Plaintiff's complaint had been escalated to a senior team.

49. The June 18, 2026 email stated that because the order was over three years old, logistics information could no longer be verified, and that the platform had no record of Plaintiff contacting customer service regarding the order.

50. The June 18, 2026 email offered Plaintiff a $500 Alibaba credit, valid for 90 days, for use toward a future Trade Assurance order, including product and shipping costs, but excluding payment-processing fees, taxes, or other additional services. The email instructed Plaintiff to reply "AGREE" if Plaintiff accepted that option.

51. Plaintiff alleges that the June 18, 2026 and June 22, 2026 emails were not a full refund, were not a return of the money paid, and were not a meaningful remedy for Plaintiff's alleged injury. Plaintiff further alleges that the emails support his claims that Defendants failed to preserve, disclose, or honor logistics and dispute-resolution records while attempting to convert Plaintiff's refund demand into a future platform credit that would require additional dealings with Defendants.

52. Plaintiff alleges that Alibaba did not respond by saying the matter belonged only to a foreign marketplace seller and that Alibaba had no platform role. Instead, Alibaba reviewed or claimed to review the order and platform records, discussed logistics verification and customer-service records, and offered an Alibaba credit to settle the matter. Plaintiff alleges that this response supports discovery into which Alibaba entity or entities controlled the

order, platform records, seller account, Trade Assurance process, customer-service response, payment flow, and settlement-credit authority.

**F. Federal NPAs, Federal Documents, and Overlapping Federal Materials**

53. Plaintiff includes facts and allegations from the June 29, 2026, Non-Prosecution Agreements and $600 million dollar settlement with the United States Attorney's Office for the District of Rhode Island because those agreements overlap with Plaintiff's case on entity identity, Alibaba.com platform control, payment-processing functions, marketplace compliance, seller enforcement, subject merchandise, and United States-facing transaction systems. Plaintiff does not allege that the NPAs alone prove that Plaintiff's specific order was one of the NPA-covered transactions, and Plaintiff does not allege that NPA counsel represents any Defendant in this state civil action.

54. The Alibaba Non-Prosecution Agreement identifies counsel for Alibaba Group Holding Limited, Alibaba.com Singapore E-Commerce Pte. Limited, AliExpress E-Commerce One Pte. Ltd., and Alibaba.com U.S. LLC. It defines "Alibaba" to include Alibaba Group Holding Limited and subsidiaries, officers, directors, employees, and agents acting within the scope of employment or agency relationships, including Alibaba.com Singapore E-Commerce Pte. Limited, AliExpress E-Commerce One Pte. Ltd., Alibaba Group (U.S.) Inc., and Alibaba.com U.S. LLC.

55. The Alibaba Non-Prosecution Agreement defines ICBU as Alibaba's International Commerce Business Unit, the business unit that operates Alibaba.com, including the legal entities that house this unit: Alibaba.com Singapore E-Commerce Pte. Limited, Alibaba.com U.S. LLC, and Alibaba.com U.S. e-Commerce Corp. This directly overlaps with Plaintiff's transaction records and the defendants previously named in this case.

56. The Alibaba Non-Prosecution Agreement's Statement of Facts states that Alibaba.com was a global business-to-business platform that connected buyers and sellers on a single platform, and that ICBU was managed by Alibaba.com Singapore E-Commerce Pte. Limited, which managed Alibaba.com, including within the United States.

57. The Statement of Facts further states that ICBU operated the Alibaba.com marketplace, offered services to independent third-party sellers including Gold and Verified supplier membership programs, and through April 2021 offered a payment service on Alibaba.com called trade assurance through which ICBU processed payments linked to e-commerce orders. Plaintiff's records identify his June 1, 2021 transaction as a Trade Assurance

Purchase Contract, which creates a factual issue for discovery concerning the Trade Assurance system, its transition, continuation, entity ownership, and payment-processing responsibility for Plaintiff's order.

58. The Alibaba Non-Prosecution Agreement defines Subject Merchandise to include drugs, devices, equipment used to manufacture counterfeit drugs, controlled substances, listed chemicals or chemical mixtures, anabolic steroids, other regulated items, and products whose importation into the United States is prohibited under federal law and where such importation would constitute a felony. Plaintiff alleges that this definition is relevant to platform notice, product-risk controls, chemical-product screening, seller enforcement, and the need for discovery, but Plaintiff does not allege that the NPA alone proves his specific product was illegal.

59. The Alibaba Statement of Facts states that during approximately January 2016 through December 2024, Alibaba employees raised concerns that ICBU was used to sell improper products into the United States and that compliance measures and filtering systems were inadequate. It further states that approximately 80,000 product sales on the Alibaba Platforms involved product sales from overseas countries to the United States that lacked required approvals under drug, device, and importation laws, with combined gross merchandise value greater than $200 million. Plaintiff states that suppliers listed on the site advertised substantial monthly supply capacity for CAS No. 102-97-6. Plaintiff submitted supplemental information to the United States Attorney's Office for the District of Rhode Island on July 2, 2026, under USPS Tracking No. 9534612845466183991255, concerning alleged continuing Alibaba.com listings for chemical precursors or restricted chemical products after the public NPA resolution. Plaintiff further alleges that at least one seller listing reflected a lengthy verified-seller history that may predate the NPA's January 2016 Relevant Period. Plaintiff has not authenticated the exact tenure and does not plead any precise duration as established. Plaintiff pleads the material as notice, seller-vetting, compliance, continuity, and discovery evidence concerning Alibaba's platform controls, chemical-product screening, seller-verification practices, and post-NPA compliance.

60. The AUS Non-Prosecution Agreement identifies AUS Merchant Services, Inc., formerly known as Alipay U.S., Inc. and Alipay U.S. Escrow, Inc., as a Delaware company with principal place of business at 525 Almanor Avenue, Sunnyvale, California 94085. It states that AUS offered payment processing and settlement services to Alibaba-owned e-

commerce platforms, including Alibaba.com, and commenced payment processing and settlement services for Alibaba.com transactions in 2020.

61. The AUS Statement of Facts states that AUS's business model included payment processing and settlement services enabling overseas sellers on Alibaba.com to accept payments from United States-based buyers; that AUS received transaction information including merchant identity, buyer identity, and product description; and that AUS accepted United States dollar-denominated payments, including wire transfers for Alibaba.com orders, into United States bank accounts.

62. The AUS Statement of Facts further states that AUS and affiliates would, in certain instances, report merchants who sold Subject Merchandise on Alibaba's e-commerce platforms, including Alibaba.com, to Alibaba rather than systematically restricting those merchants themselves; that overseas merchants used AUS payment services to facilitate the sale and importation of Subject Merchandise; and that AUS processed transactions for overseas Alibaba.com merchants and United States-based buyers involving Subject Merchandise imported into the United States in violation of law.

63. Other federal materials overlap with this state case as factual context and exhibits, including Plaintiff's federal amended RICO pleading, federal service and docket materials, the filed federal exhibit packets, and the prior federal pleadings and rulings. Plaintiff includes overlapping federal materials only to show notice, entity identity, platform/payment structure, preservation issues, and factual context. Plaintiff does not ask the Circuit Court to apply federal civil RICO as an Arkansas cause of action.

**E. PROCEDURAL HISTORY, DEFENDANT'S ANSWER, AND ENTITY-IDENTITY DISPUTE**

69A. Plaintiff filed Small Claims Case No. PCSC-26-189 concerning the same Trade Assurance order. Alibaba.com US E-Commerce Corp. was served and filed an answer on July 9, 2026. The answer denied participation, challenged personal jurisdiction, attributed any non-delivery to Zichang or other entities, disputed Plaintiff's status as the proper party, and objected to alter-ego theories.

69B. The district court entered an Order of Transfer on July 16, 2026. Plaintiff filed an objection to the allegedly untimely and unserved answer and renewed request for default on July 17, 2026. Plaintiff incorporates the transferred record while acknowledging that the circuit court will determine the effect of the service, answer, objection, and transfer.

69C. In the separately filed circuit action, certain defendants have been served through certified mail, as reflected by returned green cards. As of the date of this pleading, no defendant has filed an answer, Rule 12 motion, notice of appearance, or other responsive filing in that action. Plaintiff pleads the returned receipts as proof of service only and does not characterize them as appearances.

69D. Defendant's answer places entity identity, agency, seller independence, corporate separateness, and control directly in dispute. Defendant identifies Zichang as the allegedly responsible seller but does not identify which Alibaba entity controlled the seller account, Trade Assurance, payment, customer-service response, logistics records, refund authority, or seller verification.

69E. The June 29, 2026 Alibaba Non-Prosecution Agreement defines ICBU as the Alibaba.com operating unit and identifies Alibaba.com Singapore E-Commerce Pte. Limited, Alibaba.com U.S. LLC, and Alibaba.com U.S. e-Commerce Corp. as legal entities housing that unit. The Statement of Facts describes ICBU's operation of Alibaba.com, Gold and Verified supplier programs, seller policies and enforcement, private messaging, transaction-related services, and Trade Assurance payment service through April 2021.

69F. Plaintiff's contract is dated June 1, 2021 and bears Trade Assurance branding. Plaintiff therefore seeks discovery into which ICBU legal entity or affiliate administered, continued, funded, supported, or held responsibility for Trade Assurance and the subject order on the contract date.

69G. Alibaba customer service later reviewed or claimed to review the subject order, discussed logistics and customer-service records, escalated the matter, and offered a $500 Alibaba credit. Plaintiff pleads those communications for notice, control, agency, record custody, and discovery relevance and not as inadmissible proof of liability or amount through compromise negotiations.

69H. The AUS Non-Prosecution Agreement describes payment-processing and settlement services for overseas Alibaba.com merchants, possession of merchant and buyer identity and sale-order information, U.S.-dollar collection into U.S. bank accounts, and association of payments to overseas merchants through unique beneficiary identifiers. Plaintiff seeks discovery into whether AUS or an affiliate processed or retains records concerning the subject payment.

**F. SELLER EXISTENCE, SUCCESSOR, AND VERIFICATION FACTS REQUIRING DISCOVERY**

69I. Plaintiff has been unable through reasonable public inquiry to verify Zichang's present legal existence, active registration, beneficial owners, officers, capitalization, operating assets, successor status, or ability to satisfy the contractual obligation. Plaintiff does not plead nonexistence as an established fact; he pleads the inability to verify those matters and the need for records within Defendants' custody.

69J. Plaintiff alleges on information and belief that the seller name, seller account, payment beneficiary, sales agents, and related entities may not correspond to one independently operated and adequately capitalized company. Discovery is necessary concerning related seller accounts, common addresses, common devices or IP addresses, common personnel, bank beneficiaries, name changes, account transfers, successor entities, suspensions, closures, and seller-verification records.

69K. Public federal materials concerning Li Fangwei, also known as Karl Lee, alleged a historical pattern of using multiple China-based front companies, variants of names and addresses, and U.S.-dollar transactions to conceal the responsible commercial actor. Project Alpha reported in 2014 that Sinotech (Dalian) Carbon & Graphite Manufacturing Corporation, publicly identified as part of that network, remained listed as an Alibaba-verified Gold Supplier after public designation.

69L. Plaintiff does not allege that Zichang, any Alibaba Defendant, or any present Defendant is affiliated with Li Fangwei. Plaintiff pleads the historical example solely to demonstrate the relevance of underlying seller-verification, beneficial-ownership, related-account, address, name-change, and payment-beneficiary records and not to prove present wrongdoing by propensity or association.

69M. Plaintiff understands that an archived supplier listing may have displayed a lengthy supplier tenure, reportedly sixteen years. Because Plaintiff has not yet authenticated the original archived page and metadata, Plaintiff does not plead the sixteen-year duration as an established fact and will not rely on it as evidence unless properly authenticated.

## G. PUBLIC OWNERSHIP RESEARCH AND ACTUAL-CONTROL SCOPE LIMITATION

69N. Public SEC materials reviewed as of July 21, 2026 identify relevant Alibaba subsidiaries and consolidated entities but do not show that Alibaba Group, its disclosed Alibaba.com affiliates, its current chief executive or chairman, or its founders directly own GEO Group, CoreCivic, or a known privately held correctional operator. Alibaba Group's Form 13F

for the quarter ended March 31, 2026 reports Weibo and XPeng and does not report GEO Group or CoreCivic.

69O. BlackRock's separately reported investments in Alibaba, GEO Group, and CoreCivic reflect a common outside institutional investment manager. Plaintiff does not allege that those holdings establish that Alibaba invested in private prisons, that GEO Group or CoreCivic owns or controls Alibaba, that BlackRock controls Alibaba, that Alibaba receives correctional revenue, or that the companies acted together. Plaintiff does not rely on common institutional ownership as proof of alter ego, conspiracy, operational control, or criminal pecuniary gain and does not seek unrelated private-prison discovery absent new evidence and further court order.

69P. Plaintiff's ownership and alter-ego theories are limited to actual beneficial ownership and actual board-designation, veto, contractual, management, data-access, compliance, payment, or operational-control rights; intercompany agreements; commingling; undercapitalization; failure to observe corporate separateness; use of an entity to evade contractual or legal obligations; and transaction-related money, fees, commissions, membership revenue, payment-processing revenue, retained funds, or other value connected to the pleaded conduct.

## V. CLAIMS FOR RELIEF

### COUNT I - BREACH OF CONTRACT / TRADE ASSURANCE / FAILURE TO DELIVER

64. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.
65. Plaintiff alleges that the Trade Assurance Purchase Contract and related Alibaba.com records created enforceable obligations requiring delivery of the contracted goods, accurate order records, good-faith dispute processing, and refund or remedy if the seller failed to perform.
66. Plaintiff alleges that Defendants breached the contract, participated in the breach, benefitted from the breach, or are liable through agency, apparent authority, alter ego, third-party beneficiary, payment-processing, or platform-control principles by failing to deliver the contracted goods, failing to provide a refund, failing to provide meaningful Trade Assurance relief, and failing to maintain or produce material logistics and dispute-resolution records.

67. Plaintiff was damaged by the breach, including out-of-pocket payment, loss of use of funds, loss of expected goods, business interruption, lost opportunity, investigation costs, costs of pursuing relief, and other consequential damages to be proven.

**COUNT II - FRAUD / MISREPRESENTATION / FRAUDULENT CONCEALMENT**

68. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

69. Defendants, their agents, or enterprise participants made or caused material representations and omissions concerning seller legitimacy, product availability, product characteristics, Trade Assurance protection, delivery, refund/remedy availability, payment routing, buyer-information routing, supplier follow-up, continued seller outreach, order records, logistics verification, and customer-service dispute records.

70. The representations and omissions were false or misleading when made or became false or misleading when Defendants failed to deliver the goods, failed to refund the money, failed to provide meaningful Trade Assurance relief, failed to preserve or produce records, and attempted to resolve the matter by limited future credit rather than returning Plaintiff's money. Plaintiff further alleges that the 2016 Haihang/AliSourcePro email and the 2025 Decho Chemical email show additional misrepresentations or omissions concerning how Alibaba systems made buyer inquiry information available to suppliers and allowed continued supplier outreach concerning CAS 102-97-6.

71. Plaintiff reasonably relied on the representations and omissions in paying money, continuing to pursue internal dispute remedies, delaying or limiting other relief efforts, and seeking credit, refund, or court relief.

72. Defendants' conduct caused Plaintiff damages including money paid, loss of use, loss of benefit of the bargain, business and property losses, investigation costs, litigation costs, and other damages to be proven.

73. Plaintiff alleges that the fraud was intentional, reckless, malicious, or in conscious disregard of Plaintiff's rights, supporting punitive or exemplary damages if proven and permitted by Arkansas law.

**COUNT III - ARKANSAS DECEPTIVE TRADE PRACTICES ACT**

74. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

75. Plaintiff brings this claim under the Arkansas Deceptive Trade Practices Act, including Ark. Code Ann. Sections 4-88-107 and 4-88-113, to the extent Defendants' acts constitute deceptive, false, unconscionable, or misleading business practices under Arkansas law.
76. Defendants' alleged deceptive practices include, without limitation, representing that the seller, product, Trade Assurance order, payment process, delivery process, and dispute-resolution remedy were legitimate, protected, documented, and available while failing to deliver the goods, failing to refund Plaintiff's money, failing to provide meaningful Trade Assurance relief, and failing to disclose material seller, payment, compliance, buyer-information routing, supplier-access, logistics, and remedy limitations.
77. The January 9, 2022 BloomTechz email, the 2016 Haihang/AliSourcePro buyer-information email and translation, the 2025 Decho Chemical email, and related communications are further alleged to be deceptive or unconscionable because they used chemical-product marketing, product-effect language, direct-contact solicitation, legality assertions, buyer-information access, supplier follow-up, and coercive language to discourage complaints or challenges and to continue chemical-product solicitation concerning CAS 102-97-6.
78. The June 18, 2026 and June 22, 2026 Alibaba Customer Service emails are further alleged to support the claim because Alibaba stated that logistics could no longer be verified and that the platform had no record of prior customer-service contact, yet offered only a limited $500 future Alibaba credit rather than a refund of Plaintiff's money.
79. Plaintiff suffered actual financial loss proximately caused by reliance on the deceptive practices, including the amount paid, loss of use of money, lost goods, costs of pursuing relief, damages to his reputation, and other damages to be proven. Plaintiff requests actual financial loss, restitution, reasonable attorney's fees if allowed, costs, and all other relief permitted under Arkansas law.

## COUNT IV - ARKANSAS CIVIL ACTION BY CRIME VICTIM / CRIMINAL ENTERPRISE PREDICATE CONDUCT

80. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.
81. Plaintiff pleads this Count under Arkansas law as a state racketeering-type and criminal-enterprise claim. Plaintiff does not ask this Court to create a federal-style private civil RICO claim under Arkansas law. Plaintiff instead alleges that Defendants' conduct would constitute Arkansas felony conduct and a continuing criminal organization or enterprise

under Ark. Code Ann. Sections 5-74-103 and 5-74-104, and that Plaintiff is entitled to civil remedies as a person injured or damaged by felony conduct under Ark. Code Ann. Section 16-118-107.

82. Ark. Code Ann. Section 5-74-103 defines a criminal gang, organization, or enterprise as a group of three or more individuals who commit a continuing series of two or more predicate criminal offenses undertaken in concert with each other. It defines a crime of pecuniary gain as a violation of Arkansas law that results, or was intended to result, in a defendant receiving income, benefit, property, money, or anything of value, and it defines a predicate criminal offense as any violation of Arkansas law that is a crime of violence or a crime of pecuniary gain.

83. Ark. Code Ann. Section 5-74-104 applies when a person commits, attempts to commit, or solicits a felony predicate criminal offense as part of a continuing series of two or more predicate criminal offenses undertaken in concert with two or more other persons. Plaintiff alleges, in the alternative and subject to discovery, that the facts pleaded in this action satisfy those elements.

84. The Arkansas criminal-enterprise participants include, at minimum and subject to discovery, the Alibaba platform entities and Doe platform participants; the seller entities, seller-account operators, and sales agents; the payment processors, payment beneficiaries, and payment-routing participants; and any persons or entities that participated in the marketplace, payment, seller-account, Trade Assurance, customer-service, or post-order concealment conduct relating to Alibaba.com Trade Assurance Order No. 919060905010027582 and related post-order communications.

85. The common purpose of the Arkansas criminal enterprise was to obtain or retain Plaintiff's money and other buyer funds through electronic marketplace representations, Trade Assurance representations, seller-account representations, payment-routing practices, chemical-product solicitations, and customer-service/dispute-resolution communications while failing to deliver the contracted goods, failing to provide meaningful refund or Trade Assurance relief, concealing or denying material logistics and dispute records, and discouraging complaints or reports.

86. Plaintiff alleges that at least two predicate criminal offenses were undertaken in concert. Those predicate acts include, without limitation, the 2016 Haihang/AliSourcePro buyer-information routing email concerning RFQ 102-97-6; the June 1, 2021 electronic Trade Assurance order and payment processing; related marketplace or seller communications

concerning chemical-product orders and Alibaba monitoring; payment-routing or beneficiary-account conduct involving United States payment channels; the January 9, 2022 BloomTechz email titled "Details N-Isopropylbenzylamine"; the 2025 Decho Chemical email concerning N-Isopropylbenzylamine CAS 102-97-6; and the post-order concealment and customer-service communications concerning Order No. 91906090501027582.

87. Plaintiff alleges that the principal Arkansas felony predicate is computer fraud under Ark. Code Ann. Section 5-41-103. Defendants and their agents intentionally accessed, used, or caused access to computer systems, computer networks, internet platforms, electronic marketplace systems, email systems, payment systems, and customer-service systems for the purpose of devising or executing a scheme or artifice to defraud or to obtain money, property, or services by false or fraudulent intent, representation, or promise. Computer fraud under Ark. Code Ann. Section 5-41-103 is a Class D felony.

88. Plaintiff further alleges that the same facts support theft-by-deception allegations under Ark. Code Ann. Section 5-36-103 because Defendants and their agents obtained Plaintiff's property by deception or threat with the purpose of depriving Plaintiff of that property. Plaintiff pleads theft-by-deception as a felony predicate only to the extent the amount, aggregated transactions, related conduct, threat evidence, controlled-payment conduct, or discovery facts satisfy the felony classification requirements under Arkansas law. If the Court determines that Plaintiff's individual payment alone does not satisfy a felony-theft threshold, Plaintiff preserves computer fraud and any other felony conduct supported by discovery as the primary felony predicate for this Count.

89. Plaintiff also pleads, in the alternative and subject to discovery and expert testimony, that if the N-Isopropylbenzylamine / N ISO marketing, same-molecule-formula statement, represented effect, intended use, or chemical-product solicitation evidence establishes conduct involving a controlled substance, controlled-substance analogue, listed chemical, illegal importation, or other Arkansas felony conduct, then such conduct is an additional felony predicate and crime of pecuniary gain for purposes of Ark. Code Ann. Sections 5-74-103 and 5-74-104.

90. The continuing-series element is satisfied, or will be shown through discovery, because the conduct was not an isolated one-time failure to deliver. Plaintiff alleges multiple related acts over time, including the January 2016 Haihang/AliSourcePro email concerning RFQ 102-97-6 and buyer-information access, the June 2021 order and payment, chemical-product marketplace communications, the January 2022 BloomTechz solicitation and

coercive language, the 2025 Decho Chemical seller outreach concerning N-Isopropylbenzylamine CAS 102-97-6, years of failed dispute resolution, and the June 2026 Alibaba Customer Service response offering a limited future credit rather than a full refund while stating that logistics could no longer be verified.

91. The concerted-action element is satisfied, or will be shown through discovery, because the conduct required coordinated participation among at least three participants: a marketplace or platform participant, a seller or seller-account participant, and a payment or beneficiary participant. Plaintiff further alleges that customer service, compliance, seller-support, sales-agent, and Doe participants supplied additional roles within the enterprise.

92. The conduct was intended to result, and did result, in Defendants or enterprise participants receiving money, property, income, benefit, or something of value. The conduct therefore qualifies as crime-of-pecuniary-gain conduct within the meaning of Ark. Code Ann. Section 5-74-103.

92A. Plaintiff does not base the alleged crime of pecuniary gain on lawful securities ownership, passive institutional investment, a shared outside asset manager, or any private-prison investment theory. The alleged pecuniary gain is the transaction-related money, fees, commissions, seller-membership value, payment-processing revenue, retained funds, or other benefit allegedly obtained or retained through the Arkansas-law violations pleaded in this Count.

93. Plaintiff was injured and damaged because of the alleged felony conduct and criminal-enterprise conduct. Plaintiff lost the money paid for the Trade Assurance order, the use of that money, the benefit of the bargain, business time, business opportunities, investigation costs, court costs, and other consequential business or property losses to be proven.

94. Under Ark. Code Ann. Section 16-118-107, any person injured or damaged by reason of another person's conduct that would constitute a felony under Arkansas law may file a civil action to recover damages based on that conduct. Plaintiff requests damages, costs, attorney's fees if allowed, equitable relief, accounting, constructive trust, disgorgement, restitution, preservation of records, leave to identify Doe participants, and all other relief the Court deems just and proper.

95. Plaintiff does not seek to privately prosecute any criminal statute. Plaintiff pleads the Arkansas felony and criminal-enterprise allegations solely as civil predicate facts supporting recovery under Arkansas law and as additional factual support for fraud,

deceptive trade practices, alter-ego, agency, unjust-enrichment, money-had-and-received, and related claims.

## COUNT V - UNJUST ENRICHMENT / MONEY HAD AND RECEIVED

96. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.
97. Defendants accepted, received, controlled, routed, retained, or benefitted from Plaintiff's payment, payment records, seller account benefits, platform fees, payment-processing benefits, future credit leverage, or related value in circumstances that make it inequitable for Defendants to retain the benefit without delivering the goods, providing a full refund, or providing meaningful relief.
98. Plaintiff alleges that Defendants were unjustly enriched and that money had and received should be returned, together with consequential damages, restitution, accounting, disgorgement, interest, and equitable relief to the extent permitted by Arkansas law.

## COUNT VI - CIVIL CONSPIRACY / CONCERTED ACTION

99. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.
100. Plaintiff alleges that Defendants and Doe participants acted in concert, agreed, substantially assisted, aided, abetted, or combined to accomplish unlawful objectives or lawful objectives by unlawful means, including fraud, deceptive trade practices, computer-fraud predicate conduct, concealment, non-delivery, payment retention, and obstruction or discouragement of complaints.
101. This claim is derivative of the underlying wrongs pleaded in this Complaint and is not asserted as an independent tort disconnected from those wrongs.
102. As a direct and proximate result of the concerted conduct, Plaintiff suffered damages including out-of-pocket loss, loss of use, lost benefit of the bargain, consequential property and business damages, investigation costs, loss of reputation, and other damages to be proven.

## COUNT VII - ALTER EGO / AGENCY / APPARENT AUTHORITY / PIERCING CORPORATE VEIL / PROPER ALIBABA ENTITY

103. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.
104. Plaintiff alleges that Alibaba-related Defendants operated through unified Alibaba.com branding, marketplace systems, Trade Assurance order documents, seller verification,

customer-service channels, payment channels, dispute-resolution records, compliance functions, and settlement-credit authority in a way that made the relevant Alibaba entities, agents, affiliates, or alter egos appear to Plaintiff as one integrated platform responsible for the transaction.

105. Plaintiff alleges that the precise responsible entity or entities are within Defendants' control. Plaintiff therefore pleads alter ego, agency, apparent authority, instrumentality, successor/payment responsibility, joint venture, and proper-party theories in the alternative and requests discovery into which Alibaba.com entity controlled the order, payment, Trade Assurance system, seller account, customer-service response, dispute-resolution process, payment-processing records, compliance records, and settlement-credit authority.

106. Plaintiff does not seek to impose liability merely because one entity owns another, because an institutional investment manager holds securities in multiple unrelated issuers, or because entities share passive investors. Plaintiff seeks to hold liable the entity or entities that controlled, participated in, benefitted from, held out, administered, processed, monitored, or accepted responsibility for the transaction, payment, seller account, Trade Assurance process, or post-order dispute conduct.

107. Plaintiff requests that any Alibaba-related defendant that denies responsibility be required, to the extent known, to identify the Alibaba.com entity or entities responsible for the order, payment, marketplace services, Trade Assurance services, seller account, customer-service response, dispute-resolution process, compliance review, payment processing, and records preservation at issue.

107A. Defendant Alibaba.com US E-Commerce Corp. has taken the position that Zichang or other companies are responsible while denying its own participation. Plaintiff alleges that the entity with control over Trade Assurance, seller verification, platform records, customer-service authority, payment infrastructure, and the ability to identify the responsible seller cannot avoid discovery merely by pointing to a foreign nominal seller.

107B. Plaintiff alleges in the alternative that one or more Alibaba-related Defendants directly participated in the transaction or post-order conduct; acted as actual or apparent agents or principals; operated a joint enterprise; controlled an instrumentality; or used related entities and seller-account structures in a manner that would produce injustice if strict corporate separateness were applied.

107C. Plaintiff seeks veil piercing only upon proof that a corporate or entity form was illegally or fraudulently abused to his injury, including proof that an entity was used to evade a

contract obligation, hinder recovery, conceal the responsible party, shift operations or assets, or perpetrate fraud or injustice.

107D. Facts relevant to those theories include actual beneficial ownership; actual board-designation, veto, contractual, management, data-access, compliance, payment, or operational-control rights; intercompany agreements; common ownership and control; overlapping officers or personnel; common addresses, databases, domains, and systems; commingled operations or funds; inadequate capitalization; absence of independent records or assets; transfer or closure of seller accounts after liabilities arose; successor entities; shared bank beneficiaries; and control of the conduct at issue.

107E. Plaintiff requests limited discovery before adjudication of personal-jurisdiction, alter-ego, agency, improper-party, and corporate-separateness defenses because the relevant facts are uniquely within Defendants' possession, custody, or control.

107F. Plaintiff does not allege that Alibaba or its disclosed owners directly invested in GEO Group, CoreCivic, or another correctional operator and does not rely on BlackRock's separate holdings in multiple issuers as proof of control, alter ego, conspiracy, or pecuniary gain. Unrelated private-prison investment is outside the requested discovery absent new evidence and further court order.

107G. Plaintiff seeks discovery into actual control and transaction value, including who possessed authority to appoint directors, veto or approve decisions, direct marketplace or compliance operations, control seller and buyer data, administer Trade Assurance, process or route payments, allocate liability, authorize customer-service resolutions, and receive transaction-related fees or other value.

## COUNT VIII - ACCOUNTING, CONSTRUCTIVE TRUST, PRESERVATION OF RECORDS, AND EQUITABLE RELIEF

108. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

109. Plaintiff requests an accounting of all funds, fees, credits, payments, beneficiary accounts, platform charges, payment-processing records, seller records, buyer-information routing records, supplier-access records, RFQ records, Trade Assurance records, logistics records, customer-service records, dispute-resolution records, settlement-credit records, intercompany allocations, transaction-related revenue, beneficial-ownership records, and actual board, veto, contractual, management, data-access, compliance, payment, or

operational-control rights connected to Order No. 91906090501027582 and related post-order communications.

110. Plaintiff requests constructive trust, disgorgement, restitution, preservation order, production order, or other equitable relief to prevent Defendants from retaining money, benefits, records, or payment information obtained through the alleged conduct.

111. Plaintiff requests leave to amend to identify Doe defendants, correct entity names, add or dismiss entities after discovery, and conform the pleading to the proof.

## VI. DAMAGES AND RELIEF REQUESTED

112. Plaintiff alleges that his damages exceed $75,000.00 and exceed the jurisdictional limits of Arkansas small claims and district civil court. Plaintiff does not plead a monetary cap and seeks the maximum monetary, statutory, legal, and equitable relief supported by the evidence and permitted by Arkansas law.

113. Plaintiff requests actual damages, compensatory damages, consequential damages, benefit-of-the-bargain damages, business interruption damages, loss-of-use damages, lost opportunity damages, investigation costs, court costs, costs of service, prejudgment interest, post-judgment interest, restitution, disgorgement, accounting, constructive trust, and all other legal or equitable relief supported by Arkansas law and the evidence.

114. Plaintiff requests punitive or exemplary damages to the fullest extent permitted by Arkansas law if the evidence establishes malice, reckless disregard, intentional fraud, deliberate concealment, intimidation, or other conduct supporting such relief.

115. Plaintiff requests costs and attorney's fees where allowed by statute, rule, contract, equity, or Arkansas law, including under Ark. Code Ann. Section 16-118-107 if Plaintiff prevails on proof of felony conduct by a preponderance of the evidence, and under any other applicable Arkansas statutory or equitable fee provision.

116. Plaintiff requests an order preserving and requiring production of seller-account records, payment records, beneficiary records, Trade Assurance records, dispute-resolution records, customer-service records, platform-compliance records, seller-verification records, communication logs, and records concerning Alibaba's June 2026 customer-service response and settlement-credit authority.

117. Plaintiff requests leave to file amended or supplemental pleadings to identify John Doe defendants, correct defendant names, add proper Alibaba/payment/seller entities, conform

the complaint to proof, and preserve Plaintiff's filing date and claims to the fullest extent permitted by Arkansas law.

118. Plaintiff requests all other relief the Court and jury deem just, proper, equitable, and permitted by Arkansas law.

## VII. JURY DEMAND

119. Plaintiff demands a trial by jury on all issues so triable.

## VIII. EXHIBIT INDEX AND FILING NOTICE

120. Plaintiff may attach or rely on exhibits previously filed in the state or federal records, including the Trade Assurance Purchase Contract, the June 18 and June 22, 2026 Alibaba Customer Service emails, the January 9, 2022 BloomTechz email, redacted payment or wire records, the Alibaba Non-Prosecution Agreement, the AUS Non-Prosecution Agreement, state-court transfer materials, related federal docket or exhibit materials, and public SEC subsidiary, ownership, and investment filings used solely to identify corporate relationships and narrow the actual-control theory. Exhibits A-1 through A-4 are specifically identified because they mirror the exhibit references in the federal amended complaint and show notice, Trade Assurance response, buyer-information routing, supplier follow-up, and continued seller outreach.

121. For public filing, Plaintiff will redact financial account numbers and other sensitive financial identifiers unless the Court authorizes or requires unredacted filing under seal.

122. Plaintiff incorporates all previously filed exhibits in small claims court case PCSC-26-189 and federal civil case 4:26-cv-00611-DPM filed in the eastern district as evidence of notice, transaction identity, entity identity, platform/payment structure, discovery need, and factual allegations, but does not allege that any NPA alone proves Plaintiff's specific order was included in any NPA-covered transaction. Plaintiff will refile any exhibits the court instructs to file.

123. Exhibit A-1 – Email to NPA attorneys and reply to Solution for Trade Assurance Order 91906090501027582;

124. Exhibit A-2 – Homesite Financial Services LLC Arkansas Debt Collector Licence;

125. Exhibit A-3 – Email from Decho Chemical;

126. Exhibit A-4 – Haihang email with attached translation.

127. Exhibit A-5 - Proof of service, July 9 answer, July 16 transfer order, district-court docket, and July 17 objection from PCSC-26-189;

128. Exhibit A-6 - Relevant nonprivileged excerpts of the Alibaba and AUS Non-Prosecution Agreements identifying ICBU, Trade Assurance, seller programs, platform controls, and payment-processing systems;

129. Exhibit A-7 - Public-source materials concerning the 2014 Sinotech/Alibaba Gold Supplier history, offered solely as seller-verification discovery context and not as proof of affiliation, present wrongdoing, propensity, or liability. Any reported sixteen-year supplier tenure is not offered as established unless the original archived page and metadata are authenticated.

130. Exhibit A-8 - Relevant public SEC materials, including Alibaba Group Holding Limited's 2026 Form 20-F and subsidiary exhibit, Alibaba's March 31, 2026 Form 13F information table, and the referenced BlackRock, GEO Group, and CoreCivic ownership disclosures, offered solely to identify the publicly disclosed corporate chain and to narrow ownership discovery to actual governance and control rights. These materials are not offered to prove that Alibaba invested in private prisons or that common institutional investment establishes control, conspiracy, alter ego, or criminal pecuniary gain.

Respectfully submitted,

____________________________________

Bradley Burchfield
5420 Kavanaugh Blvd #7927
Little Rock, AR 72217
Phone: 479-223-0038
Email: burchfieldbradley123@gmail.com

Date: __________________, 2026

**VERIFICATION**

I, ______________________________, being duly sworn upon oath, state that I am the person filing the foregoing document; that I have read the document; and that the facts stated in it are true and correct to the best of my knowledge, information, and belief.

I understand that this verification is made under oath and that any false statement may subject me to penalties for perjury.

______________________________________________

Signature of Affiant

______________________________________________

Printed Name

Date: ____________________________

STATE OF ARKANSAS

COUNTY OF ______________________

Subscribed and sworn to before me on this ______ day of ______________, **20**, by

______________________________.

______________________________________________

Notary Public

My Commission Expires: __________________

Notary Seal: